UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. CR 06-02T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL | : | |
| CENTER | : | |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT ROBERT URCIUOLI'S MOTION TO DISMISS THE INDICTMENT**

Defendant Robert A. Urciuoli ("Urciuoli") hereby submits this Reply Brief in further support of his Motion to Dismiss the Indictment.

## I. Introduction

The Government correctly states that an indictment need only "contain[ ] the elements of the offense[,]...inform[ ] a defendant of the charge against which he must defend, and...enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." See Government's Memorandum In Support, p. 9, quoting Hamling v. United States, 418 U.S. 87, 117 (1974). The Government, however, chooses to ignore that the Indictment alleges far more than the elements of the offense; it reveals the critical factual basis for the Government's honest services mail fraud theory. In light of the alleged facts and the records incorporated into the Indictment, the Government cannot prove that Urciuoli intended to deceive the Rhode Island citizenry because the material aspects of the Celona relationship with Roger Williams Medical Center ("RWMC") were disclosed. Moreover, the conduct alleged either does not involve legislative action, as in the case of the rescue runs and the insurance company meetings[1], or it

[1] The Government cannot transform Celona's non-legislative role in arranging RWMC meetings with Blue Cross and United into legislative action by simply alleging that he acted in his capacity "as Chairman of the Senate

involves legislative action that was *per se* legal under R.I. Gen. Laws § 36-14-7(b), a centrally relevant statute that the Government completely ignores in its Objection.

## II. The Standard of Review

The Government objects to the Court's consideration of "facts outside the Indictment," referring to Urciuoli's Exhibits. The McGuirk letter (Exhibit A), the Consulting Agreement (Exhibit B), and the Advisory Opinion (Exhibit C) are not only cited, but heavily quoted, in the Indictment. The Government does not dispute the authenticity or accuracy of those documents. Rather, the Government maintains that it would be improper for the Court to consider any part of those documents other than the portions selectively included in the Indictment. Each of those documents should be considered by the Court on this motion because they are incorporated into the Indictment by reference, and the Government does not dispute their authenticity or accuracy. See United States v. Mann, 517 F.2d 259, 265 (5th Cir. 1975).

Furthermore, the Court may take judicial notice of the legislative bills[2] referenced by Urciuoli, as well as the Providence Journal article. See United States v. Daychild, 357 F.3d 1082, 1099 (9th Cir. 2004); United States v. Mann, 517 F.2d at 265 (based on facts not in dispute and judicially noticed facts, "the Court is of the opinion that the indictment must be dismissed…"); United States v. Coffman, 638 F.2d 192, 194 (10th Cir. 1980) (legislation judicially noticed); Shell Oil Co. v. Kleppe, 426 F. Supp. 894, 908 (D. Colo. 1977) (court took judicial notice of newspaper article not offered for its truth).[3]

---

Corporations Committee." See Government's Memorandum In Support Of Its Objection, pp. 22 – 23. There simply is no legal or factual basis to claim that Celona acted in his official capacity when the activity involved arranging meetings among private parties. The Government's argument to the contrary is pure sophistry.

[2] The legislation discussed by Urciuoli in his Motion to Dismiss the Indictment is also cited by the Government in the Indictment.

[3] The court noted that Rule 201 (judicial notice) and Rule 902(6) (self-authentication of newspapers) of the Federal Rules of Evidence permitted it to take notice of statements in the newspaper articles without necessity of authentication.

## III. The Government's Theory Is Refuted By The Indictment And Rhode Island Law

The Government repeatedly emphasizes that the heart of the alleged fraud scheme is that the Defendants misrepresented "the true identity of Celona's employer" and "the true nature of the work he was doing." See Government's Memorandum In Opposition, pp. 6, 15, 17. The Government's theory of prosecution, however, is refuted by the very documents quoted in the Indictment, as well as Rhode Island law.

The essence of an undisclosed conflict of interest case is that the legislator has a financial interest tied to an entity – in this case RWMC – that is hidden. Celona's financial tie to RWMC was anything but hidden. Even if the only disclosure had been Celona's relationship with the Assisted Living Facility, that would have revealed that he was being paid in part by RWMC through its half-owned joint venture. McGuirk underscored that fact in his letter, the Ethics Commission emphasized it in its Adisory Opinion, and Rhode Islanders read about it in the Providence Journal. See Urciuoli's Appendix, Exhibits A, B, and C. McGuirk also disclosed, and the Ethics Commission noted, that Celona was being paid to promote the interests of a wholly-owed RWMC entity, the Elmhurst Extended Care Facility, Inc., the nursing home. Thus, McGuirk, acting at the direction of Urciuoli, made the Celona/RWMC financial relationship perfectly transparent. There simply can be no 'undisclosed conflict of interest' fraud case where, as here, the 'conflict' *is* disclosed.

On a related point, the Government alleges that the defendants failed to disclose that RWMC was funding the Village's payments to Celona. McGuirk's letter, however, disclosed that Celona's payments were being funded at least partially by RWMC, as the letter disclosed that RWMC controlled Roger Williams Realty Corporation and that the Village was a joint venture between Roger Williams Realty Corporation and SANAT, LLC. In any event, whether

Celona's payments were partially or fully funded by RWMC is immaterial, as the fact that Celona's income was from a RWMC affiliate was fully disclosed. See Neder v. United States, 527 U.S. 1, 26 ("[W]e hold that materiality of falsehood is an element of the federal mail fraud ... statute[]."). Moreover, it is apparent from the Advisory Opinion that the Ethics Commission was fully cognizant of Celona's financial ties to RWMC.

As to the Government's claim that the "true nature of the work" was concealed, the Government's theory once again falls flat. Based on the disclosures of RWMC through counsel, the Advisory Opinion states that Celona was required to "keep abreast of legislative issues and regulations at local, state and federal levels that potentially could impact delivery of care by the Village *and its related facilities.*" See Exhibit A. Thus, the Ethics Commission understood that Celona's work included monitoring legislation that could impact RWMC and its wholly-owned affiliates, as well as the Village. In light of that job responsibility, the Ethics Commission expressly allowed Celona to "fully participate and vote on broad-based legislation involving general health care issues of public interest," including legislation relating to elderly affairs, nursing homes, and hospitals. See Exhibit A.[4] Thus, Celona's communications with the Defendants regarding general health care, hospital, and nursing home legislation were not only disclosed, but entirely permissible under Rhode Island law. Accordingly, the citizens of Rhode Island were not deprived of any services to which they were entitled, as a matter of law.

Lastly, the Government argues that the rule of lenity has no applicability to this case because the First Circuit's decisions in Sawyer I and Sawyer II make it clear that there is nothing ambiguous in the type of conduct Congress intended to criminalize through § 1346. This

---

[4] For example, the Government alleges that Urciuoli and Driscoll committed mail fraud by informing Celona that they opposed Senate Bill 98-S 2796, legislation that concerned hospitals newly converted from non-profit to for-profit and thus affected all hospitals in Rhode Island. This is exactly the type of broad-based legislation involving general health care issues that Urciuoli was permitted to participate in. Thus, it was per se legal for Urciuoli and Driscoll to express to Celona their views on this legislation.

position ignores voluminous case law to the contrary, including the very decisions cited by the Government. See United States v. Sawyer, 85 F.3d 713, 724 (1st Cir. 1996) (the right to honest services "eludes easy definition"); United States v. Sawyer, 239 F.3d 31, 49 (1st Cir. 2001) (endorsing Judge Harrington's admonition to the Government regarding the "broad language and elastic interpretation" of the mail fraud statute); United States v. Czubinski, 106 F. 3d 1069 (1st Cir. 1997) (same); United States v. Bloom, 149 F.3d 649, 656 (7th Cir. 1998) (honest services fraud count dismissed under rule of lenity, noting "no one can be sure how far the intangible rights theory of criminal responsibility really extends because it is a judicial gloss on § 1341").

## V. Conclusion

For the foregoing reasons, Urciuoli respectfully requests that his Motion to Dismiss the Indictment be granted.

ROBERT A. URCIUOLI
By his Attorneys,
Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

Dated: May 4, 2006

**CERTIFICATION**

I hereby certify that I mailed a true and accurate copy of the within Reply Brief to counsel of record, as stated below, on May 4, 2006:

Robert Clark Corrente
United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Gerard B. Sullivan
Criminal Chief
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Luis M. Matos
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dulce Donovan
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

William P. Devereaux
Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Thomas C. Frongillo, Esq.
Weil Gotshal & Manges
100 Federal Street, Floor 34
Boston, MA 02110

Thomas G. Briody, Esq.
Law Office of Thomas G. Briody
72 Pine Street, First Floor
Providence, RI 02903

John A. Pappalardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Kevin J. Bristow, Esq.,
1309 Turks Head Building
Providence, RI 02903

Knone M. Passalaq