UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**DEFENDANT ROBERT A. URCIUOLI'S**
**MOTION *IN LIMINE***
**TO LIMIT USE OF THE REPORT OF F. DENNIS SAYLOR**

NOW COMES Defendant Robert A. Urciuoli ("Urciuoli") and hereby moves *in limine* for an Order from this Court limiting the use at trial of the report of F. Dennis Saylor, IV and Goodwin, Procter & Hoar LLP to the Executive Committee of the Board of Trustees of Roger Williams Medical Center, Inc. dated July 2, 1998 (the "Saylor Report")[1] to the one-page that pertains to John Celona, and holding that the remainder of the report is inadmissible for any purpose. Urciuoli hereby requests oral argument in connection with this Motion. Counsel for Urciuoli estimates that forty-five (45) minutes will be required for same. In support of this Motion, Urciuoli relies on his accompanying Memorandum of Law, submitted herewith and incorporated herein by reference.

WHEREFORE, Defendant Robert A. Urciuoli respectfully requests that this Court issue an Order limiting the use of the Saylor Report to the one-page that pertains to John Celona, and holding that the remainder of the report is inadmissible for any purpose.

---

[1] A copy of the Saylor Report was filed under seal by Defendant Frances P. Driscoll. The Saylor Report is Exhibit E to Driscoll's Memorandum of Law in Support of Motion For Severance.

ROBERT A. URCIUOLI

By his Attorneys,

Kristie M. Passalacqua (AMP)

Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
Richard Egbert Law Offices
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

Dated: June 7, 2006.

**CERTIFICATION**

I hereby certify that I mailed a true and accurate copy of the within Motion *In Limine* to Limit Use of Report of F. Dennis Saylor to counsel of record, as stated below, on June 7, 2006:

Cynthia Lomas

Robert Clark Corrente
United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Gerard B. Sullivan
Criminal Chief
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Luis M. Matos
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dulce Donovan
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

William P. Devereaux
Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Thomas C. Frongillo, Esq.
Weil Gotshal & Manges
100 Federal Street, Floor 34
Boston, MA 02110

Thomas G. Briody, Esq.
Law Office of Thomas G. Briody
72 Pine Street, First Floor
Providence, RI 02903

John A. Pappalardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Kevin J. Bristow, Esq.,
1309 Turks Head Building
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT A. URCIUOLI'S MOTION *IN LIMINE* TO LIMIT USE OF REPORT BY F. DENNIS SAYLOR**

Defendant Robert A. Urciuoli ("Urciuoli") respectfully submits this Memorandum of Law in support of his Motion *In Limine* to Limit the Use of the Report of F. Dennis Saylor (the "Report"), then of Goodwin, Procter & Hoar, LLP, presented to the Executive Committee of the Board of Trustees of Roger Williams Medical Center, Inc. ( "RWMC").

## INTRODUCTION

The Saylor Report[1] is an 87 page report that contains one page of compelling exculpatory evidence: an unqualified opinion provided to Urciuoli at the outset of the alleged conspiracy by an esteemed member of the Bar and a former federal prosecutor that the very same conduct alleged in the Indictment involving former State Senator John Celona was lawful. The remainder of the Report is filled with unproven, inflammatory allegations of misconduct that have nothing to do with any conduct at issue in this case. The only reason for offering the remainder of the Report would be to poison Urciuoli in the minds of the jurors and to promote conviction based on his 'propensity to commit criminal acts.' Allowing those allegations into evidence, or even allowing reference to those allegations in cross-examination of Urciuoli, would

[1] A copy of the Saylor Report was filed under seal by Defendant Frances P. Driscoll. The Saylor Report is Exhibit E to Driscoll's Memorandum of Law in Support of Motion For Severance.

be highly prejudicial to Urciuoli and would lead to a "mini-trial" on collateral issues, wasting judicial resources and hopelessly confusing a jury already charged with understanding a highly complex case. Therefore, with the exception of the one-page Celona Section, the Saylor Report should not be used for *any* purpose at trial.

## STATEMENT OF FACTS

The Saylor Report is the product of a limited investigation conducted under the direction of the RWMC Board of Trustees at the behest of an insurgent group, led by former Board of Trustees member Philip O'Dowd, M.D. ("O'Dowd") and Hospital Vice President, Maureen McNamara ("McNamara"), both of whom sought to oust Urciuoli. The allegations levied by O'Dowd and McNamara included unsubstantiated rumor and outright falsehoods that were calculated to portray Urciuoli as an outright thief engaged in egregious criminal acts against the hospital. The Saylor investigation debunked many of the allegations, was inconclusive as to others, and found that Urciuoli had submitted a relatively small amount of improper travel and entertainment expenses. Based on Saylor's review, no employment action was taken against Urciuoli, let alone charges filed or adjudicated.

### A. Judge Saylor's Findings Relating to John Celona

Among O'Dowd's allegations against Urciuoli were allegations that John Celona's consulting contract with the Village at Elmhurst, an issue central to this prosecution, was unlawful and unethical. In fact, O'Dowd's allegations in connection with Celona mirror the very allegations made by the Government in this case. Indeed, Judge Saylor's determination that there was "no basis for concluding that the [Celona] contract was illegal or unethical," see Saylor Report, pp. 49-50, was based on many of the same allegations and documents that the Government is now using to support its case. A review of the notes found in Judge Saylor's file

at Goodwin Procter reveals that O'Dowd and McNamara shaped the allegations concerning Celona's contract in the same way that the Government has shaped this investigation. Judge Saylor's notes from his investigation reflected that he was aware of the following allegations or issues concerning Celona: (1) that Celona allegedly concealed his relationship with RWMC when speaking on hospital issues before the legislature; (2) that Celona's job with the Village at Elmhurst was allegedly a "no show" job given to him as quid pro quo for his political support on several hospital issues; (3) that Celona's salary was being funded by RWMC; (4) that Celona was allegedly acting as a lobbyist for RWMC; and (5) that Celona was making efforts to increase rescue runs to Roger Williams Hospital. The very same allegations are set forth in the Indictment in support of the Government's case against Urciuoli.

Furthermore, Judge Saylor interviewed O'Dowd, McNamara, Urciuoli and others concerning Celona's contract, and requested all documents possessed by RMMC relating to Celona's activities as a consultant. The documents sent to Judge Saylor in response to his request reflect all of the key issues in this case. They included documents delineating the payment structure of Celona's salary, documents reflecting Celona's efforts to increase rescue runs to Roger Williams Hospital, and documents reflecting Celona's participation in legislation. In particular, the documents provided to Judge Saylor revealed: (1) that Celona had met with the East Providence Fire Chief, as well as the East Providence City Manager, in an effort to increase rescue runs to Roger Williams Hospital; (2) that Urciuoli authorized Peter Sangermano and the Village at Elmhurst to allocate the entire amount of Celona's consulting compensation to Roger Williams Realty Corporation; and (3) that Celona was reporting to RWMC executives on the

status of legislation. In fact, one fax from Celona to Driscoll indicated that Celona was working to "defeat" House Bill 98-H-8229.[2]

After reviewing these documents, Judge Saylor reached the following conclusion:

> Mr. Urciuoli denied that the senator is a "ghost consultant," and stated that he had been active in senior citizen affairs and was qualified for the position. We have reviewed the consulting agreement, *the Ethics Commission opinion*, and various other materials relating to Mr. Celona's position. Many of these materials are memoranda to Francis P. Driscoll, Senior Vice-President, External Affairs, Corporate Community and Development, dated after the commencement of this investigation and after the May 1, 1998 *Providence Journal* article. However, the records do reflect the performance of work by Mr. Celona in February and March. *Under the circumstances, we find no basis for concluding that the contract was illegal or unethical.*

See Saylor Report, p. 50 (emphasis added).

Judge Saylor's conclusion reflects that he was aware of and reviewed the Advisory Opinion issued by the Rhode Island Ethics Commission in response to Attorney James McGuirk's request for guidance as to what extent Celona could continue to vote on and participate in legislation in light of his consulting contract. These are the very same facts relied on by the Government in support of its honest services fraud theory of prosecution against Urciuoli. Urciuoli read the Saylor Report when it was presented in mid-1998 to the Board of Trustees, of which he was a member. The Government must prove at trial that Urciuoli possessed a fraudulent intent – i.e., that he intended to defraud the citizens of Rhode Island. The fact that Urciuoli was informed at the outset of the alleged conspiracy that the very same conduct that he is being prosecuted for now was deemed lawful and ethical by someone as esteemed and respected as Judge Saylor cuts to the very heart of the Government's case. It negates the *mens*

---

[2] As explained in more detail in the Memorandum of Law in Support of Robert A. Urciuoli's Motion to Dismiss the Indictment, House Bill 98-H 8229, an "Act Relating to Residential Care and Assisted Living Facilities," prohibited health facilities from holding themselves out as offering Alzheimer's care to patients unless the facilities were licensed as nursing homes or hospitals. The bill affected all hospitals and nursing homes in Rhode Island.

*rea* necessary to commit honest services mail fraud. The Celona Section is undeniably relevant because of the effect that it had on Urciuoli and is admissible for that very reason.

**B. The Other Contents of the Saylor Report**

The Saylor Report reflects that Goodwin's mission was limited in scope. The Report states that "in order to maintain the confidentiality of the investigation," Goodwin "neither interviewed persons nor attempted to review records outside of the hospital community." See Saylor Report, p. 3.[3] According to the Report, the allegations against Urciuoli could be grouped into four principal categories: (1) alleged abuse of meal and entertainment expenses; (2) alleged abuse of travel expenses; (3) alleged charging of miscellaneous personal expenses to the hospital, including home and office furnishings, personal telephone calls, and charitable contributions; and (4) alleged improper efforts to direct vendor and other contracts to personal friends. Id. at p. 1. Urciuoli was also alleged to have received improper loans against accrued vacation time, to have improperly purchased an automobile from the hospital at a bargain rate, and to have improperly "bugged" his office. Id. at pp. 1-2.

Aside from the one-page Celona section, the Report contains contentions that Urciuoli charged personal meal and entertainment expenses to the hospital, breached his fiduciary duty to the hospital, had "unduly extravagant" meal and entertainment expenses, "may have committed serious fraud upon the hospital," and various other inflammatory allegations. See Saylor Report, pp. 69-84. Most of the rumors and allegations contained in the Report are completely unsubstantiated and Urciuoli vigorously denies them. Based even on its limited review, Goodwin concluded that there was insufficient evidence that Urciuoli acted improperly as to many of the allegations. For example, the Report concluded that there was insufficient evidence

[3] For example, if the issue was whether Urciuoli had improperly charged a personal restaurant meal as a hospital expense, Goodwin did not make any attempt to interview persons who may have attended the meal. See Id.

that Urciuoli acted improperly with respect to the use of petty cash, the use of hospital funds for home or office furnishings, the choice of professional seminars to attend, personal telephone calls, charitable and community contributions, vendor contracting and, most importantly, Celona's consulting contract with the Village at Elmhurst. Goodwin did find that a relatively small amount of travel and entertainment expenses -- $16,000 incurred over a several year period – were improperly charged to the hospital by Urciuoli. The investigation did not lead to any formal action being taken by the Board of Trustees against Urciuoli. The Rhode Island Attorney General conducted an investigation, but it did not lead to any indictments or charges being filed, let alone convictions. The Attorney General investigation concluded with Urciuoli's agreement to make restitution to RWMC for part of the cost of the Goodwin investigation, in the amount of $80,000. This case is already very complicated in that the rarely-charged, central offense – honest services fraud by a *non-official* – is nuanced, and the relevant facts are complex. The last thing that is needed is the over-complication of issues for trial by necessitating a mini-trial on 86 pages of allegations and accusations that have absolutely nothing to do with the merits of this case.

## ARGUMENT

### A. The Celona Section of the Saylor Report is Relevant and Admissible

The Celona Section of the Saylor report is *highly* relevant to this litigation as it goes to the heart of the elements of the charged crime – honest services mail fraud. At trial, the Government must prove that Urciuoli knowingly and willfully[4] participated in a scheme to defraud. United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998). Good faith is a complete

[4] "Willfully" means to act knowingly and purposely, with intent to do something the law forbids . . . with bad purposes either to disobey or to disregard the law." United States v. Sawyer, C.A. No. 94-10168 (Feb. 27, 1995) (Charge To Jury). Thus, the Government must establish that Urciuoli believed he was committing a crime or violating the law at the time that he made use of the mails. Id.

defense to mail fraud, and the burden is on the Government to prove lack of good faith beyond a reasonable doubt. United States v. Sawyer, Criminal Action No. 94-10168 (Feb. 27, 1995) (Charge To Jury).

It is well-settled that otherwise inadmissible hearsay is admissible for the non-hearsay purpose of its affect on the listener or reader. See United States v. Meserve, 271 F.3d 314, 320 (1st Cir. 2001); United States v. Murphy, 193 F.3d 1, 6 (1st Cir. 1999); United States v. Castro-Lara, 970 F.2d 976, 981 (1st Cir. 1992). Here, the one-page Celona Section is admissible for the non-hearsay purpose of the affect that it had on Urciuoli when he read it. As indicated above, the Report found that there is "no basis for concluding that the [John Celona's consulting] contract was illegal or unethical." See Saylor Report, p.50. In reaching this determination, Judge Saylor had access to many of the same documents relied on by the Government here, and was aware of the same allegations that are at issue here. Thus, the Celona Section is relevant to whether Urciuoli possessed a good faith belief that Celona's involvement with RWMC – the same involvement under scrutiny here – was lawful and ethical. If Urciuoli believed in good faith that Celona's relationship with RWMC was lawful and ethical, Urciuoli could not have possessed the requisite intent to defraud the citizens of Rhode Island, and could not have committed the offense with which he is now charged.

The exclusion of the remainder of the Saylor Report does not affect the admissibility of the Celona Section. The purpose of establishing the effect that the Report had on Urciuoli when he read it can be served without reference to other parts of the Saylor Report.

**B. The Saylor Report Should Be Excluded Under Fed. R. Evid. 401 and 402**

The 86 pages of the Saylor Report that do not pertain to Celona are irrelevant to any of the issues for trial, and should be excluded for all purposes under FED. R. EVID. 401 and 402.[5] Urciuoli has been indicted on charges of conspiracy and mail fraud, all predicated on an alleged scheme to defraud Rhode Islanders of John Celona's honest services. The heart of the Government's theory of prosecution is that Urciuoli and his codefendants misrepresented the true identity of Celona's employer and the true nature of the work he was doing.

With the exception of the Celona Section, the question addressed by the Report was whether Urciuoli had inappropriately charged personal expenses and taken other actions that were detrimental to the interests of the hospital. Thus, with the exception of the one page that addresses John Celona's consulting contract with the Village at Elmhurst, the Report is irrelevant and must be excluded. FED. R. EVID. 402 ("Evidence which is not relevant is inadmissible.").

**C. The Salyor Report Should Be Excluded Under Fed. R. Evid. 403**

Allowing any use of the other 86 pages of the Saylor Report would be so unfairly prejudicial to Urciuoli that it would deprive him of his right to a fair trial. Under Rule 403, even *relevant* evidence must be excluded when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Because the 86 pages of the Report that do not pertain to Celona have no bearing on the elements of honest services fraud, even a small risk of prejudice to Urciuoli would militate against the admission of the Report. The 86 unrelated pages are replete with false and inflammatory accusations against Urciuoli – many of which implicate criminal laws. The effect on the jury of hearing these unsubstantiated accusations would be devastating to Urciuoli. See United States v. Gilbert, 229

---

[5] The Saylor Report itself is inadmissible hearsay. This motion is directed to any evidence of the contents of the Saylor Report, in addition to the Report itself.

F.3d 15, 24 (1st Cir. 2000) (excluding evidence of murder attempt because it would necessitate a mini-trial). Id.

**D. The Saylor Report Is Inadmissible Under Fed. R. Evid. 404(b)**

With the exception of the Celona Section, the Saylor Report is inadmissible under Fed. R. Evid. 404(b), as well. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. FED. R. EVID. 404(B). "Character evidence is of slight probative value and may be very prejudicial…it tends to distract the trier of fact from the main question of what actually happened on the particular occasion…it subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." FED. R. EVID. 404(B) advisory committee's note. While such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, none of these other purposes is applicable here. Aside from the Celona Section, the Report constitutes bad character evidence that would only serve to suggest that Urciuoli acted in conformity therewith in regard to the charges at hand.

Furthermore, even assuming, *arguendo*, that there was some permissible use of the Saylor Report under Rule 404(b), the Court still must determine whether the danger of undue prejudice outweighs the probative value of the evidence. Thus, based on the foregoing discussion of Rule 403 considerations, the Saylor Report is inadmissible under Rule 404(b).

**E. The Saylor Report is Inadmissible Under Fed. R. Evid. 608(b)**

Even if Urciuoli were to testify at trial, the Government should be prohibited from use the Saylor Report to cross-examine Urciuoli. Under Fed. R. Evid. 608(b), specific instances of the conduct of a witness may not be proved by extrinsic evidence for the purpose of attacking or

supporting the witness' credibility. FED. R. EVID. 608(B);[6] United States v. Andujar, 49 F.3d 16, 26 (1st Cir. 1995). Furthermore, if the government were permitted to introduce the Saylor Report, Urciuoli would be obliged to refute it, which would result in the introduction of vast amounts of evidence that is unrelated to the issues at hand, would waste the court's time and resources, and would confuse the jury. See United States v. Beauchamp, 986 F.2d at 4 ("The purpose of Rule 608(b)'s prohibition of extrinsic evidence is to avoid holding mini-trials on irrelevant or collateral matters.")

While courts may, in their discretion, allow inquiry into specific instances of misconduct on cross examination if they are probative of truthfulness or untruthfulness, the Saylor Report is not probative or either as it is completely lacking in indicia of reliability. By its very own description, the Report is one-sided and incomplete, as no one outside of the hospital was even interviewed or questioned in connection with the allegations. To allow the government to impeach or cross-examine Urciuoli by making reference to the contents of a report as explosive and inflammatory as the Saylor Report – and as lacking in indicia of reliability – even in the presence of a limiting instruction, would be a miscarriage of justice. See United States v. Davis, 183 F.3d 231, 257 (3d Cir. 1999) (affirmed exclusion of reports that defendant lied about an unrelated incident, under Rule 608(b)).[7]

## CONCLUSION

---

[6] Even evidence of a witness's prior criminal conviction is only admissible under certain, limited circumstances, i.e., when the conviction is less than ten years old or when the conviction involved dishonesty or a false statement. FED. R. EVID. 609(A) and (B). Obviously, the findings in the Saylor Report are a far cry from a prior criminal conviction.

[7] The allegations in the Saylor Report are based on even less of a basis than is required to support an arrest (which usually requires a probable cause finding), and it is well-established that evidence of arrest or indictment is inadmissible for the purpose of impeaching a witness in criminal cases. See United States v. Fortes, 619 F.2d 108, 118 (1st Cir. 1980); see also United States v. Bentley, 706 F.2d 1498, 1509-10 (8th Cir.).

For all of the foregoing reasons, Defendant Robert A. Urciuoli respectfully requests that the Court issue an Order limiting the use of the Saylor Report to the one-page that pertains to John Celona, and holding that the remainder of the report is inadmissible for any purpose.

Respectfully submitted,

ROBERT A. URCIUOLI

By his Attorneys,

Kristie M. Passalacqua (AMP)

Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

DATED: June 7, 2006

**CERTIFICATION**

I hereby certify that I mailed a true and accurate copy of the within Memorandum of Law in Support of Robert A. Urciuoli's Motion *In Limine* to Limit Use of Report of F. Dennis Saylor to counsel of record, as stated below, on June 7, 2006:

Robert Clark Corrente
United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Luis M. Matos
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

William P. Devereaux
Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Thomas G. Briody, Esq.
Law Office of Thomas G. Briody
72 Pine Street, First Floor
Providence, RI 02903

Kevin J. Bristow, Esq.,
1309 Turks Head Building
Providence, RI 02903

Gerard B. Sullivan
Criminal Chief
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dulce Donovan
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Thomas C. Frongillo, Esq.
Weil Gotshal & Manges
100 Federal Street, Floor 34
Boston, MA 02110

John A. Pappalardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110