**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02-1T** |
| | : | |
| **ROBERT A. URCIUOLI,** | : | |
| **FRANCES P. DRISCOLL, and** | : | |
| **PETER SANGERMANO, JR.,** | : | |

**UNITED STATES' OBJECTION TO DEFENDANT URCIUOLI'S MOTION IN LIMINE TO LIMIT USE OF REPORT BY F. DENNIS SAYLOR**

On June 7, 2006, Defendant Robert Urciuoli filed a Motion in Limine to Limit Use of Report by F. Dennis Saylor. For the reasons stated in the accompanying memorandum of law filed simultaneously herewith, the United States objects to the motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: July 10, 2006

LUIS M. MATOS
DULCE DONOVAN
Assistant U.S. Attorneys

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02T** |
| | : | |
| **ROBERT A. URCIUOLI,** | : | |
| **FRANCES P. DRISCOLL, and** | : | |
| **PETER SANGERMANO, JR.,** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July, 2006, I caused to be sent by first class regular mail a true copy of the within United States' Objection to Defendant Urciuoli's Motion In Limine to Limit Use of Report by F. Dennis Saylor:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

Kevin J. Bristow, Esq.
505 Turks Head Building
Providence, RI 02903

A. John Pappolardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Michael J. Connolly
Hinckley, Allen & Snyder LLP
28 State Street, 2nd Floor
Boston, MA 02109

______________________________

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02-1T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, and | : | |
| PETER SANGERMANO, JR. | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT URCIUOLI'S MOTION IN LIMINE TO LIMIT USE OF REPORT BY F. DENNIS SAYLOR**

## I. Introduction

On June 7, 2006, Defendant Urciuoli filed a Motion in Limine to Limit Use of Report by F. Dennis Saylor. Urciuoli claims that except for one page of compelling "exculpatory" evidence, the remainder of the report by F. Dennis Saylor ("the Saylor report"), presently a United States District Judge in the District of Massachusetts, should be excluded from evidence at trial.

Urciuoli's motion fails. Unless and until Urciuoli states his intention to testify at trial concerning the Saylor report, and until the substance of that testimony becomes clear, it is premature to exclude the remaining portions of the Report, or evidence relating to its creation, from trial.

In addition, Urciuoli overstates the relevance of Judge Saylor's findings – they are not exculpatory. Judge Saylor's conclusions relate solely to the Celona **contract**, not the underlying **conduct**, and Saylor's conclusion suggests that Urciuoli succeeded in deceiving yet another party concerning Celona's relationship with the Hospital.

Furthermore, the portions of the Report not involving Celona are relevant to the issues in

the case, the rule of completeness requires introducing the entire Report, and the Report and evidence underlying it include numerous instances of misconduct by Urciuoli which are appropriate areas of inquiry on cross-examination under Federal Rule of Evidence 608(b) and are independently admissible under Rule 404(b). For those reasons and more, the Court should deny Urciuoli's motion.

## II. Factual Background

In May of 1998, the Executive Board of the Board of Trustees of Roger Williams Medical Center engaged the law firm of Goodwin, Procter & Hoar LLP to conduct a review of certain activities of Defendant Urciuoli. Report at 1.[1] Employees of Roger Williams Hospital had alleged that Urciuoli had inappropriately charged personal expenses and "undertaken other activities that were detrimental to the interests of the Hospital." Id. Goodwin Proctor attorneys F. Dennis Saylor and Eugenia M. Carris conducted the review, along with Robert J. Taylor, a forensic accountant and retired federal agent. Id. at Cover and 2.

The allegations against Urciuoli were brought to the Board's attention by the President of the medical staff, Dr. Phillip O'Dowd, and included claims that Urciuoli: (1) improperly charged numerous meal and entertainment expenses to the Hospital; (2) abused travel expenses by improperly charging the Hospital for personal expenses; (3) inappropriately charged

---

[1] At present, despite the fact that Urciuoli has moved to exclude the Report from trial, the only copy of the Report before the Court is the copy submitted in conjunction with Defendant Driscoll's motion to sever filed in April. At that time, Driscoll filed the Report and requested that the Court place it under seal. To date, the Court has not ruled on the sealing motion, and Driscoll, at the Court's suggestion, filed a second motion to sever in which she relied on more limited excerpts from the Report. Urciuoli has filed his present motion without attaching a copy of the Report and merely refers to the copy previously submitted by Driscoll

miscellaneous personal expenses to the Hospital including home and office expenses, personal telephone calls and charitable contributions; and (4) undertook improper efforts to direct vendor and other contracts to personal friends. Report; Ex. 1, Richard Licht Grand Jury Testimony (hereinafter "GJ") at 31. Urciuoli was also alleged to have received improper loans against accrued vacation time, improperly purchased a car from the Hospital at a bargain rate and to have bugged his office. Report at 1-2. Further, Judge Saylor was "asked to investigate the allegation that Senator John A. Celona . . . was given a 'no-show' job at the Village at Elmhurst assisted living center as payment for his efforts on behalf of the hospital during the Columbia/HCA matter." Report at 49. Saylor was given between one and two months to complete Goodwin's investigation into the allegations against Urciuoli. Ex. 1, Richard Licht GJ at 39. In order to preserve the confidentiality of the investigation, Goodwin did not interview persons outside the Hospital or review non-Hospital records. Report at 3; Ex. 1, Richard Licht GJ at 39. Saylor and Carris interviewed Urciuoli on two occasions. Report at 3.

Saylor concluded that for a twenty-six month period, 176 of Urciuoli's meal and expense charges did not match with the notations in his calender or were of a questionable nature. The report details how Urciuoli inappropriately charged the Hospital for five family birthday dinners totaling $2,850. Urciuoli acknowledged that he made "mistake[s]" in charging the Hospital for these events. Report at 6-9. In addition, Saylor's investigation revealed that as winter approached, Urciuoli would telephone golf resorts in warmer parts of the country and inquire if they had any health care related conferences scheduled. Report at 22. As a result, Judge Saylor determined that Urciuoli "inappropriately used Hospital funds for extended stays at resort hotels that should have been treated as personal vacations." Id. at 76. Saylor's investigation into one of

these trips to Arizona revealed that Urciuoli charged the Hospital for an eight-day $5,998.83 trip with his then-fiancee, Donna, to Scottsdale for a non-existent "Health Care Issues of the 90s" conference.

During Urciuoli's two interviews with Judge Saylor, one in the presence of his counsel Urciuoli "answered all questions put to him during both interviews." Id. at 3. However, in the process of finalizing the Report, Saylor's staff contacted the Scottsdale Princess in order to ascertain the "precise" dates of the conference and learned that no such conference took place. As of the writing of the Report, Urciuoli had yet to provide an explanation. Saylor concluded that "[i]f no such conference existed, Mr. Urciuoli may have committed a serious fraud upon the hospital." Id. at 76. After being confronted with the fact that he billed the Hospital for a non-existent conference, Urciuoli admitted that he "made a bad error in judgment." Ex. 2 at 12.[2] Urciuoli, however, offered no explanation for his lies to Judge Saylor in the course of Saylor interviewing him about his trip to Scottsdale.

Saylor's conclusions concerning Celona's consulting agreement were as follows:

> We have reviewed the consulting agreement, the Ethics Commission opinion, and various other materials relating to Mr. Celona's position. Many of these materials are memoranda to Francis P. Driscoll, Senior Vice-President, External Affairs, Corporate Community and Development, dated after the commencement of this investigation and after the May 1, 1998, *Providence Journal* article. However, the records do reflect the performance of work by Mr. Celona in February and March. Under the circumstances, we find no basis for concluding that the contract was illegal or unethical.

Report at 50.

---

[2] Exhibit 2 is a portion of a letter Urciuoli submitted to Judge Saylor after the completion of the Report. The United States has submitted only one page of the letter because the letter refers, at length, to sections of the Saylor report, which at present is not filed on the open docket.

Based on Saylor's report, the Board concluded that Urciuoli inappropriately billed the Hospital for approximately $16,000 in personal meal, entertainment, and travel expenses and had him reimburse the Hospital for that amount. Ex. 3 at 4 ¶ 2; Ex. 4, Herbert Cummings GJ at 16, 49 ("I concluded that the $17,000 he spent inappropriately.); Ex. 1, Richard Licht GJ at 134-35. Despite the fact that many of the Board members thought Urciuoli should be fired, he was not. Ex. 5, Raymond Mancini GJ at 39 ("Well, I guess I would – I would say if it happened in my company, I would have fired him."); Ex. 6, Raymond Murphy GJ at 41, 47. At the time that Saylor issued his findings, the Hospital was facing the possibility of a merger with St. Joseph's Hospital, a move which the Board deemed essential to the Hospital's continued success. Ex. 1, Richard Licht GJ at 64-67, 123-24. In addition, Urciuoli's attorneys at the time threatened to sue the Hospital. Ex. 5, Raymond Mancini GJ at 38. Faced with firing Urciuoli and enduring an expensive public lawsuit concerning his termination, thus ruining the Hospital's prospects of a life-saving merger, the Board gave him a "pass" and hired Board President Herbert Cummings to "babysit" him and ensure that he not defraud the Hospital of any future expenses. Ex. 6, Raymond Murphy GJ at 65-66; Ex. 4, Herbert Cummings GJ at 48, 50.

## III. <u>Argument</u>

### A. Urciuoli's Motion In Limine is Premature

Without attesting to whether he intends to testify in his own defense at trial, Urciuoli asks this Court to rule on the admissibility of all portions of the Saylor report, including evidence surrounding its creation and underlying its findings, except the portions which relate to the Celona consulting contract. Urciuoli's motion is premature.

As discussed below, the United States disputes Urciuoli's position that Saylor's

statements concerning the Celona contract are exculpatory in any way. In any event, in order for the report to be relevant to Urciuoli's state of mind he must testify and at a minimum state that he read the report and describe the impact reading the report had on him. Because even the limited portion of the report on which Urciuoli intends to rely is admissible only if Urciuoli takes the stand, until he indicates his intention to do so, there is no reason to exclude evidence relating to the report or the remainder of the report itself as too prejudicial.

In addition, knowing the nature and substance of Urciuoli's testimony is essential to determining how the remaining portions of the report are relevant. Having Urciouli's testimony before the Court is also critical to determining the relevance and admissibility of the circumstances surrounding Judge Saylor's investigation and the instances of misconduct cited in the report either as appropriate areas of cross-examination or rebuttal evidence. Accordingly, the Court should deny Urciuoli's motion without prejudice to renew at a later time.

**B. The Saylor Report is Minimally Relevant to Urciuoli's State of Mind[3]**

In arguing that the Court should exclude all portions of the Saylor report except the section addressing the Celona consulting contract, Urciuoli overstates the relevance of Judge Saylor's conclusions concerning Celona.

---

[3] In his current motion, in delineating the import of Judge Saylor's findings concerning the Celona consulting contract, Urciuoli makes numerous representations which are not supported by evidence of record, most obviously his claim that he "read the Saylor Report when it was presented in mid-1998 to the Board of Trustees . . . ." Supp. Mem. at 4. In addition, Urciuoli cites and interprets Judge Saylor's notes. He does not, however, provide the Court with a copy of those notes. Id. at 3. Further, Urciuoli makes broad statements like "Judge Saylor . . . requested all documents possessed by RWMC relating to Celona's activities as a consultant," and "[t]he documents sent to Judge Saylor . . . included documents delineating the payment structure of Celona's salary . . . ." Id. To the extent that any of Urciuoli's arguments are based on evidence not of record, they should be disregarded by the Court.

Urciuoli also mischaracterizes Judge Saylor's findings concerning the Celona contract. Saylor concluded solely that Celona's **"contract"** was neither illegal nor unethical – the report says nothing about the underlying **conduct**. The investigation of the Celona contract was limited to determining whether Celona was getting paid for doing nothing. The Report states "[w]e were asked to investigate the allegation that [Celona] was given a no-show job at the Village of Elmhurst assisted living center as payment for his efforts on behalf of the hospital during the Columbia/HCA matter. . . . Some employees [were] concerned that Mr. Celona was not qualified for the position and was getting a $30,000 check for doing no work." Report at 49-50. Saylor's interview of Urciuoli, in which Urciuoli denied that Celona was a "ghost consultant," and his review of records relating to Celona's position lead Judge Saylor to conclude that Celona performed work in February and March of 1998, not whether that work was in accordance with the terms of the consulting agreement or the substance of what was represented to the Ethics Commission about what Celona would be doing. Id. at 50.

The Indictment covers the period from August of 1997 to January 2004 and alleges numerous overt acts which Urciuoli committed in furtherance of the conspiracy and the scheme to defraud before the Executive Committee even hired Goodwin. These acts include the execution of the consulting contract and the submission of the false and fraudulent April 1998 Ethics Commission letter. See Indict. ¶ 14, 21, 22, 24-27, 32, 41-44. Thus, even if as Urciuoli represents in his motion he read the Saylor report in "mid-1998" and thereafter concluded that his actions with respect to Celona were lawful, this does not exculpate him of his pre-mid-1998 criminal conduct alleged in the Indictment. In short, Judge Saylor's conclusions concerning the Celona contract do **not** negate the possibility that Urciuoli possessed the *mens rea* necessary to

commit honest services mail fraud.

Instead, Urciuoli's characterization of Judge Saylor's findings demonstrates the further success of Urciuoli's deception. At the heart of the Indictment's allegations are that Urciuoli caused the consulting agreement to be drafted in a manner "so that it falsely and fraudulently purported to be a consulting agreement between Celona and the Village . . . ." Indict. ¶ 25. The Indictment further alleges that in seeking an advisory opinion on Celona's purported consulting relationship with the Village, Urciuoli "misrepresented the true identity of [Celona's] employer and misrepresented the true nature of the work [Celona] had been and would be performing." Indict. ¶ 44. Passing these documents off to Judge Saylor as accurate representations of Celona's relationship with the Village constitutes another act Urciuoli committed in furtherance of the conspiracy. The fact that Judge Saylor read these false and fraudulent documents and was still left with the impression that Celona was working for the Village illustrates the success of Urciuoli's deception concerning who Celona was really working for and what he was doing. Urciuoli cannot claim that he relied on any conclusion Judge Saylor reached concerning Celona's consulting contract when that conclusion is based on Urciuoli's own lies. His motion should be denied

### C. The Non-Celona-Related Portions of the Saylor Report, and Evidence Surrounding Its Creation, Are Relevant to the Issues to be Tried

In his motion, Urciuoli argues strenuously that Judge Saylor's report, as well as any evidence surrounding its creation, are irrelevant to the issues in the case and that pursuant to Evidence Rules 402 and 403, the United States should be prohibited from introducing any portions of the Report not related to Celona. Urciuoli's suggestion is extreme.

As discussed above, Judge Saylor investigated accusations against Urciuoli within certain restrictions on the length of time to be devoted to the investigation and who he could interview. In addition, the scope of Judge Saylor's investigation concerning Celona was limited to determining whether Urciuoli was paying Celona for a no-show job in exchange for his prior legislative support. Whether Urciuoli was aware of these limitations on Judge Saylor are relevant to the jury assessing the credibility of Urciuoli's reliance on Judge Saylor's findings concerning the Celona contract. Indeed, as Urciuoli acknowledges "the Report is one-sided and incomplete, as no one outside of the hospital was even interviewed or questioned in connection with the allegations." Supp. Mem. at 10.

Further, the portions of Judge Saylor's report dealing with issues other than the Celona contract are also relevant. For example, the fact that Urciuoli deceived Judge Saylor concerning the Celona consulting contract and the fact that the Board refused to fire Urciuoli despite Judge Saylor's substantiated findings with respect to certain of the allegations concerning his expenditures, could have emboldened him to commit additional acts of honest services fraud involving Celona rather than leading him to believe that his actions were lawful.

### D. The Rule of Completeness Requires Admission of the Remainder of the Saylor Report If Urciuoli Introduces the Section Relating to John Celona

Evidence Rule 106 requires that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." If the Court permits Urciuoli to introduce the two-pages of the Saylor report addressing the Celona contract, fairness dictates that the remainder of the Report

should be introduced contemporaneously with it.

Where "misunderstanding or distortion can be averted only through presentation of another portion" of a document "the material required for completeness is *ipso facto* relevant and therefore admissible." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988). "Rule 106 . . . justif[ies] the admission of previously excluded portions of partially received documents . . . only when necessary to explain the admitted, to place it into context, to ensure a fair and impartial understanding of the admitted portion, or to correct a misleading impression that might arise from excluding it." United States v. Rivera, 61 F.3d 131, 135-36 (2d Cir. 1995). Although it is an open question in this Circuit, United States v. Leon-Delfis, 203 F.3d 103, 115 (1st Cir. 2000), other courts have held that the excluded portion of the document must be admissible on independent grounds, United States v. Woolbright, 831 F.2d 1390, 1395-96 (8th Cir. 1987).

Permitting Urciuoli to introduce the two pages in the Saylor report addressing the Celona contract would leave the jury with the mistaken impression that the contract was the only conduct for which Urciuoli was investigated. Judge Saylor's efforts in investigating the Celona contract must be placed in the proper context – the allegations of Urciuoli giving Celona a no show job was one of numerous allegations. The jury will be more likely to give greater weight to Judge Saylor's findings if they think that the Celona contract was all that Judge Saylor investigated.

Further, it would also leave the jury with the mistaken impression that in considering Judge Saylor's conclusions concerning the Celona contract, these were the only findings by Judge Saylor that Urciuoli was evaluating in assessing the appropriateness of his conduct. If in fact Urciuoli considered "[t]he remainder of the Report" to be "filled with unproven, inflammatory allegations of misconduct," his claim that only the Celona portion of the report was

legitimate lacks credibility. The jury is entitled to weigh Urciuoli's testimony concerning his reliance on Judge Saylor's findings about Celona in light of his impression that the remainder of the Report is bogus. Accordingly, pursuant to Rule 106, Urciuoli's motion in limine should be denied.

**E. Rule 608(b) Permits Inquiry Into Other Instances of Misconduct Cited in the Saylor Report and Occurring During Judge Saylor's Investigation Which Are Probative of Urciuoli's Untruthfulness**

The Report and evidence underlying it also present appropriate inquiry on cross-examination should Urciuoli take the stand. Even though under Rule 608(b) the United States may be prohibited from introducing extrinsic evidence of Urciouli's lies to Judge Saylor in the course of the investigation, for example concerning his trip to the Scottsdale Princess, or of his submission of fraudulent expense sheets to the Hospital, because these actions are probative of Urciuoli's "character for truthfulness or untruthfulness" they may be inquired into on cross-examination. Urciuoli cannot expect to testify without having to explain his lack of candor to Judge Saylor concerning why he billed the Hospital for the non-existent "Health Care Issues of the 90s" conference. The fact that Urciuoli lied to Judge Saylor about another instance of alleged misconduct being investigated is highly probative of whether Urciuoli was truthful when speaking to Judge Saylor about Celona.

"The discretion of the district court under Rule 608 is guided by several factors, including whether the instances of prior untruthfulness [bear] some similarity to the conduct at issue, whether or not they [are] remote in time, whether they [are] cumulative of other evidence, and whether there [is] some likelihood they happened." United States v. Simonelli, 237 F.3d 19, 23 (1st Cir. 2001). The Court's ruling to permit such questioning is reviewed for an abuse of

discretion. Id.

There is no question that many of the instances of misconduct investigated by Judge Saylor, namely Urciuoli's submission of false expense sheets and billing the Hospital for a non-existent conference, are prior bad acts tending to show untruthfulness. See e.g. id. ("[Q]uestions about altering time cards, inflating bills, and stealing away with records" are "prior bad acts that ten[d] to show untruthfulness."). In addition, the types of misconduct investigated by Judge Saylor are similar to the conduct at issue in the instant case because, as articulated more fully below, they both involve instances of honest services fraud. Further, the misconduct is not remote in time to Urciouli's actions with respect to Celona, the evidence would not be cumulative of other evidence, and Urciuoli has admitted that the conduct occurred. Urciuoli cannot expect to testify as to his reliance on Saylor's conclusions nor to his innocence without subjecting himself to cross-examination concerning his character for candor. He cannot limit the United States from cross-examining him concerning other instances of misconduct detailed in the Report and his conduct in the course of the investigation which bear on his character for untruthfulness.

**F. The Saylor Report Is Admissible Under Rule 404(b)**

In arguing for its exclusion from trial, Urciuoli ignores the fact that Judge Saylor's findings and evidence underlying them concerning Urciuoli's non-Celona related misconduct are admissible under Rule 404(b).[4] As the Court is aware, evidence of other crimes or wrongs is not

[4] The United States notes that Rule 404(b) requires the United States to provide the defendant with reasonable notice of 404(b) evidence it intends to introduce at trial upon request of the accused. To date, undersigned counsel has received no such request from Urciuoli's counsel.

admissible in order to demonstrate action in conformity therewith. However, Rule 404(b) of the Federal Rules of Evidence permits the introduction of other "crimes, wrongs, or acts" in order to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or accident . . . ." Fed. R. Ev. 404(b). The two-part test concerning whether Rule 404(b) evidence is admissible is to determine first whether the evidence has some "special relevance" other than merely to show character or propensity. See United States v. DeCicco, 439 F.3d 36, 50 (1st Cir. 2006). Next, even if the evidence has some special relevance, the evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

In this case, especially with respect to the approximately $16,000 in billing of personal expenses which Urciuoli himself admitted were "mistakes" or "bad error[s] in judgment," the improprieties which Saylor investigated are relevant to Urciuoli's motive in this case. Urciuoli hired Celona in 1998. During this time-frame, indeed the time-frame encompassed by the Saylor report, Urciuoli's lavish lifestyle depended, in part, upon his remaining CEO of the Hospital. Hiring State Senator Celona to work as the Hospital's advocate was one of Urciuoli's means of ensuring that the Hospital's legislative interests were protected. The Hospital's continued survival meant Urciuoli would continue as President and have Hospital funds at his disposal for family dinners and vacations.

In addition, the types of improprieties of which Urciuoli was accused and which Judge Saylor investigated are similar to the actions which he is alleged to have committed in the Indictment – they both involve a form of honest services fraud. The crime of honest services fraud is not limited to public officials, but includes private actors who breach their fiduciary relationship to their employer. See e.g. United States v. Martin, 228 F.3d 1, 17 n.21 (1st Cir.

2000); United States v. Rybicki, 354 F.3d 124, 133 (2d Cir. 2003) . Urciuoli, by virtue of his position as President of the Hospital, possessed various fiduciary duties to the corporation. See Ex. 1 at 57. His breach of those fiduciary obligations, by using Hospital finds for his personal benefit, could have subjected him to the same or similar criminal penalties with which he is charged in the present case. Urciuoli's willingness to commit honest services fraud with respect to his employer and abuse his own duty of loyalty, honesty and good faith to the Hospital, actions which he has admitted were "mistakes" and "bad errors in judgment," is relevant to showing Urciuoli's intent to commit honest services fraud in the present context by having John Celona abuse his own fiduciary relationship with the citizens of Rhode Island. Urciuoli's commission of honest services fraud against the Hospital is also relevant to showing that the crimes with which he is charged in this case were not a result the mistake or accident.

## IV. **Conclusion**

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Urciuoli's Motion in Limine to Limit Use of Report of F. Dennis Saylor.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: July 10, 2006

LUIS M. MATOS
DULCE DONOVAN
Assistant U.S. Attorneys

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02T** |
| | : | |
| **ROBERT A. URCIUOLI,** | : | |
| **FRANCES P. DRISCOLL, and** | : | |
| **PETER SANGERMANO, JR.,** | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of July, 2006, I caused to be sent by first class regular mail a true copy of the within United States' Memorandum in Support of Its Objection to Defendant Urciuoli's Motion In Limine to Limit Use of Report by F. Dennis Saylor to:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

Kevin J. Bristow, Esq.
505 Turks Head Building
Providence, RI 02903

A. John Pappolardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Michael J. Connolly
Hinckley, Allen & Snyder LLP
28 State Street, 2nd Floor
Boston, MA 02109