ultimately will redown to the great benefit of the Hospital. The report concludes that this was a personal expense. In my heart, I honestly believed that this dinner was also furthering the Hospital's mission.

The last example I will give in this category involves the dinner for Father Marchese attended by the extended Paolino family after the death of Jeffrey Paolino who died in a skydiving accident. I hesitate to include this particular expense because it is so deeply personal to me, and ironically, it demonstrates the fact that even in times of personal crisis I am still looking out for the interest of the Hospital. In this particular case, the Paolino extended family has donated over $8,000 -- and has dedicated a room in memory of Jeffrey Paolino -- as a result of my personal relationship with the Paolino family. At the time I submitted this expense, I included Father Marchese's name and also a business purpose involving BU, which in retrospect was not accurate. However, what is accurate is that if the name of the family was Smith or Jones -- instead of Paolino -- there would be no question as to the legitimacy of spending a few hundred dollars in recognition of the donation of such as substantial sum to the Hospital -- not only for the particular donation, but also in consideration of future donations that family might make. Am I to be charged as a criminal -- as the report clearly implies -- because I treat donor cultivation involving family members no differently than non-family members. If there is a difference -- and sitting here today I see none -- then I would like clear guidance from the Board on this matter. It causes me personal pain to see my family put in the light that it has been put in the report, not only on this occasion, but on other occasions throughout the report. I challenge anyone to demonstrate to me how it is improper or fraudulent to demonstrate your appreciation to large donors of the Hospital -- family or not.

In conclusion, on the birthday parties and other family related expenses, I may have erred in some respects. These were honest mistakes. I have indicated time and again my willingness to reimburse the Hospital, and give the Hospital the benefit of the doubt in order to clear this matter up.

The next item which I would like to address up front is the issue of the four conferences, three of which my wife and children accompanied me on. These include Scottsdale, the two Breakers conferences and the Amerinet conference. Let me address Scottsdale first. This is probably the only instance where I clearly made a bad error in judgment in charging a trip to the corporate AMEX. In January 1997, the Legislature had filed a bill to block the Columbia/HCA transaction. There was a flurry of legislative activity in January and February of 1997 and intense media interest which engaged my full attention. This was the beginning of the full court press by the coalition of politicians, unions, and other special interests which were opposed to the Columbia/HCA transaction. At the time that I booked the Scottsdale trip, I believed that I had been scheduled me for a conference in Arizona. When I arrived, I found out there was no conference. I decided to make the best of the situation, however, and did not want to disappoint my family by canceling the trip and heading home. They had sacrificed along with me in the hectic days of January and February of 1997. I did work from the hotel room during the entire stay, including telephone calls and faxes during the day. I did segregate out expenses which I



CONFIDENTIAL ATTORNEY CLIENT DOCUMENT
FOR EXECUTIVE COMMITTEE ONLY

CONFIDENTIAL
GPH 000245