UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**DEFENDANT ROBERT A. URCIUOLI'S**
**MOTION TO DISMISS THE INDICTMENT AND OTHER RELIEF**

NOW COMES Defendant Robert A. Urciuoli ("Urciuoli") and hereby moves to dismiss all thirty-eight counts in the Indictment as to him on the grounds that the Government has engaged in conduct vis-à-vis Roger Williams Medical Center that violates both Urciuoli's Sixth Amendment right to counsel of his choice and his fundamental right to fairness in a criminal proceeding. In the alternative to immediate dismissal, Urciuoli requests that the Court direct the Clerk, as a matter of administrative convenience, to open a civil docket number for claims against RWMC and, thereafter, order RWMC to advance his defense costs in order to restore him to the position that he would have occupied had the Government not improperly interfered with his prospects for advancement of such costs. Urciuoli also requests that the Court sanction the Government for its misconduct by barring from use during trial any evidence obtained through its coercion of RWMC. Lastly, Urciuoli requests that the Court continue the trial in this matter, which is currently set for September 6, 2006,[1] and hold an evidentiary hearing so that Urciuoli can determine the extent of the Government's interference with and violation of his constitutional rights.

[1] The court has not yet issued an order changing the trial date from September 20, 2006 to September 6, 2006, but counsel understand from contacts with the Deputy Clerk that such an order is likely to be issued.

In support of this Motion, Urciuoli relies on his accompanying Memorandum of Law, submitted herewith and incorporated herein by reference.

WHEREFORE, Defendant Robert A. Urciuoli respectfully requests that this Court dismiss all counts in the Indictment as to him.

ROBERT A. URCIUOLI

By his Attorneys,

Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

Dated: July 31, 2006

**CERTIFICATION**

I hereby certify that I mailed a true and accurate copy of the within Motion to Dismiss the Indictment and Other Relief to counsel of record, as stated below, on July 31, 2006:

Robert Clark Corrente
United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Gerard B. Sullivan
Criminal Chief
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Luis M. Matos
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dulce Donovan
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

William P. Devereaux
Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Thomas C. Frongillo, Esq.
Weil Gotshal & Manges
100 Federal Street, Floor 34
Boston, MA 02110

Kevin J. Bristow, Esq.,
1309 Turks Head Building
Providence, RI 02903

John A. Pappalardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Mone M. Passalay

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**DEFENDANT ROBERT A. URCIUOLI'S**
**MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT**
**AND OTHER RELIEF**

NOW COMES Defendant Robert A. Urciuoli ("Urciuoli") and respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the Indictment. As set forth more fully below, the Indictment must be dismissed as to Urciuoli because the Government has engaged in conduct vis-à-vis Roger Williams Medical Center ("RWMC") that violates both Urciuoli's Sixth Amendment right to counsel of his choice and his fundamental right to fairness in a criminal proceeding.

In the alternative to immediate dismissal, Urciuoli requests that the Court direct the Clerk, as a matter of administrative convenience, to open a civil docket number for claims against RWMC and, thereafter, order RWMC to advance his defense costs in order to restore him to the position that he would have occupied had the Government not improperly interfered with his prospects for advancement of such costs. Urciuoli also requests that the Court sanction the Government for its misconduct by barring from use during trial any evidence obtained through its coercion of RWMC. Lastly, Urciuoli requests that the Court continue the trial in this

matter, which is currently set for September 6, 2006,[1] and hold an evidentiary hearing so that Urciuoli can determine the extent of the Government's interference with and violation of his constitutional rights.

## BACKGROUND

From the outset of the investigation that led to this Indictment, the Government engaged in a campaign to coerce RWMC to stipulate that Urciuoli committed mail fraud by violating the honest services mail fraud doctrine, in an obvious effort to force RWMC to fire Urciuoli and sever its contractual obligation to indemnify him for the cost of his defense, as well as the advancement of those fees. After reviewing all material evidence underlying the Government's evidence, RWMC aggressively and repeatedly denied that Urciuoli and codefendant Frances P. Driscoll ("Driscoll") had done anything unlawful, or even unethical. It was only after RWMC was indicted and pushed to the brink of financial collapse that the RWMC Board of Trustees (the "Board") succumbed to the Government's demand, and stipulated to Urciuoli and Driscoll's guilt, even though it required the Board to make a one hundred and eighty degree reversal of its position in the process. By pressuring RWMC to "admit" Urciuoli's guilt, the Government forced RWMC to terminate Urciuoli's right to indemnification and advancement of attorney's fees, to which he was entitled by contract, statutory law, and established policy and practice at RWMC. In doing so, the Government violated Urciuoli's constitutional right to representation by defense counsel of his choice and his fundamental right as a criminal defendant to a fair trial.

The Supreme Court has long protected a defendant's right to fairness in the criminal process. It has grounded this protection primarily in the Due Process Clause as well as more specific provisions of the Bill of Rights, including the Confrontation and Assistance of Counsel

---

[1] The court has not yet issued an order changing the trial date from September 20, 2006 to September 6, 2006, but counsel understand from contacts with the Deputy Clerk that such an order is likely to be issued.

Clauses of the Sixth Amendment. Where, as here, the Government engages in actions intentionally designed to cut off a criminal defendant's access to funds that would pay for his defense and otherwise interfere with his entitlement to be treated fairly throughout the criminal process, the entire criminal proceeding is contaminated and dismissal of the indictment is warranted.

**A. The Thompson Memorandum**

In 2002, in the wake of high profile corporate scandals such as the Enron case, the President issued an Executive Order which established a Corporate Fraud Task Force headed by United States Deputy Attorney General Larry D. Thompson. On January 20, 2003, Mr. Thompson issued a document entitled *Principles of Federal Prosecution of Business Organizations* (the "Thompson Memorandum") that was binding on all federal prosecutors. See U.S. Dep't of Justice, Criminal Resource Manual § 163 (2005) ("The Thompson Memorandum sets forth nine factors that federal prosecutors must consider in determining whether to charge a corporation or other business organization."), attached hereto as Exhibit A. One such factor is the corporation's cooperation with the Government. The Thompson Memorandum provides in relevant part:

> Another factor to be weighed by the prosecutor is whether the corporation appears to be protecting its culpable employees and agents. Thus, while cases will differ depending upon the circumstances, a corporation's promise of support to culpable employees and agents, either *through the advancing of attorneys fees, through retaining the employees without sanction for their misconduct,* or through providing information to the employees about the government's investigation pursuant to a joint defense agreement, may be considered by the prosecutor in weighing the extent and value of a corporation's cooperation.

See Memorandum by United States Deputy Attorney General Larry D. Thompson entitled *Principles of Federal Prosecution of Business Organizations*, (the "Thompson Memorandum"), January 20, 2003, attached hereto as Exhibit B.

During the pre-indictment period, numerous meetings were held between Government attorneys and FBI agent Dennis Aiken on the one hand, and counsel for RWMC on the other. During several of those meetings, counsel for Urciuoli is informed that the Government referenced the Thompson Memorandum as setting forth factors it would consider in determining whether or not to indict RWMC. Thus, there can be no doubt that RWMC faced continuous pressure from the Government to terminate Urciuoli and sever his rights to indemnification and advancement of legal fees throughout the pre-indictment period, as well as after it was indicted.

**B. Urciuoli's Right to Indemnification and Advancement of Attorney's Fees**

Both Urciuoli's employment contract with RWMC and Rhode Island statutory law provide for indemnification for fees. Urciuoli's employment contract with RWMC provided in relevant part as follows:

> 15. Indemnification. During the period of his employment hereunder, [RWMC and its affiliates] agree[] to indemnify [Urciuoli] in his capacity as an officer of [RWMC and its affiliates], and as an officer and member of the Board of Directors of any subsidiary or affiliate of [RWMC and its affiliates] for which [Urciuoli] is rendering services at the request of [RWMC and its affiliates], all to the maximum extent permitted under the laws of the State of Rhode Island.

See Exhibit C, attached hereto.

Urciuoli's right to indemnification for legal fees incurred in connection with the allegations of personal wrongdoing had previously been reviewed by counsel for RWMC and affirmed.[2] Indeed, Urciuoli hired counsel at the outset of this investigation at the direction of RWMC counsel. From that time until the January 26, 2006 meeting when the Board voted to

[2] The basis for this assertion is an attorney-client and work-product privileged document that Urciuoli will submit to the court at the time of the hearing requested in this motion, if RWMC agrees to waive the privileges attached to the document. Urciuoli expects that RWMC will do so in line with the terms of the Deferred Prosecution Agreement, in which RWMC agreed not to assert any claim of privilege, including attorney-client and work product, as to any information requested by the Rhode Island USAO related to this investigation. Declining to do so would appear to be arbitrary and capricious and calculated only to undermine Urciuoli's rights.

terminate Urciuoli, RWMC abided by its contractual and statutory obligation to indemnify Urciuoli, and its established practice of advancement of fees. Upon information and belief, RWMC also advanced fees to Driscoll. Rhode Island is also one of the many states having statutes addressing the indemnification of corporate directors, officers, employees and other agents. Both the Rhode Island Nonprofit Corporation Act and the Rhode Island Business Corporation Act provide for the indemnification of officers and directors of corporations serving at the request of a corporation. See R.I. Gen. Laws 1956 §§ 7-6-6 (Rhode Island Nonprofit Corporation Act) and 7-1.2-814 (Rhode Island Business Corporation Act).

**C. RWMC's Pre-Indictment Position**

The federal investigation into Urciuoli's conduct with respect to former Rhode Island State Senator John Celona's consulting relationship with RWMC began in or around early 2005. Throughout the entire pre-indictment period of this investigation, RWMC and the Board vigorously denied that it violated any criminal law, and publicly maintained the innocence of both Urciuoli, who at the time was its President and Chief Executive Officer, and Driscoll, a former executive Vice President. See Exhibit D, attached hereto. Indeed, Urciuoli's counsel is informed that RWMC refused to accept the Government's offer to enter into a deferred prosecution agreement before it was indicted because the proposed agreement required RWMC to acknowledge and admit that Urciuoli and Driscoll had committed the crimes alleged in the Indictment. RWMC continued to support Urciuoli and stand by its assertions that Urciuoli and Driscoll had done nothing wrong, even though the Board of Trustees has been fully informed of the allegations contained in the Indictment and the underlying evidence supporting the allegations.

**D. The Indictment of RWMC**

On January 5, 2006, a grand jury returned a thirty-eight (38) count Indictment against Urciuoli, RWMC, Driscoll and Peter J. Sangermano, Jr. Count 1 of the Indictment alleged a conspiracy to deprive the citizens of Rhode Island of Celona's honest services in violation of 18 U.S.C. §§ 371, 1341 and 1346. See Indictment ¶¶ 13-94. Counts 2 through 38 alleged substantive mail fraud violations involving the same alleged scheme. Id. at ¶¶ 95-107.

After it was indicted on charges of conspiracy to commit mail fraud and mail fraud, the Board was confronted with potentially catastrophic financial consequences, not the least of which was the possible loss of its ability to obtain Medicare and Medicaid reimbursement. In addition, the Board faced predictable pressure to resolve the case from its lenders, its financial benefactors, its medical staff, and even the Governor of the State of Rhode Island.

**E. Deferred Prosecution Agreement**

In the face of the overwhelming pressure brought to bear by the Indictment, RWMC capitulated to the Government's demand that it "admit" Urciuoli's and Driscoll's guilt. On January 26, 2006, the Board unanimously agreed to the terms of the Deferred Prosecution Agreement (the "DPA") and resolved to enter into the DPA. See Exhibit E, attached hereto. A true and accurate copy of the DPA is attached hereto as Exhibit F. Pursuant to the terms of the DPA, RWMC "admit[ed] that the government ha[d] sufficient evidence to prove that Urciuoli and Driscoll committed the offenses charged in the Indictment," even though the Board had steadfastly and categorically denied those allegations before RWMC was indicted and no new evidence was brought to the attention of the Board that could have warranted the reversal of its

position.[3] See Exhibit F, at p. 2. The Government deliberately put RWMC into a position where it had no choice but to stipulate that Urciuoli and Driscoll had violated the law and to terminate Urciuoli for cause, and terminate advancement of fees to Urciuoli and Driscoll.

The Government was well-aware that the DPA would deprive Urciuoli, and Driscoll, of their right to defend themselves using all resources rightfully available to them. The inevitable consequences of RWMC entering into the DPA was two-fold. First, since RWMC was now taking the position that Urciuoli had committed the offenses charged in the indictment, i.e., conspiracy to commit honest services mail fraud and mail fraud, RWMC would be forced to terminate Urciuoli for cause. Second, since Urciuoli was terminated for cause, RWMC would take the position that it no longer had to honor its contractual obligation to provide indemnification and advancement of legal fees to Urciuoli as an officer or director of RWMC.

**ARGUMENT**

The Indictment must be dismissed as to Urciuoli because the Government has engaged in actions that have interfered with both his Sixth Amendment Right to be represented how he chooses and his fundamental right to fairness in a criminal proceeding. It is impossible to qualitatively assess the affect on the criminal process of the Government's interference. Rather, the nature of the rights at stake is so important and fundamental that interference with them contaminates the entire criminal process – from beginning to end. See United States v. Stein, S1 05 Crim. 0888, 2006 WL 1735260, at *25 (S.D.N.Y. June 26, 2006) (court found that the

---

[3] Counsel for Urciuoli is informed that the Government allowed RWMC's counsel to read the grand jury testimony of Attorney James McGuirk, in order to give the Board a pretextual justification for the termination of Urciuoli. Although the Government expressly refused to grant the same opportunity to counsel for Urciuoli at that time, the McGuirk grand jury testimony has since been disclosed through discovery. Attorney McGuirk was fully debriefed by counsel for RWMC after his grand jury testimony. Afterwards, RWMC's counsel shared with counsel for Urciuoli, and no doubt the Board, itself, the substance of McGuirk's testimony. Thus, there is no material information in McGuirk's grand jury testimony that was not already well known to RWMC and its counsel before it was indicted. Any contention, therefore, that the Board's change in position as to Urciuoli is based on revelations from the McGuirk testimony would be wholly disingenuous.

Thompson Memorandum violated the defendant's Fifth and Sixth Amendment rights). Thus, dismissal of the indictment is the proper remedy. Id. (Judge Kaplan provisionally denied the motion to dismiss, but reserved final decision pending the Government's remedial efforts).

**A. The Government Violated Urciuoli's Sixth Amendment Right to Counsel By Causing RWMC to Cut Off Payment of Legal Fees Upon Indictment**

**1. The Thompson Memorandum and the Government's Actions Violated Urciuoli's Sixth Amendment Right to Counsel**

The Thompson Memorandum and the Government's actions with respect to RWMC violated Urciuoli's Sixth Amendment right to counsel. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to...have the Assistance of Counsel for his defense." U.S. CONST. AMEND VI. This guarantees more than the mere presence of a lawyer at a criminal trial; it protects, among other things, an individual's right to choose the lawyer or lawyers he or she desires and to use one's own funds to mount the defense that one wishes to present. See, e.g., Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989); Wheat v. United States, 486 U.S. 153, 164 (1988). Moreover, a defendant's exercise of his Sixth Amendment right to counsel is not to be feared or avoided by the Government:

> No system worth preserving should have to fear that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise those rights. If the exercise of constitutional rights will thwart the effectiveness of a system of law enforcement, there is something very wrong with that system.

Escobedo v. Illinois, 378 U.S. 478, 490 (1964).

The Sixth Amendment protects a defendant's right to spend his own money on a defense. Caplin & Drysdale, 491 U.S. at 624. Here, Urciuoli had at least an expectation that his expenses in defending any claims or charges brought against him by reason of his employment by RWMC would be paid by RWMC. The law protects such interests against unjustified and improper interference. See generally Kirch v. Liberty Media Corp., No. 04-5852-CV, 2006 WL 1523036,

at *10 (2d Cir. June 5, 2006) (recognizing tort of interference with prospective economic advantage and inducement of breach of contract); Reilly v. Natwest Mkts. Group, Inc., 178 F. Supp. 2d 420, 429 (S.D.N.Y. 2001) (recognizing that interference with prospective economic advantage covers interference with the ability to pursue legal remedies against another party). In the recent decision of United States v. Stein, the United States District Court for the Southern District of New York held that KPMG's practice of advancing and paying legal fees for its employees in connection with proceedings arising within the scope of the employee's job duties created an expectation that their expenses in defending any claims or charges brought against them by reason of their employment by KPMG would be paid by the firm. See Stein, at *23 (S.D.N.Y. June 26, 2006). The Stein court held that both the expectation, and any benefits that would have flowed from that expectation, were, in every material sense, those employees' property, which they were entitled to spend on their defense. Id. Here, the Government's violation of Urciuoli's right to counsel of his choice is even more flagrant. Unlike the KPMG defendants, Urciuoli had a contractual right under his employment contract with RWMC to indemnification of legal fees, and, like KPMG, RWMC had a practice of advancing legal fees in connection with defense costs – which it did here until the Government interfered.

The Stein decision recently held that the Thompson Memorandum's provision regarding the advancement of legal fees fails strict scrutiny because it is not narrowly tailored to achieve a compelling objective. Stein, at *21. In so holding, the Stein court noted that the Thompson Memorandum discourages and, as a practical matter, often prevents companies from providing employees and former employees with the financial means to exercise their constitutional rights to defend themselves. Id. The Stein court further noted that it does so in the face of indemnification statutes that expressly permit business entities to provide those means because

the states have determined that legitimate public interest may be served. Id.; see, e.g., R.I. Gen. Laws §§ 7-6-6 and 7-1.2-814. The Court found that the Thompson Memorandum improperly discourages employees from exercising their constitutional right to defend themselves even where companies obstruct nothing and, to the contrary, do everything within their power to make a clean breast of the facts to the Government and to take responsibility for any offenses they may have committed. Stein, at *21. It therefore burdens excessively the constitutional rights of the individuals whose ability to defend themselves it impairs and, accordingly, fails strict scrutiny. Id.

It is apparent that the Thompson Memorandum factored prominently into RWMC's decision to enter into the DPA. As noted above, the Government expressly raised the Thompson Memorandum in pre-indictment negotiations with counsel for RWMC. Indeed, RWMC's counsel addressed every Thompson Memorandum factor in the memorandum it submitted to the Government defending itself. See Exhibit D. As recently noted in the Stein decision:

> Few if any competent defense lawyers would advise a corporate client at risk of indictment that it should feel free to advance legal fees to individuals in the face of the language of the Thompson Memorandum itself. It would be irresponsible to take the chance that prosecutors might view it as 'protecting...culpable employees and agents'...As KPMG's new chief legal officer, former U.S. District Judge Sven Erik Holmes, testified, he thought it indispensable (as would any defense lawyer) 'to be able to say at the right time with the right audience, we're in full compliance with the Thompson Memorandum.'"

Id. at *20. Given the circumstances of this case, there can be no doubt that the Thompson Memorandum policy drove the Government to force RWMC to terminate Urciuoli and sever his and Driscoll's rights to advancement of legal fees.

### 2. Urciuoli is Not Obliged to Establish Prejudice

It is not necessary that Urciuoli show that he was prejudiced by the Government's interference with his right to be represented as he chooses. United States v. Gonzalez-Lopez,

126 S. Ct. 2557, 165 L. Ed. 2d 409, 419 (2006). Deprivation of the right to counsel is complete when the defendant is erroneously prevented from being represented by the lawyer he wants and in the manner he chooses, regardless of the quality of the representation he received. Id. ("To argue otherwise is to confuse the right to counsel of choice – which is the right to a particular lawyer regardless of comparative effectiveness – with the right to effective counsel – which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed."). Here, the Government has interfered with Urciuoli's right to be represented as he chooses because the Government's improper conduct and the Thompson Memorandum created a significant risk that Urciuoli's ability to present the defense of his choice has been compromised. See Stein, at *24. This violation, like a deprivation of the right to counsel of his choice, is complete irrespective of the quality of the representation he receives. Id.

There are two distinct types of constitutional errors: trial errors, which occur during the presentation of evidence at trial, and structural errors, which are overarching and permeate the entire proceeding. Arizona v. Fulminante, 499 U.S. 279, 307-10 (1991). No prejudice is required where, as here, the defect is structural – i.e., a defect that affects and contaminates the entire criminal proceeding. Id. at 309; Stein, at *25. Structural errors defy analysis by harmless-error standards. Id. They affect the entire conduct of the trial from beginning to end. Id. at 310. Here, the Government's conduct and the Thompson Memorandum have threatened to contaminate the entire proceeding. Properly defending this case, in all its complexity, has required, and will continue to require, substantial financial resources. There are thousands of pages of documents and thousands of pages of transcripts and interview reports that must be reviewed and analyzed, and dozens of witnesses who must be interviewed. The Government has unlimited resources, while Urciuoli, on the other hand, has limited ever diminishing resources as

he has been unemployed since he was terminated by RWMC in January. The Government's interference has substantially limited what Urciuoli can pay his lawyers to do, and has substantially affected strategic decisions along the way. In such circumstances, demonstrating prejudice after the fact would be all but impossible, which is why such an error is said to threaten to taint the entire criminal proceeding. Stein, at *26. The Supreme Court has spoken on this issue:

> We have little trouble concluding that erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error. Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of those myriad aspects of representation, the erroneous denial of counsel bears directly on the framework within which the trial proceeds – or indeed on whether it proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.

Gonzalez-Lopez, 126 S. Ct. 2557, 165 L. Ed. 2d at 420 (internal citations omitted).

The same reasoning applies here. Virtually everything Urciuoli has done in this case has been influenced by the extent of the resources available to him. There simply would be no way to know, after the fact, whether the outcome has been influenced by limitations improperly placed upon the availability of resources.

Further, the Government's interference with Urciuoli's ability to mount a defense "creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general." Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 811 (1987). This injury to the criminal justice system is not dependent on whether or not Urciuoli

ultimately is convicted or would have been convicted even if the Government had not interfered with his constitutional right to counsel. Thus, there is no need for a particularized showing of prejudice here. While a defendant does not have a constitutional right to the most expensive lawyer or to unlimited defense funds, Government interference with those resources that a defendant does have or legally may obtain fundamentally alters the structure of the adversary process. Stein, at *27.

**B. The Government Violated Urciuoli's Fundamental Right to Fairness in a Criminal Proceeding**

**1. Nature of the Right**

Defendants have the right, under the Due Process Clause of the Fifth Amendment, to fundamental fairness throughout the criminal process. The Due Process Clause has been interpreted to provide not only procedural protection for deprivations of life, liberty and property, but also substantive protection for fundamental rights – those that are so essential to individual liberty that they cannot be infringed by the Government unless the infringement is narrowly tailored to serve a compelling state interest. See, e.g., Washington v. Glucksberg, 521 U.S. 702, 721 (1997).

While the right to fairness in criminal proceedings has not been explicitly so characterized by the Supreme Court, the Supreme Court's repeated recognition of the constitutional mandate of fairness in criminal proceedings strongly suggests that this right is "fundamental" for substantive due process purposes. See Stein, at *18; see also Glucksberg, 521 U.S. at 721 (internal citations and quotations omitted) ("[N]either liberty nor justice would exist" if fairness to criminal defendants were sacrificed.); United States v. Curran, 724 F. Supp. 1239, 1241 (C.D. Ill. 1989), rev'd on other grounds, United States v. Spears, 965 F.2d 262 (7th Cir. 1992), cert. denied, 506 U.S. 989 (1992) ("What can be more basic to the scheme of

constitutional rights precious to us than the right to fairness throughout the proceedings in a criminal case?"). The Stein court recently held that a criminal defendant has a fundamental constitutional right to obtain and use resources lawfully available to him or her in order to prepare a defense, free of knowing or reckless government interference. Stein, at *18.

**2. The Government's Actions With Respect to RWMC Violate the Substantive Due Process Right to Fairness in the Criminal Process**

The Government's pressure on RWMC to enter into the DPA, which would necessarily have the effect of cutting off Urciuoli's legal fees, impinged upon Urciuoli's ability to defend himself. See Stein, at *19. To prepare for and try a case of this complexity requires substantial resources, yet the Government has interfered with the ability of Urciuoli to obtain resources he otherwise would have had. This has affected Urciuoli's ability to thoroughly prepare his defense in this case by limiting the means lawfully available to him. The Government's actions are therefore subject to strict scrutiny. Id.

To survive strict scrutiny, Government action must be narrowly tailored to achieve a compelling Government interest. See, e.g., Glucksberg, 521 U.S. at 721. The Government's actions with respect to the RWMC DPA cannot pass strict scrutiny under the Due Process Clause because they were not narrowly tailored to serve a compelling governmental interest. Whether or not the Government agents in this case were acting pursuant to the established policy of the Department of Justice as expressed in the Thompson Memorandum, they understood that the threat inherent in their actions and the pressure they exerted on RWMC to enter into the DPA was likely to produce exactly the result that occurred – RWMC's determination to cut off the payment of legal fees for Urciuoli. These actions cannot withstand strict scrutiny under the Due Process Clause. Stein, at *21.

### C. An Evidentiary Hearing is Necessary to Determine the Effect of the Government's Actions on Urciuoli's Constitutional Rights

An evidentiary hearing is necessary to determine the effect the Government's actions and the Thompson Memorandum had on Urciuoli's Sixth Amendment right to counsel of his choice and fundamental right to fairness in a criminal proceeding. At the hearing, Urciuoli would offer evidence of the following factors, all of which were given prominent consideration by the Court in Stein.

> First, what information was requested by the Government, formally and informally, about Urciuoli's employment agreement, Urciuoli's employment status, and RWMC's indemnification of and advancement of fees to Urciuoli during pre-indictment and post-indictment discussions and negotiations with RWMC.
>
> Second, what substantive issues were negotiated between the Government and RWMC regarding possible plea agreements and/or deferred prosecution agreements.
>
> Third, the basis for RWMC's decision, prior to Indictment, not to terminate Urciuoli, and to continue to indemnify and advance legal fees to Urciuoli and Driscoll, and its determination that neither Urciuoli nor Driscoll had violated the law.
>
> Fourth, the basis for RWMC's decision after it was indicted to terminate Urciuoli and to repudiate its obligation to indemnify and advance legal fees to Urciuoli and Driscoll.

Counsel for Urciuoli has requested this information from the Government and RWMC. See Exhibit G, attached hereto. However, it is clear that neither the Government nor RWMC will provide this information absent the compulsory process that would attend a hearing. See Exhibit H, attached hereto. Here, as in Stein, a hearing and subpoena power are necessary to determine the effect the Government's actions and the Thompson Memorandum had on Urciuoli's Sixth Amendment right to counsel of his choice and his fundamental right to fairness in a criminal proceeding. See Stein, at *13. Without hearing evidence on the above factors, the Court will not be able to fully evaluate the merits of this motion.

**CONCLUSION**

For all of the foregoing reasons, Defendant Robert A. Urciuoli respectfully requests that the Court Dismiss the Indictment as to Urciuoli. In the alternative, Urciuoli respectfully requests that the Court direct the Clerk, as a matter of administrative convenience, to open a civil docket number for claims against RWMC and, thereafter, order RWMC to advance his defense costs in order to restore him to the position that he would have occupied had the Government not improperly interfered with his prospects for the same, sanction the Government by barring the use at trial of evidence obtained through its coercion of RWMC, continue the trial in this matter, and hold an evidentiary hearing so that Urciuoli may be given the opportunity to establish the extent of the Government's interference with and violation of his constitutional rights.

Respectfully submitted,

ROBERT A. URCIUOLI

By his Attorneys,

Kristie M. Passalacqua

Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
Richard Egbert Law Offices
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

Dated: July 31, 2006.

**CERTIFICATION**

I hereby certify that I mailed a true and accurate copy of the within Memorandum of Law in Support of Defendant Robert A. Urciuoli's Motion To Dismiss the Indictment and Other Relief to counsel of record, as stated below, on July 31st, 2006:

Robert Clark Corrente
United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Luis M. Matos
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

William P. Devereaux
Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Kevin J. Bristow, Esq.,
1309 Turks Head Building
Providence, RI 02903

Gerard B. Sullivan
Criminal Chief
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dulce Donovan
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Thomas C. Frongillo, Esq.
Weil Gotshal & Manges
100 Federal Street, Floor 34
Boston, MA 02110

John A. Pappalardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Kristie M. Passalay
____________________________