**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02T** |
| | : | |
| **ROBERT A. URCIUOLI,** | : | |
| **FRANCES P. DRISCOLL, and** | : | |
| **PETER SANGERMANO, JR.,** | : | |

**UNITED STATES' OBJECTION TO DEFENDANT**
**URCIUOLI'S SECOND MOTION TO DISMISS THE INDICTMENT**

______On July 31, 2006, Defendant Robert Urciuoli filed his second Motion to Dismiss the Indictment. For the reasons stated in the accompanying memorandum of law filed simultaneously herewith, the United States objects to the motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: August 17, 2006

/S/LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division

/S/DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02T** |
| | : | |
| **ROBERT A. URCIUOLI,** | : | |
| **FRANCES P. DRISCOLL, and** | : | |
| **PETER SANGERMANO, JR.** | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT URCIUOLI'S SECOND MOTION TO DISMISS THE INDICTMENT**

## I. Introduction

On July 31, 2006, Defendant Robert Urciuoli filed his second Motion to Dismiss the Indictment. Urciuoli contends that his former employer and codefendant in this case, Roger Williams Medical Center (RWMC), was coerced into pleading guilty in an effort to ensure that he lacked sufficient resources in order to mount a defense in this case. Once RWMC entered into the Deferred Prosecution Agreement (DPA), in which it admitted that "the government has sufficient evidence to prove that URCIUOLI and DRISCOLL committed the offenses charged in the Indictment," RWMC terminated Urciuoli and stopped paying his legal fees. Ex. 2 at 2 ¶ 2. As a result, despite the fact that he currently has four attorneys of record, including one hired for the specific limited purpose of cross-examining John Celona, Urciuoli maintains that his choice of counsel has been impermissibly impacted. As relief, he requests that the Court continue the trial, conduct an evidentiary hearing on his claims, open a civil docket for his civil claims against RWMC, and finally, dismiss the Indictment.

In making his arguments in support of his current motion, Urciuoli relies on United States v. Stein, --F. Supp2d --, 2006 WL 1735260 (S.D.N.Y. June 26, 2006), a district court decision

which has no application to the instant case. In addition, Urciuoli misunderstands the so-called "Thompson memo," which is intended to guide prosecutors in their pursuit of criminal charges against corporations. Furthermore, his claim that his ability to launch a defense in this case has been impacted by his firing is baseless. In the context of his motion to continue, this Court has already ruled that Urciuoli is currently represented by the counsel of his choice. Most importantly, Urciuoli points to no evidence supportive of his claim that RWMC was forced to admit its own guilt in an effort to ensure that he lacked sufficient resources to defend himself in this case. Urciuoli's motion is a misguided attempt by his criminal defense attorneys to delay the proceedings in this case and obtain civil discovery in order to further his civil claims against RWMC. The motion should be denied.

## II. Argument

### A. Stein Is Factually Distinguishable, Was Incorrectly Decided, and Has No Application to the Instant Case

The legal premise of Urciuoli's motion is based primarily on the district court's decision in United States v. Stein, 2006 WL 1735260 (S.D.N.Y. June 26, 2006). In Stein, KPMG, as well as several of its former executives, came under criminal investigation as a result of the Senate Committee on Governmental Affairs' examination into industry wide "development, marketing and implementation of abusive tax shelters by accountants, lawyers, financial advisors and bankers." Id. * 3. Prior to the commencement of any criminal investigation, KPMG determined it to be in its best interest to "clean house" and remove three of its top executives. Id. After the commencement of the criminal investigation, KPMG counsel and Department of Justice attorneys engaged in extensive negotiations concerning pending criminal charges against the

company. Figuring prominently in those negotiations was an internal Justice Department memorandum, commonly referred to as the Thompson memo, which serves as a guide to federal prosecutors considering prosecution of business entities. Def.'s Ex. A. The Thompson memorandum instructs that in considering whether to charge corporations, one factor prosecutors should consider is "whether the corporation appears to be protecting its culpable employees and agents" through, among other things, "the advancing of attorneys fees." Def.'s Ex. A at 7-8. The district court concluded that, ultimately KPMG, under perceived pressure from the Justice Department and in attempt to avoid prosecution of the firm itself, stopped paying the legal fees of the three terminated executives, as well as any employee whom the Justice Department communicated was not fully cooperating with the investigation. The Stein court found that this result was the product of threats by Justice Department attorneys, the mandatory nature of the Thompson memorandum, and the desire by the Justice Department to minimize the involvement of defense attorneys in the investigation. See e.g. Stein, 2006 WL * 13-15.

The district court's conclusions in Stein are inapplicable to the case at bar for a number of reasons. The opinion is based on a factual scenario not present in the instant case. There is no evidence that RWMC's plea of guilty was anything less than voluntary, a fact that is ignored by Urciuoli. Indeed, the evidence of record demonstrates otherwise. On information and belief, when the Court accepted RWMC's plea of guilty, as this Court does in all of its plea colloquies, it inquired if the DPA contained the entire agreement between the parties and if anyone had threatened or coerced RWMC into pleading guilty. On information and belief, the response of RWMC was "no" and the Court accepted its plea of guilty.

Moreover, Urciuoli also ignores the fact that the Office of the United States Attorney has

already communicated to Urciuoli's counsel that the payment of Urciuoli's legal fees was not a factor in the DPA. On April 28, 2006, Assistant United States Attorney Gerard Sullivan wrote to Urciuoli's counsel, Michael DeFanti, who, on information and belief, is the attorney who has been representing Urciuoli in his civil claims against RWMC. Assistant United States Attorney Sullivan's letter informed Urciuoli's counsel of the following:

> The termination of your client, Robert A. Urciuoli, by RWMC was not a condition precedent to the DPA nor a requirement of the DPA. In fact, all discussions concerning Mr. Uricuoli's employment status were expressly excluded from the plea negotiations. Similarly, all discussions concerning RWMC's decision either to pay, or to refuse to pay, Mr. Urciuoli's legal expenses were expressly excluded from the plea process by the United States Attorney's Office.
>
> The decisions to terminate Mr. Urciuoli for cause and to discontinue paying his legal fees were business and contract decisions made by RWMC without any input from this office.

Ex. 1 at 2. Assistant United States Attorney Matos provided Attorney Connolly with a copy of this letter on July 26, 2006, in response to Attorney Connolly's request that the United States provide additional discovery concerning whether Urciuoli's employment status was a consideration in regard to the DPA. Id. and Ex. 3. Thus, Urciuoli has no factual basis upon which to claim that the United States forced RWMC to terminate Urciuoli and his case is distinguishable from Stein.

In addition to being factually distinguishable from the case at bar, the Stein court's legal reasoning is flawed. For example, the Stein court erred in concluding that the Thompson memorandum's provisions are mandatory. None of the Thompson memo's provisions are mandatory and the document explicitly says so. Deputy Attorney General Thompson's introductory letter states that the attached set of principles are intended to "guide" Department of

Justice prosecutors. Def.'s Ex. A at 1. The memorandum itself states that:

> [T]he foregoing factors are intended **to provide guidance rather than to mandate** a particular result. The factors listed in this section are intended to be illustrative of those that should be considered and not a complete or exhaustive list. Some or all of these factors may or may not apply to specific cases, and in some cases one factor may override all others.
>
> * * * * *
>
> In making a decision to charge a corporation, the prosecutor generally has wide latitude in determining when, whom and how, and even whether to prosecute for violations of Federal criminal law. In exercising that discretion, prosecutors should consider the following general statements of principals that summarize appropriate considerations to be weighed and desirable practices to be followed in discharging their prosecutorial responsibilities. In doing so, prosecutors should ensure that the general purposes of criminal law . . . are adequately met, taking into account the special nature of the corporate "person."

Def.'s Ex. A at 4 (emphasis added). Contrary to Stein's suggestion, as is clear by its terms, the Thompson memorandum provides guidance to prosecutors and does not interfere with the overall exercise of their discretion.

Furthermore, the district court in Stein ignored the long-standing principle that "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." Caplin v. Drysdale Chartered, 491 U.S. 617 , 626 (1989). Whether Urciuoli is civilly, as opposed to Constitutionally, entitled to have RWMC pay his legal fees, is not a matter for this Court to decide. All the Constitution protects is Urciuoli's right to be represented by the counsel of his choice. In the context of his motion to continue, the Court has previously acknowledged that Urciuoli is represented by his first choice of counsel, Michael Connolly, and the later addition to his prosecution team, Richard Egbert. Indeed, Urciuoli is hard

pressed to argue that RWMC's termination of the payment of his attorney's fees has impacted his right to have the counsel of his choice when he hired Attorney Egbert after RWMC stopped paying his legal fees.

## III. Conclusion

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Urciuoli's second Motion to Dismiss the Indictment, request for a hearing, and other relief.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: August 17, 2006

/S/LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division

/S/DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-02T** |
| | : | |
| **ROBERT A. URCIUOLI,** | : | |
| **FRANCES P. DRISCOLL, and** | : | |
| **PETER SANGERMANO, JR.,** | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2006, I caused the United States Objection to Defendant Urciuoli's Second Motion to Dismiss and Accompanying Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

John A. Pappolardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Michael J. Connolly
Kristie Passalacqua, Esq.
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

Notification by first class mail by Kellyann Anderson, postage prepaid:

Kevin J. Bristow, Esq.
501 Turks Head Building
Providence, RI 02903

/S/ DULCE DONOVAN
DULCE DONOVAN
ASSISTANT U.S. ATTORNEY