UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | ) CR. No: 06-02T |
| | ) |
| ROGER WILLIAMS MEDICAL CENTER | ) |

**DEFERRED PROSECUTION AGREEMENT**

The United States Attorney's Office for the District of Rhode Island ("USAO-RI" or "Government") and Roger Williams Medical Center ("RWMC"), hereby enter into this Deferred Prosecution Agreement (the "Agreement").

**The Criminal Indictment**

1. USAO-RI has conducted a criminal investigation into matters relating to former State Senator John Celona ("CELONA"). As a result of that investigation, the Grand Jury has indicted RWMC and certain RWMC personnel alleging violations of 18 U.S.C. §§ 2, 371, 1341 and 1346. CELONA was seperately charged. In particular, the Grand Jury has charged RWMC, Robert A. Urciuoli, President of RWMC ("URCIUOLI") and Francis P. Driscoll, a former Executive Vice President of RWMC ("DRISCOLL"), for violating federal criminal law in connection with conduct and activities involving CELONA that deprived the citizens of Rhode Island of CELONA's honest services. The criminal violations charged against RWMC, URCIUOLI and DRISCOLL are fully described in the Indictment, United States of America v. Robert A. Urciuoli, Frances P. Driscoll, Peter J. Sangermano, Jr., and Roger Williams Medical Center, CR. No.06-02T, ("INDICTMENT"), a copy of which is attached as Exhibit A.

EXHIBIT 2

**Acceptance of Responsibility**

2. After reviewing the evidence pertinent to this matter, RWMC admits that the government has sufficient evidence to prove that URCIUOLI and DRISCOLL committed the offenses charged in the Indictment.

3. RWMC accepts that a corporation can only act through its agents. RWMC recognizes that a corporation can be held criminally liable for the wrongful acts of its agents if done within the scope of their authority and if the conduct even partially benefits the corporation.

4. RWMC admits that the actions of URCIUOLI and DRISCOLL, as alleged in the Indictment, were done within their apparent authority as executives of RWMC and were done to benefit, at least in part, RWMC and its affiliated entities.

5. RWMC does not endorse, ratify, or condone criminal conduct by its employees and has taken steps to prevent such conduct from occurring in the future.

6. In order to avoid a trial, accept responsibility for the criminal misconduct, and to resolve this matter expeditiously, RWMC has entered into this Agreement.

**Cooperation**

7. RWMC acknowledges and understands that its cooperation with the criminal investigation is an important and material factor underlying the decision to enter into this Agreement. RWMC agrees to cooperate fully and actively with the USAO-RI, and with any other government agency designated by the USAO-RI ("Designated Agencies") regarding any matter being investigated by the government and its Designated Agencies about which RWMC has knowledge or information.

8. RWMC agrees that its continuing cooperation with the government's investigation

shall include, but not be limited to, the following:

(a) Completely and truthfully disclosing all information in its possession to the USAO-RI about which the government or its Designated Agencies may inquire, including but not limited to all information about activities of RWMC, present and former trustees, directors, officers, employees, consultants, agents and attorneys;

(b) Volunteering and providing to the USAO-RI any information and documents that come to RWMC's attention that may be relevant to any government investigation;

(c) Assembling, organizing, and providing, in a responsive and prompt fashion, and, upon request, in an expedited fashion, all documents, records, information, and other evidence in the possession, custody, or control of RWMC as may be requested by the USAO-RI;

(d) Not asserting, in relation to the USAO-RI, any claim of privilege (including but not limited to the attorney-client privilege and the work product protection) as to any documents, records, information, or testimony requested by the USAO-RI related to its investigation, provided that:

(I) RWMC may assert the attorney-client privilege, work product protection, or other privileges with respect to privileged communications between RWMC and its defense counsel that post-date the criminal investigation of RWMC, URCIUOLI, and DRISCOLL by the Rhode Island Attorney General, the Rhode Island State Police, the USAO-RI and the Federal Bureau of Investigation, and which concern the criminal investigation of the charges set forth in the Indictment; and

(II) by producing privileged materials, RWMC does not intend to waive the protection of the attorney-client privilege, work product protection, or any other applicable privilege as to third parties.

(e) Using its reasonable best efforts to make available its present and former trustees, directors, officers, employees, consultants, agents and attorneys to provide information and/or testimony as requested by the USAO-RI, including sworn testimony before a grand jury or in court proceedings, as well as interviews with law enforcement authorities, and to identify witnesses who, to RWMC's knowledge and information, may have material information concerning any government investigation, including but not limited to the conduct set forth in the Indictment;

(f) Providing testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or other proceeding as requested by the USAO-RI concerning any investigation by the government or its Designated Agencies, including but not limited to the conduct set forth in the Indictment; and

(g) With respect to any information, testimony, documents, records or physical evidence provided by RWMC to the USAO-RI or a grand jury, RWMC consents to any and all disclosures of such materials to such Designated Agencies as the USAO-RI, in its sole discretion, deems appropriate. With respect to any such materials that constitute "matters occurring before the grand jury" within the meaning of Rule 6(e) of the Federal Rules of Criminal Procedure, RWMC further consents to: (I) any order sought by the USAO-RI permitting such disclosures; and (II) ex parte or in camera application for such orders.

9. RWMC agrees that its obligations to cooperate will continue even after the Deferred Prosecution Period as defined in this Agreement, so long as any individual or entity is subject to prosecution under the Indictment, or any related Indictment, or while any related appeal is pending. RWMC will continue to fulfill the obligations to cooperate set forth in this Agreement in connection with any investigation, criminal prosecution or civil proceeding brought by the USAO-RI or the United States relating to or arising out of the conduct set forth in the Indictment.

10. The obligation to cooperate is not intended to apply in the event that a prosecution against RWMC is pursued and not deferred.

11. Nothing in this Agreement shall be construed to restrict in any way the ability of the USAO-RI and its designated agencies to investigate and prosecute any current or former RWMC trustee, director, officer, employee, consultant, agent or attorney.

**Provision of Uncompensated Care**

12. RWMC, as a not-for-profit healthcare provider, agrees that, in lieu of a fine, it will provide $4,000,000 worth of free and uncompensated care to the Rhode Island public over the next two years at a rate of $2,000,000 per year. This annual free and uncompensated medical care will be over and above that care which RWMC is required to provide by law, and will be over and above the greater of (a) the average of free care RWMC has provided to the public per year over the previous 5 years; (b) the $9,000,000 of free care per year which the hospital is currently providing; or (c) the amount of free care that RWMC has currently budgeted for the next two years.

13. The additional $4,000,000 worth of care will be measured on a cost basis. Compliance will be monitored by the USAO-RI, which will require an independent annual accounting of the care given pursuant to this Agreement. The cost of the accounting will be borne by RWMC. RWMC may not alter the method of measuring compliance with this provision without the prior written approval of the USAO-RI. If the provision of this amount of pro bono care becomes financially unfeasible, RWMC may petition the USAO-RI to allow the total amount of free care to be provided over a period of time longer than two years. RWMC and USAO-RI understand and agree that any extension of the period over which RWMC may perform this free and uncompensated care shall be exclusively within the discretion of the USAO-RI.

14. RWMC agrees that no portion of the $4,000,000 dollars of free care that RWMC has agreed to provide to the public under the terms of this Agreement will be deductible on any Federal or State tax return, nor will it be credited toward any other government program or obligation.

15. RWMC has represented to the United States that no portion of the $4,000,000 dollars of free care that RWMC has agreed to provide to the public under the terms of this Agreement will be covered or reimbursed by any insurance policy.

**Revised Ethics Compliance Program**

16. RWMC has previously adopted a corporate compliance program which sets forth the standards by which individuals employed by or associated with the Hospital will conduct themselves in order to protect and promote organizational integrity. As part of this program, RWMC employees are required to "accurately and honestly represent the Hospital and not

engage in any activity or scheme intended to defraud anyone of money, property, or honest services." To strengthen this program, RWMC will revise its current compliance program in accord with the Section 8B2.1 of the United States Sentencing Guidelines ("Revised Compliance and Ethics Program" or "Program").

17. RWMC currently has a Corporate Compliance Officer. RWMC will re-designate this position and thereafter permanently maintain an "Executive Ethics Officer" ("EEO") who will report directly to the Board of Directors. The EEO will work with the Monitor, as further described in this Agreement, and corporate counsel to amend the current ethics compliance program to include internal and external controls for corporate interaction with elected and appointed government officials.

18. Under the Revised Compliance and Ethics Program, RWMC agrees, among other things, to focus on potential conflicts of interest related to elected or appointed government officials, paying particular attention to areas that pose higher risk, including interactions between RWMC employees and governmental officials. This program will also incorporate an internal reporting system for all employees and directors that have any connection with local, state, or federal government officials and which might impact the business of RWMC and will require all such employees to seek advice from the EEO and, when necessary, to seek rulings or advice from the Rhode Island Ethics Commission. Any opinion received from the Rhode Island Ethics Commission will be reviewed annually with the EEO to ensure that the employee is complying with any ethics ruling and that the status of facts as represented to the Ethics Commission is and remains fully accurate in all respects.

19. The EEO will be responsible for implementing and monitoring the Revised Compliance and Ethics Program, coordinating training and education programs, communicating ethics standards to the employees, implementing an auditing and monitoring system designed to test compliance with the program, remedying violations of the Program with appropriate discipline, modifying the Program when deemed necessary, and reporting any evidence of criminal activity to appropriate law enforcement agencies. In particular, the EEO will also institute training and educational programs to encompass RWMC's policies for corporate interaction with appointed or elected government officials and will require that training and/or education programs are completed at least once a year by every employee.

20. Further, the EEO will maintain a hot-line, or other comparable means by which employees can confidentially report pertinent information or complaints to the EEO. The Program will also require the EEO to report to the board annually on the status of the Ethics Program and on the status of compliance by any employee of RWMC or its affiliates who is an appointed or elected government official. The EEO will also report to the board on the nature and extent of conflicts by RWMC employees and any elected or appointed governmental officials.

**Monitoring**

21. RWMC agrees to oversight and monitoring of its compliance with the terms of this Agreement and its revised ethics program by a monitor chosen and hired by RWMC, with the input and prior approval of the USAO-RI (the "Monitor"). The Monitor's powers, rights, and responsibilities shall be as set forth below.

22. All provisions in this Agreement regarding the Monitor's jurisdiction, powers, oversight authority and duties shall be broadly construed so that the Monitor can fully implement and review the necessary actions and programs required under this Agreement. RWMC will work with the Monitor in good faith to implement any recommendations made by the Monitor. In particular, the Monitor shall:

a. review and monitor RWMC's compliance with this Agreement and make such recommendations as the Monitor believes are necessary to comply with this Agreement;

b. review and monitor RWMC's maintenance and execution of the Revised Compliance and Ethics Program and recommend such changes as are necessary to ensure conformity with the Sentencing Guidelines and this Agreement, and that are necessary to ensure that the Program is effective;

23. The Monitor shall have the authority to take such reasonable steps, as he or she deems necessary to be fully informed about those operations of RWMC within or relating to his or her jurisdiction. To that end, the Monitor shall have:

a. access to, and the right to make copies of, any and all books, records, accounts, correspondence, files, and any and all other documents or electronic records, including e-mails, of RWMC and its partners, trustees, directors, officers, employees, consultants, agents and attorneys, within or relating to the Monitor's jurisdiction.

b. the right to interview any trustee, director, officer, employee, agent, consultant or attorney of RWMC and to participate in any meeting concerning any matter within or relating to the Monitor's jurisdiction.

24. The Monitor shall take appropriate steps to maintain the confidentiality and respect for privileges of any non-public information entrusted to him or her and shall share such

non-public information only with the USAO-RI and its designated agencies. The Monitor will also take the appropriate steps to protect and maintain all corporate privileges, except in communications with the USAO-RI and its designated agencies.

25. The Monitor shall have the authority to take any other actions that are necessary to effectuate the Monitor's responsibilities.

26. The Monitor's authority set forth herein shall extend for a period of two years from the Monitor's entry on duty, except that in the event the USAO-RI determines during the period of the monitoring, that RWMC has materially violated any provision of this Agreement, a six-month extension of the period may be imposed in the sole discretion of the USAO-RI, and, in the event of additional material violations, an additional one-year extension may be imposed, but in no event shall the total term exceed five years.

27. The Monitor shall keep records of his or her activities, including copies of all correspondence and telephone logs, as well as records relating to actions taken in response to correspondence or telephone calls. If potentially illegal or unethical conduct is reported to the Monitor, the Monitor may, at his or her option, conduct an investigation, and/or refer the matter to the EEO and/or the USAO-RI. The Monitor may report to the USAO-RI whenever the Monitor deems fit but, in any event, shall file a written report no less often than every four months regarding: (i) the Monitor's activities; (ii) whether RWMC is complying with the terms of this Agreement; and (iii) any changes that are necessary to foster RWMC's compliance with any applicable laws and standards. Such periodic written reports are to be provided to RWMC and the USAO-RI. The USAO-RI may, in its sole discretion, provide all or part of any such periodic written report, or other information to any other Designated Agency. Should the Monitor

determine that RWMC has materially violated any law, has materially violated any provision of this Agreement, or has engaged in any conduct that could warrant the modification of his or her jurisdiction, the Monitor shall promptly notify the USAO-RI and, when appropriate, RWMC.

28. RWMC, its trustees, directors, officers, affiliates, employees, agents, consultants, and attorneys shall have an affirmative duty to cooperate with and assist the Monitor in the execution of his or her duties and shall inform the Monitor of any information that may relate to the Monitor's duties or which could lead to information that relates to his or her duties. Willful failure of any RWMC, trustee, director, officer, consultant, agent or attorney to cooperate with the Monitor is a breach of this Agreement which may, in the sole discretion of the Monitor, serve as a basis for the Monitor to recommend to the Board of Directors dismissal or other disciplinary action against the employee and which may, in the sole discretion of the USAO-RI, result in the imposition of any of the remedies provided in this Agreement.

29. The compensation and expenses of the Monitor, and of the persons hired under his or her authority, shall be paid by RWMC. The Monitor, and any persons hired by the Monitor, shall be compensated in accordance with their respective typical hourly rate but not more than a rate of $250 per hour. RWMC shall pay bills for compensation and expenses promptly, and, in any event, within 30 days of billing. RWMC agrees not to seek reimbursement from any federally funded Medicaid/Medicare program for this expense. In addition, within one week after the selection of the Monitor, RWMC shall provide the Monitor with private office space, telephone service and clerical assistance sufficient for the Monitor to carry out his or her duties.

30. RWMC shall provide an appropriate indemnification agreement to the Monitor with respect to any claims arising out of the performance of the Monitor's duties.

31. The Monitor is not, and shall not be treated for any purpose, as an officer, employee or agent of RWMC or any of its affiliates.

**Deferral of Prosecution**

32. In consideration of RWMC's entry into this Agreement and its commitment to: (a) admit and acknowledge the wrongfulness of the conduct of its president and executive vice president; (b) admit and accept corporate responsibility for the conduct of its officers, agents and employees giving rise to a violation of law; (c) cooperate with the USAO-RI; (d) provide free medical care as specified in this Agreement; (e) comply with all state and federal criminal laws; and (f) otherwise comply with all of the terms of this Agreement, the USAO-RI will request that the court remove this matter from the trial calendar and defer prosecution of RWMC for two years from the signing of this Agreement based on the conduct described in the Indictment ("the Deferred Prosecution Period"). Alternatively, if the Court is not inclined to hold this case in abeyance for the duration of the Deferred Prosecution Period, the USAO-RI shall seek permission of the Court pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure to dismiss the Indictment without prejudice and will not prosecute RWMC during the Deferred Prosecution Period provided RWMC complies with this Agreement. RWMC expressly waives all rights under any statute of limitations, and all rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the District of Rhode Island for the period during which this Agreement is in

effect.

33. The USAO-RI agrees that, if RWMC is in full compliance with all of its obligations under this Agreement, the USAO-RI will, at the expiration of the Deferred Prosecution Period, including any extensions thereof, move to dismiss the Indictment if it is still pending or decline to prosecute any charges against RWMC arising out of the conduct described in the Indictment. Except in the event of a breach of this Agreement, the USAO-RI will bring no further charges against RWMC relating to the honest services mail fraud described in the Indictment.

34. It is further understood that should the USAO-RI in its sole discretion determine that RWMC has, after the date of the execution of this Agreement: (a) given false, incomplete or misleading information, (b) committed any crime, or (c) otherwise materially violated any provision of this Agreement, RWMC shall, in the sole discretion of the USAO-RI, thereafter be subject to prosecution for any federal criminal violation of which the USAO-RI has knowledge, including but not limited to a prosecution based on the Indictment or the conduct described therein. Any such prosecution may be premised on information provided by or on behalf of RWMC to the USAO-RI at any time, including the admissions contained herein. Any such prosecutions that are not time-barred by the applicable statute of limitations on the date of the execution of this Agreement may be commenced against RWMC. In addition, RWMC agrees to toll, and exclude from any calculation of time, the running of the criminal statute of limitations for a period of two years from the date of the execution of this Agreement and during any extension of the Deferred Prosecution Period up to five years. By this Agreement, RWMC expressly intends to and hereby does waive its rights in the foregoing respects, including any

right to make a claim premised on the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay. Such waivers are knowing, voluntary, and in express reliance on the advice of RWMC counsel.

35. It is further agreed that in the event that the USAO-RI, in its sole discretion, determines that RWMC has violated any provision of this Agreement, including RWMC's failure to meet its obligations under this Agreement: (a) all statements and admissions, including the admissions contained herein, made by or on behalf of RWMC to the USAO-RI and any designated agency, or any testimony given by RWMC or by any agent of RWMC before a grand jury, or elsewhere, whether before or after the date of this Agreement, or any leads from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings hereinafter brought by the USAO-RI against RWMC; and (b) RWMC shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by or on behalf of RWMC before or after the date of this Agreement, or any leads derived therefrom, should be suppressed or otherwise excluded from evidence. It is the intent of this Agreement to waive any and all rights in the foregoing respects.

36. RWMC agrees that, as an alternative to prosecution, in the event that the USAO-RI determines during the Deferred Prosecution Period (or any extensions thereof) that RWMC has materially violated any provision of this Agreement, a one-year extension of the Deferred Prosecution Period may be imposed in the sole discretion of the USAO-RI, and, in the event of additional violations, such additional one-year extensions as appropriate, but in no event shall the total term of the Deferred Prosecution Period exceed five years. Alternatively, the USAO-RI

may, in its sole discretion, and if warranted by the level of cooperation provided by RWMC and its compliance with the terms and conditions of this Agreement, move to lessen the length of the Deferred Prosecution Period.

**Public Statements**

37. RWMC agrees that it shall not, through its attorneys, agents, officers, directors, trustees or employees, make any statement, in litigation or otherwise, contradicting RWMC's admissions or its representations in this Agreement. Consistent with this provision, RWMC may raise defenses and/or assert affirmative claims in any civil proceedings brought by private parties as long as doing so does not contradict its admissions or such representations that are made in this Agreement. Any such contradictory statement by RWMC, its present or future attorneys, agents, officers, directors, trustees or employees shall constitute a material breach of this Agreement and RWMC thereafter shall be subject to prosecution or alternatively, the USAO-RI may elect to extend the Deferred Prosecution Period. The decision as to whether any such contradictory statement will be imputed to RWMC for the purpose of determining whether RWMC has breached this Agreement shall be at the sole discretion of the USAO-RI. If the USAO-RI notifies RWMC of any such contradictory statement, RWMC may avoid a finding of breach of this Agreement by repudiating such statement both to the recipients of such statement and to the USAO-RI within 48 hours after receipt of notice from the USAO-RI. RWMC consents to the public release by the USAO-RI of any such repudiation.

**The Discretion of the USAO-RI**

38. RWMC agrees that it is within the sole discretion of the USAO-RI to choose, in the event of a material violation, any of the remedies contained in this Agreement including prosecution or extensions of the Deferred Prosecution Period and/or monitoring. RWMC understands and agrees that the exercise of discretion of the USAO-RI under this Agreement is not reviewable by any Court. Without limiting the scope of the USAO-RI's discretion, should the USAO-RI determine that RWMC has materially violated this Agreement, the USAO-RI shall provide notice to RWMC of that determination and provide RWMC with an opportunity to make a presentation to the USAO-RI to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in a prosecution of RWMC or the exercise of any other remedies provided in this Agreement.

39. RWMC also understands that, should the court elect to hold the case on its calendar during the Deferred Prosecution Period, RWMC will be subject to and agree to abide by all lawful orders issued by the court.

**Federal Health Care**

40. RWMC is already subject to a Corporate Integrity Agreement with the Department of Health and Human Services ("HHS") based on alleged improper coding of federal health benefits. Nevertheless, the USAO-RI will recommend to any official vested with debarrment authority within HHS, or any official vested with the authority to debar any medical provider from participation in any state or federal programs, that suspension or debarment of RWMC is not warranted based on RWMC's conduct in this case, because RWMC has agreed to the terms of this Agreement, in which, among other things, RWMC has accepted responsibility

for the wrongful conduct that occurred in this case, and has agreed to take steps to ensure that RWMC, its leadership, officers, directors, employees, consultants and attorneys will adhere to the highest standards of ethics and compliance with the laws of the United States. However, RWMC understands that HHS is not a signatory to this Agreement and that any intermediate or final administrative determination will be made by HHS or any other agency with regulatory jurisdiction over RWMC.

**Limits of This Agreement**

41. It is understood that this Agreement is binding on the USAO-RI but specifically does not bind any other federal, state or municipal law enforcement agencies, and any other federal, state or municipal licensing, or regulatory authorities. However, if requested by RWMC or its attorneys, the USAO-RI will bring to the attention of any such agencies, the existence of the Agreement, the nature and extent of the cooperation by RWMC and the status of its compliance with its obligations under this Agreement.

42. RWMC does hereby bind itself to this Agreement and all of its terms and conditions by its undersigned attorney and Chairman of the Board, pursuant to authority granted by its Board of Directors in the form of a Board Resolution (a copy of which is attached hereto as Exhibit B). The parties to this Agreement recognize that Roger Williams Hospital, Inc. ("RWH") is a subsidiary corporation of RWMC that has not been directly accused of any violation of the law by the Grand Jury. Nevertheless, the Board of RWH, by a resolution attached hereto as Exhibit C, does hereby ratify this Agreement to the extent that RWH will implement the terms and conditions of this Agreement as it relates to the provision of pro bono healthcare, the revised corporate ethics program, the responsibilities and powers of the Monitor and the cooperation

with the USAO-RI and other law enforcement agencies.

**Public Filing**

43. RWMC and the USAO-RI agree that this Agreement will be publicly filed in the case of United States v. Robert A. Urciuoli, et als., CR. No. 06-02T.

**Integration Clause**

44. This Agreement sets forth all the terms of the Agreement between RWMC and the USAO-RI. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by the USAO-RI, RWMC's attorneys, and a duly authorized representative of RWMC.

By: ______________________
ROBERT CLARK CORRENTE
United States Attorney
District of Rhode Island

______________________
GERARD B. SULLIVAN
Chief, Criminal Division
Assistant United States Attorney

Accepted and agreed to:

______________________
William P. Devereaux, Esq.
Attorney for RWMC

______________________
Rogers Williams Medical Center
Chairman of the Board