UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**DEFENDANT ROBERT A. URCIUOLI'S**
**MOTION TO STRIKE THE WORDS "FAVORITISM" AND "BIAS" FROM THE INDICTMENT AND FOR OTHER RELIEF**

NOW COMES Defendant Robert A. Urciuoli ("Urciuoli") and respectfully moves this Court for an Order: (1) striking from the Indictment the words "favoritism" and "bias;" and (2) preventing the Government from arguing at trial (through its case in chief, cross-examination, jury instructions, or otherwise) that the State of Rhode Island and its citizens were entitled to have John Celona perform his duties as a state legislator free from bias or favoritism, or that his failure to do so could serve as the basis of an honest services mail fraud violation by Urciuoli or the other defendants.

Assistant United States Attorney Luis Matos was contacted and declined to assent to the requested relief.

WHEREFORE, Defendant Robert A. Urciuoli respectfully requests that this Court issue an Order: (1) striking from the Indictment the words "favoritism" and "bias;" and (2) preventing the Government from arguing in any way at any point during the trial that the State of Rhode Island and its citizens were entitled to have John Celona perform his duties as a state legislator

free from bias or favoritism, or that his failure to do so could serve as the basis of an honest services mail fraud violation by Urciuoli or the other defendants.

Respectfully submitted,

ROBERT A. URCIUOLI

By his Attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
Richard Egbert Law Offices
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

Dated: August 22, 2006

**CERTIFICATION**

I hereby certify that on August 22, 2006, a copy of the foregoing Motion to Strike the Words "Favoritism" and "Bias" From the Indictment and For Other Relief was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT A. URCIUOLI'S MOTION TO STRIKE THE WORDS "FAVORITISM" AND "BIAS" FROM THE INDICTMENT AND FOR OTHER RELIEF**

Defendant Robert A. Urciuoli ("Urciuoli") respectfully submits the following Memorandum of Law in support of his Motion to Strike the Words "Favoritism" and "Bias" From the Indictment and For Other Relief.

**INTRODUCTION**

On January 5, 2006, Urciuoli, along with Frances P. Driscoll ("Driscoll"), Peter J. Sangermano ("Sangermano") and Roger Williams Medical Center ("RWMC") were indicted for conspiracy to commit honest services mail fraud and honest services mail fraud. Among other things, the thirty-eight (38) count Indictment alleges that Urciuoli and the co-defendants "knowingly, willfully and unlawfully conspired to and did commit an offense against the United States by devising and intending to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona *and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment.*" Indictment, ¶¶ 14, 96, 106. The Indictment misstates the law. The First Circuit has held that the public is not entitled to have its legislators and public officials perform their

officials duties free from favoritism and bias. See United States v. Sawyer, 85 F.3d 713, 731 n.15 (1st Cir. 1996). Nowhere is this more apparent than in the State of Rhode Island where, due to its part-time, citizen legislature, public officials are permitted as a matter of law to perform their officials duties with favoritism and bias as long as their conflicts of interests are disclosed. See R.I. Gen. Laws § 36-14-7(b). Simply put, the presence or absence of favoritism and/or bias in John Celona's performance of his official duties as a Rhode Island State Senator is wholly irrelevant to the crimes charged in the Indictment. As such, any references to "favoritism" or "bias" constitute surplusage that should be stricken from the Indictment. Furthermore, since the State of Rhode Island and its citizens are not entitled to have their legislators and public officials perform their official duties free from favoritism and bias, the Government should be prevented from arguing in any way at any point during the trial that the State of Rhode Island and its citizens were entitled to have John Celona perform his duties as a state legislator free from bias or favoritism, or that his failure to do so could serve as the basis of an honest services mail fraud violation by Urciuoli or the other defendants.

## RELEVANT FACTS

### A. Rhode Island Permits Its Officials to Have Conflicts of Interest

Rhode Island has a part-time, citizen legislature. Representatives and Senators elected to serve in the General Assembly, therefore, typically hold full-time employment in private business and in various professions. Thus, it is inevitable that individual legislators will encounter legislation in the course of performing their official duties that may impact their respective businesses or professions, and thus their financial interests, as the General Assembly enacts legislation that over time affects all industries.

In order to set standards of conduct for all public officials and employees, including legislators, the General Assembly enacted the Rhode Island Code of Ethics ("Code of Ethics") in June of 1987. Indictment, ¶ 11. The Code of Ethics prohibits, among other things, any person subject to the Code of Ethics from having "any interest, financial or otherwise, direct or indirect," or engaging "in any business, employment, transaction or professional activity," or incurring "any obligation of any nature, which is in substantial conflict with the proper discharge of his or her duties or employment in the public interest and of his or her responsibilities" as prescribed in the laws of the State of Rhode Island. R.I. Gen. Laws § 36-14-5(a). The Code of Ethics also provides that a public official has a conflict of interest if he "has reason to believe or expect that he…or any business associate, or any business by which the person is employed or which the person represents will derive a direct monetary gain…by reason of his or her official activity." R.I. Gen. Laws § 36-14-7(a).

The Code of Ethics, however, expressly allows members of the General Assembly to participate in legislation where the legislator or his employer is part of a broad group or industry whose members will be similarly impacted by the legislation. R.I. Gen. Laws § 36-14-7(b) (the "7(b) Exception"). Specifically, the statute permits a legislator to vote on legislation that affects the legislator's financial interests or those of his employer where such interests are affected to no "greater or lesser extent than the interests of all other members of the affected group or profession to which the legislator…or his employer…belongs." Id.

In 1987 the Rhode Island Ethics Commission was created to enforce the provisions of the Code of Ethics and investigate violations of it. Indictment ¶ 11. The Ethics Commission has the authority to issue advisory opinions relating to the requirements of the Code of Ethics. R.I. Gen. Laws § 36-14-11. Pursuant to this authority, in April 1998, the Rhode Island Ethics Commission

issued Advisory Opinion 98-59 (the "Advisory Opinion") to RWMC in response to its request regarding the extent to which John Celona could continue to propose, debate and vote on health care issues before the General Assembly in light of his consulting duties to the Village at Elmhurst and RWMC affiliates.[1]

The Ethics Commission concluded, among other things, that Celona could "fully participate and vote on broad-based legislation involving general health care issues of public interest." See Advisory Opinion 98-59. The Advisory Opinion further stated that "general legislation relating to elderly affairs, nursing home issues and hospital regulations was likely to impact all corners of the health care industry in the state, as well as many related industries," and that, under R.I. Gen. Laws § 36-14-7(b), "any benefit or detriment accruing to the Senator and/or the Village/affiliates would affect them to no greater extent than any other similarly situated members of a significant and definable group." Id.

In other words, notwithstanding John Celona's financial ties to RWMC, the Ethics Commission expressly permitted John Celona to participate in general, broad-based legislation so long as he filed Section 6 Notices disclosing his conflict of interest. Implicit in this finding was the recognition of the fact that John Celona would be performing his official duties with favoritism and bias.

---

[1] As explained in more detail in the Memorandum of Law in Support of Urciuoli's Motion to Dismiss the Indictment, in the request for an advisory opinion, RWMC's attorney, James McGuirk, disclosed both the nature of John Celona's relationship with RWMC and the type of work that he would be performing. Indeed, the Advisory Opinion reflected that the Ethics Commission understood that John Celona would be working for the Village and other RWMC facilities, such as the Elmhurst Extended Care Facility, Inc., and, among other things, acknowledged that his responsibilities required him to monitor legislative issues for Roger Williams' affiliates.

### B. The Indictment Misstates the Law

The essence of honest services mail fraud is the fact that the public is deprived of what it is entitled to – i.e., the public official's honest and faithful service. See Sawyer, 85 F.3d at 724; see also United States v. Mandel, 591 F.2d 1347, 1362 (4th Cir. 1979). In Sawyer, the Court explained that, '[a] public official has an affirmative duty to disclose material information to the public employer. When an official fails to disclose a personal interest in a matter over which he has decision-making power, the public is deprived of its right either to disinterested decision making itself or, as the case may be, to full disclosure as to the official's potential motivation behind the official act." Id. at 724. It follows, then, that if the legislator's actions conform with the applicable state law governing his conduct, then the citizens are not deprived of that official's honest services as a matter of law. As discussed above, by statute, Rhode Island expressly permits its public officials to perform their official duties notwithstanding conflicts of interest, as long as those conflicts of interest are disclosed. Implicit in Rhode Island's statutory scheme is the recognition that, by virtue of its citizen legislature, its public officials may perform their official duties with favoritism and bias. In other words, under Rhode Island law, John Celona was permitted to perform his official duties with favoritism and bias so long as the source of his favoritism and bias was disclosed to the public. R.I. Gen. Laws § 36-14-7(b).

## ARGUMENT

### A. The Words "Favoritism" and "Bias" Are Surplusage and Should be Stricken From the Indictment

Fed. R. Crim. P. 7(d) states that "The court on motion of the defendant may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). The rule provides a "means of protecting a defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Advisory Notes to Fed. R. Crim. P. 7(d); see

also United States v. Poore, 594 F.2d 39 (4th Cir. 1979). The determinative question in a motion to strike surplusage is the relevance of the allegation to the crime charged. United States v. Sawyer, 878 F.Supp. 279, 294 (D. Mass. 1995).

Here, the words "favoritism" and "bias" have no relevance to crime charged since, simply put, it is not a violation of the law for a public official, such as John Celona, to act with favoritism or bias. To the contrary, the First Circuit has recognized that there is no such right, see Sawyer, 85 F.3d at 731 n.15 and, as a matter of law, Rhode Island permits its legislators to act with favoritism and bias. See R.I. Gen. Laws § 36-14-7(b). Indeed, implicit in Rhode Island's "7(b) exception" is the fact that its public officials will be acting with bias and favoritism. However, even in the absence of such clear statutory authority, the law is settled in the First Circuit that the public is not entitled to receive equal access to legislators. Sawyer, 85 F.3d at 731 n.15. As the Sawyer court explained:

> We do not think that the desire to gain access, by itself, amounts to an intent to influence improperly the legislators' exercise of official duties. The government points to no legislative duty to provide equal access to all members of the public; and, from a practical standpoint, we doubt one exists.

Id.; citing Sawyer, 878 F. Supp. at 294 (striking phrase "free from favoritism" from indictment's list of legislators' duties).

In Sawyer, the Government consented to the defendant's motion to strike the word "favoritism" from paragraph 5 of the Indictment. See 878 F. Supp. at 294. Urciuoli, through his counsel, previously requested that the Government agree to do the same here. The Government refused, acting at odds with the First Circuit's decision in Sawyer. Since the law is clear that favoritism and bias cannot form the basis of an honest services mail fraud violation, the references to the same in paragraphs 14, 96 and 106 of the Indictment should be stricken from the Indictment.

**B. The Government Should Not Be Permitted To Argue At Trial That John Celona's Performance of his Official Duties With Favoritism Or Bias Constitutes Honest Services Mail Fraud**

The Government should be prevented from arguing at trial (through its case in chief, cross-examination, jury instructions, or otherwise) that the State of Rhode Island and its citizens are entitled to have John Celona perform his duties as a state legislator free from bias or favoritism, or that John Celona's failure to do so constitutes an honest services mail fraud violation by Urciuoli or the other defendants. This is not the law. As discussed above, the First Circuit has spoken clearly on this issue and held that the citizens of Rhode Island are entitled to no such right. See Sawyer, 85 F.3d at 731 n.15. Further, through Advisory Opinion 98-59, the Rhode Island Ethics Commission expressly instructed John Celona that he could participate and vote on general, broad-based legislation notwithstanding his financial ties to RWMC. In other words, the Rhode Island Ethics Commission instructed John Celona that it was lawful for him to perform his official duties with favoritism and bias so long as he filed Section 6 notices, which he did.

Indeed, the Ethics Commission underscored that legal principle by describing two precedents where public officials with obvious bias and conflicts were allowed to participate under § 7(b). First, in Advisory Opinion 96-71, the Ethics Commission determined that a legislator could participate and vote on legislation regulating the sale of insurances by banks even though the legislator requesting the opinion was an insurance agent. See Advisory Opinion 98-59. Second, in Advisory Opinion 96-24, the Ethics Commission determined that a Newport Zoning Board member could participate in matters affecting the bed and breakfast industry even though the Zoning Board member owned a hotel. Id. In citing these precedents, the Ethics

Commission sent the unambiguous message that Celona could "fully participate and vote" on legislation regarding hospitals, nursing homes, and other health care issues even though he had direct financial ties to RWMC and its affiliates, so long as he complied with the Section 6 Notice requirement. See id.

Thus, as a matter of law, John Celona's performance of his official duties with favoritism and bias cannot serve as the basis of an honest services violation, and the Government should not be permitted to argue this in any way at trial. Permitting it to do so would severely prejudice Urciuoli and the other defendants, confuse the issues for trial and create a substantial risk that the jury would wrongfully believe that acting with favoritism or bias can constitute a violation of the honest services doctrine. As such, the Government should be prevented from arguing either that the citizens of Rhode Island were entitled to have John Celona perform his official duties free from favoritism or bias, or that his failure to do so can serve as the basis of honest services mail fraud.

**CONCLUSION**

In light of the foregoing, Urciuoli respectfully requests that the Court issue and Order: (1) striking from the Indictment the words "favoritism" and "bias;" and (2) preventing the Government from arguing in any way at any point during the trial that the State of Rhode Island and its citizens were entitled to have John Celona perform his duties as a state legislator free from bias or favoritism, or that his failure to do so could serve as the basis of an honest services mail fraud violation by Urciuoli or the other defendants.

Respectfully submitted,

ROBERT A. URCIUOLI

By his Attorneys,

/s/ Kristie M. Passalacqua

Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
Richard Egbert Law Offices
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

Dated: August 22, 2006

## CERTIFICATION

I hereby certify that on August 22, 2006, a copy of the foregoing Memorandum of Law in Support of Motion to Strike the Words "Favoritism" and "Bias" From the Indictment and For Other Relief was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com