UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 06-02-01 T |
| | ) | |
| ROBERT URCIUOLI, et al. | ) | |
| | ) | |

**UNITED STATES' MOTION TO QUASH SUBPOENAS SERVED UPON THE UNITED STATES ATTORNEY'S OFFICE AND THE FEDERAL BUREAU OF INVESTIGATION**

The United States of America, by and through its undersigned attorneys, hereby moves the Court to issue an order Quashing the Subpoenas served upon the United States Attorneys Office and the Federal Bureau of Investigation by Robert Urciuoli. In support of this motion, the United States relies upon the Memorandum of Law filed herewith.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division

/S/DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August, 2006, I caused the United States Motion to Quash Subpoenas Served Upon the United States Attorney's Office and the Federal Bureau of Investigation and Accompanying Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

John A. Pappolardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Michael J. Connolly
Kristie Passalacqua, Esq.
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

Notification by first class mail, postage prepaid:

Kevin J. Bristow, Esq.
501 Turks Head Building
Providence, RI 02903

Marc DeSisto, Esq.
DeSisto Law Offices
211 Angell Street
Providence, RI 02906

/S/LUIS M. MATOS
LUIS M. MATOS
ASSISTANT U.S. ATTORNEY
CHIEF, CRIMINAL DIVISION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 06-02-01 T |
| | ) | |
| ROBERT URCIUOLI, et al. | ) | |
| | ) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENAS SERVED UPON THE UNITED STATES ATTORNEY'S OFFICE AND THE FEDERAL BUREAU OF INVESTIGATION**

## I. INTRODUCTION

On August 18, 2006, a subpoena was served on the United States Attorney's Office (USAO) by Robert Urciuoli, commanding the USAO to produce documents on August 23, 2006, at the United States District Court. See subpoena, a copy of which is attached. A similar subpoena was served upon the Federal Bureau of Investigation (FBI). Copy attached.[1] Specifically, the Subpoenas seek twelve distinct categories of "documents and records, including meeting minutes, meeting notes, handwritten notes, memoranda and correspondence, including email between" the USAO and others, including the State Police, FBI, Roger Williams Medical Center (RWMC), Roger Williams Hospital and or counsel to RWMC and/or the Hospital.

Urciuoli did not comply with 28 C.F.R. § 16.21, et seq., the regulations which govern the Justice Department's production or disclosure of material or information ("Touhy Regulations"). The subpoenas should be quashed because disclosure is not required by the Government's discovery obligations under the Federal Rules of Criminal Procedure or related authority. In any

[1] The FBI has no documents which are responsive to the subpoena.

event, the information sought is protected from disclosure by the work product doctrine, the deliberative process privilege, and the policy protecting the confidentiality of plea negotiations. Additionally, Therefore, pursuant to Rule 17(c)(2) of the Federal Rules of Criminal Procedure, this Court should grant the United States' motion to quash the subpoenas.

II. ARGUMENT

**A. URCIUOLI'S SUBPOENAS ARE AN ATTEMPT TO CIRCUMVENT THE CRIMINAL DISCOVERY RULES AND SHOULD BE DENIED FOR THE SAME REASONS THE COURT DENIED, IN PART, HIS MOTION TO COMPEL**

Defendant Urciuoli's subpoena to the USAO should be quashed because it runs afoul of this Court's prior rulings in the context of his motion to compel. Previously, Urciuoli moved to compel the United States to disclose agents and government attorney notes, an unredacted version of an FBI 302 report regarding John Celona, statements made by counsel for witnesses, and the United States' position regarding Defendant Frances Driscoll's 302. The United States opposed the motion on the grounds that it had complied with its obligations pursuant to Rule 16, this Court's pretrial discovery Order, Brady v. Maryland, 373 U.S. 83, 87 (1963), and Giglio v. United States, 405 U.S. 150 (1972). The United States argued that Brady does not require it to respond to the detailed discovery requests that the defendant propounded. The same arguments apply here and warrant quashing the subpoena.

The First Circuit has read Brady and Giles v. Maryland, 386 U.S. 66 (1967) to "require fair use of evidence by the prosecutor, accompanied by a duty to disclose evidence materially favorable to the defendant." United Sates v. DeLeo, 422 F.2nd 487, 498 (1st Cir. 1970). However, the First Circuit has "not read those cases to authorize extensive **pre-trial discovery** by the defendant." Id. (emphasis in original); see also United States v. Woodward, 154 F. Supp.

83, 88 (D. Maine 2001) (Brady establishes no general right of discovery and creates no pretrial remedies).

In Woodward, the defendants requested a wide variety of additional discovery under Brady and Rule 16. The Government responded that it had provided defendants with all materials that it was required to produce, that it was not then aware of any Brady materials in its possession, and that if it became aware of any Brady material, it would turn it over. The District Court was "satisfied that the Government understands its duty to disclose any exculpatory evidence useful to defendants and timed to avoid any delay at trial," and denied defendants' discovery motions. Id. See also United States v. Perez, 940 F. Supp. 540, 552 (S.D.N.Y. 1996) (courts in Second Circuit have repeatedly denied pretrial requests for discovery orders pursuant to Brady where government has made a good-faith representation to court and defense counsel that it recognizes and has complied with its disclosure obligations under Brady). Absent Urciuoli's ability to point to some support for his contention that the subpoenaed materials contain exculpatory material, he is not entitled to further discovery. See e.g. United States v. Anderson, 36 F. Supp. 2nd 1264, 1268 (D. Kansas, 1998) (defendant must make requisite showing that exculpatory evidence exists before court would order production of agent's notes).

At the hearing on Urciuoli's motion to compel, the Court acceded to this view:

> Now, getting back to Brady materials, at least initially, the Court has to rely on the integrity and judgment of the prosecutor in determining whether the obligations imposed under Brady have been satisfied.
>
> So representations by the prosecutor that the prosecutor has reviewed the information available to it or under its control and that it has provided all material that comes within the reach of Brady ordinarily is sufficient. That resolves the question in most cases. . . .

> Generally, once that representation is made, the defendant is not entitled to the production of everything in the Government's file to see if perhaps it might contain something that the defendant may consider possibly exculpatory, nor is the defendant entitled to conduct what amounts to comprehensive discovery into the Government's case by asking detailed questions as to what evidence the Government has or does not have.
>
> The only circumstances under which the Court ordinarily goes beyond the prosecutor's representation is where the defendant can point to some good reason to believe that the Government has exculpatory evidence that it has not provided, or that the Government has not exercised reasonable diligence in reviewing material in its possession or obtaining relevant material subject to its control to determine whether that material constitutes Brady material.

Ex. 1 at 91-93.

Prior to the issuance of the instant subpoena, counsel for Urciuoli sent a letter to undersigned counsel seeking the same materials which Urciuoli currently seeks by way of subpoena. Ex. 2. Counsel for the United States responded and stated that he understood the Government's discovery obligation and had complied with these obligations. Ex. 3. In addition, counsel for the United States attached a letter from Assistant United States Attorney Gerard B. Sullivan to Urciuoli's civil counsel which stated the following:

> The termination of your client, Robert A. Urciuoli, by RWMC was not a condition precedent to the DPA nor a requirement of the DPA. In fact, all discussions concerning Mr. Urciuoli's employment status were expressly excluded from the plea negotiations. Similarly, all discussions concerning RWMC's decision either to pay, or to refuse to pay, Mr. Urciuoli's legal expenses were expressly excluded from the plea process by the United States Attorney's Office.
>
> The decisions to terminate Mr. Urciuoli for cause and to discontinue paying his legal fees were business and contract decisions made by RWMC without any input from this office.

Ex. 3 at 2. Thus, counsel for the United States has represented that it has complied with the United States' discovery obligations, and Urciuoli has pointed to no "good reason" to believe that

the United States has not complied with its discovery obligations – the subpoena issued to the USAO should be quashed. The fact that Urciuoli is presently seeking documents from the United States by way of subpoena, as opposed to a more traditional discovery request, is of no matter – any defendant could circumvent the criminal discovery rules by merely requesting evidence by way of subpoena. The instant subpoena seeks discovery of evidence to which Urciuoli is not entitled under Rule 16, this Court's pretrial discovery Order, Brady, or Giglio, and the Court should grant the United States' motion to quash.

**B. THE SUBPOENA SHOULD BE QUASHED FOR FAILURE TO COMPLY WITH TOUHY REGULATIONS**

In United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), the United States Supreme Court recognized the authority of a federal agency to refuse to obey a subpoena *duces tecum* ordering production of that agency's documents. See also Kasi v. Angelone, 300 F.3d 487, 503 (4 th Cir. 2002). Because "Touhy regulations" are recognized as a valid exercise of statutory authority, a person seeking testimony or documents from a federal agency (outside of the Freedom of Information Act context) must comply with any controlling agency Touhy regulations before seeking court relief concerning the matter. Marcoux v. Mid-States Livestock, 66 F.R.D. 573, 575, n.1 (W.D. Mo. 1975). Thus, a subpoena must be quashed when the litigant responsible for the subpoena fails to comply with the procedural requirements of agency Touhy regulations.

The Touhy regulations promulgated by the Department of Justice ("DOJ"), 28 C.F.R. § 16.21, et seq., prohibit the production of documents and the disclosure of information in Federal and State proceedings, in which the United States is a party, without prior approval of the proper DOJ official. Id. at § 16.23. These regulations are intended to provide a procedure to allow DOJ

to protect certain types of information or material from unwarranted and unconsidered disclosure. See, e.g., Kasi v. Angelone, 300 F.3d at 503, citing Touhy at 468 .

In this case, Urciuoli attached to the Subpoena a description of twelve broad categories of documents to be produced. However, no DOJ official has, as yet, approved production or disclosure. Indeed, no final agency decision has yet been made on whether to allow production of the documents sought. Accordingly, production under the Subpoenas would violate DOJ's Touhy regulations and the subpoenas should be quashed.

Touhy is only one of the many cases in which the courts have rejected attempts by litigants to force federal employees to provide testimony or documentary evidence when the employees are forbidden from doing so under agency regulations. See also COMSAT Corp. v. National Science Foundation, 190 F.3d 269, 272 (4th Cir. 1999); In re Boeh (Gomez v. Gates), 25 F.3d 761, 763-67 (9th Cir. 1994); Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600, 603 (5th Cir. 1966).

Touhy applies in criminal cases when a defendant is seeking documents or testimony. See, e.g., United States v. Allen, 554 F.2d 398, 406-07 (10th Cir. 1977) (criminal case; no error in court's decision to not compel testimony where defendant did not comply with Touhy regulations); United States v. Bizzard, 674 F.2d 1382, 1387 (11th Cir. 1982) (same).

Touhy and its progeny dispose of this subpoena proceeding. Urciuoli seeks documents from the USAO and the FBI. However, because the necessary departmental approval for

production of those documents has not been obtained, the Government cannot comply with the Subpoenas, and the Subpoenas must be quashed.[2]

## C. THE INFORMATION SOUGHT IS PROTECTED BY THE WORK PRODUCT DOCTRINE, THE DELIBERATIVE PROCESS PRIVILEGE, AND THE POLICY PROTECTING THE CONFIDENTIALITY OF PLEA NEGOTIATIONS

### 1. Work Product Doctrine

The work product doctrine is intended to protect materials prepared in anticipation of litigation by or for a party or its representative. Hickman v. Taylor, 329 U.S. 495 (1947). This doctrine has been recognized as being broader than the attorney-client privilege. Ricoh Co., Ltd. v. Aeroflex Inc., 219 F.R.D. 66, 68 (S.D.N.Y. 2003). The doctrine was intended to "preserve a zone of privacy in which a lawyer can prepare and develop legal strategies with an eye toward litigation, free from unnecessary intrusions by his adversaries." Id. at 70, quoting United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir.1998) (quoting Hickman, 329 U.S. at 510-511). In other words, the work product doctrine protects "mental processes of the attorney," or his or her agents. See, e.g., Department of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-10 (U.S. 2001) quoting United States v. Nobles, 422 U.S. 225, 238 (1975). Documents should be deemed prepared for litigation and within the scope of the Rule if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have

---

[2] Not only is compliance with Touhy regulations required when a party seeks testimony or documents from an agency, it is settled that courts cannot compel an agency employee who is the subject of a subpoena or other demand to testify or produce documents in violation of agency Touhy regulations. See, e.g., Touhy, 340 U.S. at 467-70; Boron Oil Co. v. Downie, 873 F.2d 67, 69-70 (4th Cir. 1989) (citing cases); United States Steel Corp. v. Mattingly, 663 F.2d 68, 69 (10th Cir. 1980). The regulations provide that the subpoenaed employee may appear in accordance with the subpoena, and refuse to produce information on the authority of the Touhy case. See, e.g., 28 C.F.R. §16.28 (Department of Justice).

been prepared or obtained *because of* the prospect of litigation." State of Maine v. United States Dept. of Interior, 298 F.3d 60, 68 (1st Cir. 2002), quoting Adlman on the "dual purpose" test for attorney work product.

In the instant case, the Subpoenas request, among other items, meeting minutes, meeting notes, handwritten notes and memoranda and correspondence by and between the USAO and/or FBI. That material constitutes attorney work product prepared in anticipation of litigation by prosecutors, other USAO employees, or their agents and is therefore protected by the work product doctrine and the attorney client privilege. Specifically, documents responsive to Request No. 6, which seeks documents relating to plea negotiations and/or deferred prosecution agreements, include attorney work product and are protected from disclosure. There may also be responsive documents which fall within the attorney client privilege.

2. **Deliberative Process Privilege**

The subpoenas also inappropriately seek documents protected by the deliberative process privilege. Federal courts have long recognized a policy against exploring into the mental process of governmental decision makers. N.O. v. Callahan, 110 F.R.D. 637, 642 (D.Mass. 1986); Gomez v. City of Nashua New Hampshire, 126 F.R.D. 432 (D. N.H. 1989). This privilege is known as the "governmental," or "deliberative process" privilege. Rodgers v. Hyatt, 91 F.R.D. 399, 404 (D. Colorado 1980); Kinoy v. Mitchell, 67 F.R.D. 1, 10-11 (S.D.N.Y. 1975). The purpose of this long-standing privilege is to prevent injury to the quality of governmental decisions. The United States Supreme Court has described the scope and rationale of the privilege as follows:

> the cases uniformly rest the privilege on the policy of protecting the 'decision making process of government agencies and focus on documents' reflecting advisory opinions,

> recommendations, and deliberations comprising part of a process by which governmental decision and policies are formulated.

N.L.R.B. v. Sears Roebuck and Company, 421 U.S. 132, 150 (1975) (citations omitted). The First Circuit has described the privilege as one "designed to safeguard and promote agency decisionmaking processes in at least three ways: [I]t serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." Providence Journal Co. v. United States Dept. of Army, 981 F.2d 552, 557 (1st Cir. 1992). The privilege "[encourages] the frank discussion of ideas and policies, thereby ensuring the quality of governmental decision making." Mobil Oil Corp. v. Department of Energy, 102 F.R.D. 1, 5 (N.D.N.Y. 1983) (citing NLRB v. Sears, Roebuck, & Co., supra.).

The subpoenas in the instant case are replete with requests for documents which contain material protected by the deliberative process privilege; specifically Requests 1, 2, 3, 6, 10 and 12, seek documents which contain opinions, recommendations, and evaluations which were made by attorney(s) within the USAO and are therefore immune from discovery. Disclosure of handwritten notes and drafts of documents regarding any decisions made in determining whether or how to prosecute or to reach possible disposition of pending or possible charges or the language to be used in any such agreements would improperly divulge materials protected by the doctrine.

**3. Policy Protecting The Confidentiality of Plea Negotiations**

As noted, Request No. 6 seeks documents relating to plea negotiations and/or deferred prosecution agreements and some of the responsive documents are protected by the attorney work product doctrine, and the deliberative process privilege. All of these documents, as well as the remaining documents responsive to Request No. 6, should also be shielded from disclosure based on the policy protecting the confidentiality of plea negotiations.

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Rules of Evidence are intended to promote active plea negotiations. United States v. Grant, 622 F.2d 308, 312 (8th Cir. 1980). Plea bargaining has been recognized as an essential component of the administration of justice. "Properly administered, it is to be encouraged." Id. quoting Santobello v. New York, 404 U.S. 257 (1971). If such a policy is to be fostered, it is essential that plea negotiations remain confidential to the parties if they are unsuccessful. Meaningful dialogue between the parties would, as a practical matter, be impossible if either party had to assume the risk that plea offers would be admissible in evidence. Grant, 622 F.2d at 312. Other circuits have endorsed this view by observing that the purpose of Fed.R.Crim.P. 11(f) is to encourage "frank discussions in plea bargaining negotiations ." Id. (Citations omitted). If the Court were to allow discovery into the context of plea negotiations between the parties, it could have a chilling effect on open and frank plea negotiations. Hence, such discovery should be denied.

**III. CONCLUSION**

For these reasons, this Court should grant the motion and quash the subpoenas issued to the USAO and to the FBI.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division

/S/DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney