**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02 T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, and | : | |
| PETER SANGERMANO, JR. | : | |

**UNITED STATES' OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE INDICTMENT DUE TO PROSECUTORIAL MISCONDUCT AND FOR OTHER RELIEF**

Defendants Robert Urciuoli, Frances Driscoll, and Peter Sangermano have filed a motion to dismiss the Indictment due to prosecutorial misconduct. For the reasons stated in the accompanying memorandum of law being filed simultaneously herewith, the United States objects to defendants' motion.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys:

ROBERT CLARK CORRENTE
United States Attorney

/S/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division

/S/ DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of September, 2006, I caused the United States Objection to Defendants' Motion to Dismiss the Indictment Due to Prosecutorial Misconduct and for Other Relief and Supporting Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

John A. Pappolardo, Esq.
James P. Redding, Esq.
Greenburg Traurig LLP
One International Place
Boston, MA 02110

Michael J. Connolly
Kristie Passalacqua, Esq.
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

Notification by first class mail, postage prepaid:

Kevin J. Bristow, Esq.
501 Turks Head Building
Providence, RI 02903

/S/ DULCE DONOVAN
DULCE DONOVAN
ASSISTANT U.S. ATTORNEY

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02-1T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, and | : | |
| PETER SANGERMANO, JR. | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE INDICTMENT DUE TO PROSECUTORIAL MISCONDUCT AND FOR OTHER RELIEF**

## I. Introduction

Defendants Robert Urciuoli, Frances Driscoll, and Peter Sangermano have filed a motion to dismiss the Indictment due to prosecutorial misconduct. Defendants' motion, when stripped of all of its hyperbole, is without merit. Moreover, the underlying support for the majority of their allegation, is material that, upon information and belief, defendants have had in their possession since at the latest late 2004, but only chose two days ago to present to the Court. Clearly, defendants' motion is nothing more than an attempt to obfuscate the issues in this case and, at a minimum, delay trial. Accordingly, the United States requests that defendants' motion to dismiss be denied.

## II. Factual Background

On January 5, 2006, a Grand Jury returned an Indictment charging defendants Robert Urciuoli, Frances Driscoll, and Peter Sangermano with conspiracy to commit honest services

mail fraud and with substantive counts of honest services mail fraud.

On February 10, 2006, the United States complied with Rule 16 of the Federal Rules of Criminal Procedure and the Court's standard pretrial discovery order and produced voluminous discovery to defendants in electronic format. The United States produced approximately 6,000 pages of documents as well as interview reports and Grand Jury testimony for approximately 25 individuals, including existing interviews and/or testimony of all three defendants. The materials produced included documents that arguably constituted Brady material. For instance, the Government produced testimony and 302 reports of individuals employed by Blue Cross and Blue Shield and United Health Care. The statements of some of those individuals might be read as inferring that they did not recollect meetings with John Celona as significantly as did John Celona and some intimated that they did not feel pressure from John Celona. Accordingly, such materials were produced.

In addition, the United States agreed to make available to the defendant the remaining documents that relate to this case but were not produced because they do not fall within the parameters of Rule 16.[1] Defendant Sangermano has reviewed the additional materials and has been given the opportunity to copy as may documents as requested. Defendants Urciuoli and Driscoll have not requested the same opportunity. On February 10, 2006, the United States also requested that defendants produce reciprocal discovery pursuant to Rule 16. To date, amazingly, no defendant has produced any discovery in this case despite their apparent vigorous attempts to undermine the Government’s case.

[1] The United States produced duplicate versions of the discovery materials on February 16, 2006, and, again on April 12, 2006. The April 12th production also contained limited supplemental materials.

Certain 302 reports produced, most notably a 302 report relating to John Celona's proffer sessions, were redacted so that only information relating to the RWMC case was produced. Hence, the portions of John Celona's 302 relating to CVS and Blue Cross, as well as other matters under investigation, were not produced. Defendants objected to the redactions and the United States, in April of this year, offered that it would provide the unredacted 302s if the parties agreed to a protective order. The United States' request was based upon its concern about possible revelations of ongoing investigations. Defendants did not agree to sign the protective order. Instead, they filed motions to compel production of, among other items, an unredacted copy of the Celona proffer 302 and the interview notes of the proffer.

On June 26, 2006, the United States supplemented its production by providing defendants with approximately 19 additional interview reports and transcripts, including a 302 report of Edward Quinlan. The Quinlan 302 was produced in part because it states that Mr. Quinlan knew that John Celona had a business relationship with a nursing home affiliated with RWMC. Defs.' Ex. E(a), p. 3.

On July 19, 2006, the Court held a hearing upon defendants' motions to compel. In regard to the redacted Celona 302, the Government argued in its motion in opposition that defendants were fully informed of the nature of John Celona's plea agreement with the United States and the nature of the charges to which he has plead guilty in open court. Hence they were informed about the nature of the Blue Cross and CVS allegations. Thus, the Government argued that although more detailed than the Information, the 302 report regarding the other crimes was redundant and was appropriately withheld because: (1) adequate Brady disclosure has been made

regarding the other schemes; and (2) it dealt with ongoing investigations.[2]

At the hearing, counsel for defendant Urciuoli argued that the entire undredacted 302 should be produced because evidence regarding the CVS and Blue Cross schemes was integral to Celona's plea. The Court, however, noted that it did not understand why defendants should be able to delve into what John Celona told investigators about other matters under investigation. July 19, 2006 Hearing Transcript ("July 19th Tr.") at 73, 74 ("July 19th Tr."), Attachments 1-3.

In ruling on defendants' motions to compel, the Court stated that:

> Now, getting back to Brady materials, at least initially, the Court has to rely on the integrity and judgment of the prosecutor in determining whether the obligations imposed under Brady have been satisfied.
>
> So representations by the prosecutor that the prosecutor has reviewed the information available to it or under its control and that it has provided all material that comes within the reach of Brady ordinarily is sufficient. That resolves the question in most cases. . . .
>
> Generally, once that representation is made, the defendant is not entitled to the production of everything in the Government's file to see if perhaps it might contain something that the defendant may consider possibly exculpatory, nor is the defendant entitled to conduct what amounts to comprehensive discovery into the Government's case by asking detailed questions as to what evidence the Government has or does not have.
>
> The only circumstances under which the Court ordinarily goes beyond the prosecutor's representation is where the defendant can point to some good reason to believe that the Government has exculpatory evidence that it has not provided, or that the Government has not exercised reasonable diligence in reviewing material in its possession or obtaining relevant material subject to its control to determine whether that material constitutes Brady

---

[2] The United States also noted that it had previously offered to make the materials available pursuant to a protective order.

material.

See July 19th Tr. at 91-93, Attachments 6-8 .

The Court did not order that the United States produce the unredacted Celona 302 but did order the undersigned Assistant U.S. Attorneys to review the notes relating to the Celona 302 and produce additional Brady materials by August 2, 2006. In addition, the Court made it clear that it expected Brady materials to be produced in a timely fashion. See July 19th Tr. at 91, Attachment 6.

Subsequent to the hearing, the United States again reviewed its materials and provided supplemental materials to defendants on August 2, 2006, including (1) a redacted copy of the Celona proffer 302 which contained additional undredacted materials, and (2) a portion of the agent notes relating to an interview of John Celona on October 25, 2004. Defs.' Exs. F & G. As defendants state in their motion, the production included information that Celona admitted lying to the FBI on two occasions and also lying to the press. Defs.' Ex. F. The disclosure also contained notes regarding RWMC and Robert Urciuoli, which, while not plainly exculpatory, the United States determined appropriate to disclose in light of certain arguments made by defense counsel. The disclosure did not contain an admission by Celona that he also made misrepresentations to the Ethics Commission in regard to the Blue Cross matter. However, that item was not included because it was already a matter of public record -- it was included in the Information to which John Celona plead guilty. Attachments 9-11, ¶¶ 49-51

On August 11, 2006, counsel for the United States met with counsel for Peter Sangermano on non-discovery matters. However, during that meeting, Mr. Pappalardo offered to sign the previously proposed protective order in exchange for the unredacted Celona 302. The

United States subsequently declined to provide the remainder of the Celona 302 to defendant Sangermano. On August 23, 2006, at a chambers conference, Mr. Egbert raised the discovery issue and offered, for the first time, to sign the protective order that the United States had proposed in April.[3] At that time, the United States declined the proposal. However, the Court suggested that the parties confer on the matter. Mr. Egbert and counsel for the United States conferred briefly that day. Subsequently, the United States reconsidered its position and decided, upon the condition that defendants sign the protective order, to produce the unredacted 302 as well as additional grand jury material and 302s of John Celona relating to CVS as well as other allegations of wrongdoing that are presently under investigation.

Counsel for the United States attempted to contact Mr. Egbert on Tuesday, August 29th, in order to discuss the issue but was not able to reach him. According to Mr. Egbert, there was a problem with his telephone system and he did not receive counsel's message. When counsel for the United States reached Mr. Egbert on Wednesday morning, August 30th, he proposed to Mr. Egbert that he would provide him the above-referenced materials upon agreement he enter into a protective order. Mr. Egbert responded that he had obtained a copy of the unredacted Celona 302 from outside sources and outside of this judicial process. He also indicated that he would be filing the present motion.

[3] In April, Mr. Egbert had agreed to enter into a protective order, however, he did not agree to the terms that the United States considered essential, in particular, the clause that prevented defense counsel from discussing the contents of the 302 with third parties.

## III. Argument

### A Defendants' Allegations of Misconduct are Scurrilous and Unfounded

#### 1. Celona's Alleged Exculpatory Statements

Defendants claim that the United States has omitted exculpatory statements from discovery. They claim that they have obtained statements through conversations with Celona's counsel that were omitted from discovery. Although they purport to quote certain statements, they provide no support for their assertions other than that they have learned of the statements through conversations with Celona's counsel.

As an initial matter, defendants are, at best, vague about when they obtained such allegedly "exculpatory" statements. That may be because it is the United States' understanding that, if they obtained such statements from Celona's attorney, William DiMitri, Esq., they would have had to obtain them prior to the end of 2004. Upon information and belief, it is the United States' understanding that in 2004, while Mr. Celona was meeting with investigators, but before any determination had been made as to his status in the criminal investigation, Mr. DiMitri met with certain defense counsel. However, again upon information and belief, it is the United States' understanding that Mr. DiMitri has not met with defense counsel or exchanged information with them since, at the latest, the end of 2004.

The statements that defendants claims were obtained from Mr. DiMitri pertain to the RWMC scheme. Defs.' Mot. at 3. The discovery produced by the United States in February of this year contained John Celona's Grand Jury testimony and 302s regarding the RWMC scheme. Hence, if defendants have had these statements from Celona's counsel since the end of 2004, they are clearly attempting to subvert the orderly process of this case by essentially lying in wait

to raise these issues in a motion filed at the eleventh hour before trial.

Indeed, as outlined above, all defendants filed motions to compel disclosure of exculpatory evidence on or about the beginning of May. One of their arguments was that they suspected that Celona had made exculpatory statements that had not been produced. In response to the motions, the United States specifically requested that defendant Urciuoli make the requisite showing in support of his claim that exculpatory evidence had not been produced. See United States Obj. to Def. Urciuoli's Mot. to Compel, filed July 7, 2006, at 6. At the July 17th hearing, the United States again reiterated that defendants had not carried their burden to support their motions by pointing to "statements or to information that they are aware that the Government has withheld." July 17th Tr. at 86, Attachment 5. No showing was made, with the exception of Mr. Pappalardo's reference at the July 17th hearing to the Messolella statement. Defendants' deliberate failure at that time to bring the statements allegedly obtained from Mr. Dimitri in 2004 to the United States' and the Court's attention is clear evidence of their attempt to subterfuge the orderly process of this case.

In addition, defendants cannot claim that the statements from Mr. Dimitri were revealed by virtue of their discovery request. Defs.' Ex. A. The request was presented as a laundry list of discovery requests not tied into any representation that the items originated from Celona's counsel.

Defendants compound their subterfuge by stating in their current motion that the FBI 302s failed to reflect any of the exculpatory statements described despite counsel's confirmation that Celona made these statements to the Government. Defs.' Memo. at 5. Simply put, prior to Wednesday, August 30, 2006, defense counsel never represented to the Government that the

statements originated from Celona's counsel.

Moreover, the statements, if they were made, are not on their face exculpatory. Whether Celona thought that the letter to the ethics commission was accurate does not mean it was complete. It also does not mean that the defendants in this case thought it was accurate. Whether John Celona provided assistance to Fatima Hospital does not mean that he did not impermissibly act on behalf of RWMC given his clear conflict of interest. The alleged statement that Urciuoli did not have any "most" significant bill does not in any way negate that Celona was working on his behalf on legislative matters. The alleged statement that he and RWMC did not hide their connection to each other is simply a synopsis of the corporate relationship outlined in the ethics commission letter. The statement that Celona felt he could not vote on bills specific to RWMC but could vote on bills general to all hospitals is simply an inartful paraphrase of the fraudulently obtained ethics opinion. The statement that the letter was factual when filed but that things "changed," if anything, evidences that defendants did engage in a conspiracy to deprive the citizens of Celona's honest services. Finally, the statement that the reimbursement issue between RWMC and Blue Cross did not involve legislation is not inaccurate. It is not alleged that the Blue Cross issue involved legislation, but rather that it involved an inappropriate use of Celona's office. Hence, it too is not exculpatory.

Even when taken together, these statements do not support defendants' present claims. The statements, if made, at best reflect John Celona's mental impressions. They in no way negate that defendants possessed the requisite criminal intent. For instance, even if Celona thought that the letter to the Ethics Commission was "clear" at the time it was sent, it does not follow that defendants did not possess criminal intent or that they didn't manipulate the

information provided to the Ethics Commission.

Finally, as the Court is well aware, note taking and the production of FBI 302 reports is not an exact science. A 302 is not a stenographic reproduction of the witnesses' statement and is not a statement pursuant to the Jencks Act, 18 U.S.C. § 3500, but rather is a summary of an agent's interview of a witness. The fact that a 302 may or may not contain a statement that the defendant insists should have been included does not necessarily lead to the conclusion that evidence has been deliberately omitted. To jump to the outrageous conclusion that the Government's conduct "amounts to the destruction of evidence," defendants' memorandum at 11, on the state of the record in this case is not only improper hyperbole, but is a clear, calculated effort to tarnish the prosecution in this case without any basis.

**2. The Messolella 302**

Defendants claim that the Government withheld exculpatory evidence regarding Vincent Messolella. The issue arises from an allegation contained in the Indictment that in or about February of 1998, defendants Driscoll and Sangermano directed Celona to work to "defeat" Senate Bill 98-H 8229, an "Act Relating to Residential Care and Assisted Living Facilities," which would prohibit health facilities from holding themselves out as offering Alzheimer's care to patients unless the facilities were licensed as nursing homes or hospitals. Indict. ¶¶ 33 and 34. The allegation is supported by John Celona's testimony and documentary evidence. Attached is a copy of a facsimile from Celona to Defendant Driscoll in which Celona states "Fran – enclosed is a copy of 98-H- 8229. Vin Messolella is out of town, but I will get to him as soon as he returns to first, identify, the motive of the bill (i.e. those behind it) and second to work to defeat it before it moves anywhere." Attachment 12 .

Mr. Messolella was interviewed by the FBI and advised the FBI that he did "not recall any conversations with Celona regarding [98-H-8229], but [did] not deny that a conversation could have taken place. Mesolella noted that seven (7) years had passed since the legislation had been introduced and his memory had been affected by the lapse in time. Mesolella also advised that he could have had a brief conversation in passing with Celona about the bill, which was common in the legislature. Mesolella said that he has a joking personality, and could have spoken to Celona in a joking manner about the bill." Attachments 13-14. According to defendants, and despite his statement to the FBI that his memory had been affect by the "lapse in time," Mr. Messolella now claims that the conversation with Celona did "absolutely not" take place.

The statement provided to the FBI was not Brady or Giglio. The fact the Mr. Messolella has now apparently changed his story does not make it so. Moreover, the statement is not Brady, because this case is about defendants' state of mind. Whether Celona had the conversation with Mesolella, his facsimile to defendant Driscoll evidences, at minimum, that Driscoll expected him to do so and is evidence of her intent to commit the crimes with which she is charged.

**3. The Quinlan Statement**

______Like Messolella, Mr. Quinlan has apparently also told defense counsel a different story than what he represented to the FBI. Again, as with Messolella, the true version of Mr. Quinlan's statement is a matter for trial. There is, however, no evidence that the FBI manufactured the 302. To the contrary, the 302 notes that Mr. Quinlan stated during his interview that he knew that John Celona had a business relationship with a nursing home affiliated with RWMC and, accordingly, the United States produced Mr. Quinlan's 302 to

Defendants on June 26, 2006. Def. Ex. E(a), p. 3. If there were an intent to omit unfavorable evidence, surely such a statement by Mr. Quinlan would likewise be omitted.

**4. John Celona's Lies to the FBI**

Defendants complain that evidence regarding John Celona's lies should have been produced in February. Defendants may be right. Unfortunately those items were mixed with CVS/Blue Cross discussion and were not produced until August 2, 2006. However, the misrepresentations to the Ethics Commission were disclosed prior to Indictment in this case and defendants were fully aware of them because they are contained in the Information to which Celona plead guilty. Celona Information ¶¶ 49-52. There is no requirement under Brady that the Government produce Giglio information in multiple forms. Moreover, the production in August was in accordance with the Court's Order upon defendants' motions to compel and was, essentially, a supplement to extensive discovery that had been previously produced.

The fact that the proffer 302 contains John Celona's admissions that he lied to the FBI, the Ethics Commission and the press, and that the United States produced that evidence to Defendants refutes Defendants' misconduct argument that the Government has withheld evidence that would cast Celona in a bad light vis a vis the defendants.

**5. The Notes Regarding RWMC**

Defendants again attempt to obfuscate the issue in regard to notes that were produced regarding John Celona's apparent initial statements to the FBI regarding RWMC on October 25, 2004. The fact that the United States complied with the Court's order and produced notes that were, at best, arguably exculpatory, is now being used to argue that the United States has engaged in misconduct. The notes show just the opposite.

First, without reviewing every item, they are not exculpatory. For instance, the note that Celona said he was to work for both the hospital and the Village at Elmhurst supports the allegations in this case. Defs.' Ex. G. The scheme, as alleged, is that Defendants' plan was always for Celona to work, at least in part, for the hospital, but that fact, as well as others, was deliberately withheld from the Ethics Commission. The note confirms that from the start, Urciuoli intended that Celona work for the hospital.

In addition, the fact that the purported reason that Defendant Urciuoli wanted to hire Celona was because of his affinity with seniors and that it was decided, whether directly by Urciuoli or hospital counsel, that Celona had to obtain an ethics opinion is not a novel concept - - this issue was addressed by more than one grand jury witness. See Attachments 15-24. Moreover, defendants have continuously espoused the theory that Celona had to be cajoled into admitting his guilt to agents. In fact, the thrust of their previous motions to compel was that theory and the unsubstantiated allegation that the Government withheld such evidence. However, on the very first day that Celona discussed RWMC, the notes reveal that Celona stated that he "was working for Ursioli" and that he was pretty much their paid lobbyist. Id. Thus, clearly, Celona admitted his guilt from the start.

**B. There Has Been No Misconduct, Therefore, No Relief is Warranted**

Defendants request that the Court dismiss the Indictment because they claim that the Government has engaged in misconduct. Not only has there not been any misconduct, defendants' cannot meet the exacting standard required for such a dismissal

In rare and extreme circumstances, a federal court has the authority to dismiss criminal charges as a sanction for government misconduct." United States v. Guzman, 282 F.3d 56, 59

(1st Cir. 2002). The doctrine requiring dismissal as a result of Government misconduct is "of extremely limited application." United States v. Nunez, 146 F.3d 36, 38 (1998). "The doctrine holds that the Government commits outrageous misconduct when it behaves in a manner that violates 'fundamental fairness' and 'shock[s] ... the universal sense of justice. Id., quoting, United States v. Santana, 6 F.3d 1, 4 (1st Cir.1993).

> The dismissal of an indictment because of deliberate governmental misconduct is used as a prophylactic tool for discouraging future actions of the same nature. Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); United States v. Belculfine, 508 F.2d 58, 61 (1st Cir. 1974). The nature of the conduct must be such to convince the court of the need for a deterrent against similar governmental conduct in future investigations and prosecutions. The dismissal of the indictment has been invoked in egregious circumstances where "conduct" has clearly crossed over into the realm of "misconduct." In United States v. Germany, 32 F.R.D. 421 (M.D.Ala.1963), an indictment was dismissed where the government refused to comply with a court order to provide for funds to indigent defendant's counsel for expenses of travel and subsistence incurred in interviewing an informer. In United States v. Seafarers International U. of No. America, 343 F.Supp. 779 (E.D.N.Y.1972), the indictment was dismissed where the government repeatedly failed to comply with disclosure orders thereby causing a twenty-three month delay of trial.

United States v. Houghton, 554 F.2d 1219, 1224 (1st Cir.), cert. denied 434 U.S. 851 (1977).

Defendants reliance on United States v. Diabate, 90 F. Supp. 140 (D. Mass. 2000), is misplaced. In that case, after selecting a jury but prior to being sworn, the court discovered Government agents had destroyed notes and that responsible AUSAs had failed to advise local police officers to preserve their notes and other investigative records. The court found that the situation was fraught with potential prejudice and dismissed the Indictment containing

counterfeiting charges without prejudice. Id. at 151.[4]

Conversely, the First Circuit has held that a federal agents' failure to record an undercover conversation did not rise to the level of a Due Process violation absent evidence of bad faith. United States v. Brimage, 115 F.3d 73, 77, 78 (1st Cir. 1997). The Court noted that it had previously recognized that the Jencks Act, 18 U.S.C. § 3500, "does not require the government to record all aspects of interviews with witnesses, United States v. Lieberman, 608 F.2d 889, 897 (1st Cir.1979), or always to take notes, Campbell v. United States, 296 F.2d 527, 531-32 (1st Cir.1961)." Id.

While the Government clearly has an obligation to produce Brady material, there is no evidence that any exculpatory evidence was destroyed or omitted, either inadvertently or as a result of bad faith. Hence, no remedy is warranted, and certainly not dismissal. To the extent any relief is called for, reasonable relief has been provided the defendants by virtue of the Court's order dated August 31, 2006, which required that the Government produce additional materials to the defendants. These materials were produced on August 31st and today, September 1, 2006.

[4] Not surprisingly Defendants omit from their memorandum any mention of the fact that the Indictment was dismissed without prejudice.

## IV. Conclusion

Based upon the foregoing, the United States respectfully requests that the Court deny Defendants' motion to dismiss.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys:

ROBERT CLARK CORRENTE
United States Attorney

/S/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division

/S/ DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney