**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **v.** | ) | **CRIMINAL NO. 06-02-01-T** |
| **ROBERT A. URCIUOLI,**<br>**FRANCES P. DRISCOLL, and**<br>**PETER J. SANGERMANO, JR.** | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR *VOIR DIRE* ON EXPOSURE TO AND IMPACT OF PUBLIC STATEMENTS MADE BY THE UNITED STATES ATTORNEY, AND OTHER RELIEF**

Defendants Robert A. Urciuoli, Frances P. Driscoll and Peter J. Sangermano, Jr. (collectively, the "Defendants"), by the undersigned counsel, respectfully move this Court to conduct forthwith the individual, sequestered *voir dire* of seated and alternate jurors with respect to their exposure to or knowledge of, and the prejudicial effect thereof, statements made by the United States Attorney for the District of Rhode Island Robert Clark Corrente (the "U.S. Attorney") concerning a different case during the course of trial in, and which can be reasonably thought to have a bearing on, the above captioned matter. As grounds therefore, and as is more fully set forth below, the Defendants state that the inflammatory statements of the U.S. Attorney contained in a press release issued by his office on Friday, September 8, and which were further disseminated by both the local Rhode Island and the international media, coming after the selection of jurors and alternates and on the eve of openings, was in violation of clear and controlling First Circuit case law as well as governing professional standards, and

presents a clear and manifest risk of material prejudice, necessitating the requested *voir dire*.[1]

**FACTS**

1. On Wednesday morning, September 6, 2006 this Court initiated trial proceedings in this action with the commencement of jury selection.

2. Because of the publicity associated with this public corruption, theft of honest services case, the Court undertook the burdensome and time intensive, but essential, process of individual *voir dire* of prospective jurors as a prophylactic measure against their possibly having been tainted by pretrial publicity.

3. The jury selection process led by the Court continued for three days, through late Friday afternoon, September 8, 2006, culminating with the seating of twelve jurors and six alternates, all of whom were instructed by the Court neither to discuss the case, nor expose themselves to any media reports concerning the trial, arguments in which were to commence at 9:30 a.m. on Monday, September 11, 2006.

4. At or around 2:20 p.m., Friday, September 8, the United States Court of Appeals for the First Circuit issued by email circulation its decision in United States v. Potter, et al., Nos. 05-2676, 05-2677 & 05-2678 (1st Cir. Sep. 8, 2006).

5. On Friday, September 8, at a time unknown to counsel, the Office of the United States Attorney for the District of Rhode Island issued a press release, titled "Statement of U.S. Attorney Robert Clark Corrente on the Affirmance of the conviction in U.S. v. Potter, et. [sic] al.," which reported the United States Court of Appeals for the First Circuit's affirmance of the Potter case, and stated in part:

---

[1] Defendants' request for *voir dire* is made without waiver of any other or further appropriate relief or remedy, including, without limitation, dismissal or mistrial.

> United States Attorney Robert Clark Corrente hailed the decision. "We're gratified that the Court of Appeals has upheld the convictions," U.S. Attorney Corrente said. "Based on the evidence, the Court rightly concluded that ' . . . the outcome is not a surprise.'" [sic] **Today's opinion reaffirms the message to political figures and to those who do business with them – we will make room in federal prison for those who would buy or sell political influence in Rhode Island.**"

September 8, 2006 Press Release (emphasis added), a copy of which is attached hereto at Tab A.

6. On Friday September 8, The Providence Journal, on its website, projo.com, ran an article with a release time of 4:31 p.m., titled "Appeals court upholds convictions of Bucci and Potter," and which does not contain any statements of the U.S. Attorney from the press release. A copy of the article is attached hereto at Tab B.

7. On Saturday, September 9, The Providence Journal, in its print edition, on the first page of the "Local News" section, page A3, and continuing on to page A6, ran an article titled "Lincoln Park convictions are upheld" (a copy of which is attached hereto at Tab C), and which contains the following quote as a stand alone paragraph on the first page of the article:

> "Today's opinion reaffirms the message to political figures and to those who do business with them – we will make room in federal prison for those who would buy or sell political influence in Rhode Island," U.S. Attorney Robert Clark Corrente said.

Id.

8. On Friday September 8, local Rhode Island television news station Channel 10, ran on its website an article colorfully titled "Slot Parlor, Former Executives Found Guilty of Plotting Bribe." A copy of the article is attached at Tab D. First posted on the site at 4:10 p.m., the article was updated at 6:15 p.m. Counsel have not been able

to obtain a copy of the article as originally posted, but the updated version reads in relevant part:

> U.S. Attorney Robert Clark Corrente said he was gratified by the court's decision.
>
> "Today's opinion reaffirms the message to political figures and to those who do business with them – we will make room in federal prison for those who would buy or sell political influence in Rhode Island," Corrente said in a statement.

Id. at 2.

9. It is not known to counsel at present whether Channel 10 or other local television or radio broadcast media further disseminated the U.S. Attorney's statement.

10. The story and the U.S. Attorney's remarks were disseminated internationally, with an article on the International Herald Tribune's website, iht.com, a copy of the print-out of which is attached at Tab E, and which reads in pertinent part:

> U.S. Attorney Robert Clark Corrente said he was gratified by the court's decision.
>
> "Today's opinion reaffirms the message to political figures and to those who do business with them – we will make room in federal prison for those who would buy or sell political influence in Rhode Island," Corrente said in a statement.

Id.

11. As of Sunday, September 10, 2006, each of the foregoing articles, as well as the U.S. Attorney's press release, remain openly and freely available electronically over the internet.

## ARGUMENT

### I. The U. S. Attorney's Comments in His Press Release of September 8, 2006 Are in Manifest Violation of Controlling First Circuit Authority and Prosecutorial and Professional Standards.

After the lengthy, painstaking efforts of the Court this past week in selecting a jury of twelve and six alternates untainted by pretrial publicity, the government, whether

by design or inadvertence, by its actions has needlessly but assuredly injected the prospect of material prejudice with the tainting of these hard-won jurors. The inflammatory remarks of the government in relation to a different case which reasonably could be thought to have bearing on these proceedings, at a bare minimum, requires the immediate *voir dire* of all jurors as to their exposure to or knowledge of, and the prejudicial effect thereof, the inflammatory statements made by the U.S. Attorney.

A. The U.S. Attorney's Statements, Under Controlling First Circuit Law, at a Minimum Necessitates Prompt, Searching Individual *Voir Dire*.

The U.S. Attorney's inflammatory remarks, at an absolute minimum, require under controlling First Circuit law a searching, individual and sequestered *voir dire* of the seated and alternate jurors with respect to their exposure to or knowledge of, and the prejudicial effect thereof.

The conduct of the government in the instant case so closely parallels the facts of the seminal case United States v. Coast of Maine Lobster Co., Inc., 538 F.2d 899 (1st Cir. 1976) (per curiam) that it can legitimately said to be on all fours. Coast of Maine centered on the statements of the District of Maine U.S. Attorney who, while the underlying "white collar" mail and wire fraud case was in the midst of trial, and without any specific reference to that trial, opined on a local television show that "(p)eople who commit so-called white collar crimes are not considered very apt candidates for much time in jail." Id. at 900. The U.S. Attorney's statements were the subject of a front page newspaper article the following day, with the headline: "Mills: White Collar Criminal Get Off Easy," along with a picture of Mr. Mills. Id. Defendant moved for a mistrial, and the court responded by conducting joint questioning of the jurors, which initially resulted in no one indicating that they had seen or had knowledge of the article. Id.

Eventually, after repeated re-questioning, some seven or eight jurors came to admit their familiarity with the article, but did not indicate in response to the court's questioning that they were influenced by it. Id. at 900-01. Defendants were convicted at jury trial and appealed. Id. at 900.

On appeal, the reviewing court vacated the conviction and remanded for a new trial. Finding that the potential prejudice arising from the publicity given during the trial to the statements of the prosecutor's supervisor, the U.S. Attorney, "which, although not referring to the trial in progress reasonably could be thought to have a bearing on it," id. at 900, was a "hazard . . . both so resistant to a search for proven prejudice and so . . . easily prevented," the appellate court determined that the appropriate remedy in such circumstances was the exercise of its supervisory power to vacate the judgment and order a new trial. Id. In so holding, the court explained that its intention was "not so much to criticize unthinking conduct in the past as to assure more sensitive conduct in the future." Id.

Some thirty years later, history repeats as the government in this instance manifestly failed to follow the Coast of Maine's teaching in declaring the appellate court's affirmance in Potter a "message to political figures and to those who do business with them – we will make room in federal prison for those who would buy or sell political influence in Rhode Island," in the midst of the trial of this matter.[2]

The Court of Appeals articulated a four factor test to identify those narrow instances in which it would exercise its supervisory power to set aside a conviction on

[2] That lesson is severe in order to serve its prophylactic purpose. While the harm need be no more manifest than "in the conjectural area of potential for prejudice," id. at 901, the severity of mistrial appropriately obtains for, whether by accident or design, it is of the government's own making: "the danger of prejudice can best be avoided if prosecutors are more sensitive to the possible impact of any public statements made by them during a trial." Id.

appeal: (1) the timing of the statement; (2) the relationship of the prosecutor to the trial; (3) the prominence of the public statement; and (4) the relationship of the published views to the issue in the prosecution. Id. at 902-03. In combination, these factors inexorably lead to the conclusion that, under the law of the First Circuit, at a bare minimum initial step, searching, individual voir dire of the jurors is required.

1. The Timing of the U.S. Attorney's Statement, Contained in a Press Release Issued from His Office, Self-evidently Were Entirely Within the Government's Control.

"The timing of the prosecutor's statement is particularly critical." 538 F.2d at 902. The U.S. Attorney controlled the timing and dissemination of his statements, as evidenced by the fact that the prejudicial material consists of inflammatory statements made by him in a press release issued by his office. See Tab A.

The government's anticipated counter that this was no more than a standard press release made in the ordinary course publicizing the result of the Potter appeal is irrelevant. It is evident from the times at which the articles on the Potter case were posted on line and subsequently revised that the media had knowledge of the Potter decision in advance of the U.S. Attorney's press release. Indeed, the initial article on The Providence Journal's website, Tab B, central difference from that published the next day on the first page of the Local Section, Tab C, is the inclusion of the U.S. Attorney's inflammatory statement from the press release. But most important here, whether or not the press release itself was made in the ordinary course is not relevant, for the statement itself is inflammatory, and on its face could reasonably be expected to influence the outcome of a pending trial. See 28 C.F.R. § 50.2(b)(2) ("At no time shall personnel of the Department of Justice . . . furnish any statement or information, which could

reasonably be expected to be disseminated by means of a public communication, if such a statement or information may reasonably be expected to influence the outcome of a pending or future trial.”).

In view of the statement’s timing, at the prosecutor’s choosing and in the midst of the only public corruption matter now on trial in the District of Rhode Island, the statement was made at the prosecution’s peril, and at a bare minimum searching, individual voir dire of the jurors is required is required to identify exposure to or knowledge of the prejudicial remarks.

2. The U.S. Attorney’s Relationship to the Criminal Trial is Self-Evident.

The U.S. Attorney is widely recognized as being responsible for federal law enforcement within the District of Rhode Island, regularly appearing in print and electronic media. Having been appointed in August of 2004, after more than two years in office and the attendant exposure, it is self-evident that the U.S. Attorney is understood to be the supervisor of federal criminal matters charged in Rhode Island.

3. The Statement Was Prominently Displayed in The Providence Journal and in Electronic News Media.

The U.S. Attorney’s inflammatory statement was prominently displayed the day following its release in the local paper of record, The Providence Journal, where it was on the first page of the “Local News” section, page A3 of the paper. See Tab C. This is effectively front-page local news. The prejudicial statements of the U.S. Attorney are also reflected in several websites, including those of The Providence Journal, see Tab F, local Channel 10, see Tab D, and the International Herald Tribune. See Tab E.

Critically, amplifying the issue of the prominence of the dissemination of the prejudicial material is its “Trojan Horse” dimension in as much as the prejudicial

statement appears in articles that do not, on their face, purport to relate to the instant trial, and thus it is far more probable that selected jurors will be exposed to or otherwise come to have knowledge of them, because they do not fall within the Court's admonition to stay away from information related to this case.

4. The Nexus Between the Issues in the U.S. Attorney's Statement and Those in the Trial Could Not Be Closer, As Both Are Public Corruption Cases, and the Connection Obvious.

"[T]he nexus between the views as published and the issues in the pending trial must be close enough so that a reasonable person might see an obvious connection." Coast of Maine, 538 F.2d at 902. The inflammatory words of the U.S. Attorney speak loudly to the instant trial, so much so that the connection is not only obvious, but unavoidable. The prejudicial statement, by its terms, is not limited to the specifics of the Potter case as, for example, are the statements attributed to the AUSAs who handled the case, see, e.g., Tab B, but extends to all public corruption/honest services/influence peddling cases – the foremost of which being the instant matter now on trial before Your Honor.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendants Robert A. Urciuoli, Frances P. Driscoll and Peter J. Sangermano, Jr. respectfully request that the Court conduct forthwith the individual, sequestered *voir dire* of seated and alternate jurors with respect to their exposure to or knowledge of, and the prejudicial effect thereof, the above identified statements of the U.S. Attorney, and grant such other and further relief as may be appropriate.

Respectfully submitted,

PETER J. SANGERMANO, JR.,
By his attorneys,

/s/ Evan Georgopoulos

James P. Redding (Bar No. 2976)
A. John Pappalardo
Evan Georgopoulos
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
(617) 310-6000
reddingj@gtlaw.com
pappalardoj@gtlaw.com
georgopoulose@gtlaw.com

ROBERT A. URCIUOLI
By his Attorneys,

/s/ Michael J. Connolly

Michael J. Connolly
Hinckley, Allen & Snyder LLP
28 State Street
2nd Floor
Boston, MA 02109
(617) 345-9000
mconnolly@haslaw.com

Richard M. Egbert
99 Summer Street
Suite 1800
Boston, MA 02110
(617) 737-8222
regbert@egbertlaw.com

Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
kpassalacqua@haslaw.com

FRANCES P. DRISCOLL
By her Attorney,

/s/ Kevin J. Bristow
Kevin J. Bristow, Bar No. 3984
505 Turks Head Building
Providence, RI 02903
(401) 521-2849
kjbristowlaw@verizon.net

Dated: September 10, 2006

**CERTIFICATION**

I hereby certify that on September 10, 2006 a copy of the foregoing was electronically filed and served by mail upon counsel unable to accept electronic filing. Notice of this filing shall be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

____/s/ Evan Georgopoulos______
Evan Georgopoulos