UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**ROBERT A. URCIUOLI'S MOTION FOR JUDGMENT OF ACQUITTAL**
**OR, IN THE ALTERNATIVE, A NEW TRIAL**

NOW COMES Defendant Robert A. Urciuoli ("Urciuoli") and respectfully moves this Court for a judgment of acquittal or, in the alternative, a new trial. In support of this motion, Urciuoli relies upon the accompanying Memorandum of Law, filed herewith and incorporated herein by reference.

WHEREFORE, Defendant Robert A. Urciuoli respectfully moves this Court for a judgment of acquittal or, in the alternative, a new trial.

Respectfully submitted,

ROBERT A. URCIUOLI

By his Attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
Richard Egbert Law Offices
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

Dated: November 7, 2006

**CERTIFICATION**

I hereby certify that on November 7, 2006, a copy of the foregoing Robert A. Urciuoli's Motion For Judgment of Acquittal, or, in the Alternative, a New Trial was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**MEMORANDUM OF LAW IN SUPPORT OF ROBERT A. URCIUOLI'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, A NEW TRIAL**

NOW COMES Defendant Robert A. Urciuoli ("Urciuoli") and respectfully submits this Memorandum of Law in Support of his Motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33.

## INTRODUCTION

On October 13, 2006, following a three week trial in the above-captioned matter, Urciuoli was convicted of one count of conspiracy to commit honest services mail fraud and 35 counts of mail fraud. For reasons set forth in more detail below, the Court should enter a judgment of acquittal at this time pursuant to Federal Rule of Criminal Procedure 29. In the alternative, the Court should order a new trial pursuant to Federal Rule of Criminal Procedure 33.

## ARGUMENT

### I. Standard of Review

A defendant may move for a judgment of acquittal, or renew such a motion, within 7[1] days after a guilty verdict…" Fed.R.Crim.P. 29(c)(1). If the jury has returned a guilty verdict,

[1] October 20, 2006, Urciuoli filed a Motion for Extension of Time to File Motion for Judgment of Acquittal, Or In The Alternative, A New Trial. Urciuoli requested a two-week extension, up to and including November 7, 2006, for filing same.

the court may set aside the verdict and enter an acquittal. Id. § (c)(2). Judgment of acquittal must be entered for a defendant where, taking the evidence in the light most favorable to the government, the government failed to produce sufficient evidence for a finding of guilt beyond a reasonable doubt. See United States v. Costa, 890 F.2d 480, 481 (1st Cir. 1989). Similarly, upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed.R.Crim.P. 33(a). See United States v. Potter, 2005 WL 2367627, at *3 (D.R.I. 2005) ("[new trial] is warranted…where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict") (internal citations omitted); see also United States v. Dodd, 391 F.3d 930, 936 (8th Cir. 2004) (affirming district court's order granting defendant a new trial under Rule 33 on the basis that verdict was contrary to the weight of the evidence). The decision to grant a Rule 33 motion is within the sound discretion of the District Court. Dodd, 391 F.3d at 934. The District Court's discretion is broad in that it may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." Id. (citations omitted).

## II. Urciuoli is Entitled to Judgment of Acquittal, or, in the Alternative, A New Trial

### A. The Evidence Adduced at Trial Was Insufficient to Convict Urciuoli

Urciuoli refers to and hereby incorporates by reference the Motions for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 made by defense counsel orally on the record at the close of the Government's case-in-chief and at the close of all evidence. The evidence adduced at trial was insufficient to convict Urciuoli. In light of the insufficiency of the evidence, Urciuoli is entitled to judgment of acquittal. See United States v. Costa, 890 F.2d at 481. In the alternative, he is entitled to a new trial. See United States v. Dodd, 391 F.3d at 936.

**B. The Conduct In Which Urciuoli Allegedly Engaged Cannot Form the Basis of Honest Services Fraud**

Urciuoli is entitled to a judgment of acquittal, or, in the alternative, a new trial, because the conduct he allegedly engaged in cannot, as a matter of law, form the basis of honest services mail fraud under 18 U.S.C. § 1346. Section 1346 provides that for the purpose of the mail fraud statute, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right to honest services. 18 U.S.C. § 1346. This requires the Court to consider what services the citizens of Rhode Island have a *right* to expect from Celona.

The rights of the citizens of Rhode Island to Celona's disinterested and honest service were limited to *official* legislative action. See United States v. Sawyer, 85 F.3d 723, 724 (1st Cir. 1996) ("Sawyer I") (the public's right is limited to disclosure of "the official's potential motivation behind *an official act*") (emphasis added); United States v. Silvano, 812 F.2d 754, 759 (1st Cir. 1987); United States v. Bloom, 149 F.3d 649, 656 (7th Cir. 1998) (reversing the honest services fraud conviction of a Chicago alderman who, in his private capacity as a lawyer, advised a client to use a proxy bidder at a tax scavenger sale at which the client's property was being auctioned, thereby depriving the city of tax revenues; and finding that the scheme did not involve anything that the defendant did in his *official capacity* as an alderman) (emphasis added). *Official* actions of a state legislator include: "schedule[ing] hearings, assign[ing] bills to the hearing calendar and subsequent executive sessions, advocate[ing] bills at executive sessions, guiding and taking other action to advance [bills] through the Committee," and, of course, voting on legislation. Sawyer I, 85 F.3d at 720. In other words, a legislator's *official* actions involve the legislative process. Id.

**1. <u>Rescue Runs and Insurance Meetings</u>**

The trial evidence regarding Celona's efforts to increase rescue runs and his facilitation of meetings between RWMC, on the one hand, and Blue Cross/Blue Shield or United Health Care regarding contract negotiations, on the other cannot, as a matter of law, serve as the basis of an honest services fraud prosecution because those actions do not involve *official* action on Celona's part. <u>See</u> <u>Sawyer I</u>, 85 F.3d at 724-25. Celona's efforts to increase rescue runs to the Hospital and his facilitation of insurance company meetings did not involve legislation or legislative action of any sort. They did not involve any type of official action in his capacity as a state senator. <u>See</u> <u>United States v. Rabbitt</u>, 583 F. 2d 1014, 1024 (8th Cir. 1978) ("[t]he concept of fraud upon the public may clearly fall within the ambit of the mail fraud statute where dishonest conduct by a public official directly implicates *the functions and duties of that official's public office*"…but "whether a showing of dishonesty on the part of a state official, *outside his official duties*, with no financial loss to the state constitutes a fraud on the public and thereby statutory mail fraud is, in our opinion, highly questionable.") (emphasis added).

**2. <u>Legislation</u>**

Nor can the evidence regarding Celona's participation in the general health care legislation cited by the Government form the basis of an honest services fraud violation by Urciuoli. The essence of honest services fraud is the fact that the public is deprived of what it is *entitled* to – i.e., the public official's honest and faithful service. <u>See</u> <u>Sawyer I</u>, 85 F.3d at 724; <u>see also</u> <u>United States v. Mandel</u>, 591 F.2d 1347, 1362 (4th Cir. 1979). It follows, then, that if the legislator's actions conform with the applicable state law governing his conduct, the citizens are not deprived of that official's honest services as a matter of law.

Here, the evidence established that Urciuoli and Driscoll, through McGuirk, made full disclosure to the Ethics Commission of the potential for conflicts of interest in Celona's legislative duties stemming from the Consulting Agreement. Following that disclosure, the mechanism put in place under Rhode Island law – review by the Ethics Commission – ran its course. The Ethics Commission drew a clear distinction between unacceptable conflicts of interest (i.e., participation in assisted living facility legislation) and acceptable conflicts (i.e., participation in legislation affecting nursing homes, hospitals, and general health care issues, so long as the requisite Section 6 Notices were filed by Celona). Under Rhode Island law, the citizens of Rhode Island were entitled to no less and no more. The Ethics Commission expressly permitted Celona to "*fully participate and vote*" on matters concerning "broad-based legislation involving general health care issues of public interest," so long as he filed a § 6 Notice disclosing the potential conflict of interest.[2] In other words, the Ethics Commission determined that, notwithstanding Celona's relationship with RWMC, Celona's participation in "broad-based legislation involving general health care issues of public interest" was a permissible conflict of interest. Id. Celona's participation in broad-based, general health care legislation, therefore, did not deprive the citizens of Rhode Island of something to which they were entitled. Because all but one of the legislation identified by the Government was "broad-based legislation involving general health care issues of public interest,"[3] Celona's participation as to those bills was

[2] The Ethics Commission determined that participation in "[g]eneral legislation relating to elderly affairs, nursing home issues and hospital regulations" was permissible under R.I. Gen. Laws § 36-14-7(b), because "any benefit or detriment accruing to the Senator and/or the Village/affiliates would affect them to no greater extent than any other similarly situated members of a significant and definable group." Id.

[3] The evidence showed that House Bill 99-H 5917, the Bone Marrow legislation, nominally related to Roger Williams Hospital. Representative Barr testified, however, that the bill did not have any direct impact on Roger Williams Hospital, financially or otherwise. Moreover, Celona's own testimony established that his involvement in regard to that Bill amounted to inquiring and being informed about a modest error in the Bill. There was no evidence of any improper lobbying or voting in regard to that Bill.

precisely what the Ethics Commission had authorized.[4] As such, Celona was expressly permitted by the Ethics Commission to fully participate and vote in this legislation, provided he made Section 6 disclosures when necessary. Thus, Celona's involvement with these bills simply cannot support an honest services fraud conviction.

### C. The Jury Charge Was Erroneous

Urciuoli is entitled to judgment of acquittal, or, in the alternative, a new trial because the jury charge was erroneous and prejudicial. See United States v. Malpeso, 115 F.3d 155, 166 (2d Cir. 1997) ("An erroneous jury instruction requires a new trial unless the error is harmless."); see also United States v. Soto-Silva, 129 F.3d 340, 347 (5th Cir. 1997) (reversing and remanding conviction on one count because of erroneous jury charge) and United States v. Wilkerson, 361 F.3d 717, 732 (2d Cir. 2004) ("A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law.") (citations omitted). Not only did the jury charge fail to include instructions that were accurate, lawful and critical to the jury's deliberations, but also it misstated the law. Urciuoli submitted twenty-two (22) proposed jury instructions to the Court. The Court refused to give Urciuoli's Proposed Instruction No. 15[5] and Proposed Instruction No. 13.[6]

---

[4] The Alzheimer's legislation affected equally all hospitals and nursing homes in Rhode Island. See Government Trial Exhibit No. 120. The Conversion legislation affected equally all hospital conversions involving for-profit and not-for-profit corporations. See Government Trial Exhibit Nos. 122 and 306. The Moratorium legislation never made it to vote and Celona recused himself with respect to its companion bill. See Government Trial Exhibit Nos. 290 and 291. The Cancer Council legislation affected equally all hospitals and other cancer care providers in Rhode Island. See Government Trial Exhibit No. 273. The PILOT legislation extended beyond the health care industry to all tax-exempt entities in Providence – including all hospitals, universities, churches and public interest organizations, to name a few. See Exhibit K, in Appendix of Exhibits to Memorandum of Law in Support of Defendant Urciuoli's Motion to Dismiss, filed on April 14, 2006. The Ovarian Cancer legislation was not even targeted at hospitals or health care facilities. See Exhibit M, in Appendix of Exhibits to Memorandum of Law in Support of Defendant Urciuoli's Motion to Dismiss, filed on April 14, 2006.

[5] Proposed Instruction No. 15 (SCHEME TO DEFRAUD) read as follows:
In order for there to be a scheme to defraud the citizens of Rhode Island of a legislator's honest services, you must consider the Rhode Island Code of Ethics as it pertains to legislators and any applicable rulings by the Rhode Island Ethics Commission, such as the ruling involved in this

Both proposed instructions accurately state the law. Both proposed instructions were sufficiently critical to the jury's deliberations that Urciuoli is entitled to a new trial. See Malpeso, 115 F.3d at 166; Soto-Silva, 129 F.3d at 347; Wilkerson, 361 F.3d at 732. Furthermore, the instructions that the Court did give permitted the jury to convict the defendants for conduct that is beyond the scope of the recognized bases for conviction under the honest services fraud doctrine. The jury

---

case. Because Rhode Island law expressly permits a legislator to participate and vote on legislation where the legislator has a possible conflict of interest under some circumstances, you must consider whether the alleged scheme in this case violates applicable Rhode Island Ethics statutes and the Ethics Opinion in this case.

R.I. Gen. Laws § 36-14-7(b) states that a person subject to the Rhode Island Code of Ethics, such as John Celona, does not have an interest which is in substantial conflict with the proper discharge of his duties in the public interest and of his responsibilities as prescribed by the laws of this state, if any benefit or detriment accrues to him or any business associate, or any business by which the person is employed or which the person represents, as a member of a business or group, or of any significant and definable class of persons within the business or group, to no greater extent than any other similarly situated member of the business or group, or of the significant and definable class of persons within the business occupation or group.

The Rhode Island Ethics Commission expressly permitted Celona to "*fully participate and vote*" on matters concerning "broad-based legislation involving general health care issues of public interest," so long as he filed a § 6 Notice disclosing the potential conflict of interest. It determined that Celona's participation in "[g]eneral legislation relating to elderly affairs, nursing home issues and hospital regulations" was permissible under R.I. Gen. Laws § 36-14-7(b), because "any benefit or detriment accruing to the Senator and/or the Village/affiliates would affect them to no greater extent than any other similarly situated members of a significant and definable group."

In other words, the Ethics Commission determined that, notwithstanding Celona's relationship with RWMC, Celona's participation in "broad-based legislation involving general health care issues of public interest" was a permissible conflict of interest and that Celona's participation in broad-based, general health care legislation, therefore, did not deprive the citizens of Rhode Island of something to which they were entitled.

Therefore, if you find that Celona's involvement in one or more of the legislative bills referenced in the Indictment affected RWMC or any of its affiliates no more or no less than other similar entities, then you cannot find a violation of the honest services mail fraud doctrine based on Celona's participation in that legislation.

[6] Proposed Instruction No. 13 (SCHEME TO DEFRAUD) read as follows:
The scheme to defraud in this case is a scheme to defraud the public of their rights to a state legislator's honest services. Therefore, you must find that the scheme was intended to deprive the citizens of Rhode Island of the legislator's honest performance of services as a legislator. Thus, the object of the scheme must be his performance of his legislative duties; i.e., scheduling hearings, assigning bills to the hearing calendar and subsequent executive sessions, advocating bills at executive sessions, guiding and taking other action to advance bills through the Committee, and voting on legislation.

was instructed that the honest services fraud doctrine covered conduct performed "under the cloak" of Senator Celona's official capacity. This misstates the law, as it goes clearly beyond the scope of what is deemed honest services mail fraud. See Sawyer I, 85 F.3d at 729 n. 12 ("For the Government to establish [requisite intent] it must prove that the defendant intended to influence the legislator in his "*official action.*") (emphasis added). Urciuoli is entitled to a new trial on this basis.

Furthermore, the Court's refusal to instruct the jury in accordance with Urciuol's Proposed Instruction No. 13 raises the prospect that Urciuoli, and Driscoll, were convicted based on conduct that does not violate the honest services doctrine because it did not involve official action. The government advanced three theories to support its honest services mail fraud theory; i.e., the rescue run theory, the insurance meeting theory, and the legislation theory. Putting aside for the moment Urciuoli's objection to the legislation theory based on R.I. Gen. Laws § 34-14-7(b) of the Rhode Island Ethics Code, the remaining two theories – rescue runs and the insurance meetings -- do not involve any official legislative action on the part of Celona. Accordingly, the evidence regarding those two theories cannot support an honest services mail fraud conviction. See Bloom, 149 F.3d at 649; Rabbitt, 583 F.2d at 1024. Because the Court refused to instruct the jury based on the law set forth in Urciuoli's Proposed Instruction No. 13, there is the strong possibility that Urciuoli, and Driscoll, were convicted based on evidence of conduct that does not violate the honest services mail fraud doctrine as a matter of law. Accordingly, they are entitled to a new trial. See Yates v. United States, 354 U.S. 298, 312 (1957) ("In…circumstances [where the jury has been charged with a misstatement of the law] we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."); see also

United States v. Gallishaw, 428 F.2d 760, 763-64 (2d Cir. 1970) (ordering new trial where court could not tell if verdict was properly or improperly reached in face of erroneous supplemental jury charge); United States v. Hoffer, 680 F.Supp. 673, 679 (S.D.N.Y.) (court vacated conviction and granted new trial, concluding that erroneous jury instruction allowed jury to convict defendant on an impermissible ground, thereby denying him his right to due process of law).

### D. The Thompson Memorandum and the Government's Actions Violated Urciuoli's Sixth Amendment Right to Counsel and His Fundamental Right to Fairness in a Criminal Proceeding

Urciuoli is entitled to judgment of acquittal, or, in the alternative, a new trial, because the Government has engaged in actions that have interfered with both his Sixth Amendment right to be represented how he chooses and his fundamental right to fairness in a criminal proceeding. See United States v. Stein, 435 F.Supp.2d 330, 356-65 (S.D.N.Y. 2006) (holding that Thompson Memorandum's provision regarding the advancement of legal fees fails strict scrutiny because it is not narrowly-tailored to achieve a compelling objective, and that a criminal defendant has a fundamental constitutional right to obtain and use resources lawfully available to him in order to prepare a defense, free of knowing or reckless government interference). There is no doubt that the Thompson Memorandum and, in particular, its provision regarding the advancement of legal fees, drove RWMC to enter into a Deferred Prosecution Agreement with the Government, terminate Urciuoli, and sever his rights to advancement of legal fees. It is impossible to qualitatively assess at this time the affect on the criminal process of the Government's interference. Rather, the nature of the rights at stake is so important and fundamental that interference with them contaminates the entire criminal process – from beginning to end. See Stein, 435 F.Supp.2d at 370. No prejudice is required where, as here, the defect is structural –

i.e., a defect that affects and contaminates the entire criminal proceeding. Arizona v. Fulminante, 499 U.S. 279, 307-10 (1991); Stein, 435 F.Supp.2d at 370.

**F. The Court's Evidentiary Rulings Were Erroneous**

Lastly, Urciuoli is entitled to judgment of acquittal, or, in the alternative, a new trial, in light of the Court's erroneous evidentiary rulings. At trial, the Court permitted the Government to ask questions of James McGuirk and other hospital employees along the lines of, "Did you know that Celona was working for Roger Williams Hospital?" and "Did you know Celona worked on legislation?" Witnesses were allowed to answer such questions over the objection of defense counsel. Aside from being improperly leading, such questions were susceptible to two reasonably plausible interpretations, one being completely benign, the other criminal. For example, the question, "Did you know Celona was working on legislation?" could be understood to refer to his untainted, legitimate legislative efforts, or to an illegal quid pro quo scenario. As such, this type of questioning was misleading, prejudicial and confusing, not only to the jury, but also to the witnesses, themselves. The prejudice is magnified by the complete absence of evidence establishing that Celona was paid for the purpose of influencing his role as a legislator. Because such questioning was utilized repeatedly by the Government, and went to the heart of its case, it likely impacted the jury's verdict.

## CONCLUSION

In light of the foregoing, Urciuoli is entitled to judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or, in the alternative, a new trial pursuant to Federal Rule of Criminal Procedure 33.

Respectfully submitted,

ROBERT A. URCIUOLI

By his Attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

Richard M. Egbert (MA BBO #151800)
*Pro Hac Vice Counsel*
Richard Egbert Law Offices
99 Summer Street
Suite 1800
Boston, Massachusetts 02110
(617) 737-8222
(617) 737-8223 (fax)
regbert@egbertlaw.com

Dated: November 7, 2006

**CERTIFICATION**

I hereby certify that on November 7, 2006, a copy of the foregoing Memorandum of Law in Support of Robert A. Urciuoli's Motion For Judgment of Acquittal, or, in the Alternative, a New Trial was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com