**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-01-T** |
| | : | |
| **ROBERT A. URCIUOLI and** | : | |
| **FRANCES P. DRISCOLL** | : | |

# UNITED STATES' OBJECTION TO DEFENDANT URCIUOLI'S MOTION FOR A RULE 29 POST-VERDICT JUDGMENT OF ACQUITTAL AND A NEW TRIAL PURSUANT TO RULE 33

On November 7, 2006, Defendant Robert Urciuoli filed a Motion For a Rule 29 Post-Verdict Judgment of Acquittal and New Trial Pursuant to Rule 33. For the reasons stated in the accompanying memorandum of law filed simultaneously herewith, the United States objects to the motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: December 5, 2006

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel. 401-709-5000
Fax 401-709-5001
luis.matos@usdoj.gov

/S/ DULCE DONOVAN
DULCE DONOVAN
ASSISTANT U.S. ATTORNEY
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel. 401-709-5000
Fax 401-709-5001
dulce.donovan@usdoj.gov

**CERTIFICATE OF E-SERVICE**

I hereby certify that on this 5th day of December, 2006, I caused the United States Objection to Defendant Urciuoli's Motion for a Rule 29 Post-Verdict Judgment of Acquittal and a New Trial Pursuant to Rule 33 and Supporting Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

Kevin J. Bristow, Esq.
501 Turks Head Building
Providence, RI 02903

Michael J. Connolly
Kristie Passalacqua, Esq.
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

/S/ DULCE DONOVAN
DULCE DONOVAN
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **CR 06-01-T** |
| | : | |
| **ROBERT A. URCIUOLI, and** | : | |
| **FRANCES P. DRISCOLL** | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT URCIUOLI'S MOTION FOR A RULE 29 POST-VERDICT JUDGMENT OF ACQUITTAL AND A NEW TRIAL PURSUANT TO RULE 33**

## I. Introduction

On October 13, 2006, after a three-and-a-half week trial, a jury convicted Defendant Robert Urciuoli of one count of conspiracy to commit honest services mail fraud and thirty-five counts of mail fraud. Presently, Urciuoli moves for acquittal under Federal Rule of Criminal Procedure 29 and for a new trial pursuant to Rule 33. Urciuoli makes a number of arguments in support of his motion, none meritorious. Urciuoli's contentions are addressed below seriatum.

## II. Factual and Procedural Background

The Indictment charged Defendants Robert A. Urciuoli, Frances P. Driscoll, and Peter J. Sangermano with conspiracy to commit honest services mail fraud, Defendant Driscoll with one count of honest services mail fraud and Defendants Urciuoli and Sangermano with thirty-six counts of honest services mail fraud. Generally, the Indictment charged that from August 1997, through in or about January 8, 2004, Defendants devised a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment. Indict. ¶ 96. The jury convicted Defendant Urciuoli of conspiracy

and thirty-five counts of honest services mail fraud. The jury acquitted Defendant Sangermano of all counts and convicted Defendant Driscoll of the one count of mail fraud with which she was charged.

## III. Argument

### A. Rule 29 Standard

As this Court is well aware, in evaluating a defendant's Rule 29 motion for judgment of acquittal, the Court must "survey the totality of the evidence, scrutinizing the record in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the verdict. So long as the record, read in this fashion, would have allowed a rational jury to conclude beyond a reasonable doubt that [the defendant] was guilty of the offenses charged," the motion must be denied. United States v. Amparo, 961 F.2d 288, 290 (1st Cir. 1992) (citations omitted). See also United States v. Hernandez, 146 F.3d 30, 32 (1st Cir. 1998).

### B. Rule 33 Standard

If the Court finds the evidence presented at trial sufficient to sustain the jury verdict against Urciuoli, he asks the Court alternatively pursuant to Rule 33 to grant him a new trial because "the interest of justice so requires." Fed. R. Crim. P. 33(a). The Rule 33 remedy of a new trial is "rarely used." United States v. Andrade, 94 F.3d 9, 14 (1st Cir. 1996). Granting a Rule 33 motion is "warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." Id. (internal quotations omitted).

### C. A Public Official's Official Actions are Not Limited to Legislative Actions

Urciuoli's first argument in support of his motion is one he has urged since the commencement of the case – that he cannot be convicted for conduct which does not deprive the

public of the official **legislative** actions of John Celona. Incredibly, in making this argument, Urciuoli fails to acknowledge the First Circuit's recent decision in United States v. Potter, 463 F.3d 9 (1st Cir. 2006). In Potter, the First Circuit rejected the defendants' position that the government needed to prove that they sought for House Speaker John Harwood to misuse his "official power." 463 F.3d at 18. The court stated "[i]t is common knowledge that powerful legislative leaders are not dependent on their own votes to make things happen. The honest services that a legislator owes to citizens fairly include his informal and behind-the-scenes influence on legislation." Id. at 18.

In addition, in United States v. Boots, 80 F.3d 580, 592 (1st Cir. 1996), the Circuit considered whether a public official's "official" actions can encompass more than what is specified in an official's formal duties. One of the issues in Boots, a Travel Act case, was whether the intended recipient of a bribe's formal duties encompassed enforcing federal or Canadian law.[1] The court concluded they did not. Nevertheless, the court also found that the police chief's "official" duties did – "an honest municipal police officer would be expected to keep his eyes open for and report federal and . . . foreign criminal violations; receiving something

---

[1] The Interstate Travel Act punishes "[w]hoever travels in interstate or foreign commerce ... with intent to ... promote, manage, establish, carry on, or facilitate ... any unlawful activity, and thereafter performs or attempts to perform" such an act. 18 U.S.C. § 1952(a). Bribery in violation of state law is an "unlawful activity" within § 1952. See United States v. Arruda, 715 F.2d 671, 681 (1st Cir.1983). The Maine bribery statute, charged in Boots, provided in relevant part:

> 1. A person is guilty of bribery in official and political matters if:
>
> A. He promises, offers, or gives any pecuniary benefit to another with the intention of influencing the other's action, decision, opinion, recommendation, ... or other exercise of discretion as a public servant . . . .

17-A M.R.S.A. § 602(1)(A).

of value to turn a blind eye would limit his discretion in his official capacity as tribal police chief." Id. at 592. See also United States v. Holzer, 816 F.2d 304, 308 (7th Cir. 1987) (suggesting that state legislator's official duties for purposes of making out an honest services fraud case might encompass mere recommendations by that public official where his position "gives his recommendations a weight independent of their intrinsic merit").[2]

At trial, there was abundant evidence illustrating that Urciuoli intended that John Celona be influenced in exercising his official actions in favor of Roger Williams Medical Center ("RWMC"). For example, when discussing the ambulance run issue with Dr. Terry Patinkin, Dr. Patinkin testified that Urciuoli remarked that he was going to handle the rescue run problem "politically." Urciuoli tasked Celona with increasing the number of rescue runs to the hospital

---

[2] Specifically, the court in Holzer was expressing disagreement over the Eighth Circuit's conclusions in United States v. Rabbitt, 583 F.2d 1014, 1024-26 (8th Cir. 1978), a case cited by Urciuoli for the proposition that actions which a public official is alleged to have undertaken must be ones involving the duties of the official's public office. In Rabbitt, the Eighth Circuit reversed Rabbitt's honest services mail fraud conviction because the awarding of contracts over which Rabbitt was alleged to possess some influence, were awarded on a merit basis by individuals over whom Rabbitt possessed no authority. 583 F.2d at 1026. The Holzer court "doubt[ed] the soundness" of the Eighth Circuit's reasoning in Rabbitt and stated that "[t]he fact that the defendant did not control the award of contracts should not be decisive if his position as a state legislator gives his recommendations a weight independent of their intrinsic merit." 816 F.3d at 309.

Urciuoli also cites United States v. Bloom, 149 F.3d 649, 656 (7th Cir. 1998), as further support for his contention that an honest services fraud case must involve an individual's official duties. Bloom was a part-time city alderman, who, in his private life, was a lawyer. In his private-lawyer capacity, Bloom had counseled clients on how to purchase properties at city auction without paying the deficient property taxes owed on the properties. The government argued that as a fiduciary of the city, even when acting in his private-lawyer capacity, Bloom owed Chicago his undivided loyalty. The court refused to accept the government's honest services fraud theory of the case because Bloom's improper counseling of his clients had nothing to do with his position as an alderman. Bloom, 149 F.3d at 654-55. Thus, Bloom is distinguishable from the present case where the evidence at trial demonstrated that Urciuoli intended to influence Celona in the performance of his official duties as a State Senator.

and, as Celona testified, he gained entrance to meetings with North Providence officials as "Senator" Celona.

The testimony at trial also demonstrated that Celona's conduct in setting up and hosting meetings with Blue Cross and Blue Shield (BC/BS) and United Health Care involved Celona's official actions as a State Senator. Celona testified that at some point prior to January 30, 2003, Urciuoli asked Celona to set up a meeting with Ronald Battista because Celona was the Chairman of the Corporations Committee and the majority of bills of interest to BC/BS were before his committee. Thus, Urciuoli would expect Battista to meet because of that. Celona also testified that he held the meeting at his state house office because of the "power of the office." Battista, the head of BC/BS at the time, testified that he attended the Celona meeting in part because he was concerned about political ramifications. The fact that the meeting was being conducted in Senator Celona's office confirmed in Battista's mind that there would be political ramifications if RWMC went under. Battista testified that he attended the meeting to avoid a political solution to the problem being "rammed down our throat."

The testimony illustrated a similar picture with respect to United Health Care. Celona testified that Urciuoli asked him to set up a meeting with United to obtain the proper reimbursement rate for RWMC because "the kid," i.e. Steve Farrell, "doesn't get it." At Urciuoli's request, Celona contacted Kelly Sheridan, a lobbyist for United and informed him that contract negotiations between United and RWMC were not going well. Sheridan testified that at the time Celona was the Chairman of the Corporations Committee and that United had many bills before his committee. Celona asked Sheridan to set up a meeting with Urciuoli and Farrell. Sheridan testified that he set up the meeting because he did not think it was appropriate to refuse

a meeting requested by a public official.

The evidence described above shows that the actions which Celona undertook at Urciuoli's behest in relation to the ambulance runs, BC/BS, and United, were actions encompassed within the broad definition of a public official's "official" actions endorsed by the First Circuit in Potter and Boots. Moreover, the conviction is also amply supported by actions that Celona took concerning the Cancer Council legislation and PILOT legislation, which Urciuoli does not dispute context constituted official actions. Hence, for the purposes of a Rule 29 motion, Urciuoli's conviction is amply supported by the record.

**D. The Ethics Commission Opinion Does Not Shield Urciuoli from Liability for the Crime of Conspiracy or the Substantive Crime of Honest Services Mail Fraud**

As he has in previous filings, Urciuoli urges this Court to find that Celona's actions conformed to those permitted by the Ethics Commission and thus, Urciuoli cannot be found guilty of the crime of honest services mail fraud. The Court has previously rejected this argument and the evidence presented at trial provides no basis for the Court to deviate from its prior rulings.

The evidence at trial demonstrated that Urciuoli failed to disclose to the Ethics Commission that he was hiring Celona to perform RWMC's political bidding. The April 6, 1998, letter to the Ethics Commission failed to reveal that Celona was working for RWMC, being paid by RWMC and reporting to Driscoll and Urciuoli and certainly did not reveal that Celona had already been working to "kill" legislation that RWMC opposed. As a result, Katherine D'Arezzo testified, the Ethics Commission did not conduct an analysis of the official actions which Celona could perform based on an employment relationship with RWMC. Thus,

Urciuoli cannot rely on the Ethics Commission opinion in defense of his actions.

Moreover, even if Celona's actions fully conformed to State ethics laws, this fact would not be determinative of the question of whether Urciuoli possessed the requisite intent to commit mail fraud. In Sawyer v. United States, 239 F.3d 31, 39 (1st Cir. 2001) ("Sawyer II"), the Circuit made clear that "whether Sawyer actually violated state laws . . . is irrelevant to our inquiry because honest services mail fraud does not depend upon a violation of state law. Indeed, the duty to disclose a conflict of interest, the violation of which indicates an intent to deceive in these circumstances, arises from common law as well as from Massachusetts statute." Sawyer II, 239 F.3d at 48. Thus, since a violation of state law cannot serve as a basis for finding that the mail, wire, and honest services fraud statutes **were** violated, it follows that Celona's alleged conformance with State ethics laws does not demonstrate that Urciuoli **did not** commit the crime of honest services mail fraud. Whether Urciuoli believed Celona's actions were in conformance with State ethics laws may have been relevant to the question of whether Urciuoli possessed the requisite intent under the mail fraud statute, but in this case no evidence was presented on the issue of whether Urciuoli believed that Celona's actions conformed with State law.[3] Moreover, the United States need not demonstrate that Urciuoli actually influenced a public official in his duties, only that he intended to. Sawyer II, 239 F.3d at 46-47. Before the jury was ample evidence that Urciuoli intended for Celona to take official actions to benefit RWMC.

For example, as discussed above, the evidence at trial demonstrated that Urciuoli directed Celona to use his position as a State senator to put pressure on health insurers doing business

[3] However, counsel made the argument to the jury. The jury's verdict indicates this argument did not prevail.

with RWMC. The evidence also clearly demonstrated that Urciuoli directed Celona to take official actions in his capacity as a State Senator to increase the number of ambulance runs to RWMC. In addition, in early 1998, Celona testified that Urciuoli informed him that he was opposed to Senate Bill S-2796, which would have prohibited officers and directors from a non-profit hospital from serving on the board of a newly converted for-profit hospital because RWMC was interested in merging with a for-profit hospital and the bill would create a new board of directors. Moreover, Celona testified that Urciuoli instructed Celona to work to defeat Cancer Council legislation because it was to be run by a doctor who had previously been on staff at RWMC and for whom Urciuoli felt animosity. Urciuoli also expected the Council to have a negative impact on the finances of the Hospital. These bills, S-2796 and the Cancer Council legislation, were bills which Urciuoli informed Celona were particularly detrimental to RWMC and which he directed him to take action on in his capacity as a State Senator.

**E. The Court Did Not Err in Rejecting Urciuoli's Proposed Jury Instructions**

In his motion for judgment of acquittal, or in the alternative for a new trial, Urciuoli contends that the Court erred in refusing to submit to the jury his proposed instructions numbers 13 and 15. Urciuoli's proposed instruction Number 13 requested that the Court inform the jury that in order to find a scheme to defraud the public of John Celona's honest services, the object of the scheme must relate to the performance of the legislator's "legislative duties." Urciuoli's proposed instruction number 15 would have instructed the jury concerning alleged findings of the Rhode Island Ethics Commission concerning Celona's conduct. Specifically, the instruction would have informed the jury that Celona's involvement in broad-based health care legislation could not make out an honest services mail fraud case.

The Court did not err in refusing Urciuoli's proposed instructions because neither is a correct statement of the law. As discussed above, the types of honest services that a public official owes the public are not limited to official legislative actions. See Potter, 463 F.3d at 18; Boots, 80 F.3d at 592; Holzer, 816 F.2d at 308. At trial, there was ample evidence presented that Urciuoli intended to influence Celona in the performance of his official actions and that Celona took official actions at Urciuoli's request which were to benefit the financial and political interests of RWMC. Not only did Celona call meetings in his State House office with the CEO's of RWMC's two major insurers, he took repeated actions in his capacity as a State Senator which were designed to influence legislation which was of interest to RWMC. In addition to the efforts discussed above which Celona undertook relating to S-2796 and the Cancer Council legislation, Celona took official actions to further RWMC's position on PILOT legislation and Bone Marrow legislation.

The Court also properly declined to provide Urciuoli's proposed instruction 15. Instruction number 15 would have informed the jury that if Celona's actions conformed with State ethics laws, then Urciuoli could not have been found guilty of honest services mail fraud. Whether Urciuoli believed Celona's actions to have violated State ethics laws may have been relevant to the question of whether Urciuoli possessed the requisite intent under the mail fraud statute, but it would have been improper to suggest that Celona's conformance with State law necessarily meant that Urciuoli could not be found guilty of honest services mail fraud. See Sawyer II, 239 F.3d at 48. Accordingly, the Court's refusal to submit Urciuoli's proposed instructions to the jury was not erroneous.

### F. Urciuoli Is Not Entitled to a New Trial Based on the United States' Violation of his Sixth Amendment Right to Counsel

As he did in his second motion to dismiss, Urciuoli urges that the United States has violated his Sixth Amendment right to counsel because it entered into a Deferred Prosecution Agreement ("DPA") with RWMC. He claims he is entitled to judgment of acquittal, or alternatively a new trial, based on the reasoning expressed by the district court in United States v. Stein, 435 F. Supp. 2d 330, 356-65 (S.D.N.Y. 2006), concerning the Thompson memorandum.

The Court has previously addressed Urciuoli's Thompson memorandum argument at length at the conclusion of the hearing on his second motion to dismiss. In citing Stein, Urciuoli fails to acknowledge that in addition to this Court, at least one other district court has rejected the Stein court's reasoning as unpersuasive. See United States v. Stodder, 2006 WL 3066196 (C.D. Cal. Oct. 4, 2006) (attached). The Stein case is distinguishable from the instant case on a number of grounds. First, as the Court discussed at length in its decision denying Urciuoli's second motion to dismiss, Urciuoli can in no way demonstrate that his right to counsel has been prejudiced by RWMC's decision to stop paying his legal fees. After the vigorous defense launched by his two counsel at trial who extensively cross-examined the United States' witnesses and displayed intimate knowledge of the many, many documents introduced during the course of the case, Urciuoli has absolutely no basis to suggest that his right to counsel has been compromised. See Stodder, 2006 WL 3066196, * 2 (distinguishing Stein on basis that defendant could not demonstrate that his ability to present defense was prejudiced). Second, Urciuoli cannot show that the Thompson memorandum motivated RWMC to enter into the DPA, terminate him, and cease paying his legal fees. See Id. The evidence of record demonstrates

that RWMC's guilty plea was voluntary and that the United States explicitly excluded from the DPA negotiations the issue of Urciuoli's employment status. Ex 1. Third, the Stein court erred in concluding that the Thompson memorandum's provisions are mandatory. None of the Thompson memo's provisions are mandatory and the document explicitly says so. Deputy Attorney General Thompson's introductory letter states that the attached set of principles are intended to "guide" Department of Justice prosecutors. Ex.2. Fourth, the district court in Stein ignored the long-standing principle that "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." Caplin v. Drysdale Chartered, 491 U.S. 617 , 626 (1989). All the Constitution protects is Urciuoli's right to be represented by the counsel of his choice. He was throughout the case and his motion should be denied.

**G. Urciuoli Is Not Entitled to a New Trial Based on "Confusing" Questions Posed to Witnesses**

Lastly, in support of his motion for a new trial, Urciuoli complains that the Court permitted counsel for the United States to ask leading, confusing questions such as "Did you know that Celona was working for Roger Williams Hospital?" and "Did you know Celona worked on legislation?" Urciuoli maintains that because these questions could have been misunderstood by the witnesses, it would be a miscarriage of justice to allow the jury's verdict to stand.

Urciuoli's leading question argument fails primarily because the questions to which he objects were not leading. The questions posed addressed the issue of deception – were people

aware or not aware that Celona was working for the Hospital related to whether Urciuoli successfully deceived the public concerning Celona's relationship with RWMC. There were no other ways to ask the questions than the manner in which counsel for the United States posed them. The typical risk inherent in leading questions is that the examiner will supply the witness with a false memory. See e.g. United States v. Hansen, 434 F.3d 92, 105 (1st Cir. 2006). The questions posed by counsel do not present that risk. The Court, faced with defense objections to these questions, notably presented for the first time days after the trial began, did not err in permitting the questioning. Id. ("Because it is so case-specific, the trial judge is best situated to strike a practical and fair balance and is afforded extensive discretion over the phrasing of questions." (internal quotations omitted).) In any event, defense counsel's cross-examination of every government witness was extensive, which enabled the jury to appropriately assess the witness's testimony. Id.

## IV. Conclusion

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Urciuoli's post-trial motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: December 5, 2006

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel. 401-709-5000
Fax 401-709-5001
luis.matos@usdoj.gov

/S/ DULCE DONOVAN
DULCE DONOVAN
ASSISTANT U.S. ATTORNEY
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel. 401-709-5000
Fax 401-709-5001
dulce.donovan@usdoj.gov

**CERTIFICATE OF E-SERVICE**

I hereby certify that on this 5th day of December, 2006, I caused the United States Memorandum in Support of Its Objection to Defendant Urciuoli's Motion for a Rule 29 Post-Verdict Judgment of Acquittal and a New Trial Pursuant to Rule 33 to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

Kevin J. Bristow, Esq.
501 Turks Head Building
Providence, RI 02903

Michael J. Connolly
Kristie Passalacqua, Esq.
Hinckley Allen Snyder LLP
28 State Street
Boston, MA 02109

/S/ DULCE DONOVAN
DULCE DONOVAN
ASSISTANT U.S. ATTORNEY