Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3066196 (C.D.Cal.)
**(Cite as: 2006 WL 3066196 (C.D.Cal.))**

3

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
USA
v.
STODDER, et al. (John Stodder, Douglas R. Dowie)
No. 2:05-CR-00027.

Oct. 4, 2006.

CRIMINAL MINUTES--GENERAL

FEESS, J.

Interpreter None

| None | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter/Recorder, Tape Nos. | Assistant U.S. Attorney. |
| U.S.A. v. Defendant(s) | Present Cust. Bond. | Attorneys for Defendants. Present App. Ret. |

Proceedings: (In Chambers)

*ORDER RE: MOTION TO DISMISS*

*A. INTRODUCTION*

*1 In this criminal case, Defendant Douglas Dowie was convicted of conspiracy and multiple counts of wire fraud for his role in the fraudulent over billing of clients of his employer, Fleishman-Hillard, Inc. ("F-H"). The Court has already considered and denied the Rule 29 and Rule 33 motions of Defendant Dowie and his co-defendant John Stodder. Now Defendant Dowie, but notably not Defendant Stodder, moves to dismiss the indictment on the grounds that the Government's Thompson Memorandum, a Department of Justice policy memorandum which identifies numerous factors to be considered in determining whether a corporate defendant should be indicted, violated his Fifth Amendment right to due process and his Sixth Amendment right to assistance of counsel. For the reasons stated in the Government's opposition, this Court's comments at the hearing, and those discussed briefly below, the motion is DENIED. [FN1]

FN1. The Court has reviewed the Anderson Declaration and concludes that it can resolve the present motion without considering any of the information contained in that document. Accordingly, the request to cross-examine Mr. Anderson is DENIED and no further hearing on this matter will be conducted.

*B.* BACKGROUND FACTS [FN2]

FN2. The Court wishes to emphasize that it has relied primarily on the exhibits submitted by Defendant Dowie in support of his motion as the basis for this brief background statement. None of the facts stated in this brief order are based on anything in the Anderson Declaration.

In about April 2004, the Government commenced an investigation into the allegations that led to the indictment charging Defendants Dowie and Stodder with fraud. (Dowie Motion, at 2.) Between the initiation of the investigation and the June 2005 return of the indictment naming Dowie as a defendant, F-H advanced funds to pay for Defendant Dowie's representation by the law firm of Gibson, Dunn & Crutcher. (Dowie Motion, at 2.) F-H also agreed to pay Defendant Stodder's defense up to an agreed upon ceiling. (Dowie Motion, Exh. C [Beck Decl.] ¶ 13.)

In January 2005 a grand jury returned an indictment charging only Defendant Stodder with wire fraud, but F-H continued to pay his fees. (Dowie Motion, Exh. C ¶¶ 7, 13.) At about the same time, the relationship between Defendant Dowie and F-H became extremely adversarial when

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F-H terminated Defendant Dowie's employment. (Dowie Motion, Exh. C ¶ 16.) At that time, F-H's employment counsel reported that he had spoken with Dowie's labor attorney who demanded a large severance payment, threatened to file suit on Dowie's behalf, and reported that Dowie planned to go to the Los Angeles Times with information regarding where "the bodies were buried." (Id.) In or about March, Defendant Dowie filed suit against F-H for wrongful termination. (Dowie Motion, Exh. C ¶ 5.) The complaint was apparently delivered to F-H before it was filed (Dowie Reply, Exh. H), and was formally served some time in April 2005. On June 2, 2005, the Grand Jury returned a First Superseding Indictment which named Dowie as a defendant and co-conspirator of Defendant Stodder.

Defendant Dowie now contends that F-H ceased paying his legal bills due to the pressure placed on F-H by the Thompson Memorandum. The Thompson Memorandum, a fifteen page single spaced document, revises portions of the Department of Justice's Principles of Federal Prosecution relating to business organizations. It states as its main purpose the enhancement of "efforts against corporate fraud," and includes revisions designed to "increase[ ] emphasis on and scrutiny of the authenticity of a corporations's cooperation." The memorandum expresses concern that corporations and other business entities often pretend to cooperate with the government while taking steps to impede exposure of the full scope of corporate malfeasance. Among the factors to be considered, according to the memorandum, is the nature and extent of the corporation's cooperation and its voluntary disclosure of wrongdoers. As an aspect of that factor, the memorandum suggests that prosecutors consider the extent to which the corporation appears to be protecting its culpable employees through a variety of means including the advancement of legal fees. It is this portion of the memorandum that provides the basis for this motion.

*C. DISCUSSION*

*2 Defendant Dowie relies almost exclusively on *United States v. Stein,* 435 F.Supp.2d 330 (S.D.N.Y.2006), an out-of-circuit district court decision, for the proposition that the Thompson Memorandum violates the Fifth and Sixth Amendments to the United States Constitution. For a variety of reasons, the Court finds Defendant's reliance misplaced.

First, *Stein* involved a motion brought pre-trial where the trial court found that the violation was similar to the denial of a defendant's right to counsel of his choice where prejudice is presumed. *United States v. Gonzalez-Lopez,* 126 S.Ct. 2557, 2561-62 (2006). The court therefore found that the violation was complete and was subject to corrective action to assure that the defendants' ability to present their defense of choice would not be compromised. Here, the motion is made post-trial and the Court is in a position to determine that no constitutional violation, and therefore no prejudice, has occurred. In this case, F-H's decision to cease paying Defendant Dowie's legal bills did not result in a change of counsel. On the contrary, four attorneys from Gibson, Dunn & Crutcher continued to vigorously defend that case on Dowie's behalf, appearing daily in court during the entire trial. There was no evidence of any corner-cutting either. Counsel conducted lengthy, thorough cross-examinations of all Government witnesses in ways that repeatedly demonstrated that they were intimately familiar with the massive number of documents relevant to the charges against their client. In short, Defendant Dowie received as good a defense as anyone in his circumstances could have possibly received. Thus, even assuming that the Government's Thompson Memorandum had some role in F-H's decision to terminate payments to Dowie's lawyers, the memorandum did not deprive Dowie of any of his federal constitutional rights.

Second, the materials submitted by Defendant Dowie in connection with his motion suggest that the Thompson Memorandum did not motivate F-H to terminate payment of his legal fees. Rather, as the facts above indicate, F-H ceased paying for Dowie's legal fees after Dowie had threatened to embarrass the company if he did not receive a substantial severance and after he had filed a civil suit against F-H for wrongful termination. [FN3] At the same time, F-H continued to pay for Defendant Stodder's legal defense despite the supposed in terroram effect of the Thompson Memorandum. Thus, the record indicates that it was Defendant Dowie's strategy and tactics in dealing with F-H, and not the Thompson Memorandum, that motivated F-H to cease funding his criminal defense.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN3. Defendant Dowie's wrongful termination suit was resolved against him on F-H's motion for summary judgment.

Third, the Court finds the *Stein* decision scholarly but ultimately unpersuasive. The Court held that the employee defendants in that case had a substantive due process right to fundamental fairness in the criminal process, which protects against acts by prosecutors that interfere with a defendant's use of resources legally available to him. Therefore, according to that decision, if a state permits or requires an employer to fund the defense of an employee charged with a crime connected in some way to the employee's job duties or performance, any action by the Government that intentionally or recklessly interferes with the exercise of that state-created right violates the Fifth Amendment to the United States Constitution. This Court has found no support for that proposition either in the Supreme Court decisions cited in *Stein* or in any appellate court decisions, including decisions in this circuit. Since this Court does not find the reasoning persuasive, it declines to adopt the Fifth Amendment analysis set forth in the *Stein* decision.

*3 Finally, as to the Sixth Amendment claim, the trial court noted that any impingement on the right to counsel would be improper if the Government were improperly motivated or acted without adequate justification. Conceding that little guidance could be found in the case law regarding the standard to be applied in determining whether such justification existed, the trial court looked to the tort of interference with prospective advantage, where it found the proposition that courts balance the various interests served by the plaintiff and defendant as a means of assessing the propriety of the alleged interference. From that starting point, *Stein* held that employee defendants had an interest in having the resources needed to defend themselves against criminal charges and that the Thompson Memorandum, by discouraging companies from providing their employees with the financial means of exercising their constitutional right to defend themselves, "undermines the proper functioning of the adversary process that the Constitution adopted as the mode of determining guilt or innocence in criminal cases." 435 F.Supp.2d, at 368-69. Again, no case law is cited in support of this conclusion and this Court has found none. Again, because the Court finds the reasoning unpersuasive, it declines to adopt *Stein'* s Sixth Amendment analysis.

*D. CONCLUSION*

The motion to dismiss the indictment is DENIED.

IT IS SO ORDERED.

*It is hereby certified that this document was served by first class mail postage prepaid or by fax or e-mail delivery to counsel (or parties) at their respective address or fax number or e-mail address of record.*

Not Reported in F.Supp.2d, 2006 WL 3066196 (C.D.Cal.)

Motions, Pleadings and Filings (Back to top)

. 2:05CR00027 (Docket) (Jan. 13, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.