UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v. CR No. 06-02-T

ROBERT A. URCIUOLI,
FRANCES P. DRISCOLL,
PETER J. SANGERMANO, JR., and
ROGER WILLIAMS MEDICAL CENTER

**MEMORANDUM OF DECISION**

ERNEST C. TORRES, U.S. District Judge.

**INTRODUCTION**

Shortly before they were found guilty by a jury, defendants Urciuoli and Driscoll made their latest of several attempts to persuade this Court to dismiss the indictment on the ground that the prosecutors and government agents have engaged in what the defendants allege has been egregious misconduct consisting of a "pattern of flagrant discovery abuses . . . withhold[ing] and conceal[ing] exculpatory information . . . and . . . manipulat[ing] the evidence" in violation of their obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This Court denied the motion to dismiss and stated that it would issue a written decision explaining why. This is that decision.

Briefly stated, I find that the defendants' allegations of deliberate concealment and manipulation are unsupported and that their claims are either greatly exaggerated or are based on an

overly expansive view of what constitutes Brady material.

**PROCEDURAL HISTORY**

On January 5, 2006, a grand jury indicted Robert Urciuoli and Frances Driscoll ("the defendants") for mail fraud in connection with an alleged scheme to bribe State Senator John Celona by employing him as a consultant to an entity affiliated with Roger Williams Medical Center.[1]

On February 10, 2006, pursuant to Rule 16 of the Federal Rules of Criminal Procedure and this Court's pre-trial order, the government provided the defendants with approximately 6000 pages of documents, interview reports, and the grand jury testimony of 25 potential witnesses. The government requested reciprocal discovery from the defendants pursuant to Rule 16, but states that it never received anything.

The materials produced by the government included a Form 302 report summarizing statements made by Celona, the government's key witness, during several interviews by FBI agents. The 302 was redacted to exclude statements relating to an investigation into whether Celona had engaged in similar influence peddling schemes with two other entities, CVS and Blue Cross/Blue Shield ("BCBS"). The defendants objected to the redactions and, in April 2006, the government offered to provide them with an unredacted version of

---

[1]Peter Sangermano also was indicted but he was acquitted by the jury.

the Celona 302 provided that the defendants agree to a protective order prohibiting them from discussing the contents of the 302's with third parties. The defendants did not agree to that condition and, instead, moved to compel production of the unredacted Celona 302, as well as all notes taken by government agents and attorneys "in connection with any interviews of witnesses, discussions with their counsel, or regarding any other source of information."

This Court denied the motion to compel production of the unredacted 302 because it was outside the scope of permissible discovery and there was no indication that the redacted information contained exculpatory evidence within the meaning of Brady. However, the Court did instruct the prosecutors to, personally, review the agents' handwritten notes of the Celona interview and to produce any Brady material not previously furnished to defense counsel.

On August 2, 2006, the government provided additional portions of the Celona 302 as well as part of the notes taken by agents during an October 25, 2004 interview of Celona which, indicated Celona's acknowledgment that, he, initially, lied to agents and news reporters when he denied his involvement in the scheme. At that point, the defendants offered to enter into the protective order in order to gain access to the still redacted portions of the Celona 302. At first, the government refused even though it previously had offered to do so but, after prodding by the Court,

the government agreed. The question, later, became moot when Urciuoli's counsel informed the government that he had obtained the unredacted 302 from another source.

On August 30, 2006, a hearing was conducted on the defendants' request to obtain the notes taken by Celona's counsel during Celona's interviews by agents. Several days later, those notes were turned over to the defendants by Celona's counsel.

At the August 30 hearing, the defendants also moved to dismiss the indictment, alleging that the notes of Celona's counsel indicated that Celona had made exculpatory statements that the government had failed to provide to the defendants. The Court directed the government to file a response. In the meantime, because it had become clear that the Celona 302 was a composite of statements made by Celona during a number of different interviews, the Court ordered the government to review all notes taken by agents during all interviews of Celona and to provide any Brady/Giglio material to the defendants by September 5, 2006.

In addition, this Court ordered the government (1) to provide the Defendants with unredacted copies of any individual 302's prepared in connection with each interview of Celona and (2) to provide the defendants with all of Celona's grand jury testimony relating to both this case and the CVS/BCBS investigations. On September 5, 2006, pursuant to that order, the government provided: (1) agents' notes of a September 13, 2004 interview of Celona; (2)

302's relating to interviews of Celona on March 15, 2005, September 3, 2006 and September 4, 2006, and, presumably, all of Celona's grand jury testimony.

Jury impanelment began on September 6, 2006, and the trial commenced on September 11th. Celona began testifying on September 13th and completed his testimony on September 20th.

On September 13, 2006, the defendants supplemented the memorandum in support of their August 30 motion to dismiss and this Court denied the motion on October 13, when guilty verdicts were returned against these defendants.

**ANALYSIS**

In order to prevail on their motion to dismiss the indictment, the defendants must establish that the government violated its obligations under Brady and that the violation rises to a level warranting dismissal.

I. The Legal Principles

A. Brady Violations

The Supreme Court has said that: "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L. Ed. 2d 286 (1999). As this Court repeatedly has stated in previous

rulings made during this case, Brady is not a rule of discovery. Just as the government is not entitled to obtain all of the evidence or information that a defendant has compiled in preparation for trial, Brady does not entitle a defendant to obtain all of the evidence or information that the government has compiled in the course of its investigation or preparation for trial. See Pennsylvania v. Ritchie, 480 U.S. 39, 59, 107 S.Ct. 989, 94 L. Ed. 2d 40 (1987) ("A defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the [government's] files"). Thus, Brady does not require the government to record and provide to defense counsel verbatim accounts of everything that government witnesses or prospective government witness ever said or to provide everything that may be of interest or even useful to defense counsel. Nor does Brady require disclosure of every fact that might be viewed as favorable to a defendant, regardless of its significance. United States v. Bagley, 473 U.S. 667, 675 n.7, 105 S.Ct. 3375, 87 L. Ed. 2d 481 (1985) ("a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor . . ."). Indeed, interpreting Brady in such a manner would create an exception that swallows the rule.

What Brady does require is that the government disclose evidence, in its possession, that is materially exculpatory.

Evidence that is materially exculpatory is "evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings." United States v. Jordan, 316 F.3d 1215, 1252 (11th Cir. 2003) (citing Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L. Ed. 2d 490 (1995) (the "touchstone of materiality is a 'reasonable probability' of a different result"). Brady material includes prior statements by a key government witness that are materially inconsistent with the witness's testimony and other information that materially and adversely reflects on the witness's credibility. United States v. Bagley, 473 U.S. 667 (1985); Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L. Ed. 2d 104 (1972).

In cases where it is not clear whether a particular bit of evidence or information is materially exculpatory, the prosecutor should err on the side of providing the evidence. Kyles v. Whitley, 514 U.S. 419, 439, 115 S.Ct. 1555, 131 L. Ed. 2d 490 (1995) (citing United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L. Ed. 2d 342 (1976)). However, given the fact that defense counsel typically are adamant about not disclosing their strategies, a prosecutor cannot reasonably be expected to know how a particular bit of information or evidence might fit into defense counsels' strategy. See generally United States v. Agurs, 427 U.S. 97, 108 (1976) ("the significance of an item of evidence can seldom be predicted accurately until the entire record is complete").

Requiring such clairvoyance would create a standard that would be impossible for any prosecutor to satisfy.

B. The Dismissal Remedy/Sanction

A prosecutor's failure to strictly comply with the obligations imposed by Brady, whether intentional or unintentional, is a very serious matter. However, dismissal of an indictment is an extreme measure that is warranted only in those very rare cases where a defendant has suffered substantial prejudice that cannot be cured in any other way United States v. Broward, 594 F.2d 345, 351 (2d Cir. 1979), cert. denied, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979) ("[W]e have upheld the dismissal of an indictment only in very limited and extreme circumstances. In such cases, there was a need either to eliminate prejudice to a defendant in a criminal prosecution, where it was impossible to do so by imposition of lesser sanctions . . ."); see also United States v. Diabate, 90 F. Supp. 2d 140, 144 (D. Mass 2000), or where the government has engaged in outrageous misconduct that "violates commonly accepted norms of fundamental fairness and is shocking to the universal sense of justice." ( United States v. Guzman, 282 F.3d 56, 59 (1st Cir. 2002) (citation omitted)). See United States v. Houghton, 554 F.2d 1219, 1224-25 (1st Cir. 1977) (refusing to dismiss indictment because no evidence that delay in producing Brady material was deliberate or that defendant was prejudiced by delay); United States v. Word, 806 F.2d 658, 665 (6th

Cir. 1986) (prosecutor's inadvertent failure to disclose potentially exculpatory witness statements until time of trial did not constitute reversible error where defendants failed to allege prejudice as a result of prosecutor's delayed disclosure); United States v. Hemmer, 729 F.2d 10, 13-14 (1st Cir. 1984) (affirming denial of defendant's motion to dismiss on grounds of prosecutorial misconduct and noting that prosecutor's failure to timely comply with discovery order was caused by "negligence" not bad faith or other willful misconduct); United States v. Previte, 648 F.2d 73, 85-86 (1st Cir. 1981) (affirming denial of motion for new trial based on Brady violations where court found "no evidence whatsoever to support appellant's suggestion that the government engaged in a deliberate policy of concealment.").

## II. Findings

### A. The Alleged Violations

This Court already has ruled that many of the items on which the defendants' motion is based are not Brady material. For example, at the August 30th hearing, this Court ruled that statements Celona allegedly made to agents regarding his belief that information submitted in connection with a request for a ruling by the Ethics Commission was accurate were not materially exculpatory because the relevant issue was whether the information was complete.

The defendants also complain that the government failed to

disclose statements allegedly made regarding Celona's dealings with CVS and BCBS but on September 12, 2006, this Court ruled that such statements were not Brady material in this case. Nevertheless, the Court stated that the defendants could seek to impeach Celona on the ground that he may have had an incentive to testify falsely against the defendants in order to receive more lenient treatment with respect to any charges that he might face in connection with the CVS and BCBS investigations.

Another category of items cited by the defendants consists of materials that the government, in fact, produced or proffered either on its own or at the Court's direction. Examples include the unreadacted Celona 302 that the government tendered in August as well as agents' notes and Celona's grand jury testimony in the CVS/BCBS investigations which were provided on September 5th.[2] The defendants' argument that they were prejudiced by the delay in providing these materials is not persuasive for two reasons.

First, the defendants have failed to satisfy Brady's materiality requirement by showing how any of these materials had a "reasonable probability of affecting the outcome of the trial."

Second, the defendants have failed to establish that disclosure was untimely or that they were prejudiced by any delay.

---

[2]The defendants also point to the fact that they were not provided with agents' notes of a "refresher" interview of Celona until September 5, 2006. However, since the interview occurred the day before, it is clear that there was no delay in disclosing it.

There is no particular time at which the government is required to provide a defendant with Brady material. The only requirement is that Brady material be provided far enough in advance of trial to permit a defendant to make effective use of it. See United States v. Allain, 671 F.2d 248, 255 (7th Cir. 1982). In the words of the First Circuit:

> The critical inquiry is . . . whether the tardiness prevented defense counsel from employing the material to good effect . . . and whether learning the information altered the subsequent defense strategy . . .

United States v. Osorio, 929 F.2d 753, 757 (1st Cir. 1991) (citation omitted). Put another way, a delay in disclosures rises to the level of a Brady violation warranting dismissal only if it prejudices the defendant. See United States v. Devin, 918 F.2d 280, 290 (1st Cir. 1990) (In order to obtain relief on the ground that disclosure was delayed, a defendant must demonstrate that he was prejudiced by the delay).

In addition, the government is not required to provide information that already is known to the defendant and its failure to do so cannot be deemed prejudicial. See United States v. Di Giovanni, 544 F.2d 642, 645 (2d Cir. 1976) ("The government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony he might furnish.") (internal citation omitted); United States v. Prior, 546 F.2d 1254, 1259 (5th Cir. 1977) ("numerous cases have

ruled that the government is not obliged under Brady to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself.") (citations omitted).

Here, there has been no showing that the government failed to provide or tender any Brady material far enough in advance of trial for the defendants to make effective use of it. In fact, in cross examining Celona, and in their closing arguments, defense counsel made very effective use of some of the material that was produced such as agents' notes reflecting Celona's admissions that, initially he lied about his involvement in the scheme.

Nor has there been any showing of prejudice. The defendants assert that they were prejudiced by delayed production of agents' notes of the October 25, 2004, Celona interview but the statements attributed to Celona by those notes hardly seem exculpatory.[3]

---

[3]The notes indicate that Celona made the following statements:

That Urciuoli saw how active Celona was with seniors;

That it was Celona who asked Urciuoli for a job;

That Urciuoli said Celona could not get hired until he obtained an ethics opinion; and

That Celona was supposed to be working for the Village at Elmhurst and Roger Williams.

However, as the government points out, these statements are not exculpatory because they do not bear on whether the true nature of the relationship between Celona and RWMC was what it purported to be.

Moreover, it appears that those statements were reflected in the notes of Celona's counsel, and, even if they were not, they were provided far enough before trial to be useful.

B. The Alleged Government Misconduct

The defendants claim that 302's regarding agents' interviews of Edward Quinlan and former State Representative Vincent Mesolella misrepresent what those two individuals stated. More specifically, the Quinlan 302 quotes Quinlan as saying that he would be "shocked" if RWMC was paying Celona as a consultant at the same time that it was asking him to support its position on certain bills but the defendants submitted an affidavit from Quinlan in which he states that what he said was that he would be "shocked" if it were shown that defendant Urciuoli had paid a bribe to Celona. Similarly, the Mesolella 302 quotes Mesolella as saying that he did not recall any conversations with Celona regarding a bill opposed by RWMC that dealt with treatment of individuals with Alzheimer's disease, but the defendants assert that Mesolella flatly denied Celona's claim that he asked Mesolella to "kill" the bill.

The government maintains that the 302's accurately reflect what Quinlan and Mesolella said and that any perceived discrepancies may be attributable to differing recollections. In any event, the statements are not so materially different as to support the conclusion that agents deliberately misrepresented or manipulated the evidence.

Nor can the defendants claim to have been prejudiced by any discrepancies that may exist between the two sets of statements. The statements address matters that are of only marginal relevance. Moreover, the defendants knew Quinlan's version of what he told agents at least by August 23, 2006, when defense counsel interviewed him. They also knew Mesolella's version of what he told agents by July 19, 2006, when they raised the issue at the hearing on their motions to compel. In fact, Mesolella was called by the defendants as a witness partly for the purpose of stating that he had no conversation with Celona about the Alzheimer's bill.

The government's production of a composite 302 summarizing the numerous agents' interviews of Celona rather than 302's for each individual interview is more troublesome because a composite 302 may reflect only the most recent statement made on a subject and might omit previous statements that, arguably, may be inconsistent and, therefore, used to impeach. In addition, composite 302's might prevent counsel from attempting to show how a statement might have been influenced by events occurring around the time that the statement was made. Accordingly, the practice of providing defense counsel with composite 302's of numerous interviews of a witness rather than contemporaneous 302's of each interview is a perilous one that the government would be well advised not to follow.

However, in this case, there is no indication that, in initially providing counsel with only a composite 302 of the Celona

interviews, the government deprived defense counsel of any exculpatory evidence. As already noted, any arguably exculpatory statements made by Celona during these interviews were either provided to the defendants well before trial or would have been known to the defendants before trial because they would have been reflected in the notes taken by Celona's counsel.

**CONCLUSION**

In short, the defendants have not shown that the government failed to provide any materially exculpatory evidence or that they were prejudiced by any such alleged failure. Nor have the defendants presented any evidence supporting their accusations of "egregious misconduct" on the part of the prosecutors. Therefore, the motion to dismiss the indictment is denied.

IT IS SO ORDERED:

Ernest C. Torres

Ernest C. Torres, U.S. District Judge

Date: 1/11/07