**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02-1T |
| | : | |
| ROBERT A. URCIUOLI, and | : | |
| FRANCES P. DRISCOLL. | : | |

**UNITED STATE'S OBJECTION TO DEFENDANT ROBERT URCIUOLI'S MOTION FOR BAIL PENDING APPEAL**

On January 29, 2007, defendant, ROBERT A. URCIUOLI, filed a motion for bail pending appeal. The United States objects to URCIUOLI's request for the reasons stated in the accompanying memorandum of law.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: January 30, 2007

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel. 401-709-5000
Fax 401-709-5001
luis.matos@usdoj.gov

/s/ DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel. 401-709-5000
Fax 401-709-5001
dulce.donovan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2007, I caused the United States Objection to Defendant Robert A. Urciuoli's Motion for Bail Pending Appeal to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Richard M. Egbert, Esq.
99 Summer Street, Suite 1800
Boston, MA 02110

Michael J. Connolly, Esq.
Kristie Passalacqua, Esq.
Hinckley Allen Snyder LLP
Fleet Center
Providence, RI 02903

By regular mail:

Martin G. Weinberg, Esq.
Martin G. Weinberg, P.C.
The Statler Bldg.
20 Park Plaza, Suite 905
Boston, MA 02116

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02-1T |
| | : | |
| ROBERT A. URCIUOLI, and | : | |
| FRANCES P. DRISCOLL. | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT ROBERT URCIUOLI'S MOTION FOR BAIL PENDING APPEAL**

Defendant Robert Urciuoli has filed a motion for bail pending appeal. Defendant argues that the Court committed error in instructing the jury and that such error will require a new trial. Because the Court did not commit error and because the issues presented by defendant do not present close questions that very well could be decided the other way, the United States respectfully requests that the Court deny defendant's motion.

I. The Bail Standard.

In order to obtain bail pending appeal, defendant must demostrate that the appeal "raises a substantial question of law or fact likely to result in . . . reversal . . . an order for a new trial . . . a sentence that does not include a term of imprisonment, or . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B) (emphasis added).

The Bail Reform Act creates a presumption against release pending appeal which may be overcome solely by meeting the standards articulated in the statute. See United States v. Colon Berrios, 791 F.2d 211, 214 n.4 (1st Cir.1986). Those standards are: (1) the appeal raises a substantial question of law or fact, and (2) if that substantial question is resolved in his favor on

appeal, such a decision would likely lead to reversal, a new trial, or a dramatically reduced sentence. United States v. Bayko, 774 F.2d 516, 522-23 (1st Cir. 1995). A "substantial question" is one that is "'close'" in the sense that it "'very well could be decided the other way.'" Bayko, 774 F.2d at 523; United States v. Colon-Munoz, 292 F.3d 18, 20 (1st Cir. 2002) (referring to Bayko standard). Bayko also defines a "substantial question" negatively in the sense that questions are not "substantial" merely if they are (1) "'novel,'" (2) not the subject of "'controlling precedent,'" (3) "'undecided,'" or (4) "'fairly debatable.'" Bayko makes clear that the mere "'possibility of reversal'" is not enough to justify bail pending appeal. Bayko, 774 F.2d at 523.

II. Defendant Has Not Raised A Close Question that Could Be Decided The Other Way

Defendant continues to take issue with the Court's rejection of two of his proposed jury instructions. He argues that the Court should have limited the definition of a legislator's "official duties" and that the jury should have been instructed on R.I. State Ethics law. Each argument has previously been addressed by the Court and been rejected, most recently upon defendant's motion for a new trial.

A. The Court Properly Instructed the Jury on Honest Services Law

Defendant argues that the Court gave an erroneous official duties instruction. The Court instructed the jury, in pertinent part, as follows:

> Now, it's difficult to provide you with a comprehensive definition of what is meant by the honest services of public officials. Generally speaking, honest services refers to a public official's obligation to be honest while acting in his or her official capacity and to perform his or her duties in a manner that he or she believes is in the best interest of the public that the official services rather than in a way that befits the official personally.

The public may be deprived of the honest services of an elected official in either of two ways. One way is when the official acts in his official capacity in a way that furthers his personal interests or the - - or interest other than the interests of the public that official serves.

> The honest services that an elected official owes the citizens is not limited to the official's formal votes on legislation. It includes the official's behind-the-scenes activities and influence in the legislation, and it also includes other actions that the official takes in an official capacity, not what he does as a private individual but what he does under the cloak of his office.

Tr. 10/2/06 at 161, 162.

This instruction is correct as a matter of law and consistent with First Circuit precedent. United States v. Potter, 463 F.3d 9 (1st Cir. 2006). In Potter the First Circuit rejected the defendants' position that the government needed to prove that they sought for House Speaker John Harwood to misuse his "official power." 463 F.3d at 18. The court stated "[i]t is common knowledge that powerful legislative leaders are not dependent on their own votes to make things happen. The honest services that a legislator owes to citizens fairly include his informal and behind-the-scenes influence on legislation." Id. at 18.

In addition, in United States v. Boots, 80 F.3d 580, 592 (1st Cir. 1996), the Circuit considered whether a public official's "official" actions can encompass more than what is specified in an official's formal duties. One of the issues in Boots, a Travel Act case, was whether the intended recipient of a bribe's formal duties encompassed enforcing federal or Canadian law.[1] The court concluded they did not. Nevertheless, the court also found that the

---

[1] The Interstate Travel Act punishes "[w]hoever travels in interstate or foreign commerce ... with intent to ... promote, manage, establish, carry on, or facilitate ... any unlawful activity, and thereafter performs or attempts to perform" such an act. 18 U.S.C. § 1952(a). Bribery in violation of state law is an "unlawful activity" within § 1952. See United States v. Arruda, 715 F.2d 671, 681 (1st Cir.1983). The Maine bribery statute, charged in Boots, provided in relevant part:

police chief's "official" duties did – "an honest municipal police officer would be expected to keep his eyes open for and report federal and . . . foreign criminal violations; receiving something of value to turn a blind eye would limit his discretion in his official capacity as tribal police chief." Id. at 592. See also United States v. Holzer, 816 F.2d 304, 308 (7th Cir. 1987) (suggesting that state legislator's official duties for purposes of making out an honest services fraud case might encompass mere recommendations by that public official where his position "gives his recommendations a weight independent of their intrinsic merit").[2]

---

> 1. A person is guilty of bribery in official and political matters if:
>
> A. He promises, offers, or gives any pecuniary benefit to another with the intention of influencing the other's action, decision, opinion, recommendation, ... or other exercise of discretion as a public servant . . . .

17-A M.R.S.A. § 602(1)(A).

[2] Specifically, the court in Holzer was expressing disagreement over the Eighth Circuit's conclusions in United States v. Rabbitt, 583 F.2d 1014, 1024-26 (8th Cir. 1978), a case cited by Urciuoli for the proposition that actions which a public official is alleged to have undertaken must be ones involving the duties of the official's public office. In Rabbitt, the Eighth Circuit reversed Rabbitt's honest services mail fraud conviction because the awarding of contracts over which Rabbitt was alleged to possess some influence, were awarded on a merit basis by individuals over whom Rabbitt possessed no authority. 583 F.2d at 1026. The Holzer court "doubt[ed] the soundness" of the Eighth Circuit's reasoning in Rabbitt and stated that "[t]he fact that the defendant did not control the award of contracts should not be decisive if his position as a state legislator gives his recommendations a weight independent of their intrinsic merit." 816 F.3d at 309.

Urciuoli also cites United States v. Bloom, 149 F.3d 649, 656 (7th Cir. 1998), as further support for his contention that an honest services fraud case must involve an individual's legislative duties. Bloom was a part-time city alderman, who, in his private life, was a lawyer. In his private-lawyer capacity, Bloom had counseled clients on how to purchase properties at city auction without paying the deficient property taxes owed on the properties. The government argued that as a fiduciary of the city, even when acting in his private-lawyer capacity, Bloom owed Chicago his undivided loyalty. The court refused to accept the government's honest services fraud theory of the case because Bloom's improper counseling of his clients had nothing to do with his position as an alderman. Bloom, 149 F.3d at 654-55. Thus, Bloom is

At trial, there was abundant evidence for the jury to rely on which illustrated that Urciuoli intended that John Celona be influenced in exercising his official actions in favor of Roger Williams Medical Center ("RWMC") and the Court properly instructed the jury.

The Court therefore held on defendant's motion for a new trial:

> With respect to the first argument, I think that it misstates the law. The honest services– as I read it, the honest services to which the public is entitled from an elected official includes all actions performed under color of that official's office, and it's not limited only to such things as drafting or voting on legislation. It extends to anything that is done pursuant to the authority vested in that individual, or the authority conferred upon that individual, or, again, under color of that individual's office.
>
> And I referred earlier to a quote from the First Circuit's decision in Potter that I think at least implicitly substantiates that. I think the First circuit has recognized that, in looking at the honest services of a public official, you have to look at not only at what that person does pursuant to the specific acts that are within the scope of his or her authority but, also, what that person does under color of the authority vested in that person as a result of holding that office. Here, there's sufficient evidence to support the jury's finding that Senator Celona used his office and his official position in an attempt to increase the rescue runs to Roger Williams. Now, clearly that evidence is not exactly overwhelming, and the jury could have decided the other way, but certainly there's a basis for concluding that that, by itself, would have been sufficient. Also, the evidence was sufficient to support a finding that Senator Celona used the authority of his office in setting up the meetings with Blue Cross and United and that Mr. Urciuoli knew it and intended it.
>
> And again, it certainly can be argued that the jury could have found the other way. But that's not the question here. The jury found as it did, and I think the evidence and the law supports the jury's finding.

---

distinguishable from the present case where the evidence at trial demonstrated that Urciuoli intended to influence Celona in the performance of his official duties as a State Senator.

Tr. 1/11/07 at 46, 47.

In addition, the Court specifically found that defendant's proposed instruction No. 13 was properly excluded:

> But with respect to the refusal to give request number 13, that's the one that, in essence, asked the Court to tell the jury that a scheme to defraud must have related to the performance of Senator Celona's official duties, I think I just covered that. I think that's an inaccurate statement of the law, and I think that, if I do say so, I was correct in not giving that instruction.

Tr. 1/11/07 at 49, 50.

Hence, Urciuoli has not presented a close question.

B. Urciuoli Was Not Entitled to an Instruction on State Ethics Law

Urciuoli also charges error because the Court did not provide the jury with his incorrect and confusing proposed instruction on the R.I. State Ethics law. Again, the Court properly instructed the jury as follows:

> The determination as to whether the public was deprived of a public official's honest services does not depend on whether the conduct violated state ethics laws. The public may be deprived of an elected officials' honest services even if the official's conduct does not violate some state law.
>
> However, a Defendant's knowledge or belief as to, in this case, whether Senator Celona was being induced to engage in conduct that violated the ethics laws may be considered by you in determining whether the Defendants intended to deprive the public of Senator Celona's honest services.
>
> So whether an ethics law was violated or not doesn't establish or is not relevant to determining whether there was a mail fraud violation except to the extent that you think that that may cast some light on what a Defendant intended.
>
> Now, its not improper or unlawful for a person to attempt to persuade a public official to act in a way that benefits that person.

> In fact, every citizen has a right to try and convince an elected official to support or oppose legislation that - - in which that person may have an interest. There's nothing wrong with that.

Tr. 10/2/06 at 163-165 (emphasis added).

In Sawyer v. United States, 239 F.3d 31, 39 (1st Cir. 2001) ("Sawyer II"), the Circuit made clear that "whether Sawyer actually violated state laws . . . is irrelevant to our inquiry because honest services mail fraud does not depend upon a violation of state law. Indeed, the duty to disclose a conflict of interest, the violation of which indicates an intent to deceive in these circumstances, arises from common law as well as from Massachusetts statute." Sawyer II, 239 F.3d at 48. Thus, since a violation of state law cannot serve as a basis for finding that the mail, wire, and honest services fraud statutes **were** violated, it follows that Celona's alleged conformance with State ethics laws does not demonstrate that Urciuoli **did not** commit the crime of honest services mail fraud. Whether Urciuoli believed Celona's actions were in conformance with State ethics laws may have been relevant to the question of whether Urciuoli possessed the requisite intent under the mail fraud statute, but in this case no evidence was presented on the issue of whether Urciuoli believed that Celona's actions conformed with State law. Indeed the Court instructed the jury that "whether an ethics law was violated or not doesn't establish or is not relevant to determining whether there was a mail fraud violation except to the extent that you think that that may cast some light on what a Defendant intended." Tr. 10/2/06 at 164.[3] Moreover, the United States need not demonstrate that Urciuoli actually influenced a public official in his duties, only that he intended to. Sawyer II, 239 F.3d at 46-47. Before the jury was

---

[3] However, counsel made the argument to the jury. The jury's verdict indicates this argument did not prevail.

ample evidence that Urciuoli intended for Celona to take official actions to benefit RWMC.

The Court has previously emphasized how this issue does not present a close question. On October 4, 2006, the day after the jury was charged, defendant raised another objection to the charge. In the context of discussing defendant's objections, the Court noted the following:

> [Mr. Connolly] raised no issue about any of these points. Some of the objections that he raised at the end of the charge were not things that he had raised in the charge conference. And some of the, frankly, were flat out at odds with the – some of the First Circuit decisions.
>
> For example, in *Sawyer*, the First Circuit specifically said that the Government does not have to prove that the Defendant violated state law or state ethics statutes, and that was one of the objections that Mr. Connolly made.

Tr. 10/4/06 at 7.

Accordingly, the Court ruled as follows on the issue as raised in defendant's motion for a new trial:

> With respect to the second argument, the argument that the acts that did involve official legislative action were in conformity with State law and were expressly authorized by the Ethics Commission, again, I think that argument misstates both the law and its application to these facts.
>
> The conduct of an elected official may deprive the citizens of their right to the honest services of that official even where the conduct does not violate State law.
>
> Now, it's a closer question as to whether that would be so, whether there would be a basis for a mail fraud charge if the conduct was not only not prohibited by State law but was expressly authorized by State law. But that's not this situation.
>
> * * *
>
> And here, there is certainly sufficient evidence from which the jury could have found, and apparently did find, that there was no disclosure to the Ethics Commission, or otherwise, of what the

> Government claims and what the jury apparently found was the true nature of the conflict; that is to say, that Senator Celona was really working for Roger Williams Medical Center and not for the Village, as was represented in the application for an opinion by the Ethics Commission.
>
> And furthermore, there's sufficient evidence from which the jury could have found that the– Senator Celona's acts in connection with this particular legislation, or these pieces of legislation, were intended specifically to promote the interests of Roger Williams Medical Center and not to address health care issues in general.

Tr. 1/11/07 at 47-49.

Accordingly, proposed instruction no. 15 was also correctly excluded:

> Now, there are a number of reasons why I think that instruction was inappropriate, as I believe I've previously said. First of all, it as lengthy and confusing. And I think it as also misleading, would have been misleading, because, as I've already stated, at least in my view, the deprivation of honest services is not limited to cases in which the official's conduct violates State law.
>
> And more importantly, there was no disclosure here of the true nature of the conflict. There was no disclosure that Senator Celona was really working for Roger Williams Medical Center and not for the Village.
>
> There was no disclosure that he was being paid not to be a consultant to the Village on matters involving the elderly, but rather, to use his official position to promote the interests of Roger Williams Medical Center.
>
> And furthermore, he was not voting on or influencing legislation as one making an independent judgment with respect to health matters of general interest on the basis of whether it was good or bad for the public, but rather, he was voting as one promoting the interests of Roger Williams Medical Center, in effect, the sum and substance of it is that he was being bribed.

Tr. 1/11/07 at 50, 51.

Because the jury question issue does not present a close question -- indeed its not even

"fairly debatable"-- defendant's request should be denied.

## CONCLUSION

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Urciuoli's motion for bail pending appeal.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: January 30, 2007

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel. 401-709-5000
Fax 401-709-5001
luis.matos@usdoj.gov

/s/ DULCE DONOVAN
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel. 401-709-5000
Fax 401-709-5001
dulce.donovan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2007, I caused the United States Memorandum in Support of its Objection to Defendant Robert A. Urciuoli's Motion for Bail Pending Appeal to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Richard M. Egbert, Esq.
99 Summer Street, Suite 1800
Boston, MA 02110

Michael J. Connolly, Esq.
Kristie Passalacqua, Esq.
Hinckley Allen Snyder LLP
Fleet Center
Providence, RI 02903

By regular mail:

Martin G. Weinberg, Esq.
Martin G. Weinberg, P.C.
The Statler Bldg.
20 Park Plaza, Suite 905
Boston, MA 02116

/s/ LUIS M. MATOS
LUIS M. MATOS
Assistant U.S. Attorney
Chief, Criminal Division