UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 06-02- ML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**ROBERT A. URCIUOLI'S OPPOSITION TO ROGER WILLIAMS HOSPITAL AND ROGER WILLIAMS MEDICAL CENTER'S MOTION TO STRIKE AND SEAL THE AFFIDAVIT ATTACHED TO URCIUOLI'S RENEWED MOTION TO DISMISS**

Defendant Robert A. Urciuoli ("Urciuoli") hereby opposes Roger Williams Hospital and Roger Williams Medical Center's (collectively, "RWMC's") Motion to Strike and Seal the Affidavit Attached to Urciuoli's Renewed Motion to Dismiss (the "Motion to Strike"). RWMC seeks to strike -- and thereby deny Urciuoli's use of -- the declaration of Richard Licht, a former member of the RWMC Board of Trustees (the "Licht Declaration"), on the grounds that the Licht Declaration contains communications which are protected from disclosure by the attorney-client privilege. As the following will show, the communications at issue are not protected by the attorney-client privilege. At an earlier stage in this investigation, RWMC made a knowing and deliberate decision to waive the attorney-client privilege (as well as all other applicable privileges) with respect to evidence bearing on whether Urciuoli committed the offenses charged in the Indictment -- i.e., whether Urciuoli conspired to commit honest services mail fraud with former Rhode Island state senator John Celona ("Celona"). When RWMC did so, it waived the attorney-client privilege with respect to all evidence and communications bearing on that subject matter. Through this motion, RWMC now seeks to restore the privilege it previously waived. Such a partial, or "selective," waiver is not permissible. Accordingly, the Motion to Strike must be denied.

## INTRODUCTION

The Licht Declaration which RWMC seeks to strike sets forth evidence regarding the Board of Trustee's decision to terminate Urciuoli and enter into a Deferred Prosecution Agreement with the Government, the terms of which required RWMC to stipulate to Urciuoli's personal guilt in this matter by "admit[ing]" that the Government had sufficient evidence to prove that Urciuoli committed the offenses charged in the Indictment. The Deferred Prosecution Agreement also required RWMC to "cooperate fully" with the Government in connection with this investigation by, among other things, waiving the attorney-client privilege with respect to evidence "related to" this investigation. RWMC obliged. In doing so, it effectuated a subject matter waiver; it waived the attorney-client privilege with respect to all communications and evidence "related to" this investigation. The Government took full advantage of that waiver during the first trial in this matter -- eliciting testimony from RWMC's former outside counsel, James McGuirk, and in-house counsel, Kim O'Connell, which it perceived to be helpful to its case. Now -- when the proffered evidence is favorable to Urciuoli and not the Government -- RWMC, no doubt at the Government's behest, has invoked the attorney-client privilege.

RWMC cannot have it both ways. The law is clear that a waiver of the attorney-client privilege premised on the deliberate disclosure of material protected by the attorney-client privilege is deemed to encompass all other such communications on the same subject. As set forth in more detail below, the subject matter of the evidence in the Licht Declaration is identical to that of RWMC's previous waiver. Both bear squarely on the issue of Urciuoli's alleged conspiracy with Celona to commit the offenses charged in the Indictment. RWMC's attempt to argue otherwise, or to mischaracterize the scope of its waiver, is self-serving and must fail. The Government should not be permitted to manipulate, through an entity that is cooperating with the

Government, what evidence is before the Court by causing a selective invocation of the attorney-client privilege. Urciuoli is facing serious criminal charges and is entitled to make use of all relevant and admissible evidence in support of his defense.

Moreover, RWMC's attempt to strike the Licht Declaration is particularly troubling in light of the fact that it sets forth compelling evidence of the Government's violation of Urciuoli's constitutional rights under the Fifth and Sixth Amendments. The Licht Declaration was filed in support of Urciuoli's Renewed Motion to Dismiss the Indictment Under the Fifth and Sixth Amendments or, in the Alternative, For a Stay (the "Renewed Motion to Dismiss"). The Court should be permitted to consider the evidence in the Licht Declaration when ruling on the Renewed Motion to Dismiss, and the Motion to Strike must be denied.

## FACTUAL BACKGROUND

### A. RWMC's Commitment to Cooperate Fully With the Government

On January 5, 2006, a grand jury returned a thirty-eight (38) count Indictment against RWMC, Urciuoli, Frances P. Driscoll ("Driscoll") and Peter J. Sangermano, Jr. Count 1 of the Indictment alleged a conspiracy to defraud the citizens of Rhode Island of Celona's honest services in violation of 18 U.S.C. §§ 371, 1341 and 1346. See Indictment ¶¶ 13-94. Counts 2 through 38 alleged substantive mail fraud violations involving the same alleged scheme. Id. at ¶¶ 95-107.

On January 26, 2006, the RWMC Board of Trustees (the "Board") agreed to the terms of a Deferred Prosecution Agreement with the Government (the "DPA"). See Exhibit D to Urciuoli's Renewed Motion to Dismiss. A true and accurate copy of the DPA is attached as Exhibit E to Urciuoli's Renewed Motion to Dismiss. Pursuant to the terms of the DPA, RWMC "admit[ed] that the government ha[d] sufficient evidence to prove that Urciuoli and Driscoll

committed the offenses charged in the Indictment" -- namely, conspiracy to commit honest services mail fraud and mail fraud. Id. Moreover, RWMC agreed to cooperate "fully and actively" with the Government in connection with its investigation. Id. RWMC' s "cooperation" included, among other things, a waiver of the attorney-client privilege with respect to evidence related to this investigation:

> 8. RWMC agrees that its continuing cooperation with the government's investigation shall include, but not be limited to, the following:
>
> (d) not asserting, in relation to the USAO-RI, any claim of privilege (including but not limited to the attorney-client privilege and the work product protection) as to any documents, records, information, or testimony requested by the USAO-RI *related to its investigation*, provided that:
>
> (I) RWMC may assert the attorney-client privilege . . . with respect to privileged communications between RWMC and its defense counsel that post-date the criminal investigation of RWMC . . . and
>
> (II) by producing privileged materials, RWMC does not intend to waive the protection of the attorney-client privilege . . . as to third parties.

Id. (emphasis added). Thus, by the plain terms of the DPA, RWMC agreed to waive the attorney-client privilege with respect to all evidence and communications "related to [this] investigation." Id. The effect of this language was a subject matter waiver extending to all communications related to the investigation, regardless of when the communications occurred or to whom they were produced. RWMC's attempt to limit its waiver through subparagraphs (d)(I) and (d)(II) is ineffectual.

In accordance with the terms of the DPA, RWMC thereafter knowingly and voluntarily made available to the Government privileged evidence bearing on Urciuoli's alleged conspiracy with Celona to deprive the citizens of Rhode Island of Celona's honest services. The Government made full use of this waiver during the first trial in this matter. RWMC's former

outside counsel and in-house counsel testified at trial. The Government questioned them extensively about their knowledge of facts which go to the heart of the Urciuoli's guilt or innocence in this matter. RWMC likewise received the benefit of this waiver; the Government ultimately decided not to prosecute RWMC.

**B. The Subject Matter of the Licht Declaration**

RWMC claims that the information contained in the Licht Declaration is protected from disclosure by the attorney-client privilege -- notwithstanding the fact that it has waived the attorney-client privilege with respect to the very same subject matter. The information in the Licht Declaration falls squarely within the subject matter of RWMC's previous waiver. The Licht Declaration recounts one Board member's recollection of the events that led to the Board's decision to terminate Urciuoli and Driscoll and stipulate to Urciuoli's personal criminal liability in regard to the issues at the heart of the Rhode Island U.S. Attorney's Office investigation -- the very same subject of the waiver language in the DPA. The Licht Declaration describes how the Board originally refused to enter into the DPA for the very reason that, by its terms, it required RWMC to admit to Urciuoli's guilt. The Licht Declaration also sets forth Urciuoli's candor with the Board concerning the details of the hiring of Celona, as well as Celona's efforts to facilitate contract negotiations between RWMC, on the one hand, and Blue Cross/Blue Shield and United Healthcare, on the other hand. In sum, the information in the Licht Declaration bears directly on Urciuoli's guilt or innocence in this matter. This is precisely the same subject matter as RWMC's previous waiver.

## ARGUMENT

The Motion to Strike must be denied because RWMC has waived the attorney-client privilege, as well as all other applicable privileges, with respect to the information contained in

the Licht Declaration. Urciuoli is facing trial on serious allegations of criminal wrongdoing. He is entitled to make use of all relevant, non-privileged evidence in support of his defense. Neither RWMC nor the Government, through RWMC, should not be permitted to manipulate what evidence is available to Urciuoli or the Court by selectively invoking the attorney-client privilege when it is convenient to do so. This is improper, particularly so in light of the fact that the Licht Declaration sets forth glaring evidence of the Government's violation of Urciuoli's Fifth and Sixth Amendment constitutional rights -- violations which could result in dismissal of the Indictment. The Motion to Strike must be denied.

**A. Subject Matter Waiver of the Attorney-Client Privilege**

The attorney-client privilege "protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." In re Keeper of the Records (XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003) (citations omitted). Its purpose "is to encourage the full and frank discussion necessary for providing the client with sound advice. That purpose is achieved by guaranteeing that confidential communications between the client and the advisor will remain confidential." United States v. Textron, Inc., 507 F.Supp.2d 138, 152 (D.R.I. 2007). It is well-settled in this circuit that "a voluntary disclosure of information which is inconsistent with the confidential nature of the attorney-client relationship waives the privilege." In re Grand Jury Subpoena, 925 F. Supp. 849, 855 (D. Mass. 1995), quoting Alldread v. City of Grenada, 988 F.2d 1425, 1434 (5th Cir. 1993); cf. United States v. Massachusetts Institute of Technology ("MIT"), 129 F.3d 681, 684 (1st Cir. 1997) ("where the client chooses to share communications outside this magic circle [e.g., secretaries, interpreters, counsel for a cooperating co-defendant, a parent present when a child consults a lawyer], the courts have usually refused to extend the privilege").

The fact that the waiver was made in the context of cooperation with a government investigation does not change the analysis. See Permian Corp. v. United States, 665 F.2d 1214 (D.C. Cir. 1981) ("[v]oluntary cooperation with government investigations may be a laudable activity, but it is hard to understand how such conduct improves the attorney-client relationship.") As the Third Circuit summarized in Westinghouse Electric Corp. v. Republic of the Philippines:

> [w]hen a party discloses protected materials to a government agency investigating allegations against it, it uses those materials to forestall prosecution (if the charges are unfounded) or to obtain lenient treatment (in the case of well-founded allegations). These objectives, however rational, are foreign to the objectives underlying the work-product doctrine.

951 F.2d 1414, 1429 (3d Cir. 1991).

**B. RWMC Knowingly Waived the Attorney-Client Privilege With Respect to the Subject Matter of the Information Contained in the Licht Declaration.**

The information contained in the Licht Declaration is no longer privileged. Earlier in this investigation, at the Government's request, RWMC knowingly and intentionally waived the attorney-client privilege with respect to evidence bearing on Urciuoli's guilt or innocence in this matter -- in particular, whether he conspired with Celona to deprive the citizens of Rhode Island of Celona's honest services as a legislator. See Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 97 (D. Mass. 2002) (where disclosure "was done with the prior actual knowledge and/or constructive knowledge of the [clients], through their counsel, the privilege clearly has been waived.") When RWMC did so, it waived the attorney-client privilege with respect to all communications on that subject matter. Weil v. Investment/Indicators, Research and Management, Inc., 647 F.2d 18, 24 (9th Cir. 1991) ("it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject"); In re Lernout & Hauspie

Securities Litigation, 222 F.R.D. 29, 34-35 (D. Mass. 2004), quoting Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 883-84 (1st Cir. 1995) (a waiver premised on the knowing disclosure of material protected by the attorney-client privilege "will be deemed to encompass all other such communications on the same subject"). Consequently, RWMC cannot assert the attorney-client privilege with respect to any communications related to the subject matter of Urciuoli's alleged conspiracy with Celona to commit honest services mail fraud. To do so would constitute an impermissible "selective" invocation of the attorney-client privilege. In re Initial Public Offering Securities Litigation, 2008 U.S. Dist. LEXIS 11058, at *1 (S.D.N.Y. 2008) (rejecting doctrine of "selective" waiver).

The information contained in the Licht Declaration bears on precisely the same subject matter as RWMC's previous waiver -- i.e., whether Urciuoli committed the offenses alleged in the Indictment. The Indictment alleges that Urciuoli and Celona schemed to deprive the citizens of Rhode Island of Celona's honest services as a legislator by, among other things, concealing the nature of Celona's relationship with RWMC. On this point, the Licht Declaration describes how Urciuoli was open and candid with the Board as to the details surrounding both the hiring of Celona and Celona's efforts, at the request of Urciuoli, to schedule meetings with Blue Cross/Blue Shield and United Healthcare for the benefit of RWMC in regards to contract issues with those insurers. Licht Declaration, ¶¶ 7-10. As to these assertions in the Licht Declaration, it is difficult to comprehend how this information could be privileged when it did not involve communications with counsel. The Licht Declaration sets forth *Urciuoli's* -- not counsel's -- discussions with the Board as to the hiring of Celona and meetings with insurance companies.

The Licht Declaration also describes how the decision to enter into the DPA was driven by the Government's coercive tactics against RWMC and not, significantly, on actual evidence

of Urciuoli's guilt. Indeed, as the Board member recounts, "no evidence had been presented to [the Board] that supported a finding that . . . Mr. Urciuoli . . . had committed any wrongdoing or personally benefited from Senator Celona's engagement." Licht Declaration, ¶ 26. The information in the Licht Declaration falls squarely within the subject matter of RWMC's previous waiver of the attorney-client privilege. Accordingly, Urciuoli is entitled to make use of it in support of his defense. Ken's Foods, Inc., 213 F.R.D. at 97 ("Communications . . . on the same subject as those previously disclosed must be produced.")

**C. RWMC Mischaracterizes the Scope of its Waiver.**

RWMC's transparent attempt to narrow, or otherwise re-define, the scope of its waiver is self-serving and must fail. RWMC claims in the instant motion that it waived the attorney-client privilege only as it related to "the facts [RWMC counsel] were aware of and the advice they provided concerning": (1) the hiring of Celona; and (2) meetings scheduled by Urciuoli in Celona's state house office to negotiate a resolution regarding reimbursements between RWMC, on the one hand, and Blue Cross/Blue Shield and United Healthcare, on the other hand. See Motion to Strike, p. 2. This assertion must fail for several reasons.

First, the Declaration contains information that overlaps the subject matter of the admitted waiver: (1) the hiring of Celona; and (2) Celona's efforts to facilitate insurance negotiations for RWMC. See Declaration, ¶ 7,9,10. As set forth above, the information in the Declaration pertaining to the hiring of Celona and Celona's efforts to facilitate contract negotiations was *never* privileged because it was based on Urciuoli's direct communications and disclosures to the Board in the absence of legal counsel. To the extent the attorney-client privilege once applied to this information, that privilege has been waived by RWMC, as RWMC apparently concedes.

Second, the language of the DPA defines the scope of the waiver to comprehend evidence "related to [this] investigation," a far broader subject area than RWMC now contends. See Exhibit E to Urciuoli's Renewed Motion to Dismiss. The DPA, by its terms, does not limit RWMC's waiver to its counsel's advice regarding the hiring of Celona and Celona's participation in efforts to facilitate negotiations between RWMC and Blue Cross/Blue Shield and United Healthcare. Thus, given the broad scope of the contractual waiver set forth in the DPA, there can be no dispute that the entirety of the Licht Declaration is covered by RWMC's waiver.

Third, even assuming, *arguendo*, that RWMC's waiver was limited to "the facts [RWMC counsel] were aware of and the advice they provided concerning": (1) the hiring of Celona; and (2) meetings scheduled by Urciuoli in Celona's state house office to negotiate a resolution regarding reimbursements between RWMC and Blue Cross/Blue Shield and United Healthcare, the waiver would still encompass the information contained in the Declaration. The subject matter of the admitted waiver and the information contained in the Declaration are the same, i.e., whether Urciuoli committed the allegations alleged in the Indictment. The Indictment alleges that Urciuoli failed to disclose to the public that Celona had an improper conflict of interest that deprived the citizens of Rhode Island of their intangible right to Celona's honest services. Indictment, ¶¶ 16, 18. Thus, the first prong of the admitted waiver -- the facts RWMC counsel were aware of and the advice they provided concerning the hiring of Celona -- goes to the heart of whether Urciuoli committed the offenses alleged in the Indictment. The Indictment also alleges that the scheme to defraud the citizens of Rhode Island of Celona's honest services included Celona's improper use of his influence and position as a legislator with respect to RWMC's negotiations with Blue Cross/Blue Shield and United Healthcare. Indictment, ¶¶ 73-91. Thus, the second prong of the admitted waiver -- the facts RWMC counsel were aware of

and the advice they provided concerning meetings scheduled by Urciuoli in Celona's state house office to negotiate a resolution regarding reimbursements between RWMC and Blue Cross/Blue Shield and United Healthcare -- also goes to the heart of whether Urciuoli committed the offenses charged in the Indictment. Regardless of how RWMC attempts to define the scope of its waiver, it is apparent that its waiver extends to the information contained in the Declaration.

The effect of RWMC's privilege argument would be to allow the Government to "cherry pick" the evidence from the universe of evidence covered by the subject matter of the waiver for use at trial, and have all other evidence deemed to be still privileged. More specifically, the Government sought and obtained a waiver of the attorney-client privilege with respect to evidence and testimony which it perceived to be favorable to its case. Now, however, RWMC invokes the attorney-client privilege with respect to evidence and testimony -- on the very same subject matter -- which supports Urciuoli's defense. This is selective waiver at its worst. No doubt anticipating that its waiver would be challenged as an impermissible "selective" waiver, RWMC sought to carve out in the DPA an exception for privileged communications that post-dated the Government's investigation of RWMC and Urciuoli. See Exhibit E to Renewed Motion to Dismiss, ¶ 8(d)(I). RWMC also sought to carve out an exception to its waiver with respect to third parties. Id., ¶ 8(d)(II). These "carve outs" are ineffective. It is the subject matter of RWMC's waiver -- not the point in time when the communications occurred or the party to whom the information was produced -- that is controlling. United States v. Nobles, 422 U.S. 225, 239 (1975) ("voluntary disclosure of work product to adversary waives the privilege as to other parties."); In re Steinhardt Partners, 9 F.3d 230, 235 (2d Cir. 1993) (waiver of work product privilege as to SEC constituted waiver of privilege as to other parties); Ken's Foods, Inc., 213 F.R.D. at 97 ("Communications . . . on the same subject as those previously disclosed

must be produced."). RWMC knowing and voluntarily waived the attorney-client privilege with respect to evidence bearing on Urciuoli's alleged conspiracy with Celona. Allowing RWMC to carve out the exceptions set forth in subparagraphs 8(d)(I) and (II) of the DPA would permit RWMC to improperly invoke a selective waiver of the attorney-client privilege. This is impermissible. In re Initial Public Offering Securities Litigation, 2008 U.S. Dist. LEXIS 11058, at *1 (S.D.N.Y. 2008) (rejecting doctrine of "selective" waiver). Accordingly, Urciuoli should be allowed to use the Declaration to support his defense.

**D. The Licht Declaration Contains Compelling Evidence of the Government's Violation of Urciuoli's Constitutional Rights and is Critical to Urciuoli's Defense in This Matter.**

RWMC's attempt to bar Uricuoli's use of the Licht Declaration is particularly untenable in light of the fact that the Licht Declaration is rife with evidence of the Government's violation of Urciuoli's constitutional rights. Urciuoli has moved to dismiss the Indictment in this matter on the grounds that the Government has engaged in conduct vis-à-vis RWMC that violated Urciuoli's his Fifth Amendment right to fairness in a criminal proceeding and Sixth Amendment right to counsel of his choice. Urciuoli has alleged that the Government waged an ultimately successful campaign to force RWMC to fire Urciuoli and sever its contractual obligation to indemnify him for the cost of his defense, as well as the advancement of those fees. Before RWMC was indicted, it resisted Government pressure to terminate Urciuoli and sever advancement of his fees, based on the strength of its conviction that neither it nor Urciuoli had violated the law. Once RWMC was indicated and faced with imminent financial collapse, however, the Board succumbed to the Government's demand and stipulated to the personal guilt of Urciuoli and Driscoll. In forcing RWMC to do so, the Government violated Urciuoli's constitutional right to representation by defense counsel of his choice and his fundamental right

as a criminal defendant to a fair trial. See Renewed Motion to Dismiss, which is pending before the Court.

The Licht Declaration, which was filed in support of Urciuoli's motion to dismiss the Indictment, sets forth the events that led the Board to vote to terminate Urciuoli, sever RWMC's obligation to indemnify Urciuoli for the cost of his defense, as well as advancement of those fees, and enter into a DPA that required RWMC to "admit" that Urciuoli committed the offenses charged in the Indictment -- notwithstanding the fact that the Declarant was not aware of any evidence of Urciuoli's guilt. The Licht Declaration contains evidence that goes to the heart of the Government's violation of Urciuoli's constitutional rights. This evidence is critical to Urciuoli's defense. RWMC's privilege has been waived as to the Celona investigation, and it cannot be resurrected for the purpose of defeating Urciuoli's constitutional rights.

## CONCLUSION

In light of the foregoing, Defendant Robert A. Urciuoli respectfully requests that this Court deny Roger William Hospital and Roger Williams Medical Center's Motion to Strike and Seal the Affidavit Attached to Urciuoli's Renewed Motion to Dismiss.

Respectfully submitted,

ROBERT A. URCIUOLI

By his attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Dated: June 2, 2008

**CERTIFICATION**

I hereby certify that on June 2, 2008, a copy of the foregoing Opposition was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua