UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02ML |
| | : | |
| ROBERT A. URCIUOLI, and | : | |
| FRANCES P. DRISCOLL. | : | |

**UNITED STATES' OBJECTION TO DEFENDANT URCIUOLI'S RENEWED MOTION TO DISMISS THE INDICTMENT UNDER THE FIFTH AND SIXTH AMENDMENTS OR, IN THE ALTERNATIVE, FOR A STAY**

Defendant Robert Urciuoli has filed a Renewed Motion to Dismiss the Indictment. For the reasons stated in the accompanying memorandum of law filed simultaneously herewith, the United States objects to the motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02ML |
| | : | |
| ROBERT A. URCIUOLI, and | : | |
| FRANCES P. DRISCOLL. | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANT URCIUOLI'S RENEWED MOTION TO DISMISS THE INDICTMENT UNDER THE FIFTH AND SIXTH AMENDMENTS OR, IN THE ALTERNATIVE, FOR A STAY**

Defendant Robert Urciuoli has filed a Renewed Motion to Dismiss the Indictment ("Renewed Motion"). As the caption states, this is the second motion filed by Defendant Urciuoli in which he contends that his constitutional rights were abridged. He bases his allegation on an unsubstantiated, and previously rebutted, contention that the Government coerced his former employer and codefendant in this case, Roger Williams Medical Center (RWMC), into pleading guilty in an effort to ensure that he lacked sufficient resources to mount a defense in this case. As a result, despite the fact that he currently has three attorneys of record, and appears to have retained another who has yet to file an appearance, Urciuoli maintains that his choice of counsel has been impermissibly impacted. As relief, he requests that the Court continue the trial, conduct an evidentiary hearing on his claims, open a civil docket for his civil claims against RWMC, and finally, dismiss the Indictment.

Urciuoli filed essentially the same motion on July 31, 2006, just prior to the first trial in this matter ("July 31, 2006 motion"). See Docket Entry 124. Judge Torres denied his motion on August 24, 2006. Attach. A. After his conviction on all counts of the Indictment, Urciuoli

engaged additional counsel to represent him at sentencing and/or appeal. Subsequently, Urciuoli filed what proved to be a successful appeal premised upon his challenge to the jury instructions. However, he did not appeal Judge Torres's denial of his July 31, 2006, motion. His present renewed motion does not cover new ground and is barred under the "law of the case" doctrine. United States v. Ellis, 313 F.3d 636 (1st Cir. 2002), cert denied, 540 U.S. 836 (2003). Moreover, his motion, even if it could be renewed, is without merit. In addition to the arguments submitted in 2006, Urciuoli cites two cases that were available to him prior to filing his appeal and submits an affidavit regarding his present financial condition and what he claims were his expectations regarding the payment of attorney fees while employed by RWMC.[1]

## I. Background

On July 31, 2006, defendant filed his second Motion to Dismiss the Indictment. In making his arguments in support of the July 31, 2006 motion, Urciuoli relied on United States v. Stein, 435 F.2d 330 (S.D.N.Y. 2006)("Stein I"). July 31, 2006, Mot. at 7. In addition, Urciuoli relied upon a tortured reading of the so-called "Thompson memo," which was intended to guide prosecutors in their pursuit of criminal charges against corporations. Id. at 3. Urciuoli also claimed that his employment contract with RWMC entitled him to indemnification and advancement of attorney fees. Id. at 4. Finally, he claimed that by entering into the DPA with RWMC, the United States required RMWC to terminate Urciuoli's employment and, as a result, also required the cessation of RWMC's payment of his legal fees which violated his constitutional rights. Id. at 8-16. Urciuoli makes the same arguments here.

[1] Urciuoli also attempted to support his current motion with an affidavit containing attorney/client material from a former board member of RWMC. Pursuant to RWMC's motion to strike the improperly obtained affidavit, the Court struck the filing from the record.

However, here, as in 2006, Urciuoli submits no evidence in support of his argument, other than his hypothetical link between the Thompson memorandum, his firing and RWMC's decision not to pay his fees. In addition, on both occasions he has ignored a letter from the United States to yet another lawyer for Urciuoli, Michael DeFanti, in which AUSA Gerard Sullivan informed Urciuoli's counsel of the following:

> The termination of your client, Robert A. Urciuoli, by RWMC was not a condition precedent to the DPA nor a requirement of the DPA. In fact, all discussions concerning Mr. Uricuoli's employment status were expressly excluded from the plea negotiations. Similarly, all discussions concerning RWMC's decision either to pay, or to refuse to pay, Mr. Urciuoli's legal expenses were expressly excluded from the plea process by the United States Attorney's Office.
>
> The decisions to terminate Mr. Urciuoli for cause and to discontinue paying his legal fees were business and contract decisions made by RWMC without any input from this office.

Attach. B.[2]

Accordingly, in response to his July 31, 2006, motion, the United States argued that Stein I, had no application to the instant case, that Urciuoli had failed to offer factual support for his motion and that he misunderstood the Thompson Memorandum. Furthermore, the United States argued that Urciuoli's claim that his firing impacted his ability to launch a defense in this case was baseless.

Judge Torres held a hearing on the motion on August 23, 2006, and issued an oral decision denying the motion on August 24, 2006. Attach. A. Prior to issuing his decision, Judge Torres asked the government the following pertinent question:

---

[2] The letter is also included as part of Exhibit G to Urciuoli's renewed motion but is ignored by Urciuoli in his memorandum in support of his motion.

> whether, if Roger Williams should independently decide, if it did independently decide, or if it should independently decide that it wishes to resume paying Mr. Urciuoli's legal fees or it is obligated to pay Mr. Urciuoli's legal fees, whether it's the Government's position that that would be a violation of the terms of the deferred prosecution agreement.

Id. at 3, 4.

The United States responded by again outlining the lack of support for Urciuoli's motion and concluding by stating definitively:

> So the answer to your question is no. If the hospital independently exercised its judgment for whatever reason to continue to pay Mr. Urciuoli's legal fees throughout the continuation of this proceeding or others, the United States would not find that it had violated the DPA.

Id. at 4, 5.

The Court then denied defendant's motion. In ruling the Court made the following observations:

1. It is improper for the Government to deprive a criminal defendant of resources to which he would be entitled. Id. at 5, 6.

2. In deciding whether to enter into a plea agreement or a DPA with a corporation, it is perfectly proper for the Government to require the corporation to admit wrongdoing by its officers as a condition to entering into the agreement, for if there were no admission of wrongdoing, the corporation's plea agreement could not be accepted. Id. at 6.

3. It is perfectly proper for the Government to consider whether the corporation is continuing to condone wrongful conduct by its officers, agents or employees and/or whether the corporation has failed to take corrective action to see that the conduct is eliminated. Id. at 6, 7.

4. A corporation is entitled to decide whether its obligation to pay legal fees on behalf of one of its officers or agents has ceased just as the officer is entitled to litigate that question. Id. at 7.

The Court stated that Urciuoli was "wrong" in his contention that the Thompson memorandum somehow prohibited the Government from entering into the DPA unless the corporation agreed to stop paying defendant's fees and that the Government's reference to the Thompson memorandum during its negotiations with RWMC implied that the Government was requiring RWMC to stop paying his fees prior to entering into a plea agreement. Id. at 19. In reaching its conclusion, the Court did not "read the Thompson memorandum as mandating anything." Id.

> The only thing that's required of the prosecutor is that the prosecutor consider the various factors enumerated in the Thompson memorandum. It does not . . . preclude the prosecutor from accepting a guilty plea or entering into a deferred prosecution agreement with a corporation if the corporation doesn't agree to stop paying legal fees of the accused officers.
>
> * * *
>
> In fact, the Thompson memorandum specifically recognizes in a footnote that in a case where the corporation is required by law to pay legal fees that this becomes a non-factor, that that isn't even something that ought to be considered. So [the Court did not] believe that either the Thompson memorandum itself or any references that may have been made during plea negotiations to remind the board in Roger Williams what the Thompson memorandum said rise to the level of anything that could reasonably be construed as imposing a condition that Roger Williams stop paying Mr.Urciuoli's legal fees.

Id. at 19, 20.

The Court also dismissed the argument that by requiring RWMC to admit to wrongdoing by Urciuoli, the Government indirectly pressured RWMC to stop paying his legal fees because it "doesn't necessarily follow that because Roger Williams decided to terminate Mr. Urciuoli that, therefore, it could not any longer pay his legal fees or that the two were linked any more than it

follows that because it entered into the plea agreement that it had to terminate Mr. Urciuoli." Id. at 21. The Court reiterated that the "big flaw" with that argument was "that there couldn't be any plea agreement or [DPA] without an admission by the corporation that the individual who allegedly committed the wrongful acts acted wrongfully." Id. at 22. In addition, Judge Torres reiterated that the Government is entitled to consider whether a corporation is condoning the alleged wrongful conduct underlying the charges. Id. at 23.

Judge Torres also decided against inquiring into the reasons for the 15-member RWMC board's decision to cease paying legal fees because it would be a "very slippery slope," since it would involve "delicate questions of attorney-client privilege and other difficult issues." Id. at 12, 24, 25.

Finally, the Court found no prejudice because there was "no showing that Mr. Urciuoli ha[d] been deprived of anything to which he would otherwise be entitled." Id. at 26. The Court so found because there had been no proffer on the subject and because "all of the visible indications that [were] visible to the Court [were] to the contrary. Mr. Urciuoli ha[d] been represented throughout this matter by a battery of premier counsel. He has some of the finest defense counsel around representing him. And not just one. He has Mr. Connolly and his firm, and he has Mr.Egbert." Id. at 27. In particular, the Court noted that Mr. Egbert was hired after RWMC disclaimed responsibility for paying his fees. Id. Judge Torres stated that he could not "imagine a more vigorous defense having been presented up to [that] point." Id. at 28.

Accordingly, the Court denied Urciuoli's request for a hearing because there had been:

> no sufficient reason advanced as to what evidence Mr. Urciuoli propose[d] to present or ha[d] any reasonable expectation could be produced either, one, that the Government coerced Roger Williams

> into ceasing his payment of his legal fees; or two, that the cessation of payment by Roger Williams has materially interfered with his right to counsel or his ability to present his defense. And without those two elements, he cannot prevail on his motion to dismiss, and therefore, there is no point to be served by conducting an evidentiary hearing on this matter.

Id. at 28.

## II. Argument

### A. Defendant's Renewed Motion is Precluded by the Law of the Case Doctrine

Defendant has renewed a motion that has been firmly and conclusively denied by Judge Torres. As such, he can not revive it simply because the matter is now before this Court. The "law of the case doctrine" has two branches. United States v. Ellis, 313 F.3d at 646. The branch applicable here "provides that 'unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation.'" Id. (quoting Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 25 (1st Cir. 1997)). Therefore, "a court ordinarily ought to respect and follow its own rulings." Ellis 313 F.3d at 646 (citing Arizona v. California, 460 U.S. 605, 618 (1983)). Although there are certain exceptions, none of which apply here, "this branch frowns upon, but does not altogether prohibit, reconsideration of orders within a single proceeding by a successor judge." Ellis at 646.

The doctrine is justified because it: (1) affords litigants a high degree of certainty as to what claims are and are not still open for adjudication; (2) it furthers the abiding interest shared by both litigants and the public in finality and repose; (3) it promotes efficiency; (4) it increases confidence in the adjudicatory process; and (5) judges who too liberally second-guess there co-equals effectively usurp the appellate function. Id. at 647 (citations omitted). The exceptions to

the rule are that reconsideration may be proper if: (1) the initial ruling was made on an inadequate record; (2) there has been a material change in controlling law; (3) if newly discovered evidence bears on the question; and (4) to avoid manifest injustice. Id. at 646, 647. None of the exceptions are present here.

First, the record has not changed. There is no evidence that the United States required, as a condition precedent to entering into the DPA, that RWMC fire Urciuoli and cease paying his legal fees. Urciuoli ignores this basic fact by conjuring up the same hypothetical theories previously rejected by Judge Torres about what must have happened and failing to address: (1) the plain language of the DPA; (2) AUSA Sullivan's letter in which he advised Urciuoli's counsel in 2006 that his termination by RWMC was not a condition precedent to the DPA nor a requirement of the DPA; and, (3) the Government's answer to Judge Torres that payment by RWMC of his legal fees would not constitute a breach of the DPA.

Second, there has been no material change in controlling law. Defendant attempts to obfuscate this issue by claiming that two district court cases were issued after Judge Torres issued his decision. United States v. Rosen, 487 F. Supp. 2d 721 (E.D.V.A. May 8, 2007), and United States v. Stein, 495 F. Supp. 2d 390 (S.D.N.Y. July 16, 2007) (Stein II). However, critically, not only are the decisions without precedential value in this Circuit but both decisions were available to defendant before he filed his appellate brief with the First Circuit on August 8, 2007. Yet, defendant chose not to challenge the decision of the trial judge denying his motion to dismiss the Indictment. His failure to appeal bars his current attempt to re-litigate the issue. Ellis, 313 F.3d at 646.

Third, there is no newly discovered evidence. Defendant attempts to justify the renewal

by claiming, wrongly, that the principal ground stated by Judge Torres for denying his motion was because defendant was then represented by two law firms whom the Court found to have mounted a vigorous defense up to that point in the proceeding but that those circumstances have now changed. Renewed Mot. at 3. As outlined above, Judge Torres's decision was much more expansive than defendant wishes to acknowledge.

Defendant attempts to augment his showing by filing a self serving affidavit. However, his affidavit simply states that he expected his fees to be paid, that his financial condition has deteriorated, and that such circumstances will prevent him from fully defending himself. However, contrary to his protests of poverty, an additional attorney, Joseph Whelan, filed a notice of appearance on his behalf just last week. In addition, defendant copied yet another attorney, Howard Cooper, on a letter previously forwarded to the undersigned Assistant U.S. Attorney. See Exhibit E to Renewed Mot., Letter dated April 24, 2008 from Michael Connolly to Luis M. Matos. Mr. Cooper's relationship to this matter remains unclear since he has not filed an appearance. It is also unclear, at best, that Mr. Egbert's absence from the case is related to defendant's financial condition.[3]

Finally, manifest injustice is not at hand. Defendant's July 31, 2006, motion was rejected upon sound legal reasoning. Moreover, in order to find manifest injustice, "there is a meaningful difference between an arguably erroneous ruling (which does not justify revisitation by a co-equal successor judge) and an unreasonable ruling that paves the way for a manifestly unjust result.

[3] In regard to his financial condition, if the Court were to grant a motion for a hearing, it would be the Government's position that it should be permitted discovery and allowed to inquire about defendant's financial condition, the nature of his debts to his attorneys, and any agreements, guarantees, or similar other accords that may be relevant to the issue.

Ellis 313 F.3d at 648. Judge Torres' ruling was not even "arguably erroneous" and certainly was not unreasonable. Defendant had a full hearing before the Court. As can be seen from the transcript of Judge Torres' ruling, he fully addressed all of defendant's arguments and soundly rejected them. Moreover, Judge Torres did not simply deny the motion because he found that defendant was well represented and the recipient of a vigorous defense. He thoroughly rejected the central premise of his motion – that the Thompson Memorandum required prosecutors to seek the cessation of payment of legal fees, that such a requirement had been inferred in this case, and that defendant's constitutional rights had been deprived. Any argument that defendant did not make at that time, does not warrant reconsideration simply because defendant seeks renewal. Indeed, he waived an opportunity to raise the issue with the First Circuit – an argument which had it been raised and had it been fully successful (however unlikely) could have resulted in dismissal of the Indictment, not just a new trial. He chose not to follow such a course and he should not be allowed to now "usurp the appellate function." Id. at 647.

**B. Defendant's Motion is Without Merit**

The legal premise of Urciuoli's motion is based primarily on the district courts' decisions in Stein I, Stein II and Rosen. In Stein I, KPMG, as well as several of its former executives, came under criminal investigation as a result of the Senate Committee on Governmental Affairs' examination into industry wide "development, marketing and implementation of abusive tax shelters by accountants, lawyers, financial advisors and bankers." Stein I 435 F.Supp. 2d at 338. Prior to the commencement of any criminal investigation, KPMG determined it to be in its best interest to "clean house" and remove three of its top executives. Id. After the commencement of the criminal investigation, KPMG counsel and Department of Justice attorneys engaged in

extensive negotiations concerning pending criminal charges against the company. Figuring prominently in those negotiations was the Thompson Memorandum. The Thompson Memorandum instructed that in considering whether to charge corporations, one factor prosecutors should consider is "whether the corporation appears to be protecting its culpable employees and agents" through, among other things, "the advancing of attorneys fees." Def.'s Ex. A at 7-8. The district court concluded that, ultimately KPMG, under perceived pressure from the Justice Department and in attempt to avoid prosecution of the firm itself, stopped paying the legal fees of the three terminated executives, as well as any employee whom the Justice Department communicated was not fully cooperating with the investigation. The Stein I court found that this result was the product of threats by Justice Department attorneys, what it characterized as the mandatory nature of the Thompson Memorandum, and the desire by the Justice Department to minimize the involvement of defense attorneys in the investigation. See e.g. Stein I 365-368.

In Stein II, the district court reiterated its finding that the Thompson Memorandum made clear that payment of attorney fees to to culpable individuals could contribute to a government decision to indict. 495 F. Supp. 2d at 396. Hence it found that the Thompson Memorandum and the U.S. Attorney Office's actions caused KPMG to limit and then cut off payment of fees. Id. 495 F. Supp 2d at 400. As a result, the court dismissed the Indictments against current, but not former, employees.

In Rosen, the district court also found reason to criticize the Thompson Memorandum. The court did not determine whether the government had interfered with defendant's right to counsel, only that if certain allegations were found to be true, it would constitute interference.

487 F. Supp. 2d at 730. For instance, defendants alleged that prosecutors indicated that the corporation should cease paying defendants' attorney fees. Id. at 726. However, it rejected defendants' argument pursuant to the Stein decisions that any interference required a presumption that defendant's Fifth and Sixth Amendment claims had been violated. Instead, the Rosen court found that defendants in that case had not been prejudiced because they, too, had been the beneficiaries of a vigorous defense. Accordingly, the court found no Fifth or Sixth Amendment violation. Id. at 736. See also United States v. Thomas 519 F.Supp. 141, 145 (D. Me. Nov. 21, 2007)(dismissal not warranted because no showing of prejudice – defendant had not been deprived of his chosen attorney nor did he demonstrate the future impact that an IRS lien on an account from which he intended to draw funds to pay his attorney would have had.)

The district court's conclusions in the Stein cases are inapplicable to the case at bar for a number of reasons. The opinions are based on a factual scenario not present in the instant case. There is no evidence that RWMC's decision to enter into the DPA was anything less than voluntary, a fact that is ignored by Urciuoli. Indeed, the evidence of record demonstrates otherwise. When the Court accepted RWMC's plea of guilty, as this Court does in all of its plea colloquies, it inquired if the DPA contained the entire agreement between the parties and if anyone had threatened or coerced RWMC into pleading guilty. On information and belief, the response of RWMC was "no" and the Court accepted its plea of guilty. In addition, the DPA, on its face, does not require that RWMC terminate or cease paying defendant's attorney fees.

Moreover, Urciuoli also ignores the fact that the Office of the United States Attorney has already communicated to Urciuoli's counsel that the payment of Urciuoli's legal fees was not a factor in the DPA. Attach. B April 28, 2006, letter from Assistant United States Attorney Gerard

Sullivan to Urciuoli's counsel, Michael DeFanti. Thus, Urciuoli has no factual basis upon which to claim that the United States forced RWMC to terminate Urciuoli and his case is distinguishable from Stein.

In addition to being factually distinguishable from the case at bar, the Stein court's legal reasoning is flawed. For example, the Stein court erred in concluding that the Thompson Memorandum's provisions are mandatory. None of the Thompson Memorandum's provisions are mandatory and the document explicitly says so. Deputy Attorney General Thompson's introductory letter states that the attached set of principles are intended to "guide" Department of Justice prosecutors. Def.'s Ex. A at 1. The memorandum itself states that:

> [T]he foregoing factors are intended **to provide guidance rather than to mandate** a particular result. The factors listed in this section are intended to be illustrative of those that should be considered and not a complete or exhaustive list. Some or all of these factors may or may not apply to specific cases, and in some cases one factor may override all others.
>
> * * * * *
>
> In making a decision to charge a corporation, the prosecutor generally has wide latitude in determining when, whom and how, and even whether to prosecute for violations of Federal criminal law. In exercising that discretion, prosecutors should consider the following general statements of principals that summarize appropriate considerations to be weighed and desirable practices to be followed in discharging their prosecutorial responsibilities. In doing so, prosecutors should ensure that the general purposes of criminal law . . . are adequately met, taking into account the special nature of the corporate "person."

Def.'s Ex. A at 4 (emphasis added). Contrary to Stein's suggestion, as is clear by its terms, the Thompson Memorandum provides guidance to prosecutors and does not interfere with the overall exercise of their discretion. Simply because, as defendant points out, the Thompson Memorandum has been superseded by the McNulty Memorandum does not change the plain

language of the document.

Furthermore, the district court in Stein ignored the long-standing principle that "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." Caplin v. Drysdale Chartered, 491 U.S. 617 , 626 (1989). Whether Urciuoli is civilly, as opposed to Constitutionally, entitled to have RWMC pay his legal fees, is not a matter for this Court to decide. All the Constitution protects is Urciuoli's right to be represented by the counsel of his choice. In this case, Urciuoli continues to be represented by his first choice of counsel, Michael Connolly. He later added Richard Egbert to his trial team after his termination by RWMC, and additional counsel specifically represented him at sentencing and on appeal. Now that Mr. Egbert is no longer part of the team, attorney Joseph Whelan has filed an appearance and yet another attorney, Howard Cooper, is being copied on correspondence.

In addition, this case is nothing like Stein in which the Government turned over more than 22 million pages of material, designated nearly 70 witnesses and 2000 exhibits and which required "the active participation of a tax specialist steeped in the kinds of transactions at issue." Stein II 495 F. Supp. 2d at 418. See also Thomas 519 F. Supp. 2d at 145, n. 3. This case is significant but it is not Stein in terms of volume and complexity. See Rosen, 487 F. Supp. 2d at 735 (distinguishing Stein because although Rosen was substantial and complex, it was a two count indictment that was projected to take no more than four to six weeks to try). Indeed, this is the second trial in this matter. Counsel at this stage is well versed and familiar with the evidence and materials which are relevant to their preparation.

Finally, it does not appear that Urciuoli's contract contemplates the advancement of fees

even if the obligation were to survive his termination. The contract on its face calls for "indemnification" not advancement of fees. Def.'s Ex. B. at 13. E.g. Rosen, 487 F. Supp. 2d at 728 (close reading of company's bylaws reveals that they do not provide contractual right to fee advancement, only to indemnification, that is to reimbursement of fees after conclusion of the case, assuming a disposition favorable to employee). Therefore, defendant cannot reasonably state that he is entitled to payment of his fees prior to the termination of this matter and/or his civil litigation with RWMC.

Dismissal of an indictment is an extraordinary remedy. The Court's exercise of its discretion to dismiss an indictment "directly encroaches upon the fundamental role of the grand jury." Whitehouse v. United States Dist. Court, 53 F.3d 1349, 1359 (1st Cir. 1995). Indeed "the more severe the sanction, the more extensive the source of power needed to impose it, and the more closely the power must be circumscribed." Id. In this case, defendant has not supported the need for any sanction he seeks.

## III. Conclusion

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Urciuoli's Renewed Motion to Dismiss the Indictment, request for a hearing, and other relief.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
/LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on June 18, 2008, I electronically filed this Objection and Memorandum with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Robert Flanders, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

/s/ Dulce Donovan