UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : Cr. No. 06-02- ML
:
ROBERT A. URCIUOLI, :
FRANCES P. DRISCOLL, :

**ASSENTED-TO MOTION OF DEFENDANT ROBERT A. URCIUOLI SEEKING AUTHORIZATION FOR ISSUANCE OF SUBPOENA DUCES TECUM UNDER RULE 17 (c), FED. R. CRIM. P.**

NOW COMES Defendant Robert A. Urciuoli ("Urciuoli") and respectfully moves this Court pursuant to Rule 17(c), Fed. R. Crim. P. for authorization for the issuance of a subpoena duces tecum to Roger Williams Medical Center and its affiliates requiring the production of documents, prior to trial, to wit, on or before August 13, 2008. Urciuoli seeks pretrial production of the requested documents in order to facilitate the orderly preparation for trial and to avoid unnecessary and unreasonable delay of the trial. The Government has advised that it assents to the relief requested herein.

WHEREFORE, Defendant Urciuoli respectfully requests that this Court authorize the issuance of a subpoena duces tecum to RWMC and certain of its affiliates requiring production of documents on or before August 13, 2008.

Respectfully submitted,

ROBERT A. URCIUOLI

By his attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Dated: July 21, 2008

**CERTIFICATION**

I hereby certify that on July 21, 2008, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 06-02- ML |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |

**MEMORANDUM IN SUPPORT OF ASSENTED-TO MOTION OF DEFENDANT ROBERT A. URCIUOLI SEEKING AUTHORIZATION FOR ISSUANCE OF SUBPOENA DUCES TECUM UNDER RULE 17 (c), FED. R. CRIM. P.**

## INTRODUCTION

Pursuant to Rule 17(c), Fed. R. Crim. P., Defendant Robert A. Urciuoli ("Urciuoli") respectfully requests the Court's authorization for the issuance of a subpoena duces tecum to Roger Williams Medical Center ("RWMC") and its affiliates requiring production of the documents set forth on Attachment A, attached hereto as Exhibit A, prior to trial, to wit, on or before August 13, 2008. Urciuoli seeks pretrial production of the requested documents in order to facilitate the orderly preparation for trial and to avoid unnecessary and unreasonable delay of the trial. The Government has advised that it assents to the relief requested herein.

## LEGAL STANDARD

One of the purposes of Rule 17(c) is to expedite trials by providing a means for pretrial inspection of subpoenaed materials. *United States v. Nixon*, 418 U.S. 683, 698 (1974). In *United States v. Nixon*, 418 U.S. at 699, the Supreme Court approved criteria for considering Rule 17(c) subpoenas. They are (1) that the material sought is

evidentiary and relevant; (2) that it is not otherwise procurable by the defendant reasonably in advance of trail by the exercise of due diligence; (3) that the defendant cannot properly prepare for trial without such production and inspection in advance and the failure to produce may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition. The Court in *Nixon* further refined the criteria by requiring a minimal showing of (1) relevancy, (2) admissibility, and (3) specificity. *Nixo*n, 418 U.S. at 700. As explained below, Urciuoli meets the *Nixon* Court's criteria for issuance of a Rule 17(c) subpoena.

**DOCUMENTS REQUESTED**

A central aspect of Urciuoli's defense in this case is that former Senator John Celona had a real and substantial consulting engagement, where he was required to promote the interests of The Village at Elmhurst ("The Village") and the affiliates of RWMC, and that he in fact successfully completed such work. In that regard, the documents sought in request numbers (1) through (6) of the proposed Rule 17(c) subpoena (*see* Exhibit A) seek documents regarding the efforts of Richard Gamache to summarize the activity and results of Celona's promotional efforts particularly in regard to the nursing home owned by RWMC, Elmhurst Extended Care, Inc. ("Elmhurst"). Mr. Gamache memorialized his findings about persons referred to the nursing home through Celona's efforts in a memorandum dated April 27, 2005. *See* Memorandum from Richard Gamache to Kim O'Connell, copied to Robert A. Urciuoli "Re: John Celona Referrals to Elmhurst" ("the Gamache Memo"), attached hereto as Exhibit B.

Requests 1 through 6 of the subpoena specifically seek documents that substantiate the conclusions set forth in the Gamache Memo, such as the conclusion that

the nursing home's admissions records reflect that Celona referred between 3-5 patients per year to the nursing home. Gamache further concluded that, given the average length of stay at the nursing home and the "blended rate," each referral generated between $261,212 and $435,354 per year between 1998 and 2004. That information, and the underlying documents that support those conclusions, is centrally relevant to Urciuoli's defense that Celona was paid to provide actual legitimate consulting services and that he actually generated positive results, thereby justifying the consulting fees he was paid.

Request number 7 seeks financial information regarding RWMC and its employees. This information is relevant to establish the financial pressure under which Urciuoli operated the hospital, which will provide the relevant context for several of the business decisions made by Urciuoli that are at issue in this case. It is anticipated that the requested records will show that the hospital was losing money during several points in time between 1998 and 2003. We submit that the evidence at trial will show that Urciuoli sought to hire Celona, and then utilize him once he was engaged, to improve certain aspects of the financial performance of RWMC affiliates, such as The Village and Elmhurst. Among the ways in which Urciuoli sought to utilize Celona to improve financial performance include, but are not limited to, the following: having Celona promote The Village and Elmhurst among senior citizen communities; having Celona promote The Village, Elmhurst, and other RWMC affiliates on his cable television program; having Celona facilitate meetings with insurance carriers in order to resolve their unpaid obligations owed by the carriers to the hospital. The government has made it clear that it intends to offer evidence on those matters – Celona's promotional efforts on behalf of RWMC affiliates or the alleged lack thereof and Celona's role in regard to

insurance carrier contract negotiations. Accordingly, Urciuoli should be permitted to present the financial operating information pertinent to the relevant time frame in order to establish his good faith intentions.

Request number 8 seeks to establish that The Village at Elmhurst was an extremely profitable investment for RWMC. The financial records establishing that fact will serve to support Urciuoli's position that it was a financially prudent business decision to engage Celona to promote The Village, and that, in part because of Celona's efforts, RWMC's investment in The Village served it well.

Request number 9 seeks the affiliation agreement between The Village and RWMC because it reflects the legal "affiliation" between The Village on one hand and RWMC and its affiliates on the other hand. Among other things, we expect that this document will address obligations of each party to the agreement to promote the interests of the other party. Any such provision will be relevant to the role played by Celona and his obligations under his consulting agreement.

## CONCLUSION

Wherefore, Defendant Urciuoli respectfully requests that this Court authorize the issuance of a subpoena duces tecum to RWMC and certain of its affiliates requiring production of the documents set forth on Attachment A on or before August 13, 2008.

Respectfully submitted,

ROBERT A. URCIUOLI

By his attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Dated: July 21, 2008

## CERTIFICATION

I hereby certify that on July 21, 2008, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua

# EXHIBIT A

# ATTACHMENT A

(1) All documents which reflect, refer or relate to any referral(s) for admission by John Celona of any individual(s) to the Village at Elmhurst, Elmhurst Extended Care, or RWMC affiliates, from 1997 through 2004.

(2) All documents which reflect, refer or relate to the referral for admission by John Celona to Elmhurst of the "at least nine individuals" as referenced in the attached 4/27/04 Memorandum authored by Richard Gamache ("the Gamache Memo").

(3) All "admissions records" referred to or relied upon for the statement in the Gamache Memo that "Our admission records indicate that he referred between 3-5 patients per year."

(4) All documents referred to or relied upon in the Gamache Memo to support each and every other statement in the Memorandum including, without limitation, the following:

> "The average length of stay is 1.3 years."
>
> "Our average blended rate is 183.50."
>
> "Therefore we can assume that his referrals would generate revenue Between $261,212 (For 3 patients) and $435,354 (For 5 patients) per Year from 1998 to 2004."

(5) All documents otherwise relied upon in connection with the generation of the Gamache Memo.

(6) Documents sufficient to disclose the identity of all individuals who assisted with the creation of the Gamache memo or any information contained therein.

(7) Monthly, quarterly and annual income statements for Roger Williams Medical Center, Elmhurst Extended Care, Roger Williams Realty Corporation, and Roger Williams Hospital for the period January 1, 1998 through December 31, 2003.

(8) Documents reflecting or relating to:

  (a) Any and all income generated by Roger Williams Medical Center's investment through Roger Williams Realty Corporation in The Village at Elmhurst; and

  (b) The financial gain or loss to Roger Williams Medical Center and/or Roger Williams Realty Corporation upon the sale or disposition of its interest in The Village at Elmhurst.

(9) The affiliation agreement between The Village at Elmhurst and Roger Williams Medical Center, Roger Williams Realty Corporation, or any other Roger Williams Medical Center-related entity.

# EXHIBIT B

# Memorandum

**Date:** 4/27/2005

**To:** Kim O'Connell, Vice President/General Counsel

**Cc:** Bob Urciuoli, President and CEO

**From:** Richard Gamache, Vice president/Administrator

**RE:** John Celona referrals to Elmhurst

---

In an e-mail dated 3/25/04 from me regarding John Celona's value to Elmhurst over the last few years I indicated that the Admissions department had identified at least nine individuals who were personally referred to Elmhurst by Senator Celona. I did not, however, clarify the time frame of this activity. Therefore, I had the admissions department do additional research to provide back-up for this information.

The time frame for the nine referrals was from July 2001 to the memorandum date of March 25, 2004.

Here is some additional information regarding John Celona's referrals:

- Our admission records indicate that he referred between 3-5 patients per year.
- The average length of stay is 1.3 years.
- Our average blended rate is 183.50
- Therefore we can assume that his referrals would generate revenue between $261,212. (For 3 patients) and $435,354. (For 5 patients) per year from 1998 to 2004.
- As an example:
    1. The Admissions Department audited a twelve month period (3/02-2/03) to estimate John Celona's referral pattern. During that time at least six individuals were referred and admitted to Elmhurst. Of the six, four were short-term referrals who either returned to the community following rehab or passed away. Two were long term residents (one is still here). Total revenue generated from these individuals is $378,000. Although this audit is for a twelve month period, these referral patterns were typical of our relationship with John Celona.

If you need additional information please contact me.