UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : Cr. No. 06-02- ML
:
ROBERT A. URCIUOLI and :
FRANCES P. DRISCOLL :

**ROBERT URCIUOLI'S TRIAL BRIEF ON THE LIMITS OF AN HONEST SERVICES MAIL FRAUD PROSECUTION AND THE NEED FOR A STATE LAW INSTRUCTION**

Defendant Robert A. Urciuoli respectfully submits this memorandum in further support of his motions *in limine* and requests for jury instructions so as to give the Court one brief addressing these points and to avoid repetition.

## I. PRELIMINARY STATEMENT

Numerous federal courts have articulated the difficulties associated with defining the parameters and outer limits of an honest services fraud prosecution. As the First Circuit has explained, the concept of "honest services" is vague and undefined by the statute. United States v. Urciuoli, 513 F.3d 290, 294 (1st Cir. 2008) ("[the statute's] application to political misconduct and corruption cases has been especially fraught.") The problem is of particular concern in Rhode Island, which is "unique" because of its part time citizen legislature and the laws governing the same. See Nat'l Ass'n of Social Workers v. Harwood, 69 F.3d 622, 637 (1st Cir. 1995) (Lynch, J. dissenting) (observing that "[t]he Rhode Island House presents a factual setting perhaps unique in this country"). Accordingly, it is critical that the jury be versant in Rhode Island law, in particular, the class exception set forth in R.I. Gen. Laws § 36-14-7(b) -- on which the Defendants relied in good faith in their dealings with former state Senator John Celona -- so that it can properly evaluate the evidence to be presented at trial. State law is inextricably

intertwined with the allegations in this case; it goes to the heart of the Defendants' guilt or innocence. At a minimum, evidence of state law bears directly on the Defendants' intent to commit the charged crimes -- i.e., their *mens rea* -- and should be admitted on that ground, alone. Moreover, the class exception, on its face, expressly advised Celona that he could take action on, e.g., propose, debate and vote on, legislation affecting RWMC and its affiliates notwithstanding his financial relationship with those entities -- the very conduct that the Government has alleged constitutes a deprivation of Celona's honest services as a legislator. Thus, state law is also directly relevant to the *actus reus* of the crime alleged and whether the conduct alleged to be at issue is in actuality lawful.

The need for the jury to be educated and instructed on state law, including the class exception, is particularly compelling in light of the Government's forecast of its intention to introduce evidence of the "true nature" of Celona's relationship with RWMC -- a thinly-veiled attempt to resurrect its "failure to disclose" conflict of interest theory of prosecution -- which, it has represented to the Court, both orally and in writing, it has completely abandoned. To allow the jury to hear evidence based upon which the Government will attempt to argue that the Defendants and Celona failed to disclose to the public that Celona had an impermissible conflict of interest, without instructing the jury that state law expressly provides for certain permissible interactions which might otherwise be conflicts of interest in some circumstances, would be misleading and unduly prejudicial to the Defendants. Fairness requires that the jury be given the instructions it will need to properly evaluate the evidence and law in this case.

Finally, an instruction on federal and state constitutional First Amendment law in this case is necessary to protect Mr. Urciuoli's secured constitutional right to petition the Government including the state legislature, and indeed any legislator of his choosing, about any

matter or grievance. Indeed, it is beyond dispute that all citizens have a constitutional right to petition the legislature. This is both a federally-secured right under the First Amendment to the United States Constitution and a right secured under the Constitution of the State of Rhode Island. The jury must be made to understand that absent an unlawful bribery scheme -- which does not exist here -- the Defendants' contact with Celona was perfectly lawful and, indeed, constitutionally-guaranteed, as well as permitted under Rhode Island law. Failure to instruct the jury in this regard would constitute plain error and would unconstitutionally-burden the Defendants' First Amendment rights.

## II. ARGUMENT

### A. The Complexities Of This Case Warrant Careful Instruction of the Jury on Applicable State and Federal Law.

The factual and legal complexities of this case warrant careful instruction of the jury on applicable state and federal law as it pertains to Rhode Island's unique part-time citizen legislature, as well as the state and federally-protected right of all citizens of Rhode Island to petition their government. Rhode Island's General Assembly, a citizen legislature consisting of part-time politicians who are employed in various other sectors of the community, presents a unique challenge to the application of 18 U.S.C. § 1346. Indeed, the First Circuit has articulated the challenges associated with defining the scope of the honest services fraud statute even absent the added complexity of Rhode Island's citizen legislature:

> The central problem is that the concept of "honest services" is vague and undefined by the statute. So, as one moves beyond core misconduct covered by the statute (e.g., taking a bribe for a legislative vote), difficult questions arise in giving coherent content to the phrase through judicial glosses. Closely related concerns are assuring fair notice to those governed by the statute, see Bouie v. City of Columbia, 378 U.S. 347, 350, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), and cabining the statute -- a serious crime with severe penalties -- lest it embrace every kind of legal or ethical abuse remotely connected to the holding of a governmental position. Sawyer I, 85 F.3d at 725 (the honest services fraud statute "does not encompass every instance of official misconduct that results in the official's personal

gain").

United States v. Urciuoli, 513 F.3d 290, 294 (1st Cir. 2008).

Judge Harrington, the former United States Attorney for the District of Massachusetts, warned that the elastic nature of honest services fraud threatens the liberty and reputation of individuals undeserving of criminal prosecution under a federal felony statute:

> This court re-emphasizes the threat to liberty and reputation of individuals which occurs when federal prosecutors selectively transform state ethics violation . . . typically enforced by the imposition of civil penalties, into serious federal felonies. The government should be wary of the broad language and elastic interpretation of the federal criminal fraud statute, and refuse to engage in the innovative prosecutorial process of 'federalization' of state laws.

United States v. Sawyer, 74 F.Supp.2d 88, 105 (Harrington, J.) (D. Mass. 1999), rev'd, 239 F.3d 31, 49 (1st Cir. 2001) (supporting Judge Harrington's cautionary note); see also Thomas DiBiagio, *Politics and the Criminal Process: Federal Public Corruption Prosecutions of Popular Public Officials Under the Honest Services Component of the Mail and Wire Fraud Statutes*, 105 DICK. L. REV. 57, 63 (2000) ("There are few areas of federal criminal law as ambiguous as the criteria for prosecution under section 1346.")

The problems presented in the Government's prosecution of this case are exponentially more significant than just a simple vagueness or line drawing issue. Here, it is beyond dispute that the Defendants and the entities for whom they worked all enjoyed a constitutionally-secured right to petition the government about any matter before it or that they wished to bring before it. The right to petition the government is both a federally-secured right under the First Amendment and a right secured under the Constitution of Rhode Island. See U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances); Rhode Island CONST.

article I, § 21 ("The citizens have a right in a peaceable manner to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or for other purposes, by petition, address, or remonstrance. No law abridging the freedom of speech shall be enacted.")[1]

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." This means that all citizens, both individuals and organizations, have the right to communicate to the Government and its officials -- such as state senators like Mr. Celona -- directly about any matter which is or will be pending before the legislature, or might come before the legislature. See U.S. CONST. amend. I. In their communications to any official of the Government, citizens are entitled to express their views and make requests of a government official about any matter which is, will be or might come before the legislature or any other governmental body. Id. The right to petition is cut from the same cloth as the other guarantees of free speech contained in the First Amendment. McDonald v. Smith, 472 U.S. 479, 482 (1985). It is an assurance of a particular freedom of expression in communications, requests and entreaties to the government. Id.; see also United States v. Cruikshank, 92 U.S. 542 (1876). Indeed, this right is at the core of our very idea of government, that people may communicate their will through direct communications, petitions, requests and demands to the legislature and government officials. Cruikshank, 92 U.S. at 552; 1 Annals of Cong. 728 (1789). The Rhode Island Constitution affords similar protections. See Rhode Island CONST. article I, § 21.

Put simply, under both federal and state law, all citizens of Rhode Island, including the Defendants, have the right to tell government officials what it is they want them to do, to demand that they take certain actions and positions, and to communicate these requests and demands as

[1] This right is of sufficient concern in Rhode Island that the Rhode Island legislature adopted the Rhode Island anti-SLAPP statute to protect the rights of citizens even from civil suits which interfere with the right to petition. See R.I. Gen. Laws § 9-33-1 et seq.

often as they like. The Defendants are entitled to have the jury be informed about the scope and limits of federal and Rhode Island law as it pertains to their constitutionally-protected right to petition their government. See United States v. Potter, 463 F.3d 9, 19 (1st Cir. 2006) ("what the jury is to be given is the law pertinent to the case before it.")

There are, of course, limits to the right to petition; one cannot pay a government official to take a position. However, the jury must understand that all other type of contact with the government is legal and protected under the United States Constitution, as well as the Rhode Island Constitution. Absent an unlawful quid pro quo scheme -- which is utterly lacking in this case -- the Defendants' contact with Celona was lawful no matter how demanding the language used. The intent to persuade or influence a public official, in and of itself, does not constitute an intent that the official deviate from the honest performance of his duties. See First Circuit Pattern Jury Instructions §4.1; United States v. Urciuoli, 513 F.3d 290 (1st Cir. 2008); United States v. Sawyer, 239 F.3d 31, 41, 46-47 (1st Cir. 2001); United States v. Woodward, 149 F.3d 46 (1st Cir. 1998); United States v. Sawyer, 85 F.3d 713, 724, 729 (1st Cir. 1996); United States v. Harris, 347 U.S. 612 (1954).

Accordingly, the Court must consider the admissibility of all proffered evidence in this case through the prism of the Defendants' secured constitutional rights and preclude the Government from suggesting in any fashion that the law applicable in this case can be understood to burden or infringe upon these rights. So too, the Court must instruct the jury about the Defendants' constitutional right (both state and federal) to petition the government so as to avoid allowing the Government to pursue a conviction that is constitutionally impermissible.

**B. State Law Is Relevant to the Defendants' Mens Rea.**

Rhode Island law also bears directly on whether the Defendants intended to commit fraud -- i.e., the mens rea element of the alleged crimes. It is well-settled that in honest services fraud prosecutions, state law is relevant, at a minimum, to the issue of a defendant's criminal intent or lack thereof. United States v. Urciuoli, 513 F.3d 290, 298 (1st Cir. 2008) (referring to the district court's recognition that state law may be relevant to the extent it bears on intent). Indeed, in United States v. Ortiz et al., the Government conceded that evidence of state law should be considered by the jury to the extent it bears on the defendants' state of mind. See United States v. Ortiz et al., 1:07-cr-00009, (Government's Objection to Defendants' Motion to Strike the Conflict-of-Interest Prosecution Theory) (Docket #70), at 7 ("the jury should be instructed that evidence about [state law] may be considered . . . to the extent it bears on intent"), attached to Appendix of Exhibits, at Tab J; see also May 8, 2008 Letter of Daniel A. Petalas to the Court, at Tab K.

Criminal intent is a key component of an honest services fraud violation; to establish a violation of the honest services fraud statute, the Government must prove beyond a reasonable doubt that the defendant knowingly and willfully participated in a scheme to defraud with an intent to defraud. See First Circuit Pattern Jury Instructions § 4.12. A defendant acts "knowingly" if he was conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident. Id. An act is done "willfully" if it is done voluntarily and intentionally, and with the specific intent to do something the law forbids -- that is to say, with bad purpose, either to disobey or disregard the law. Id. To act with an "intent to defraud" means to act willfully and with the specific intent to deceive or cheat. First Circuit Pattern Jury Instructions § 4.10. Thus, a defendant who acted in

good faith cannot be guilty of honest services mail fraud. Id.

The Government must prove two different types of intent beyond a reasonable doubt: (1) that the defendant intended to cause the public official to deviate from the honest performance of his public duties; and (2) that the defendant intended to deceive the public. Id. With respect to the first kind of intent (i.e., the intent that Celona deviate from the honest performance of his public duties), and in line with its quid pro quo bribery theory, the Government must prove beyond a reasonable doubt that the Defendants intended payments or other things of value provided to Celona to cause him to alter his official acts, to change a position which he would otherwise have taken, or to take official actions that he would not have taken but for the payments or other things of value. See First Circuit Pattern Jury Instructions § 4.1; United States v. Urciuoli, 513 F.3d 290 (1st Cir. 2008); United States v. Sawyer, 239 F.3d 31, 41, 46-47 (1st Cir. 2001); United States v. Woodward, 149 F.3d 46 (1st Cir. 1998); United States v. Sawyer, 85 F.3d 713, 724, 729 (1st Cir. 1996); United States v. Harris, 347 U.S. 612 (1954). With respect to the second kind of intent (i.e., the intent to deceive the public), the Government must prove that the Defendants intended to deceive the public concerning the alleged quid pro quo bribery scheme, either through their own acts of deception towards the public or through their efforts to ensure that Celona deceived the public with respect to the quid pro quo payments he received from the Defendants. United States v. Sawyer, 85 F.3d 713 (1st Cir. 1996).[2]

---

[2] As discussed in Mr. Urciuoli's Motion *In Limine* To Exclude All Evidence Of Alleged Concealment And For Instruction Of the Jury, in a quid pro quo bribery honest services fraud case, such as this one, this latter intent is not an intent to deceive the public about an undisclosed conflict of interest. Rather, the proof of intent to deceive the public in a quid pro quo bribery case is qualitatively different from that which the Government must satisfy in a concealment case. This is particularly true in light of the fact that case law holds that there is no legal duty on the part of a private citizen to disclose a conflict of interest even where one may exist. See, e.g., United States v. Safavian, 2008 U.S. App. LEXIS 12691 (D.C. App. 2008). The Government's burden of proof with respect to the intent elements of honest service fraud does not render evidence of alleged concealment necessary or relevant to this case. Indeed, the only hypothetically relevant evidence of concealment would be that which relates solely to an effort to conceal a quid pro quo bribery scheme involving the payment of money in exchange for conduct, and for the Government to even ask that question would require it to assume the ultimate issue in the case in its question.

Rhode Island law -- in particular, the class exception[3] -- goes to the heart of the Government's burden of proof with respect to the intent elements of honest services mail fraud. The Government has represented on numerous occasions that it is proceeding on a quid pro quo theory of honest services fraud, namely, that the Defendants paid Celona in exchange for his taking action on legislation that would benefit RWMC, and that this arrangement was improper and unlawful. However, it is apparent from the plain language of § 36-14-7(b) that the class exception permits legislators, such as Celona, to act on behalf of an institution, such as RWMC, notwithstanding a financial relationship. Id. The Defendants were well-aware of the class exception; they relied on it in good faith in their dealings with Celona. Their knowledge of the class exception caused them to believe in good faith that there was no improper quid pro quo -- only permissible interactions with Celona. In other words, the plain language and very existence of the class exception, about which they were advised via legal counsel, negates any intent to commit honest services mail fraud. There can be no intent to defraud in the presence of good faith. See First Circuit Pattern Jury Instruction § 4.1. At a minimum, evidence of state law should be admitted to the extent that it bears on the multiple intent elements of honest services fraud, and the Government's burden of proof with respect to the same.

---

[3] The class exception states as follows:

> (b) A person subject to this Code of Ethics does not have an interest which is in substantial conflict with the proper discharge of his or her duties in the public interest and of his or her responsibilities as prescribed by the laws of this state, if any benefit or detriment accrues to him or her or any person within his or her family or any business associate, or any business by which the person is employed or which the person represents, as a member of a business, profession, occupation or group, or of any significant and definable class of persons within the business, profession, occupation or group, to no greater extent than any other similarly situated member of the business, profession, occupation or group, or of the significant and definable class of persons within the business, profession, occupation or group.

See Rhode Island Gen. Laws § 36-14-7(b).

C. **State Law is Relevant to the Actus Reus.**

As importantly, Rhode Island law is critical to the issue of whether the *actus reus* of the crime alleged to be at issue in this case was even criminal in nature. As the First Circuit made clear in Sawyer I, separate and aside from the issue of intent, the Government must prove beyond a reasonable doubt that "the target of the scheme is the deprivation of the official's honest services." 85 F. 3d at 725. A properly instructed jury, the Defendants expect, will conclude from the evidence that, as permitted under Rhode Island law, Celona had a consulting agreement to do work for an assisted living facility and nursing home, and to do so as part of a broader continuum of care which promoted these entities' "affiliates," all of whom were disclosed to the Rhode Island Ethics Commission and mentioned in the Advisory Opinion which issued in response. Celona, a part time legislator who had the right to work under Rhode Island law, and The Village at Elmhurst LLC, entered into a consulting agreement pursuant to which Celona was to perform work for The Village (an assisted living facility) and Village Extended Care (a nursing home). Both entities are RWMC affiliates. Celona, in fact, did perform work for which he was paid. At the same time, the jury, once properly instructed, will be entitled to conclude that, apart from being paid for work done in this regard, the Defendants each had communications with Celona that were entirely permissible interactions under Rhode Island law and cannot, as a matter of law, form the basis of a criminal prosecution.

It cannot be presumed that the jurors will already know or understand the idiosyncracies and unconventional features of Rhode Island law. As the defendants argued in United States v. Ortiz, Docket No. 1:07-cr-00009, it is neither intuitive nor logical that it is legitimate and lawful for a hospital and/or affiliates to engage a legislator as a consultant, or that there are circumstances under which it is completely lawful for a legislator who works for a hospital to

take action on health care legislation that has an impact on the hospital. It is critical that the jury be instructed that there is a perfectly innocent explanation for the Defendants' communications with Celona about legislation under the class exception. As the Sawyer I court explained:

> . . . where, as here, the line between the merely unattractive and actually criminal conduct is blurred, the court must take pains to explain the difference to the jury. The Second Circuit took this same view in a closely related context, saying: 'When an elected official who has received campaign contributions is charged with extortion and with receiving bribes, the charge must carefully focus the jury's attention on the difference between lawful political contributions and unlawful extortionate payments and bribes.' United States v. Biaggi, 909 F.2d 662, 695-96 (2d Cir. 1990), cert. denied, 499 U.S. 904 (1991).

United States v. Sawyer I, 85 F.3d 713, 741-42 (1st Cir. 1996) ("Sawyer I").

In short, there exists a real risk that the jurors' preconceptions about legislators will run directly contrary to the position that Rhode Island laws actually take toward legislators' ability to hold outside employment. Rhode Island law is clearly relevant both to the Defendants' mens rea and actus reus. It should be admitted into evidence so that the jury may properly evaluate whether the Government can satisfy its burden of proof at trial with respect to the elements of honest services fraud.

**D. Instruction on State Law is Particularly Critical Given the Implication That the Defendants Concealed the True Nature of Celona's Relationship with RWMC From the Public.**

The need for the jury to understand Rhode Island law, including the class exception, is particularly important given the Government's forecast of its intention to offer evidence of a "failure to disclose" theory of honest services fraud -- notwithstanding its unequivocal representations to the contrary.[4] The Government has contended that evidence of Celona's rescue run advocacy -- whereby Celona urged mayors and other local officials to comply with

[4] Mr. Urciuoli has now materially relied on these unequivocal representations in preparing for trial. Contemporaneously with filing the instant motion, Mr. Urciuoli is filing a motion to strike the Indictment with respect to all allegations of an alleged concealed conflict of interest.

Rhode Island law entitling ambulance patients to be taken to the hospital of their choice -- is "relevant to explain the true nature of the relationship" between RWMC, Mr. Urciuoli, Co-Defendant Frances P. Driscoll, and Celona. See Government's Objection to the Motion *In Limine* (Docket # 313), at p. 1, attached to Appendix at Tab E. It is apparent from these statements that the Government will seek to introduce evidence that the Defendants and Celona concealed from the citizens of Rhode Island the "true nature" and extent of Celona's relationship with RWMC. This allegation unavoidably implicates state law: the alleged conflict of interest consists of a state senator's participation in health care legislation pending before a state legislature while working for a hospital and its affiliates under a regime that, under certain circumstances, permits a state legislator to act on state legislation that would affect the very entity for which the legislator worked. Rhode Island law goes to the heart of this allegation. It is critical that the jury understand the class exception and its application to the facts of this case.

It is equally crucial that the jurors understand that Rhode Island's conflict of interest laws do not apply to private citizens, such as Mr. Urciuoli and Ms. Driscoll. Accordingly, even if an improper conflict interest did exist with respect to the legislation at issue in this trial -- which it did not -- the Defendants had no duty or obligation under Rhode Island law to disclose it, nor did they have any duty or obligation under Rhode Island law to disclose Celona's consulting relationship with RWMC and its affiliates. Accordingly, even if the Defendants had failed to disclose relevant information to the Ethics Commission, which they did not, such an omission could not, as a matter of law, serve as the basis of an honest services fraud violation. See United States v. Safavian, 2008 U.S. App. LEXIS 12691 (D.C. App. 2008) (in absence of a legal duty to disclose, charge of falsifying and concealing material facts in violation of 18 U.S.C. § 1001(a)(1) based upon alleged material omissions in an ethics advisory request could not lie). None of this

is self-evident to jurors. Rhode Island law is inextricably intertwined with the allegations in this case.

## III. CONCLUSION

For all of the reasons set forth above, Defendant Robert A. Urciuoli respectfully requests that this Court: (1) instruct the jury on the scope and limits of federal and state law as it pertains to the Defendants' constitutionally-protected right to petition their government; and (2) instruct the jury on Rhode Island law, including, but not limited to, evidence of the class exception under Rhode Island Gen. Laws § 36-14-7(b).

Respectfully submitted,

ROBERT A. URCIUOLI

By his attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Howard M. Cooper (MA BBO # 543842)
*Pro Hac Vice Counsel*
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 624-4713
(617) 227-5777
hcooper@toddweld.com

Dated: August 15, 2008

**CERTIFICATION**

I hereby certify that on August 15, 2008, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua