UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 06-02- ML |
| | : | |
| ROBERT A. URCIUOLI and FRANCES P. DRISCOLL | : | |

**ROBERT A. URCIUOLI'S MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE OF ALLEGED CONCEALMENT AND FOR INSTRUCTION OF THE JURY**

Defendant Robert A. Urciuoli ("Mr. Urciuoli") hereby moves the Court, *in limine*, to exclude evidence of alleged concealment and for instruction of the jury on Rhode Island law. More particularly, based upon the Government's representations to the Court in this case about the nature of this prosecution, Mr. Urciuoli requests that the Court exclude, in its entirety, the following: (i) the testimony of Attorney James McGuirk; (ii) the testimony of Attorney Katherine D'Arezzo; and (iii) questions to any witness as to whether the alleged relationship between former Senator John Celona, on the one hand, and Roger Williams Medical Center ("RWMC"), any of its affiliates and/or either of the Defendants, on the other hand, was disclosed to them. Mr. Urciuoli hereby requests **oral argument** in connection with this motion. Counsel for Mr. Urciuoli estimates that forty-five (45) minutes will be required for same. In support of this motion, Mr. Urciuoli relies on his accompanying memorandum of law, which is filed herewith and incorporated herein by reference

WHEREFORE, Defendant Robert A. Urciuoli respectfully requests that this Court: exclude, in its entirety, the following: (i) the testimony of Attorney James McGuirk; (ii) the testimony of Attorney Katherine D'Arezzo; and (iii) questions to any witness as to whether the alleged relationship between former Senator John Celona, on the one hand, and Roger Williams

*#752338v1*

Medical Center, any of its affiliates and/or either of the Defendants, on the other, was disclosed to them. Separately, and in any event, Mr. Urciuoli requests that the Court instruct the jury on Rhode Island law, including, but not limited to, the class exception, both at the commencement of trial, during trial, and at the close of evidence.

Respectfully submitted,

ROBERT A. URCIUOLI

By his attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Howard M. Cooper (MA BBO # 543842)
*Pro Hac Vice Counsel*
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 624-4713
(617) 227-5777
hcooper@toddweld.com

Dated: August 15, 2008

## CERTIFICATION

I hereby certify that on August 15, 2008, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : Cr. No. 06-02- ML
:
ROBERT A. URCIUOLI and :
FRANCES P. DRISCOLL :

**MEMORANDUM OF LAW IN SUPPORT OF ROBERT A. URCIUOLI'S MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE OF ALLEGED CONCEALMENT AND FOR INSTRUCTION OF THE JURY**

Defendant Robert A. Urciuoli ("Mr. Urciuoli") respectfully submits this memorandum of law in support of his Motion *In Limine* to Exclude Evidence of Concealment and For Instruction of the Jury. More particularly, based upon the Government's representations to the Court in this case about the nature of this prosecution, Mr. Urciuoli requests that the Court exclude, in its entirety, the following: (i) the testimony of Attorney James McGuirk; (ii) the testimony of Attorney Katherine D'Arezzo; and (iii) questions to any witness as to whether the alleged relationship between former Senator John Celona, on the one hand, and Roger Williams Medical Center ("RWMC"), any of its affiliates and/or either of the Defendants, on the other hand, was disclosed to them. Each of these categories of evidence is discussed below. Each is inadmissible in an honest services mail fraud prosecution which, the Government has represented, is now based solely upon a quid pro quo bribery theory and expressly not based upon a concealment of a conflict of interest theory. For the convenience of the Court, the testimony of Attorney McGuirk and Attorney D'Arezzo, as well as illustrative questions related to alleged non-disclosure posed by the Government during the first trial of this matter, are submitted in the Appendix of Exhibits filed herewith.

Separately, and in light of the issues raised in this motion, Mr. Urciuoli also requests that the Court, regardless of its ruling on the specific evidentiary issues addressed herein, instruct the jury on Rhode Island law as it pertains to the allegations against the Defendants, including, but not limited to, the class exception set forth in Rhode Island Gen. Laws § 36-14-7(b). The evidentiary issues raised herein highlight why such an instruction is critical to the jury's ability to properly evaluate the Defendants' guilt or innocence of the charged offenses.

## I. PRELIMINARY STATEMENT

The Government has unequivocally, and now repeatedly, represented to the Court both orally and in writing that it has abandoned its "concealed conflict of interest" theory of honest services mail fraud prosecution and intends to proceed exclusively on a quid pro quo bribery theory.[1] See, e.g., the Government's Objection to Frances Driscoll's Motion for Preliminary Jury Instruction (Docket # 302), p. 3 ("Presently, the United States is not proceeding on a concealed conflict of interest theory"), and p. 10 ("In sum, this case is about quid pro quo bribery . . . the evidence at the second trial will comport with a quid pro quo bribery theory of honest services mail fraud."), attached hereto at Tab A to Appendix of Exhibits. Although the Government contends otherwise, it made such a concealment theory the centerpiece of its presentation to the jury in the first trial of this matter. To that end, the Government called Edwards, Angell, Palmer & Dodge LLP partner and former RWMC Counsel Attorney James McGuirk ("Attorney McGuirk") to testify at length about, inter alia, (i) the drafting and execution of the Consulting Agreement between Celona and RWMC affiliate, The Village at Elmhurst LLC; (ii) the drafting of Attorney McGuirk's letter submission to the Rhode Island Ethics Commission in connection with the pursuit of an Advisory Opinion pursuant to Rhode

[1] Mr. Urciuoli has now materially relied on these unequivocal representations in preparing for trial. Contemporaneously with filing the instant motion, Mr. Urciuoli is filing a motion to strike the Indictment with respect to all allegations of an alleged concealed conflict of interest.

Island Ethics Commission Procedural Regulation 1024; (iii) changes to the language of each document; and (iv) and the state of Attorney McGuirk's knowledge about Celona's alleged activities at the time. See Appendix of Exhibits at Tab B (McGuirk Testimony in its entirety), but, for examples, see Trial Tr. 9/20/06 at pp. 213-214; Trial Tr. 9/21/06, at pp. 39-40, 58-59. The Government introduced each of these topics in an effort to suggest to the jury that language had been added, omitted or changed so as to conceal the "true relationship" between Celona and the Defendants -- in other words, to prove concealment of a conflict of interest.

The Government also called Attorney D'Arrezzo, a legal assistant at the Rhode Island Ethics Commission in 1998, to testify about her receipt and understanding of the documents submitted to her by Attorney McGuirk, and to comment on the nature of what was or was not disclosed in the submission made to, and conversations with, her while she was working on the staff at the Ethics Commission.[2] See Appendix of Exhibits at Tab C (D'Arezzo testimony in its entirety), but, for examples, see Trial Tr. 9/12/06, at pp. 122-123; 125-126; 131-132; 135-139; 141-144; 146-147.[3] Additionally, the Government examined virtually every witness who interacted with Celona and/or the Defendants by asking questions about whether Celona or the Defendants disclosed to them at the time of the interaction the alleged "true" relationship between Celona and RWMC or its affiliates. See Robert A. Urciuoli's Motion in Limine to Exclude Misleading Questions and Argument.[4]

---

[2] At the time of her 2006 trial testimony, D'Arezzo was the Senior Staff Attorney at the Rhode Island Ethics Commission.

[3] For additional reasons addressed in separately filed motions in limine with regard to the testimony of Attorneys McGuirk and D'Arezzo, their testimony was improper; but the clear import and purpose of their testimony was to place before the jury alleged evidence of concealment of a conflict of interest consistent with the charges then set forth in the Indictment. See Indictment, ¶¶ 16, 18, 20, 25, 42, 44, 92, 93, 94, 100, 102.

[4] In its closing argument, the Government made repeated reference to Mr. Urciuoli allegedly having concealed facts from witnesses and highlighted the testimony of Attorney McGuirk in this regard. See, e.g., Trial Tr. 10/2/06, at p. 19:10-25, attached hereto as Tab D to Appendix of Exhibits.

Notwithstanding the Government's current representations, it is apparent from the Government's filings to date that it does, indeed, intend to seek to introduce evidence of an alleged concealed conflict of interest; namely, that Mr. Urciuoli and his co-defendant, Frances P. Driscoll ("Ms. Driscoll") concealed the "true nature" of Celona's relationship with RWMC from the citizens of Rhode Island. For example, the Government has explicitly stated that it intends to present evidence of Celona's (perfectly legal) rescue run advocacy -- whereby Celona urged Mayors and other local officials to comply with Rhode Island law entitling ambulance patients to be taken to the hospital of their choice -- on the grounds that such evidence is "relevant to explain the true nature of the relationship" between RWMC, Mr. Urciuoli, Ms. Driscoll, and Celona. See Government's Objection to the Motion *In Limine* For Limiting Instructions Regarding Rescue Runs (Docket # 313), at p. 1, attached hereto as Tab E to Appendix of Exhibits.

The Government cannot have it both ways. If, in fact, the Government truly has abandoned its theory of honest services mail fraud based upon an alleged concealed conflict of interest in favor of solely a quid pro quo bribery theory of prosecution -- as it has represented to the Court -- then the Government's evidence at trial must be limited accordingly and the Government should not be allowed to "back door" concealment evidence by arguing that it somehow relates to its remaining bribery theory when, as discussed below, it does not. Indeed, evidence intended to demonstrate that the Defendants concealed the "true nature" of Celona's relationship with RWMC from the public, from the Rhode Island Ethics Commission, from Attorney McGuirk or anyone else, or *any* evidence tending to suggest that Celona failed to disclose an improper conflict of interest, is now irrelevant to the Government's bribery case and

should be excluded in its entirety. Failure to do so will put Mr. Urciuoli in the unfair and legally impermissible position of having to defend against allegations the Government has represented it is no longer making and risks that the jury might convict, improperly, on a theory of prosecution not before it.

Indeed, the issues presented here highlight the need for the jury to be instructed fully on Rhode Island law. One fair interpretation of the Government's recent disavowal of any intention to pursue a concealment theory is that it seeks tactically to avoid having the Court give the instruction it gave in United States v. Ortiz, Docket No. 1:07-cr-00009, while still offering evidence of concealment. This is the logical conclusion from the Government's forecast of its intention to seek to introduce evidence of the "true nature" of the relationship and an alleged concealed conflict of interest. The Government should not be allowed to have it both ways in this respect either, and it is critical that the jury be educated and instructed on state law as it pertains to Rhode Island's part time citizen legislature so that it may consider whether the conduct placed before it, the actus reus of the quid pro quo bribery prosecution, is susceptible to a completely lawful explanation. (This is, of course, in addition to the need for a state law instruction as it relates to the Government's burden on mens rea and Mr. Urciuoli's good faith defense).[5]

[5] Mr. Urciuoli's defense here is simple. Celona, a part-time legislator who had the right to work under Rhode Island law, and The Village at Emlhurst LLC, entered into a Consulting Agreement pursuant to which Celona was to perform work for The Village (an assisted living facility) and Village Extended Care (a nursing home) for the benefit of the RWMC network of affiliates. Celona, in fact, performed work for which he was paid. After Celona received explicit guidance from the Rhode Island Ethics Commission about the class exception, RWMC and Mr. Urciuoli at all times retained their rights, secured by the First Amendment of the United States Constitution and the Constitution of the State of Rhode Island, to freely petition the Government, including Celona, about any grievance or matter of concern to them with regard to general health care or other legislation which fit the class exception. With respect to such legislation, the Ethics Commission made clear that Celona was free to propose, debate and vote on it. The Government's belated attempt to recast this case as solely a quid pro quo bribery case should be seen for what it is -- an effort to avoid having the jury learn that there is a lawful, and, indeed, a constitutionally guaranteed, explanation for the conduct about which it will hear. If the Government has truly abandoned its concealment theory, then it should be held to a quid pro quo theory.

More specifically, the jury should be instructed at appropriate times that Rhode Island law expressly permits legislators, such as Celona, to: (1) engage in outside employment; and (2) participate in, and propose, debate and vote on, legislation directly affecting his employer so long as it will affect the employer no more or no less than similarly-situated entities (i.e., the "class exception"). See R.I. Gen. Laws § 36-14-7(b).[6]

In this case, the evidence will be[7] that with the advice of RWMC's counsel, the Defendants' insisted that Celona seek guidance from the Ethics Commission as to the scope of his permissible actions in light of his consulting agreement. See McGuirk's letter to the Ethics Commission dated April 6, 1998, requesting an advisory opinion regarding the extent to which Celona could continue to "propose, debate and vote" on health care issues before the General Assembly in light of his consulting agreement, attached to Appendix of Exhibits, at Tab F. In the letter, which enclosed a copy of the consulting agreement, Attorney McGuirk spelled out the corporate and financial inter-relationships between and among the various RWMC affiliates which might benefit, directly or indirectly, from the agreement with Celona.[8] First, McGuirk made it clear that, while Celona was engaged by The Village, The "Village is a joint venture

---

[6] Rhode Island Gen. Laws § 36-14-7(b) states as follows:

> (b) A person subject to this Code of Ethics does not have an interest which is in substantial conflict with the proper discharge of his or her duties in the public interest and of his or her responsibilities as prescribed by the laws of this state, if any benefit or detriment accrues to him or her or any person within his or her family or any business associate, or any business by which the person is employed or which the person represents, as a member of a business, profession, occupation or group, or of any significant and definable class of persons within the business, profession, occupation or group, to no greater extent than any other similarly situated member of the business, profession, occupation or group, or of the significant and definable class of persons within the business, profession, occupation or group.

See also General Commission Advisory No. 3.

[7] At this stage of the proceedings, Mr. Urciuoli has made no determination as to how he would use the Ethics Opinion, if at all, as part of his defense. The relevant issue here is that the Government should not be allowed to use evidence of alleged concealment in presenting its case in chief to the jury and, in particular, should not be allowed to present such evidence on an anticipatory basis.

[8] See R.I. Gen. Laws § 36-14-2 and definition of "business associate" set forth therein.

between Roger Williams Realty Corporation ("RWRC") and SANAT, LLP." Id. McGuirk then explained that "RWRC, Roger Williams Hospital and Elmhurst Extended Care Facility, Inc. are all members of the same group of controlled companies, which have Roger Williams Medical Center as their sole member or holding company." Id. Next, McGuirk explained the nature of two of the businesses of the RWMC entities mentioned in the letter, stating, "Roger Williams Hospital is an acute care hospital and Elmhurst Extended Care Facility, Inc. is a 200-bed nursing home with a hospice unit." Id. In providing that information, McGuirk underscored the fact that Celona had financial ties to Roger Williams Hospital and Elmhurst in order to facilitate the Ethics Commission's assessment of all potential RWMC-related conflict issues. McGuirk also explicitly advised that Celona would be working for The Village and "other *facilities* such as the Elmhurst Extended Care Facility, Inc., . . . " Id. (emphasis added). In highlighting the areas where he believed conflicts were likely to arise, McGuirk enumerated "health care issues such as elderly affairs, nursing home issues, hospital regulations, hospital reorganizations and health care in general." Id. Here again, McGuirk underscored Celona's financial ties to all RWMC affiliates. Finally, McGuirk pointed out that, in voluntarily seeking an advisory opinion for Celona, his firm was nevertheless being paid by RWMC. Id. ("The undersigned has been engaged by RWMC to seek an advisory opinion ...").

On April 23, 1998, the Ethics Commission issued Advisory Opinion 98-59 (the "Opinion"). See Appendix of Exhibits, at Tab G. The Opinion reflects on its face that the Ethics Commission understood that Celona would be working for The Village and other RWMC affiliates, in that it states Celona would be working for The Village "and its related facilities, such as the Elmhurst Extended Care Facility, Inc." Id. (emphasis supplied). Further, the Opinion expressly acknowledged that Celona's job responsibilities required him to "keep abreast

of legislative issues and regulations at local, state and federal levels that potentially could impact delivery of care by the Village and its related facilities." Id. (emphasis supplied). Thus, based on information supplied by McGuirk, acting at the direction of Mr. Urciuoli, the Ethics Commission Opinion expressly reflected that Celona would be monitoring "legislative issues" for RWMC affiliates.

The Ethics Commission expressly concluded, among other things, that although Celona could not participate in legislation relating to assisted living facilities, he could "fully participate and vote on broad-based legislation involving general health care issues of public interest." Id. The Opinion stated further that "general legislation relating to elderly affairs, nursing home issues and hospital regulations is likely to impact all corners of the health care industry in the state, as well as many related industries," and that, under R.I. Gen. Laws § 36-14-7(b), "any benefit or detriment accruing to the Senator and/or the Village/affiliates would affect them to no greater extent than any other similarly situated members of a significant and definable group." Id. at p. 6.

Given the Opinion, and Rhode Island law, the Court should instruct the jury that when a witness is asked whether he or she was aware of Celona doing something with regard to a particular piece of proposed legislation at any given time, that if the legislation fit within the class exception, then Celona was entitled to propose, debate and vote on it. To permit the Government to introduce evidence tending to suggest that Celona's relationship with RWMC constituted an impermissible and concealed conflict of interest, or was otherwise somehow suspect, without instructing the jury that state law expressly allows such permissible interactions, would be misleading and unduly prejudicial to Mr. Urciuoli. Accordingly, the Court should exclude all evidence of alleged concealment, and the jury should be instructed on Rhode Island

law, including, but not limited to, the class exception, both at the commencement of trial, during the trial as may be necessary to give the jury an understanding of state law and avoid confusion, and at the close of evidence.

## II. ARGUMENT

### A. All Evidence of Concealment Should Be Excluded As Irrelevant.

Evidence tending to show that Celona and the Defendants concealed the "true nature" of Celona's relationship from the public is not relevant to the Government's theory of prosecution based upon a quid pro quo bribery case and should be excluded in its entirety. There are two ways in which a public official can steal his honest services from his public employer: (1) the official can be influenced or otherwise improperly affected in the performance of his duties . . . ; or (2) the official can fail to disclose a conflict of interest, resulting in personal gain." United States v. Woodward, 149 F.3d 46, 57 (1st Cir. 1998); see also United States v. Sawyer, 85 F.3d 713, 724 (1st Cir. 1996) ("the cases in which a deprivation of an official's honest services is found typically involve either bribery of the official or her failure to disclose a conflict of interest, resulting in personal gain.") During the first trial in this matter, the Government proceeded on both a "failure to disclose" theory and a quid pro quo bribery theory; in addition to offering evidence purporting to show bribery, the Government presented evidence which purported to demonstrate that the Defendants and Celona concealed from the public the true nature of Celona's relationship with RWMC. For the convenience of the Court, relevant excerpts from the 2006 trial testimony of Attorneys McGuirk and D'Arezzo are attached hereto as Exhibit A.[9]

[9] With regard to the Government's questions to other witnesses about alleged concealment, Mr. Urciuoli respectfully refers the Court to his Motion *In Limine* To Exclude Misleading Questions and Argument, submitted herewith, in which he addresses in detail the problematic nature of the subject questions. In an effort to avoid duplication, Mr. Urciuoli will not repeat here the argument made in his accompanying motion.

With respect to the upcoming trial, the Government claims to have abandoned its "failure to disclose" theory and, instead, has indicated that it will proceed solely on a quid pro quo theory of prosecution. See, e.g., the Government's Memorandum In Support of its Objection to Driscoll's Motion to Strike Certain Allegations From the Indictment or, in the Alternative, to Preclude Submission of the Indictment to the Jury, p. 4 (". . . the United States' position is that [Driscoll] and Urciuoli paid Celona for performing official acts, a theory of honest services mail fraud prosecution more akin to one of quid pro quo bribery."), attached hereto as Tab H to the Appendix of Exhibits.

Bribery occurs when "a public official [is] paid for a particular decision or action." United States v. Kemp, 500 F.3d 257, 279 (3d Cir. 2007); citing United States v. Antico, 275 F.3d 245, 262-63 (3d Cir. 2001); see also United States v. Boots, 80 F.3d 580, 592-94 (1st Cir. 1996) (involving scheme to bribe Native-American police chief in exercise of his border patrol duties); United States v. Holzer, 816 F.2d 304, 308 (7th Cir.) (judge's systematic receipt of bribes and "loans" to influence official actions), vacated, 484 U.S. 807 (1987) (ordering reconsideration in light of McNally); United States v. Isaacs, 493 F.2d 1124, 1149-51 (7th Cir.) (public officials received bribes intended to induce special favors and preferential treatment for certain racing interests), cert. denied, 417 U.S. 976 (1974).

"Bribery requires a specific intent to give or receive something of value in exchange for an official act." Kemp, 500 F.3d at 281. To establish a quid pro quo theory of honest services fraud, "the government must prove beyond a reasonable doubt that there was a quid pro quo, . . . that the benefit was offered in exchange for the official act." Kemp, 500 F.3d at 281. For a public official to give a thing of value, i.e., a *quo*, to the payor of the bribe, the official must accept the bribe with the intent to be influenced by the bribe. United States v. Bryant, Civil

Action No. 07-CV-267 (D. N.J. 2008). With respect to a quid pro quo theory of honest service fraud, the Government must prove beyond a reasonable doubt that the Defendants intended payments or other things of value provided to Celona to cause him to alter his official acts, to change a position which he would otherwise have taken, or to take official actions that he would not have taken but for the payments or other things of value. See United States v. Urciuoli, 513 F.3d 290 (1st Cir. 2008); United States v. Sawyer, 239 F.3d 31, 41, 46-47 (1st Cir. 2001); United States v. Woodward, 149 F.3d 46 (1st Cir. 1998); United States v. Sawyer, 85 F.3d 713, 724, 729 (1st Cir. 1996); United States v. Harris, 347 U.S. 612 (1954).

Mr. Urciuoli anticipates that the Government will argue here that evidence of concealment is somehow relevant to show the Defendants' intention to deceive the public. Such a broad proposition, however, is without merit, risks confusing the jury and would countenance the gamesmanship the Government is apparently playing here in order to keep the jury from being instructed about Rhode Island law. First, it is axiomatic that concealment of a conflict of interest is not an element of a quid pro quo bribery honest services mail fraud prosecution and is therefore irrelevant. See Notes of Advisory Committee for Federal Rules of Evidence, Rule 401 ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.") Second, the Government has disavowed an honest services fraud theory of prosecution based on an alleged concealed conflict of interest. Mr. Urciuoli expects that the Government will concede that it can adduce no direct evidence at trial that Mr. Urciuoli engaged in a quid pro quo bribery scheme and that its case is based upon circumstantial evidence, alone, which will require the jury to draw inferences, if possible, to convict. In this context, Federal Rule of Evidence 403 has particular importance in terms of assessing the probative weight of the circumstantial evidence against the

danger of unfair prejudice. Here, any probative value of such circumstantial evidence is outweighed by the prejudice to Mr. Urciuoli of having to litigate an issue which is misleading to the jury, is designed to paint him in an unfairly prejudicial manner, and will likely confuse the jury. Such tactics are impermissible. See Fed. R. Evid. 403; see also United States v. Bush, 58 F.3d 482, 489 (9th Cir. 1995) ("Where the testimony not only lacks probative value but actually leads the jury to draw false inferences about the accused, only a slight showing of prejudice need to be made to tip the scales towards exclusion."); United States v. Copple, 24 F.3d 535 (3d Cir. 1994) (in trial for mail fraud and tax evasion, evidence of losses and impact of losses relevant to show intent but should have been excluded under Rule 403 as unfairly prejudicial.").

More importantly, the proof of intent to deceive the public in a quid pro quo bribery case is qualitatively different from that which the Government must satisfy in a concealment case. As the D.C. Circuit recently discussed in United States v. Safavian, "concealment cases in this Circuit and others have found a duty to disclose material facts on the basis of specific requirements for disclosure of specific information." 2008 U.S. App. LEXIS 12691 (D.C. App. 2008) (internal citations omitted). Here, not only did Mr. Urciuoli have no personal duty to disclose anything to the Ethics Commission, or anyone else, but the Government has affirmatively abandoned a concealment theory and thus can no longer suggest that he had such a duty. To the extent the Government must now prove intent by establishing beyond a reasonable doubt that Mr. Urciuoli committed honest services mail fraud, it must do so solely with regard to a bribery, not a concealment, scheme. The proof is different, and simple, open ended questions to witnesses from the Government about whether they were aware of what the relationship was between Celona and RWMC, its affiliates or the Defendants at any particular time is not probative at all of whether a bribery scheme took place. Indeed, the only hypothetically relevant

evidence of concealment would be that which relates solely to an effort to conceal a quid pro quo bribery scheme involving the payment of money in exchange for conduct, and for the Government to even ask that question would require it to assume the ultimate issue in the case in its question. Evidence of an alleged concealed relationship creating a conflict of interest simply is not probative of the issue of an unlawful payment for services and, more importantly, seriously risks confusing the jury.

Again, one permissible view of the Government's tactic here in abandoning its concealment theory is that it did so in order to avoid having the Court give the jury an instruction on the class exception the same as or similar to that which it gave in United States v. Ortiz, Docket No. 1:07-cr-00009, while nevertheless still seeking to introduce evidence of concealment in an effort to somehow establish intent. This, too, is impermissible. See United States v. Fountain, 2 F.3d 656, 666 (6th Cir. 1993) (state charged defendant with offenses that did not include elements of modus operandi or plan; therefore, evidence of modus operandi or plan deemed "immaterial."); United States v. Lilly, 37 F.3d 1222, 1228-29 (7th Cir. 1994), cert. denied, 513 U.S. 1175 (1995) (irrelevant that wife had good faith belief that she was entitled to earnings when the issue in the case was whether she willfully failed to report income on tax returns).

As the Court is aware, numerous federal cases have spoken with concern about the difficulties in defining the parameters and outer limits of an honest services mail fraud prosecution, and particular caution should be taken here not to allow the Government to introduce evidence on a theory it has abandoned. As the First Circuit explained:

> The central problem is that the concept of "honest services" is vague and undefined by the statute. So, as one moves beyond core misconduct covered by the statute (e.g., taking a bribe for a legislative vote), difficult questions arise in giving coherent content to the phrase through judicial glosses. Closely related concerns are assuring fair notice to those

> governed by the statute, see Bouie v. City of Columbia, 378 U.S. 347, 350, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), and cabining the statute -- a serious crime with severe penalties -- lest it embrace every kind of legal or ethical abuse remotely connected to the holding of a governmental position. Sawyer I, 85 F.3d at 725 (the honest services fraud statute "does not encompass every instance of official misconduct that results in the official's personal gain").

United States v. Urciuoli, 513 F.3d 290, 294 (1st Cir. 2008).

The Fourth Circuit has similarly noted the challenges of defining the scope of honest services fraud:

> One searches in vain for even the vaguest contours of the legal obligations created beyond the obligation to conduct governmental affairs 'honestly' or 'impartially,' to ensure one's 'honest and faithful participation' in government and to obey 'accepted standards of moral uprightness, fundamental honesty, fair play and right dealing' . . . (citations omitted). The quest for legal standards is not furthered by reference to 'the right to good government' and the duty 'to act in a disinterested manner.'

United States v. Margiotta, 688 F.2d 108, 142-43 (2d Cir. 1998) (Winter, J., concurring in part and dissenting in part), cert. denied, 461 U.S. 913 (1983) (internal citation omitted); United States v. Potter, 463 F.3d 9, 18 (1st Cir. 2006) ("The line between permissible courting and improper use of gifts to obtain behind-the-scenes influence by an official is not always an easy one to draw . . ."); see also Thomas DiBiagio, *Politics and the Criminal Process: Federal Public Corruption Prosecutions of Popular Public Officials Under the Honest Services Component of the Mail and Wire Fraud Statutes*, 105 DICK. L. REV. 57, 63 (2000) ("There are few areas of federal criminal law as ambiguous as the criteria for prosecution under section 1346.")

Accordingly, the Court should take particular care in limiting the evidence presented at trial to the Government's stated theory of prosecution -- i.e., quid pro quo bribery. Evidence of an alleged concealed conflict of interest, such as the three categories of testimony described above, will only serve to complicate an already complicated and obscure statute and increase the risk of jury confusion.

**B. Separately, the Court Should Instruct the Jury With Regard To the Lawful Nature Of the Activity At Issue Under Rhode Island Law.**

Separately, regardless of whether the Government is permitted to offer evidence of concealment, the Court should instruct the jury on Rhode Island law as it pertains to state legislators engaging in outside employment and, specifically, that state law allows what might otherwise be considered conflicts of interests in some circumstances. See R.I. Gen. Laws § 36-14-7(b). The need for such instruction is highlighted by the issues raised in this motion resulting from the Government's indication of its intention to seek to introduce evidence of concealment, as discussed above.[10] It is apparent from the Government's statements to date that it will attempt to persuade the jury that the Defendants and Celona concealed from the citizens of Rhode Island what it contends was the "true nature" and extent of Celona's relationship with RWMC. The unavoidable implication, which the jury will no doubt perceive, is that it is improper for an acting state legislator, such as Celona, to have any financial relationship with an entity, direct or indirect, such as RWMC, which may be affected by legislation over which the legislator may have influence by virtue of his official position. This implication goes to the heart of state law. Indeed, state law expressly permits this scenario in certain circumstances. See R.I. Gen. Laws § 36-14-7(b).

As the defendants properly argued in United States v. Ortiz., Docket No. 1:07-cr-00009 (D. R.I. 2008), it cannot be presumed that the jurors will already know or understand the class exception (or that the Government will explain it to them). See Memorandum of Law In Support of the Defendants' Motion In Limine Regarding Evidence of Rhode Island State, at p. 2 (Docket #93), attached hereto as Tab I to Appendix of Exhibits. It is neither intuitive nor logical that a

[10] As set forth in more detail in Robert Urciuoli's Trial Brief on the Limits of an Honest Services Mail Fraud Prosecution and the Need For a State Law Instruction, which is filed herewith and incorporated herein by reference, state law bears directly on the Defendants' intent to commit the charged crimes and is admissible for that reason, alone -- regardless of the Government's theory of prosecution.

hospital may lawfully and legitimately engage a legislator as a consultant, or that there are circumstances under which it is completely lawful for a legislator who works for a hospital to take action on health care legislation that has an impact on the hospital. Id. In short, there exists a real risk that the jurors' preconceptions about legislators will run directly contrary to the position that Rhode Island laws actually take toward legislators' ability to hold outside employment. Id.; see also Nat'l Ass'n of Social Workers v. Harwood, 69 F.3d 622, 637 (1st Cir. 1995) (Lynch, J. dissenting) (observing that "[t]he Rhode Island House presents a factual setting perhaps unique in this country"). It is critical that the jury be instructed that there is a perfectly innocent explanation for the Defendants' communications with Celona about legislation under the class exception.

As the Sawyer I court explained:

> . . . where, as here, the line between the merely unattractive and actually criminal conduct is blurred, the court must take pains to explain the difference to the jury. The Second Circuit took this same view in a closely related context, saying: 'When an elected official who has received campaign contributions is charged with extortion and with receiving bribes, the charge must carefully focus the jury's attention on the difference between lawful political contributions and unlawful extortionate payments and bribes.' United States v. Biaggi, 909 F.2d 662, 695-96 (2d Cir. 1990), cert. denied, 499 U.S. 904 (1991).

United States v. Sawyer , 85 F.3d 713, 741-42 (1st Cir. 1996) ("Sawyer I"); see also United States v. Potter, 463 F.3d 9, 19 (1st Cir. 2006) ("what the jury is to be given is the law pertinent to the case before it.") Here, the need for proper jury instruction is particularly compelling in light of the fact that the Government will argue that Celona's relationship with RWMC was improper. It is critical that the jury be given the tools it will need to evaluate the Defendants' guilt or innocence of the charged crimes. Accordingly, Mr. Urciuoli respectfully submits that the jury be instructed on Rhode Island law as it pertains to the allegations in the Indictment.

## III. CONCLUSION

For all of the reasons set forth above, Defendant Robert A. Urciuoli respectfully requests that this Court exclude, in its entirety, the following: (i) the testimony of Attorney James McGuirk; (ii) the testimony of Attorney Katherine D'Arezzo; and (iii) questions to any witness as to whether the alleged relationship between former Senator John Celona, on the one hand, and Roger Williams Medical Center, any of its affiliates and/or either of the Defendants, on the other, was disclosed to them. Separately, and in any event, Mr. Urciuoli requests that the Court instruct the jury on Rhode Island law, including, but not limited to, the class exception, both at the commencement of trial, during trial, and at the close of evidence.

Respectfully submitted,

ROBERT A. URCIUOLI

By his attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Howard M. Cooper (MA BBO # 543842)
*Pro Hac Vice Counsel*
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 624-4713
(617) 227-5777
hcooper@toddweld.com

Dated: August 15, 2008

**CERTIFICATION**

I hereby certify that on August 15, 2008, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua