UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-ML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**DEFENDANT ROBERT A. URCIUOLI'S MOTION *IN LIMINE* TO LIMIT USE OF REPORT BY F. DENNIS SAYLOR AND TO PRECLUDE THE HONORABLE DENNIS SAYLOR FROM TESTIFYING**

Defendant Robert A. Urciuoli ("Mr. Urciuoli") hereby moves the Court, *in limine*, to limit the use of the report of F. Dennis Saylor (the "Saylor Report" or the "Report") and to preclude Judge Saylor[1] from testifying at trial about the Report. Specifically, Mr. Urciuoli requests that the Court limit the use of the Report at trial to the one page that pertains to former State Senator John Celona ("Celona"), and deem the remainder of the Saylor Report inadmissible for any purpose at trial, including cross examining Mr. Urciuoli in the event he were to testify.[2] In support of this motion, Mr. Urciuoli relies on his accompanying memorandum of law, which is submitted herewith and incorporated herein by reference.

Mr. Urciuoli hereby requests **oral argument** in connection with this motion. Counsel for Mr. Urciuoli estimates that thirty (30) minutes will be required for same.

WHEREFORE, Defendant Robert A. Urciuoli respectfully requests that the Court issue an Order: (i) limiting the use of the Saylor Report to the one-page that pertains to John Celona;

[1] At the time he prepared the report, Dennis Saylor was a partner at the law firm of Goodwin, Procter & Hoar, LLP (now Goodwin Procter LLP). He is currently a United States District Court Judge in the District of Massachusetts.

[2] Mr. Urciuoli made a similar motion during the first trial in this matter. Judge Torres allowed that motion to the extent that it requested that the Government be prevented from using, or even referring to, the information contained in the Saylor Report during its case in chief.

(ii) and holding that the remainder of the report is inadmissible for any purpose; and (iii) preventing the Honorable Dennis Saylor from testifying, in any way, about the Saylor Report.

Respectfully submitted,

ROBERT A. URCIUOLI

By his attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Howard M. Cooper (MA BBO # 543842)
*Pro Hac Vice Counsel*
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 624-4713
(617) 227-5777
hcooper@toddweld.com

Dated: August 15, 2008

**CERTIFICATION**

I hereby certify that on August 15, 2008, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-ML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT A. URCIUOLI'S MOTION *IN LIMINE* TO LIMIT USE OF REPORT BY F. DENNIS SAYLOR AND TO PRECLUDE THE HONORABLE DENNIS SAYLOR FROM TESTIFYING**

Defendant Robert A. Urciuoli ("Mr. Urciuoli") respectfully submits this Memorandum of Law in support of his Motion *In Limine* to Limit the Use of the Report of F. Dennis Saylor (the "Saylor Report" or the "Report") and to preclude Judge Saylor[1] from testifying at trial about the Report. Specifically, Mr. Urciuoli requests that the Court limit the use of the Report at trial to the one page that pertains to former State Senator John Celona ("Celona"), and deem the remainder of the Saylor Report inadmissible for any purpose at trial, including cross examining Mr. Urciuoli in the event he were to testify.[2]

**INTRODUCTION**

The Saylor Report[3] is an 87 page report that contains one page of compelling exculpatory evidence: an unqualified opinion provided to Mr. Urciuoli at the outset of the alleged conspiracy by an esteemed member of the Bar and a former federal prosecutor that the very same conduct

[1] At the time he prepared the report, Dennis Saylor was a partner at the law firm of Goodwin, Procter & Hoar, LLP (now Goodwin Procter LLP). He is currently a United States District Court Judge in the District of Massachusetts.

[2] Mr. Urciuoli made a similar motion during the first trial in this matter. Judge Torres allowed that motion to the extent that it requested that the Government be prevented from using, or even referring to, the information contained in the Saylor Report during its case in chief.

[3] A copy of the Saylor Report is attached to the Appendix of Exhibits filed herewith, at Tab O.

alleged in the Indictment involving Celona was lawful. The remainder of the Report is filled with unproven, inflammatory allegations of misconduct that have nothing to do with any conduct at issue in this case. The only reason for offering the remainder of the Report would be to poison Urciuoli in the minds of the jurors and to promote conviction based on his 'propensity to commit criminal acts.' Allowing those allegations into evidence, or even allowing reference to those allegations in cross-examination of Mr. Urciuoli, would be highly prejudicial to Urciuoli and would lead to a "mini-trial" on collateral issues, wasting judicial resources and hopelessly confusing a jury already charged with understanding a highly complex case. Therefore, with the exception of the one-page Celona Section, the Saylor Report should not be used for *any* purpose at trial, whether in the Government's case in chief or to cross-examine Mr. Urciuoli.

**STATEMENT OF FACTS**

The Saylor Report is the product of a limited investigation conducted under the direction of the Roger Williams Medical Center ("RWMC") Board of Trustees at the behest of an insurgent group, led by former Board of Trustees member Philip O'Dowd, M.D. ("O'Dowd") and Hospital Vice President, Maureen McNamara ("McNamara"), both of whom sought to oust Urciuoli. The allegations levied by O'Dowd and McNamara included unsubstantiated rumor and outright falsehoods that were calculated to portray Mr. Urciuoli as an outright thief engaged in egregious criminal acts against the hospital. The Saylor investigation debunked many of the allegations, was inconclusive as to others, and found that Mr. Urciuoli had submitted a relatively small amount of improper travel and entertainment expenses. Based on Judge Saylor's review, no employment action was taken against Mr. Urciuoli, let alone charges filed or adjudicated.

A. **Judge Saylor's Findings Relating to John Celona**

Among O'Dowd's allegations against Mr. Urciuoli were allegations that John Celona's consulting contract with the Village at Elmhurst, an issue central to this prosecution, was unlawful and unethical. In fact, O'Dowd's allegations in connection with Celona mirror the very allegations made by the Government in this case. Indeed, Judge Saylor's determination that there was "no basis for concluding that the [Celona] contract was illegal or unethical," see Saylor Report, pp. 49-50, was based on many of the same allegations and documents that the Government is now using to support its case. A review of the notes found in Judge Saylor's file at Goodwin Procter reveals that O'Dowd and McNamara shaped the allegations concerning Celona's contract in the same way that the Government has shaped this investigation. Judge Saylor's notes from his investigation reflected that he was aware of the following allegations or issues concerning Celona: (1) that Celona allegedly concealed his relationship with RWMC when speaking on hospital issues before the legislature;[4] (2) that Celona's job with The Village at Elmhurst was allegedly a "no show" job given to him as quid pro quo for his political support on several hospital issues; (3) that Celona's salary was being funded by RWMC; (4) that Celona was allegedly acting as a lobbyist for RWMC; and (5) that Celona was making efforts to increase rescue runs to Roger Williams Hospital. The very same allegations are set forth in the Indictment in support of the Government's case against Mr. Urciuoli.

Furthermore, Judge Saylor interviewed O'Dowd, McNamara, Mr. Urciuoli and others concerning Celona's contract, and requested relevant documents possessed by RMMC relating to

[4] The Government has represented to the Court on multiple occasions that it has abandoned its "failure to disclose" theory of prosecution and is proceeding solely on a qui pro quo bribery theory of prosecution; nevertheless, the Government has indicated that it intends to offer evidence purporting to show that Mr. Urciuoli concealed from the public the "true nature" of Celona's relationship with RWMC. See Memorandum of Law in Support of Robert A. Urciuoli's Motion In Limine to Exclude Evidence of Alleged Concealment and For Instruction of the Jury.

Celona's activities as a consultant. The documents sent to Judge Saylor in response to his request reflect all of the key issues in this case. They included documents delineating the payment structure of Celona's salary, documents reflecting Celona's efforts to increase rescue runs to Roger Williams Hospital, and documents reflecting Celona's participation in legislation. In particular, the documents provided to Judge Saylor revealed: (1) that Celona had met with the East Providence Fire Chief, as well as the East Providence City Manager, in an effort to increase rescue runs to Roger Williams Hospital; (2) that Mr. Urciuoli authorized Peter Sangermano and The Village at Elmhurst to allocate the entire amount of Celona's consulting compensation to Roger Williams Realty Corporation; and (3) that Celona was reporting to RWMC executives on the status of legislation. In fact, one fax from Celona to Driscoll indicated that Celona was working to "defeat" House Bill 98-H-8229.[5]

After reviewing these documents, Judge Saylor reached the following conclusion:

> Mr. Urciuoli denied that the senator is a "ghost consultant," and stated that he had been active in senior citizen affairs and was qualified for the position. We have reviewed the consulting agreement, *the Ethics Commission opinion*, and various other materials relating to Mr. Celona's position. Many of these materials are memoranda to Francis P. Driscoll, Senior Vice-President, External Affairs, Corporate Community and Development, dated after the commencement of this investigation and after the May 1, 1998 *Providence Journal* article. However, the records do reflect the performance of work by Mr. Celona in February and March. *Under the circumstances, we find no basis for concluding that the contract was illegal or unethical.*

See Saylor Report, p. 50 (emphasis added).

Judge Saylor's conclusion reflects that he was aware of and reviewed the Advisory Opinion issued by the Rhode Island Ethics Commission in response to Attorney James McGuirk's request for guidance as to what extent Celona could continue to vote on and

[5] House Bill 98-H 8229, an "Act Relating to Residential Care and Assisted Living Facilities," prohibited health facilities from holding themselves out as offering Alzheimer's care to patients unless the facilities were licensed as nursing homes or hospitals. The bill affected all hospitals and nursing homes in Rhode Island.

participate in legislation in light of his consulting contract. These are the very same facts relied on by the Government in support of its honest services fraud theory of prosecution against Mr. Urciuoli. Mr. Urciuoli read the Saylor Report when it was presented in mid-1998 to the Board of Trustees, of which he was a member. The Government must prove at trial that Mr. Urciuoli possessed a fraudulent intent -- i.e., that he intended to defraud the citizens of Rhode Island. The fact that Mr. Urciuoli was informed at the outset of the alleged conspiracy that the very same conduct that he is being prosecuted for now was deemed lawful and ethical by someone as esteemed and respected as Judge Saylor cuts to the very heart of the Government's case. It negates the *mens rea* necessary to commit honest services mail fraud. The Celona Section is undeniably relevant because of the effect that it had on Mr. Urciuoli's state of mind and is admissible for that very reason -- and that reason, alone.

## B. The Other Contents of the Saylor Report

The Saylor Report reflects that Goodwin's mission was limited in scope. The Report states that "in order to maintain the confidentiality of the investigation," Goodwin "neither interviewed persons nor attempted to review records outside of the hospital community." See Saylor Report, p. 3.[6] According to the Report, the allegations against Mr. Urciuoli could be grouped into four principal categories: (1) alleged abuse of meal and entertainment expenses; (2) alleged abuse of travel expenses; (3) alleged charging of miscellaneous personal expenses to the hospital, including home and office furnishings, personal telephone calls, and charitable contributions; and (4) alleged improper efforts to direct vendor and other contracts to personal friends. Id. at p. 1. Mr. Urciuoli was also alleged to have received improper loans against

[6] For example, if the issue was whether Mr. Urciuoli had improperly charged a personal restaurant meal as a hospital expense, Goodwin did not make any attempt to interview persons who may have attended the meal. See Id.

accrued vacation time, to have improperly purchased an automobile from the hospital at a bargain rate, and to have improperly "bugged" his office. Id. at pp. 1-2.

Aside from the one-page Celona section, the Report contains contentions that Mr. Urciuoli charged personal meal and entertainment expenses to the hospital, breached his fiduciary duty to the hospital, had "unduly extravagant" meal and entertainment expenses, "may have committed serious fraud upon the hospital," and various other inflammatory allegations. See Saylor Report, pp. 69-84. Most of the rumors and allegations contained in the Report are completely unsubstantiated and Mr. Urciuoli vigorously denies them. Based even on its limited review, Goodwin concluded that there was insufficient evidence that Mr. Urciuoli acted improperly as to many of the allegations. For example, the Report concluded that there was insufficient evidence that Urciuoli acted improperly with respect to the use of petty cash, the use of hospital funds for home or office furnishings, the choice of professional seminars to attend, personal telephone calls, charitable and community contributions, vendor contracting and, most importantly, Celona's consulting contract with The Village at Elmhurst. Goodwin did find that a relatively small amount of travel and entertainment expenses -- $16,000 incurred over a several year period -- were improperly charged to the hospital by Mr. Urciuoli. The investigation did not lead to any formal action being taken by the Board of Trustees against Mr. Urciuoli. The Rhode Island Attorney General conducted an investigation, but it did not lead to any indictments or charges being filed, let alone convictions. The Attorney General investigation concluded with Mr. Urciuoli's agreement to make restitution to RWMC for part of the cost of the Goodwin investigation, in the amount of $80,000.

This case is already very complicated in that the rarely-charged, central offense -- honest services fraud by a *non-official* -- is nuanced, and the relevant facts are complex. The last thing

that is needed is the over-complication of issues for trial by necessitating a mini-trial on 86 pages of allegations and accusations that have absolutely nothing to do with the merits of this case.

## ARGUMENT

### I. The Use of the Saylor Report Should Be Limited To the Celona Section.

In the first trial in this matter, Mr. Urciuoli moved, *in limine*, to limit the use of the Saylor Report to the one page of the report that pertains to Judge Saylor's findings with respect to Mr. Urciuoli's decision to hire Celona -- i.e., the Celona Section. See Docket # 96, attached hereto as Tab P to Appendix of Exhibits. Mr. Urciuoli argued that the Celona Section was both highly relevant and admissible for the non-hearsay[7] purpose of the effect it had on Mr. Urciuoli when he learned that Judge Saylor had determined, based on many, if not all, of the allegations at issue in this case, that there was "no basis for concluding that [Celona's consulting contract with The Village at Elmhurst] was illegal or unethical. See Saylor Report, pp. 49-50. Mr. Urciuoli argued that this one page of the Saylor Report, including Judge Saylor's conclusions about Celona, negated, as a matter of law, the *mens rea* requirement of honest services fraud and, thus, went to the heart of the Government's burden of proof at trial. United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998). The Court (Torres, J.) granted Mr. Urciuoli's motion to the extent that it requested that the Government be prevented from using, or even referring to, the information contained in the balance of the Saylor Report during its case in chief. See Docket Entry dated 7/19/06.

For the reasons set forth in Mr. Urciuoli's previous motion, as well as those set forth herein, Judge Torres' ruling should stand. Use of the Saylor Report at trial should be limited to the only page of the report that is both relevant to the issues before the Court and admissible

---

[7] The Saylor Report, itself, is inadmissible hearsay. This motion is directed to any evidence of the contents of the Saylor Report, in addition to the Report, itself.

under the Federal Rules of Evidence, i.e., the Celona Section, and the Government should not be permitted to make use of, or even reference, the remainder of the report at all, for any purpose, either in the Government's case in chief of to cross-examine Mr. Urciuoli in the event he testifies.

**A. The Celona Section is Relevant and Admissible.**

The one-page Celona Section of the Saylor Report is relevant and admissible for the limited purpose of the effect it had on Mr. Urciuoli in 1998. It is well-settled that otherwise inadmissible hearsay is admissible for the non-hearsay purpose of its affect on the listener or reader. See United States v. Meserve, 271 F.3d 314, 320 (1st Cir. 2001); United States v. Murphy, 193 F.3d 1, 6 (1st Cir. 1999); United States v. Castro-Lara, 970 F.2d 976, 981 (1st Cir. 1992). As indicated above, the Saylor Report concluded that there was not illegal or unethical about Mr. Urciuoli's decision to hire Celona as a consultant to The Village at Elmhurst and RWMC affiliates. See Saylor Report, p.50. In reaching this determination, Judge Saylor had access to and relied on many of the same documents relied on by the Government during this and the first trial in this matter, and was aware of the same allegations that are at issue here. Thus, the Celona Section is directly relevant to whether Mr. Urciuoli possessed a good faith belief that Celona's involvement with RWMC -- the same involvement under scrutiny here -- was lawful and ethical.

Good faith is a complete defense to mail fraud, see First Circuit Pattern Jury Instructions § 4.12, and the burden is on the Government to prove lack of good faith beyond a reasonable doubt. United States v. Sawyer, Criminal Action No. 94-10168 (Feb. 27, 1995) (Charge To Jury), attached to Appendix of Exhibits, at Tab Q. If Mr. Urciuoli believed in good faith that Celona's relationship with RWMC was lawful and ethical, Mr. Urciuoli could not, as a matter of

law, have possessed the requisite intent to defraud the citizens of Rhode Island; he could not have committed the offense with which he is now charged. Accordingly, the Celona Section of the Saylor Report goes to the heart of whether Mr. Urciuoli committed honest services mail fraud, and Mr. Urciuoli should be permitted to rely on it at trial for the non-hearsay purpose of the effect it had on him in 1998.

### B. The Remainder of the Saylor Report Should Be Excluded, For All Purposes, Under Rules 402, 403, 404(b) and 802.

Moreover, the Government, in its case in chief, should be prevented from making use of, or even referring to, the remainder of the Saylor Report because it is irrelevant, highly prejudicial to Mr. Urciuoli, one-sided, incomplete hearsay, otherwise utterly lacking in indicia of reliability, constitutes improper character evidence, and would waste the Court's time and resources by forcing the parties to engage in a mini-trial on a collateral issue. Accordingly, it should be excluded, for all purposes, under Rules 402, 403 404(b), and 802 of the Federal Rules of Evidence.

The remainder[8] of the Saylor Report simply is not probative of any issues before the Court in this honest services fraud prosecution based on an alleged quid pro quo bribery scheme, and should be excluded under Rule 402, for all purposes, on that ground, alone. See Fed. R. Evid. 402 ("evidence which is not relevant is not admissible"). Mr. Urciuoli has been indicted on charges of conspiracy and mail fraud, all predicated on an alleged scheme to defraud the citizens of Rhode Island of John Celona's honest services. The heart of the Government's theory of prosecution is that Mr. Urciuoli engaged in an unlawful qui pro quo bribery scheme whereby he paid Celona in exchange for action. With the exception of the Celona Section, the question

[8] The exclusion of the remainder of the Saylor Report does not affect the admissibility of the Celona Section. The purpose of establishing the effect that the Report had on Mr. Urciuoli when he read it can be served without reference to other parts of the Saylor Report.

addressed by the Saylor Report was whether Mr. Urciuoli inappropriately charged personal expenses and took other actions that were detrimental to the interests of the RWMC. Thus, with the exception of the one page that addresses John Celona's consulting contract with The Village at Elmhurst and RWMC affiliates, the Saylor Report is irrelevant and must be excluded. See Fed. R. Evid. 402.

Even assuming, *arguendo*, that any probative value could be gleaned from the remainder of the Saylor Report (and Mr. Urciuoli submits that it could not), the remainder of the Saylor Report should still be excluded, for all purposes, under Rule 403 of the Federal Rules of Evidence because it would be unfairly prejudicial to Mr. Urciuoli. See Fed. R. Evid. 403 (instructing that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."). Because the remainder of the Saylor Report has no probative value, even the slight risk of prejudice would militate in favor of exclusion. See Fed. R. Evid. 403; see also United States v. Bush, 58 F.3d 482, 489 (9th Cir. 1995) ("Where the testimony not only lacks probative value but actually leads the jury to draw false inferences about the accused, only a slight showing of prejudice need to be made to tip the scales towards exclusion.")

Here, however, the risk of prejudice to Mr. Urciuoli is staggering; indeed, allowing *any* use of the remainder of the Saylor Report would be so unfairly prejudicial to Mr. Urciuoli that it would deprive him of his right to a fair trial. The remainder of the Saylor Report is replete with false and inflammatory accusations against Urciuoli -- many of which implicate criminal laws. The effect on the jury of hearing these unsubstantiated accusations would be devastating to Mr. Urciuoli. See United States v. Gilbert, 229 F.3d 15, 24 (1st Cir. 2000) (excluding evidence of

murder attempt because it would necessitate a mini-trial). Id. Accordingly, the remainder of the Saylor Report should be excluded under Rule 403, in addition to Rule 402.

The remainder of the Saylor Report should also be excluded under Rule 404(b) on the grounds that it would constitute improper character evidence. See Fed. R. Evid. 404(b) ("evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith.") As the Advisory Note to Rule 404(b) explains, "Character evidence is of slight probative value and may be very prejudicial . . . it tends to distract the trier of fact from the main question of what actually happened on the particular occasion . . . it subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." See Fed. R. Evid. advisory committee's note.

While such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, none of these other purposes is applicable here. To the contrary, the clear -- and, indeed, only -- purpose of offering into evidence or using the Saylor Report would be to the extent that it casts Mr. Urciuoli in a bad light and makes him look like a bad person who is likely to commit the charged crimes. Such use of evidence is improper. See Fed. R. Evid. 404(b). Furthermore, even assuming, *arguendo*, that there was some permissible use of the Saylor Report under Rule 404(b) (and Mr. Urciuoli submits that there is not), the Court still must determine whether the danger of undue prejudice outweighs the probative value of the evidence. In light of the foregoing discussion of Rule 403 considerations, the remainder of the Saylor Report is inadmissible under Rule 404(b). Furthermore, the Saylor Report, itself, is inadmissible hearsay to which no

exception to the hearsay rule applies, and it should be excluded under Rule 802, as well. See Fed. R. Evid. 802 (explaining that hearsay is generally inadmissible).

## II. Judge Saylor Should Not Be Permitted To Testify About the Report.

Moreover, in light of the fact that the only relevant and admissible use of the Saylor Report is the effect the one-page Celona Section had on Mr. Urciuoli's state of mind, Judge Saylor should not be permitted to testify, in any way, about the Saylor Report, its contents, the documents he relied on its preparing the report, his investigative process, his findings as to Mr. Urciuoli, or any other aspect of the report. Judge Saylor's testimony in this regard is simply not relevant to the issues before the Court and should be excluded under Rule 402. Additionally, for the reasons set forth above, testimony from Judge Saylor in this regard would be inflammatory and unfairly prejudicial to Mr. Urciuoli. At the time he prepared this report, Judge Saylor was an established and respected partner at a renowned law firm. Now, Mr. Saylor holds the even loftier position of a United States District Court judge. The appearance of a lawyer before a jury presents the inherent risk that the jury will credit the lawyer with having some unique legal insight or expertise with regard to the matter under discussion; the appearance of a presiding federal judge before the jury presents an exponentially greater risk. The effect on the jury of hearing inflammatory, and even criminal, accusations against Mr. Urciuoli by a federal judge would be fatally prejudicial to Mr. Urciuoli. Accordingly, even if Judge Saylor's testimony about the Report was arguably relevant in any way (and it is not), Judge Saylor should still be prevented from testifying under Rule 403.

Moreover, if Judge Saylor were permitted to testify as to his findings against Mr. Urciuoli, most, if not all, of which Mr. Urciuoli vigorously contests, Mr. Urciuoli would be forced to refute such evidence. The result would be a time consuming "mini trial" on a collateral

issue. Judicial economy would not be served by such a result. The Saylor Report is only relevant and admissible to the extent that it bears on Mr. Urciuoli's state of mind, or *mens rea*, with regard to his intent to commit honest services mail fraud. Mr. Saylor's direct testimony about the Report is not probative on this issue. Accordingly, Judge Saylor should not be permitted to testify at the trial in this matter. See Fed. R. Evid. 403; see also United States v. Varoudakis, 233 F.3d 113, 121 (1st Cir. 2000) (explaining that court has discretion to exclude evidence where probative value is substantially outweighed by "confusion of the issues, or misleading of the jury, or by the considerations of undue delay, waste of time, or needless presentation of cumulative evidence, or if it "invites the jury to render a verdict on an improper emotional basis.").

## III. The Government Should Not Be Permitted to Cross Examine Mr. Urciuoli With the Remainder of the Saylor Report.

In the event Mr. Urciuoli testifies at trial, the Government should not be permitted to cross-examine him using the Saylor Report, outside of the one-page pertinent to Celona. The allegations in the Saylor Report are based on even weaker support than that which is required to support an arrest (which usually requires a probable cause finding); under Rule 608(b), it is well-established that evidence of arrest or indictment is inadmissible for the purpose of impeaching a witness in criminal cases. See United States v. Fortes, 619 F.2d 108, 118 (1st Cir. 1980); see also United States v. Bentley, 706 F.2d 1498, 1509-10 (8th Cir. 1983).[9] Again, as discussed above, if the Government were permitted to introduce evidence of the Saylor Report, Mr. Urciuoli would be obliged to refute it, which would result in the introduction of vast amounts of evidence that is unrelated to the issues at hand, would waste the Court's time and resources, and

[9] Even evidence of a witness's prior criminal conviction is only admissible under certain, limited circumstances, i.e., when the conviction is less than ten years old or when the conviction involved dishonesty or a false statement. Fed. R. Evid. 609(a) and (b). Obviously, the findings in the Saylor Report are a far cry from a prior criminal conviction.

would confuse the jury. Such a use of the report is not permitted under Rule 608(b), which provides that proof of specific instances of the conduct of a witness may not be proved by extrinsic evidence for the purpose of attacking or supporting the witness' credibility. See Fed. R. Evid. 608(b); United States v. Andujar, 49 F.3d 16, 26 (1st Cir. 1995); see United States v. Beauchamp, 986 F.2d at 4 ("The purpose of Rule 608(b)'s prohibition of extrinsic evidence is to avoid holding mini-trials on irrelevant or collateral matters.")

While courts may, in their discretion, allow inquiry into specific instances of misconduct on cross examination if they are probative of truthfulness or untruthfulness, the Saylor Report is not probative of either. To the contrary, it is completely lacking in indicia of reliability. By its very own description, the Report is one-sided and incomplete, as no one outside of the hospital was even interviewed or questioned in connection with the allegations. Mr. Urciuoli vigorously disputes many, if not all, of the allegations and conclusions in the report, and the investigation was concluded without any adjudication or admissions by Mr. Urciuoli or disciplinary action against Mr. Urciuoli. To allow the Government to impeach or cross-examine Mr. Urciuoli by making reference to the contents of a report as explosive and inflammatory as the Saylor Report -- and as lacking in indicia of reliability -- even in the presence of a limiting instruction, would be a serious miscarriage of justice. See United States v. Davis, 183 F.3d 231, 257 (3d Cir. 1999) (affirmed exclusion of reports that defendant lied about an unrelated incident, under Rule 608(b)).

## CONCLUSION

For all of the foregoing reasons, Defendant Robert A. Urciuoli respectfully requests that the Court issue an Order: (i) limiting the use of the Saylor Report to the one-page that pertains to John Celona; (ii) and holding that the remainder of the report is inadmissible for any purpose;

and (iii) preventing the Honorable Dennis Saylor from testifying, in any way, about the Saylor Report.

Respectfully submitted,

ROBERT A. URCIUOLI

By his attorneys,

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Howard M. Cooper (MA BBO # 543842)
*Pro Hac Vice Counsel*
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 624-4713
(617) 227-5777
hcooper@toddweld.com

Dated: August 15, 2008

**CERTIFICATION**

I hereby certify that on August 15, 2008, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua