UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 06-02- ML |
| | : | |
| ROBERT A. URCIUOLI and FRANCES P. DRISCOLL | : | |

## ROBERT A. URCIUOLI'S MOTION *IN LIMINE* TO EXCLUDE MISLEADING QUESTIONS AND ARGUMENT

Defendant Robert A. Urciuoli hereby moves, *in limine*, to exclude questions that are misleading, lacking in foundation, and that insinuate guilt, as well as misleading closing argument. In support of this motion, Mr. Urciuoli relies on his accompanying memorandum of law, which is filed herewith an incorporated herein by reference. Mr. Urciuoli hereby requests **oral argument** in connection with this motion. Counsel for Mr. Urciuoli estimates that thirty (30) minutes will be required for same.

WHEREFORE Defendant Robert A. Urciuoli respectfully requests that the Court preclude the Government from: (i) posing questions without laying a proper foundation; (ii) posing questions that contain misleading and prejudicial premises; or (iii) making argument to the jury based on guilt-implying innuendo.

Respectfully submitted,

ROBERT A. URCIUOLI

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP

50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Howard M. Cooper (MA BBO # 543842)
*Pro Hac Vice Counsel*
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 624-4713
(617) 227-5777
hcooper@toddweld.com

Dated: August 15, 2008

**CERTIFICATION**

I hereby certify that on August 15, 2008, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 06-02- ML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**MEMORANDUM OF LAW IN SUPPORT OF ROBERT A. URCIUOLI'S MOTION *IN LIMINE* TO EXCLUDE MISLEADING QUESTIONS AND ARGUMENT**

Defendant Robert A. Urciuoli respectfully submits this memorandum of law in support of his Motion *In Limine* to exclude questions that are misleading, lacking in foundation, and that insinuate guilt, as well as misleading closing argument.

**BACKGROUND**

During the period relevant to the charges in the Indictment -- 1998 through 2003 -- former Senator John Celona held at least two[1] professional positions: (1) as a senator in the part-time Rhode Island citizens legislature; and (2) as a consultant to promote The Village at Elmhurst ("The Village") and other affiliates of Roger Williams Medical Center (hereinafter referred to as the "RWMC affiliates"). Under the Rhode Island Ethics Code, Celona was permitted to "fully participate and vote on broad-based legislation involving general healthcare issues of public interest" during the period of his consultancy with the RWMC affiliates. See Government Exhibit 163 (Rhode Island Ethics Commission Advisory Opinion No. 98-59), attached to Appendix of Exhibits, at Tab G. In its Advisory Opinion regarding Celona, the Rhode Island Ethics Commission stated that "[g]eneral legislation relating to elderly affairs,

[1] Based on evidence received by this Court in United States v. Ortiz, Docket No. 07-cr-00009, Celona held a third professional position as a consultant to CVS during part of this period, and may have held yet other consulting relationships.

nursing home issues and hospital regulations is likely to impact all corners of the health care industry in the state, as well as many related industries," and, therefore, Celona's full participation in such legislation was permissible under Rhode Island General Laws § 36-14-7(a) (the so-called "class exception"). See id.

Accordingly, it was lawful for Celona, as a senator, to work on legislation relating to hospitals and nursing homes, such as those owned by RWMC, during the same period that he worked as a consultant to the RWMC affiliates. That is the essence of what was expressly permitted by the Ethics Commission's Advisory Opinion.

## MISLEADING QUESTIONS AND CLOSING ARGUMENT

Notwithstanding this straightforward guidance from the Ethics Commission, during the first trial in this matter, the Government repeatedly posed questions, and ultimately presented closing arguments, insinuating criminal wrongdoing by the Defendants because Senator Celona "worked on" legislation involving general healthcare issues during the period of his consultancy.[2] The Government did so based on misleading questioning of witnesses that implied the guilt of the Defendants, without establishing the necessary foundation of personal knowledge of the witnesses as to the services actually being provided by Celona pursuant to his consulting agreement. The Government, for example, posed the following questions to RWMC's outside counsel James McGuirk:

> Q. Had you learned anything other than -- outside of your conversation about Blue Cross, had you by that time learned that John Celona had been working on rescue run issues?

[2] The Government also asked similar guilt-insinuating questions about whether Celona was "working on" rescue runs. See Trial Tr. 9/21/06, p. 69:12-18; 9/25/06, p. 225:20-22. As this Court is aware, in the first trial in this matter, the Government based its honest services fraud case, in part, on Celona's rescue run activities. In light of the First Circuit's reversal on that issue, Celona's role in the rescue runs issue no longer may serve as a basis for an honest services fraud violation. Nevertheless, the questions by the Government insinuating guilt based on Celona's "work on" rescue runs serve to further illustrate the type of misleading questioning that is the subject of this motion.

A. From Bob or Fran?

Q. Yes.

A. No.

Q. Had you learned from them that he had been working on legislative issues of interest to the hospital?

A. No.

Trial Tr. 9/21/06, p. 69: 12-18. See also Trial Tr. 9/21/06, pp. 39:19-25; 40:1-24.

The above testimony unmistakably implies a bribery scheme, in that it implies that Celona was being paid to advance the legislative interests of the hospital. The Government's questions assume a factual premise that answers an ultimate issue for the jury -- whether the Defendants paid Celona consulting fees for favorable legislative treatment, as opposed to legitimate promotional work for the RWMC affiliates.

Basic foundational questioning would have revealed whether Attorney McGuirk was aware of the nature of the work that Celona was performing for the The Village, the nursing home, and other Roger Williams affiliates during the term of his consulting agreement.[3] The Government, however, was well aware from McGuirk's pretrial interviews and grand jury testimony that he had no personal knowledge of any of the promotional work Celona was actually doing for the RWMC affiliates. See Transcript of FBI Interview of James McGuirk, 10/12/05, p. 3-5; see generally Grand Jury Tr. 10/13/05, attached to Appendix of Exhibits, at Tab R. McGuirk also made it clear prior to trial that he had no personal knowledge of any bribery arrangement. See Tab R.

[3] It should be noted that the questions at issue also implied that the Defendants intended to conceal "Celona's work on legislation" from Mr. McGuirk and the other witnesses who were asked similar questions. Now that the Government has stated that it does not intend to assert that the Defendants violated the honest services fraud doctrine based on a concealed conflict of interest, the Government should be precluded from asking such questions, for the reasons set forth in Defendant Urciuoli's Motion In Limine to Exclude All Evidence of Alleged Concealment And For Instruction Of the Jury, filed contemporaneously herewith.

The questions were framed so as to skirt the fact that McGuirk had no personal knowledge of what work Celona was actually doing under his consulting agreement. The questions conveyed to the jury that Celona was being bribed, and that the bribery was being concealed from McGuirk. This misleading innuendo was reinforced in the Government's closing argument:

> Jim McGuirk testified about why he didn't ask about legislation, about rescue runs. And he told you something, ladies and gentlemen, that you should consider during your deliberations. He said I didn't think about it. It didn't occur to me.

Trial Tr. 10/2/06, p. 19:17-21.

The Government used McGuirk's absence of knowledge, established by his response in the negative to guilt-insinuating questioning, to imply that it was wrong for Celona to "work on" hospital-related legislation.

The Government followed the same playbook in questioning the in-house counsel for RWMC, Kim O'Connell. As to Ms. O'Connell, the Government asked the following questions:

> Q. And what did Robert Urciuoli say to you?
>
> A. To the best of my recollection, he said it was a contract for marketing and outreach for The Village and Elmhurst Extended Care and the continuum.
>
> Q. Did he say to you -- did he say anything to you at the time regarding any other activities that John Celona was undertaking under the consulting agreement?
>
> A. Not that I recall, no.
>
> Q. Did he tell you at the time that John Celona had worked on rescue run issues?
>
> A. No.
>
> Q. Did he tell you at the time that John Celona had advocated issues of legislative interest to the hospital?

A. No.

Q. Did he tell you that John Celona had worked on Cancer Council legislation or PILOT legislation?

MR. EGBERT: Objection, the objection I voiced this morning, your Honor.

THE COURT: Can you be more specific here, Mr. Egbert?

MR. EGBERT: Yes, your Honor, the inclusion of the specific language in the question.

THE COURT: Overruled. You may answer.

A. No.

Trial Tr. 9/25/06, pp. 225:12-25; 226:1-11.

During closing argument, Attorney O'Connell's lack of knowledge was treated the same as Attorney McGuirk's lack of knowledge, as the Assistant U.S. Attorney argued that the Defendant's guilt was established by the witness's negative responses to guilt-insinuating questions:

> Kim O'Connell wasn't told when she first revised the contract that John Celona had been working on those issues. She wasn't told that John Celona had previously worked on moratorium issues.

Trial Tr. 10/2/06, p. 46: 3-6. It is noteworthy that, in questioning both McGuirk and O'Connell, the Government made no effort to distinguish between Celona's "work' as a senator from his "work" as a consultant to the RWMC affiliates.

The risk from this line of questioning of misleading the jury and prejudice to the Defendants is manifest when it is considered that Celona was permitted *as a matter of law* to work on legislative issues of interest to the hospital during the period of the consultancy. See R.I. Gen. Laws, § 36-14-7(a); Appendix of Exhibits, at Tab G (Government's Exhibit 163). Thus, the questions of whether McGuirk and O'Connell knew that Celona was "working" on

such legislation, without distinguishing between Celona's "work" as a Senator and his "work" as a consultant, are not framed so as to elicit meaningful and relevant information in the context of a bribery prosecution, aside from guilt-insinuating innuendo.

Defense counsel raised this very concern repeatedly to the Court during the first trial. See e.g., Trial Tr. 9/21/06, p. 40:1-14. After several such objections, the Court cautioned the Government to avoid such improper implications in its questioning, as the following colloquy reflects:

> [MR. EGBERT:] ... And the other one is, your Honor, that the Government consistently asked witnesses do you know Celona was working on such and such, and I object to that. The Government can ask somebody if they knew that Celona did a certain thing; but their categorization of it as work, like it's employment, assumes both the ultimate conclusion in this case, which is up to the jury, and is unfair. And it's a consistent path that we've objected to and not gotten very far with, quite frankly. But the question of whether or not Mr. Celona is working when he performs a particular act, and I mean working as an employee or consultant, or is acting as a senator in doing a particular act is one of the ultimate facts that this jury must decide. And so I would ask that that not be permitted in that fashion.
>
> THE COURT: Well, I guess it's kind of a matter of semantics, Mr. Egbert. As I recall the questions, they were more along the lines, Was Mr. Celona working to defeat this bill or support that bill?
>
> MR. EGBERT: I think the questions were, your Honor, Did you know that Celona was working on rescue runs? Did you know he was working on legislation? Did you know he was working on those things? And that terminology, based upon this case, I suggest is not appropriate because they don't know whether he was working or not unless somebody says, Yeah, I told him as part of his job he's going to do this or that; but it's clear here that Celona's involved in at least two roles, if not three, at different times. So that's my objection. I will make it in the future; but that's the purpose of it, so you know.
>
> THE COURT: You can always clear that up on cross-examination.
>
> MR. EGBERT: But, see, we don't get recross, and they do it regularly on redirect when they know we don't have anything else to say.
>
> THE COURT: Well, Mr. Matos, I agree at least to the extent Mr. Egbert is complaining that by using the word "working" you are somehow implying that Mr. Celona was dealing with rescue runs as part of his duties as a consultant. So

> it might be better if you picked a different word than "working" or at least use it in a context it doesn't suggest that.

Trial Tr. 9/25/06, pp. 10:19-12:16.

At another juncture, the Court expressed frustration with the Government's "hit and run" questions, which the Court expressly acknowledged were designed to create the impression that Mr. Urciuoli was concealing an illicit agreement:

> But there's a limit as to how far we carry that, and I must say that the Government I think bears a lot of responsibility here by asking these hit-and-run type questions, such as put a witness on the stand and asking a question such, as was asked of Ms. O'Connell here, did Mr. Urciuoli ever mention to you that Mr. Celona had a consulting agreement with the hospital -- I mean, rather, with Elmhurst Extended Care, and the answer is no. And obviously the point of that question is to create the impression that Mr. Urciuoli was somehow concealing the existence of this agreement, and that opens a very wide door to the defense counsel that they're then certainly permitted to get into a lot of questions to show that there was no attempt to conceal. We get into the meeting of the board and everyone that was there and a whole raft of other questions. So you can't very well object on the ground that these questions exceed the scope when you've opened that door. I don't think I have ever encountered a case like this where the cross-examination takes much longer than the direct examination. I think part of the reason is because of the multitude of questions that the Government -- these open-ended, hit-and-run questions that are being asked, and the defense counsel are entitled to get into these areas once that door is open.

Trial Tr. 9/26/06, pp. 64:4-25; 65:1-6, attached to Appendix of Exhibits, at Tab S.

The "multitude" of "hit and run" questions asked by the Government in order to create inculpatory impressions were then carefully woven into the Government's closing argument. The Government exploited its misleading questions by making the witnesses' responses in the negative the central part of the Government's argument for fraudulent intent on the part of the Defendants, as the earlier-quoted excerpts reflect. In short, the Government posed misleading questions to McGuirk and O'Connell for the purpose of implying the ultimate issue in the case, *i.e.*, that the Defendants bribed Celona to buy his legislative influence.

## ARGUMENT

It is well-settled that "a prosecutor has a special duty not to mislead." United States v. Myerson, 18 F.3d 153, 162 (2nd Cir. 1994), *quoting* United States v. Universita, 298 F.2d 365, 367 (2nd Cir.); *cert. denied*, 370 U.S. 950 (1962). The Government must be particularly mindful of its duty in this regard in formulating questions to witnesses, "because of the weight a jury gives to the questions asked by a prosecutor." United States v. Meserve, 271 F.3d 314, 326 (1st Cir. 2001).

The Government's questions posed to McGuirk and O'Connell about whether they knew Celona was "working on" legislation drew no distinction between his role as a legislator -- in which case "working on" legislation involving hospital issues was perfectly legal -- and his role as a consultant. Assertions by the prosecutor that counsel to the hospital "did not know Celona was working on legislation of interest to the hospital" may cause the jury in the retrial of this case to believe that it was improper for Celona to do so. The same risk of confusion exists whether such assertion is contained in the premise of a question to a witness or in closing arguments. Under Rhode Island law, it is clear that Celona was allowed to fully participate in legislation involving general healthcare, hospital regulation, nursing home regulation, and elderly affairs. See R.I. Gen. Laws § 36-14-7(a); Appendix of Exhibits, at Tab G (Government Exhibit 163).

In order to avoid the risk of confusing the jury, the Government should be limited, by clear instruction from the Court, to non-leading questions that are designed to elicit the personal knowledge of the witness as opposed to argument from the prosecutor. Questions about a witness's knowledge of Celona's activities should begin with the laying of a proper foundation

of the personal knowledge of the witness. See Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.") Thus, appropriate inquiry should begin along the lines of:

Q: Do you have personal knowledge about work done by Celona *as a consultant?*

Q: Do you have personal knowledge about work done by Celona *as a legislator?*

Q: [If, so …] What is the basis of the knowledge?

In the absence of establishing a proper foundation, no further questioning should be permitted on the subject, let alone loaded questions designed to imply guilt from the absence of the witness's knowledge.

Even with the requisite foundation established, no questions should be permitted that imply a conclusive assertion on an ultimate issue of guilt. See United States v. Newman, 49 F.3d 1, 7 (1st Cir. 1994) ("The general concern with statements of ultimate legal opinions is that juries may be confused or may accept the offered opinions in lieu of the legal rulings of the judge.") Because the ultimate question for the jury in this case is the issue of whether Celona's "work" under the consulting agreement involved corrupt legislative influence, it is particularly important that the Government's questions do not include implied assertions of guilt on this issue.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Court should preclude the Government from: (i) posing questions without laying a proper foundation; (ii) posing questions that contain misleading and prejudicial premises; or (iii) making argument to the jury based on guilt-implying innuendo.

Respectfully submitted,

ROBERT A. URCIUOLI

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Howard M. Cooper (MA BBO # 543842)
*Pro Hac Vice Counsel*
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 624-4713
(617) 227-5777
hcooper@toddweld.com

Dated: August 15, 2008

## CERTIFICATION

I hereby certify that on August 15, 2008, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua