UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02-MML |
| | : | |
| ROBERT A. URCIUOLI, and | : | |
| FRANCES P. DRISCOLL. | : | |

**UNITED STATES' OBJECTION TO DEFENDANT URCIUOLI'S MOTION IN LIMINE TO LIMIT USE OF REPORT BY F. DENNIS SAYLOR AND TO PRECLUDE THE HONORABLE DENNIS F. SAYLOR FROM TESTIFYING**

Defendant Robert Urciuoli has filed a Motion in Limine to Limit Use of Report by F. Dennis Saylor and to preclude the Honorable Dennis F. Saylor from testifying. For the reasons stated in the accompanying memorandum of law filed simultaneously herewith, the United States objects to the motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on August 22, 2008, I electronically filed this Objection with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Howard Cooper, Esq.
Todd & Weld, LLP
28 State Street
Boston, MA 02109

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

Larry Tipton
One Center Place, Suite 220
Boston, MA 02108

/s/ Luis M. Matos

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02-MML |
| | : | |
| ROBERT A. URCIUOLI, and | : | |
| FRANCES P. DRISCOLL. | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT URCIUOLI'S MOTION IN LIMINE TO LIMIT USE OF REPORT BY F. DENNIS SAYLOR AND TO PRECLUDE THE HONORABLE DENNIS F. SAYLOR FROM TESTIFYING**

Defendant Robert Urciuoli has filed a Motion in Limine to Limit Use of Report by F. Dennis Saylor and to preclude the Honorable Dennis F. Saylor from testifying. Specifically, defendant asks the Court to limit the introduction of evidence to evidence only which is favorable to him and to exclude all other evidence from the Saylor report that might undermine his defense including the extreme request that the information not even be allowed to be used in cross-examination of the defendant.

As he did in his motion to Renewed Motion to Dismiss the Indictment, Urciuoli misstates that nature of a prior ruling on this issue. Urciuoli states that Judge Torres granted his motion "to the extent that the Government be prevented from using, or even referring to, the information contained in the balance of the Saylor Report during its case in chief. Urciuoli Memorandum ("Mem") at 7. The United States agrees that Judge Torres so ruled and the United States does not intend to introduce any portion of the Saylor Report during its case in chief.

However, Urciuoli goes on to argue that for "the reasons set forth in Mr. Urciuoli's previous motion, as well as those set forth herein, Judge Torres' ruling should stand. Use of the Saylor Report at trial should be limited to the only page of the report that is both relevant to the

issues before the Court and admissible under the Federal Rules of Evidence, i.e., the Celona Section, and the Government should not be permitted to make use of, or even reference, the remainder of the report at all, for any purpose, either in the Government's case in chief or to cross-examine Mr. Urciuoli in the event he testifies." Id. at 7, 8. Urciuoli's characterization of Judge Torres' ruling is misleading because Judge Torres did not rule on the parameters of the use of the Saylor report beyond ordering that the United States could not use it in its case in chief. Instead Judge Torres ruled as follows:

> So for all those reasons, I will grant the motion in limine to the extent that the Government may not present the balance of the Saylor Report as part of its case-in-chief, nor as part of its case-in - chief may it refer to what is in the balance of the report, that is to say the allegations about abuse of expense account.
>
> **Now, I am not, by granting this motion to that extent, passing any judgment on whether the conclusion portion is admissible**. That remains to be seen. There's a lot of evidence that can bear on that determination, such as what was the nature and purpose of the Saylor Report if, as the Government has suggested in its brief, the Saylor Report was simply, insofar as the Celona agreement was concerned, was simply to determine whether, in fact, Mr. Celona was providing some services to the Village, it may not be relevant, Judge Saylor's conclusions may not be relevant if that's the question he was looking at.
>
> Also, another factor here would be, as Ms. Donovan said, whether Mr. Urciuoli testifies that he read and relied on Judge Saylor's conclusion, because if he never read the report, then, obviously, it could not have any impact on his intent, knowledge or state of mind, or if he didn't read it until long after the acts referred to in the indictment were committed, it wouldn't be relevant.
>
> **So I don't pass any judgment on whether the conclusion part is admissible, nor do I preclude, at this point anyway, the Government from possibly using the report for purposes of impeachment if Mr. Urciuoli testifies**. I'm not familiar enough with the facts in this case to know whether he may have lied in what

> he told Judge Saylor and whether that may come in as impeachment evidence. **And I'm not barring the Government, at least at this point, or at any point for that matter, if reference is made to the Saylor Report, from asking questions about how the report was prepared. And I think I need to explain that. When I say how the report was prepared, as I've already stated, it would be very relevant for the finder of fact to know what Judge Saylor was investigating and what he relied on in reaching the conclusion that there was no violation regarding the Celona agreement**.
>
> So the Government certainly is entitled to inquire into that. **What the Government would be entitled to inquire into, <u>unless, as I say, there's some other basis for allowing it such as impeachment</u>, what the Government would not be entitled to refer to is the alleged expense account abuses.** That is something separate and distinct from the matter in which the report was prepared or the subject of Judge Saylor's opinion.
>
> So as I said, the motion in limine is granted to the extent I have said, and I do not reach the questions that I have just described.

Ex. 1 at 114-116 (emphasis added).[1]

For the reasons stated by Judge Torres and below, defendant's motion should be denied except to the extent that the United States does not intend to introduce the Saylor Report in its case in chief.

## II. <u>Factual Background</u>

In May of 1998, the Executive Board of the Board of Trustees of Roger Williams Medical Center engaged the law firm of Goodwin, Procter & Hoar LLP to conduct a review of certain

[1] Although Urciuoli submitted three voluminous binders of exhibits in support of his numerous motions in limine, which include various excerpts of transcripts, as well as the Saylor Report and his previous motion on this issue, Tabs O and P respectively, curiously, he failed to provide the transcript of Judge Torres' ruling on this issue. Instead, he cites only to the docket entry for the hearing. The United States attaches the transcript of the hearing on this issue for the Court's convenience.

activities of Defendant Urciuoli. Urciuoli Tab O.[2] Employees of Roger Williams Hospital had alleged that Urciuoli had inappropriately charged personal expenses and "undertaken other activities that were detrimental to the interests of the Hospital." Id. Goodwin Procter attorneys F. Dennis Saylor and Eugenia M. Carris conducted the review, along with Robert J. Taylor, a forensic accountant and retired federal agent. Id. at 2.

The allegations against Urciuoli were brought to the Board's attention by the President of the medical staff, Dr. Phillip O'Dowd, and included claims that Urciuoli: (1) improperly charged numerous meal and entertainment expenses to the Hospital; (2) abused travel expenses by improperly charging the Hospital for personal expenses; (3) inappropriately charged miscellaneous personal expenses to the Hospital including home and office expenses, personal telephone calls and charitable contributions; and (4) undertook improper efforts to direct vendor and other contracts to personal friends. Id. at 1; Ex. 2, Richard Licht Grand Jury Testimony (hereinafter "GJ") at 31. Urciuoli was also alleged to have received improper loans against accrued vacation time, improperly purchased a car from the Hospital at a bargain rate and to have bugged his office. Tab O at 1-2. Further, Judge Saylor was "asked to investigate the allegation that Senator John A. Celona . . . was given a 'no-show' job at the Village at Elmhurst assisted living center as payment for his efforts on behalf of the hospital during the Columbia/HCA matter." Id. at 49.

Goodwin completed the investigation in approximately 2 months. Ex. 2, Richard Licht GJ at 39. In order to preserve the confidentiality of the investigation, Goodwin did not interview persons outside the Hospital or review non-Hospital records. Tab O at 3; Ex. 2, Richard Licht GJ

[2] Page citations to the Saylor Report refer to the original page number of the report at Urciuoli Tab. O.

at 39. Saylor and Carris interviewed Urciuoli on two occasions. Tab O at 3.

Saylor concluded that for a twenty-six month period, 176 of Urciuoli's meal and expense charges did not match with the notations in his calender or were of a questionable nature. Id. at 5. The report details how Urciuoli inappropriately charged the Hospital for five family birthday dinners totaling $2,850. Urciuoli acknowledged that he made "mistake[s]" in charging the Hospital for these events. Id. at 6-9. In addition, Saylor's investigation revealed that as winter approached, Urciuoli would telephone golf resorts in warmer parts of the country and inquire if they had any health care related conferences scheduled. Id. at 22. As a result, Judge Saylor determined that Urciuoli "inappropriately used Hospital funds for extended stays at resort hotels that should have been treated as personal vacations." Id. at 76. Saylor's investigation into one of these trips to Arizona revealed that Urciuoli charged the Hospital for an eight-day $5,998.83 trip with his then-fiancee, Donna, to Scottsdale for a non-existent "Health Care Issues of the 90s" conference.

During Urciuoli's two interviews with Judge Saylor, one in the presence of his counsel Urciuoli "answered all questions put to him during both interviews." Id. at 3. However, in the process of finalizing the Report, Saylor's staff contacted the Scottsdale Princess in order to ascertain the "precise" dates of the conference and learned that no such conference took place. As of the writing of the Report, Urciuoli had yet to provide an explanation. Saylor concluded that "[i]f no such conference existed, Mr. Urciuoli may have committed a serious fraud upon the hospital." Id. at 76. After being confronted with the fact that he billed the Hospital for a non-existent conference, Urciuoli admitted that he "made a bad error in judgment." " Ex. 3. Urciuoli, however, offered no explanation for his lies to Judge Saylor in the course of Saylor interviewing

him about his trip to Scottsdale. See e.g. Ex. 3.

Saylor's conclusions concerning Celona's consulting agreement were as follows:

> We have reviewed the consulting agreement, the Ethics Commission opinion, and various other materials relating to Mr. Celona's position. Many of these materials are memoranda to Francis P. Driscoll, Senior Vice-President, External Affairs, Corporate Community and Development, dated after the commencement of this investigation and after the May 1, 1998, *Providence Journal* article. However, the records do reflect the performance of work by Mr. Celona in February and March. Under the circumstances, we find no basis for concluding that the contract was illegal or unethical.

Tab O at 50.

Based on Saylor's report, the Board concluded that Urciuoli inappropriately billed the Hospital for approximately $16,000 in personal meals, entertainment, and travel expenses and had him reimburse the Hospital for that amount. Ex. 4 at p. 4 ¶ 2; Ex. 5, Herbert Cummings GJ at 16, 49 ("I concluded that the $17,000 he spent inappropriately."); Ex. 2, Richard Licht GJ at 134-35. Despite the fact that many of the Board members thought Urciuoli should be fired, he was not. Ex. 6, Raymond Mancini GJ at 39 ("Well, I guess I would – I would say if it happened in my company, I would have fired him."); Ex. 7, Raymond Murphy, Jr. GJ at 41, 47.

At the time that Saylor issued his findings, the Hospital was facing the possibility of a merger with St. Joseph's Hospital, a move which the Board deemed essential to the Hospital's continued success. Ex. 2, Richard Licht GJ at 64-66, 123-24. In addition, Urciuoli's attorneys at the time threatened to sue the Hospital. Ex. 6, Raymond Mancini, Jr. GJ at 38. Faced with firing Urciuoli and enduring an expensive public lawsuit concerning his termination, thus ruining the Hospital's prospects of a life-saving merger, the Board gave him a "pass" and hired Board President Herbert Cummings to "babysit" him and ensure that he not defraud the Hospital of any

future expenses. Ex. 7, Raymond Murphy, Jr. GJ at 65-66; Ex. 5, Herbert Cummings GJ at 48, 50.

## III. Argument

### A. Urciuoli's Motion In Limine is Premature

Without attesting to whether he intends to testify in his own defense at trial, Urciuoli asks this Court to rule on the admissibility of all portions of the Saylor report, including evidence surrounding its creation and underlying its findings, except the portions which relate to the Celona consulting contract. Urciuoli's motion is premature.

As discussed below, the United States disputes Urciuoli's position that Saylor's statements concerning the Celona contract are exculpatory in any way. In any event, in order for the report to be relevant to Urciuoli's state of mind he must testify and at a minimum state that he read the report and describe the impact reading the report had on him. Because even the limited portion of the report on which Urciuoli intends to rely is admissible only if Urciuoli takes the stand, until he indicates his intention to do so, there is no reason to exclude evidence relating to the report or the remainder of the report itself as too prejudicial.

In addition, knowing the nature and substance of Urciuoli's testimony is essential to determining how the remaining portions of the report are relevant. Having Urciouli's testimony before the Court is also critical to determining the relevance and admissibility of the circumstances surrounding Judge Saylor's investigation and the instances of misconduct cited in the report either as appropriate areas of cross-examination or rebuttal evidence. Accordingly, the Court should deny Urciuoli's motion without prejudice to renew at a later time.

### B. The Saylor Report is Minimally Relevant to Urciuoli's State of Mind[3]

In arguing that the Court should exclude all portions of the Saylor report except the section addressing the Celona consulting contract, Urciuoli overstates the relevance of Judge Saylor's conclusions concerning Celona. Urciuoli also mischaracterizes Judge Saylor's findings concerning the Celona contract.

Judge Saylor concluded solely that Celona's **"contract**" was neither illegal nor unethical – the report says nothing about the underlying **conduct**. The investigation of the Celona contract was limited to determining whether Celona was getting paid for doing nothing. The Report states "[w]e were asked to investigate the allegation that [Celona] was given a no-show job at the Village of Elmhurst assisted living center as payment for his efforts on behalf of the hospital during the Columbia/HCA matter. . . . Some employees [were] concerned that Mr. Celona was not qualified for the position and was getting a $30,000 check for doing no work." Urciuoli Tab O at 49-50. Saylor's interview of Urciuoli, in which Urciuoli denied that Celona was a "ghost consultant," and his review of records relating to Celona's position lead Judge Saylor to conclude that Celona performed work in February and March of 1998, not whether that work was in accordance with the terms of the consulting agreement or the substance of what was represented to the Ethics Commission about what Celona would be doing. Id. at 50.

---

[3] In his motion, in delineating the import of Judge Saylor's findings concerning the Celona consulting contract, Urciuoli makes numerous representations which are not supported by evidence of record, most obviously his claim that he "read the Saylor Report when it was presented in mid-1998 to the Board of Trustees . . . ." Urciuoli Mem. at 5. Further, Urciuoli makes broad statements like "Judge Saylor . . . requested all documents possessed by RWMC relating to Celona's activities as a consultant," and "[t]he documents sent to Judge Saylor . . . included documents delineating the payment structure of Celona's salary . . . ." Id. at 4. To the extent that any of Urciuoli's arguments are based on evidence not of record, they should be disregarded by the Court.

The Indictment covers the period from August of 1997 to January 2004 and alleges numerous overt acts which Urciuoli committed in furtherance of the conspiracy and the scheme to defraud before the Executive Committee even hired Goodwin. These acts include the execution of the consulting contract and the submission of the false and fraudulent April 1998 Ethics Commission letter. See Indict. ¶ 14, 21, 22, 24-27, 32, 41-44. Thus, even if as Urciuoli represents in his motion he read the Saylor report in "mid-1998" and thereafter concluded that his actions with respect to Celona were lawful, this does not exculpate him of his pre-mid-1998 criminal conduct alleged in the Indictment. In short, Judge Saylor's conclusions concerning the Celona contract do **not** negate the possibility that Urciuoli possessed the *mens rea* necessary to commit honest services mail fraud.[4]

Instead, Urciuoli's characterization of Judge Saylor's findings demonstrates the further success of Urciuoli's deception. As the Indictment alleges that Urciuoli caused the consulting

---

[4] Indeed, in ruling on defendant Driscoll's first motion to sever, based on her professed need to introduce the Celona portion of the Saylor report, Judge Torres noted:

> "I don't accept the notion that the balance of the report is exculpatory of Ms. Driscoll. The rest of the report deals with Judge Saylor's findings about other conduct allegedly engaged in by Mr. Urciuoli that would have been abuses of expense accounts and things of that nature.
>
> I don't see how those findings are possibly exculpatory of Ms. Driscoll. I understand the argument that I think Mr. Bristow is making is that somehow this conveys to the jury the idea that this was a hard-hitting report, but it seems to me that falls far short of the mark if the notion is that it's somehow exculpating – it reinforces what is argued to be that the conclusion that the conduct engaged in or the retention of Senator Celona was proper. And as another, I think, point that's relevant here is the point that Ms. Donovan made that the report wasn't issued until after many of the events that are the subject of the indictment occurred, not all, but certainly many." Ex. 1 at 60.

agreement to be drafted in a manner "so that it falsely and fraudulently purported to be a consulting agreement between Celona and the Village . . . ." Indict. ¶ 25. Passing these documents off to Judge Saylor as accurate representations of Celona's relationship with the Village constitutes another act Urciuoli committed in furtherance of the conspiracy. The fact that Judge Saylor read these false and fraudulent documents and was still left with the impression that Celona was working for the Village illustrates the success of Urciuoli's deception concerning who Celona was really working for and what he was doing. Urciuoli cannot claim that he relied on any conclusion Judge Saylor reached concerning Celona's consulting contract when that conclusion is based on Urciuoli's own lies. His motion should be denied

### C. The Non-Celona-Related Portions of the Saylor Report, and Evidence Surrounding Its Creation, Are Relevant to the Issues to be Tried

In his motion, Urciuoli argues strenuously that Judge Saylor's report, as well as any evidence surrounding its creation, are irrelevant to the issues in the case and that pursuant to Evidence Rules 402 and 403, the United States should be prohibited from introducing any portions of the Report not related to Celona. Urciuoli's suggestion is extreme.

As discussed above, Judge Saylor investigated accusations against Urciuoli within certain restrictions on the length of time to be devoted to the investigation and who he could interview. Even Urciuoli agrees that the report is "the product of limited investigation." Tab P at 2. In addition, the scope of Judge Saylor's investigation concerning Celona was limited to determining whether Urciuoli was paying Celona for a no-show job in exchange for his prior legislative support. Whether Urciuoli was aware of these limitations on Judge Saylor are relevant to the jury assessing the credibility of Urciuoli's reliance on Judge Saylor's findings concerning the Celona

contract.

Further, if Urciuoli seeks to introduce only the portion of the report that he claims is favorable to him, the portions of Judge Saylor's report dealing with issues other than the Celona contract are also relevant. Permitting Urciuoli to introduce the two pages in the Saylor report addressing the Celona contract would leave the jury with the mistaken impression that the contract was the only conduct for which Urciuoli was investigated. Judge Saylor's efforts in investigating the Celona contract must be placed in the proper context – the allegations of Urciuoli giving Celona a no show job was one of numerous allegations. The jury will be more likely to give greater weight to Judge Saylor's findings if they think that the Celona contract was all that Judge Saylor investigated.

Further, it would also leave the jury with the mistaken impression that in considering Judge Saylor's conclusions concerning the Celona contract, these were the only findings by Judge Saylor that Urciuoli was evaluating in assessing the appropriateness of his conduct. If in fact Urciuoli considered "[t]he remainder of the Report" to be "filled with unproven, inflammatory allegations of misconduct," Urciuoli Mem. at 1 his claim that only the Celona portion of the report was legitimate lacks credibility. The jury is entitled to weigh Urciuoli's testimony concerning his reliance on Judge Saylor's findings about Celona in light of his impression that the remainder of the Report is bogus.

**D. Rule 608(b) Permits Inquiry Into Other Instances of Misconduct Cited in the Saylor Report and Occurring During Judge Saylor's Investigation Which Are Probative of Urciuoli's Untruthfulness**

The Report and evidence underlying it also present appropriate inquiry on cross-examination should Urciuoli take the stand. Even though under Rule 608(b) the United States

may be prohibited from introducing extrinsic evidence of Urciouli's lies to Judge Saylor in the course of the investigation, for example concerning his trip to the Scottsdale Princess, or of his submission of fraudulent expense sheets to the Hospital, because these actions are probative of Urciuoli's "character for truthfulness or untruthfulness" they may be inquired into on cross-examination. Urciuoli cannot expect to testify without having to explain his lack of candor to Judge Saylor concerning why he billed the Hospital for the non-existent "Health Care Issues of the 90s" conference. The fact that Urciuoli lied to Judge Saylor about another instance of alleged misconduct being investigated is highly probative of whether Urciuoli was truthful when speaking to Judge Saylor about Celona.

"The discretion of the district court under Rule 608 is guided by several factors, including whether the instances of prior untruthfulness [bear] some similarity to the conduct at issue, whether or not they [are] remote in time, whether they [are] cumulative of other evidence, and whether there [is] some likelihood they happened." United States v. Simonelli, 237 F.3d 19, 23 (1st Cir. 2001). The Court's ruling to permit such questioning is reviewed for an abuse of discretion. Id.

There is no question that many of the instances of misconduct investigated by Judge Saylor, namely Urciuoli's submission of false expense sheets and billing the Hospital for a non-existent conference, are prior bad acts tending to show untruthfulness. See e.g. id. ("[Q]uestions about altering time cards, inflating bills, and stealing away with records" are "prior bad acts that ten[d] to show untruthfulness."). Further, the misconduct is not remote in time to Urciouli's actions with respect to Celona, the evidence would not be cumulative of other evidence, and Urciuoli has admitted that the conduct occurred. Urciuoli cannot expect to testify as to his

reliance on Saylor's conclusions nor to his innocence without subjecting himself to cross-examination concerning his character for candor, especially with respect to the approximately $16,000 in billing of personal expenses which Urciuoli characterizes as a "relatively small amount of improper travel and entertainment expenses." Urciuoli Mem. at 2. Although he claims that he "disputes many, if not all, of the allegations, id, at 14," he should have that opportunity to do so while on cross-examination and not in a motion in limine.

Moreover, the testimony of Judge Saylor may be necessary in order to describe the circumstances under which the report was prepared, the scope of what he reviewed, and the statements made by Urciouli during his interviews. To rule at this stage that Judge Saylor cannot testify is, at best, premature.

## IV. Conclusion

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Urciuoli's Motion in Limine to Limit Use of Report of F. Dennis Saylor.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on August 22, 2008, I electronically filed this Supporting Memorandum with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Howard Cooper, Esq.
Todd & Weld, LLP
28 State Street
Boston, MA 02109

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

Larry Tipton
One Center Place, Suite 220
Boston, MA 02108

/s/ Luis M. Matos