UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 06-02- ML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**ROBERT A. URCIUOLI'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF ROBERT LACHANCE, JR**

Defendant Robert Urciuoli ("Mr. Urciuoli") hereby respectfully opposes the Government's motion *in limine* to exclude the testimony of Robert LaChance, Jr. ("Mr. LaChance"), a marketing and advertising executive with over 40 years of experience in the broadcast media industry.

Mr. Urciuoli is entitled to call Mr. LaChance to testify about the marketing efforts and promotional services undertaken by former Senator John Celona ("Celona") on behalf of affiliates of Roger Williams Medical Center ("RWMC"), and opine on (i) the market value derived from television broadcasts featuring Celona and various guests associated with affiliates of RWMC on various topics pertinent to the array of services provided by the RWMC continuum of care; (ii) the costs associated with planning, producing, editing, and promoting television broadcasts, such as those featuring Celona and professionals associated with Roger Williams affiliates; and (iii) the benefits that accrue to entire organizations of affiliated corporate entities, such as the RWMC-related entities (The Village at Elmhurst, Elmhurst Extended Care, Inc., Roger Williams Home Care, and Roger Williams Hospital) stemming from the promotion of a

single affiliate from the family of affiliates (e.g., The Village). See counsel's letter dated August 14, 2008 (attached as Exhibit 1 to the Government's motion).

Mr. LaChance's expert testimony will address the various professional services that are required to produce television programs such as Celona's programs entitled "State House Report" and "For Your Health." Mr. LaChance will testify about the number of cameras and camera operators used for each program, and the roles played by recording technicians, graphics technicians, lighting technicians, and sound technicians. Mr. LaChance will further testify about pre-production services, such as topic selection, script development, and schedule coordination in regard to guests, studio availability and production staff. Mr. LaChance will further testify about post-production services, such as editing, program promotion and advertising, and broadcast viewing times.

Mr. LaChance will further testify about the costs associated with providing all the above services. Mr. LaChance will testify that local Rhode Island production companies, such as the ones owned and operated by Mr. LaChance for the past forty years, would have charged between $8,000 and $10,000 for each 30 minute program during the period 1998 to 2003.

Mr. LaChance will further testify about the marketing value associated with the use of a local celebrity such as then-Senator John Celona. Mr. LaChance will further testify that, in the context of affiliated corporate entities such as those owned (wholly or partially) by RWMC, marketing and promotional benefits accrue to the entire organization of affiliated entities stemming from the promotion of a single affiliate from the family of affiliates. Mr. LaChance's testimony in this regard will be supported by his experience in providing promotional and advertising services to commercial organizations, such as commonly-owned automobile

dealerships, as well as non-profit organizations, such as Brown University School of Medicine and its affiliates.

Mr. LaChance will further testify that it is ordinarily not possible to measure precisely the economic benefits attributable to the type of community out reach and broadcast promotional work done by Celona. Mr. LaChance will testify that his opinions regarding the economic benefits associated with the type of promotional services provided by Celona are supported by his forty years of experience in the marketing industry, and the experience of his clients.

Mr. LaChance's testimony is necessary and proper to rebut the Government's contention -- and the pillar of its case -- that the Defendants engaged in a quid pro quo bribery scheme to deprive the citizens of Rhode Island of the honest services of John Celona by, among other things, entering into a "sham" consulting contract with Celona that was nothing more than a cover for funneling payments to Celona in exchange for political activity. See Consolidated Brief for the Appellee, United States of America, p. 45. The Government's motion should be denied.

**A. Mr. LaChance's Testimony is Relevant and Necessary to Rebut Evidence That the Defendants Engaged in Quid Pro Quo Bribery.**

The Government contends that Mr. LaChance's testimony is not relevant because "the market value gained from shows similar to those produced by Celona generally is not relevant to whether Urciuoli intended to defraud the public, or any other issue to be tried." See Government's motion, at p. 5. This contention should be rejected because the Government's theory of prosecution is that John Celona's consultancy with RWMC affiliate The Village at Elmhurst was a "sham" or "no show" job. Celona's consulting agreement stated that he was to provide public relations and marketing services to The Village and RWMC's wholly-owned nursing home, Elmhurst Extended Care, and promote Roger Williams Medical Center's business

strategy known as the "continuum of care." The Government contends that the consulting agreement was merely a guise for bribery payments to Celona in exchange for political activity that would benefit RWMC. Inherent in this argument is that Celona did not perform any real work for the Village at Elmhurst and other Roger Williams affiliates. Mr. LaChance's testimony goes directly to the heart of the Government's quid pro quo bribery theory in that it will show that Celona did, in fact, perform legitimate and valuable promotional work for The Village and its affiliates. Mr. LaChance's testimony is necessary to rebut the Government's contention to the contrary.

Mr. LaChance was provided with documents and recordings that reflect Celona's marketing efforts, including VHS tapes and CDs of television broadcasts produced by Celona for the benefit of The Village and various other Roger Williams affiliates. The program recordings demonstrate that Celona engaged in significant marketing efforts for the benefit of The Village and Roger William related entities, including producing shows on topics relevant to the array of services provided by the RWMC continuum of care. The program segments cover such topics as the "changing needs of the senior citizen population in Rhode Island" and the "concept of catered retirement living." Celona's program guests include employees of The Village and its parent company, Village Retirement Communities, as well as employees of Elmhurst Extended Care and various other Roger Williams entities. The Celona television broadcast evidence is directly responsive to anticipated evidence and argument by the Government that Celona provided nothing of value to The Village.

The Government further argues that Mr. LaChance's testimony is not relevant because it would not address the actual revenue, costs or benefits to RWMC and its affiliates associated with Celona's broadcasts. See Government's motion, at p. 4. This argument serves only to

highlight the need for expert testimony on this issue. As Mr. LaChance will testify, there is no way to directly measure or quantify the value that RWMC and its affiliates received from Celona's broadcasts. However, Mr. LaChance's extensive experience and that of his clients has established the marketing value associated with promotional broadcasts such as the Celona programs. Mr. LaChance's testimony is not only relevant, but it is precisely the type of testimony that will assist the jury to understand the evidence before it. The Government's motion should be denied.

**B. Mr. LaChance's Testimony is Admissible Under Rule 702.**

The Government's argument that Mr. LaChance's proposed testimony is not admissible under Rule 702 likewise fails because the testimony will assist the jury in understanding the value of Celona's promotional services. The Government argues that Mr. LaChance's testimony will not assist the trier of fact because "none of the issues the jury will be called upon to decide relate to television production." See Government's motion, at p. 6. The Government, however, alleges, through its quid quo pro bribery theory, that Celona's consulting contract with The Village was a sham and that he provided nothing of value to The Village and the other RWMC affiliates as a result of this consulting contract. During the closing arguments in the first trial in this matter, the Government repeatedly sought to discredit Celona's marketing "skills" and efforts for The Village, claiming they had no value:

> Ladies and gentlemen, let me explain something to you about the continuum of care. There's been a lot of testimony about the continuum of care . . . But, ladies and gentlemen, this case is not about the continuum of care because the evidence has shown that that wasn't what John Celona was hired for. He was hired for their other interest, for their political interest, because, again, he had no *skills* that would translate to being a continuum of care advocate.

See Trial Tr. (10/2/06), at p. 18:11-24 (emphasis added), attached hereto as Exhibit A.

* * * * *

> John Celona was a political opportunist. That's who they hired, and that's what they hired him for . . . John Celona was of no benefit as a consultant for the Village.
>
> Id. at p. 21: 8-15
>
> * * * * *
>
> You'll see that during that time in 2000, 2001, 2002, 2003, if you look at the exhibits, John Celona was doing barely nothing for the Village, ladies and gentlemen.

Id. at p. 43: 21-24.

The Government cannot have it both ways; it has placed the value and legitimacy of Celona's marketing skills and efforts for The Village at Elmhurst and related entities squarely at issue. The defense is entitled to rebut this evidence, and expert testimony from a forty-year veteran of the marketing industry concerning the economic value of the Celona television programs is precisely the type of technical and specialized testimony that will assist the jury in evaluating whether Celona's relationship with The Village was, in fact, legitimate.

The Government finds fault with the fact that Mr. LaChance will not be opining on the "actual revenue and costs associated with the production of Celona's television shows" but, rather, on "television production costs generally" and claims that if evidence of the actual revenue and costs exists, such evidence could be presented to the jury without Mr. LaChance's testimony. See Government's motion, at p. 6. The actual cost to The Village and the RWMC affiliates associated with the production of Celona's television shows is a central part of the Government's case-in-chief -- it was the cost of Celona's salary of between $700 and $1,000 per week. Second, as to the Government's contention about the lack of evidence of revenue associated with Celona's shows, Mr. LaChance's testimony is necessary to explain that, based on his forty years of experience in the industry, such data are not generally quantifiable. Nevertheless, the value to entities such as The Village and the other RWMC affiliates stemming from such promotional broadcasts are widely understood, and that fact is reflected by the

amounts routinely paid for such services in the market place -- precisely the area of Mr. LaChance's expertise.

This is precisely the type of expert opinion testimony that is routinely allowed by Courts, because jurors cannot be expected to have the type of unique industry insight developed by Mr. LaChance over the past forty years. See Microfinancial, Inc. v. Premier Holidays International, Inc., 385 F.3d 72, 80 (1st Cir. 2004); see Comments to 2000 Amendments to Rule 702 (" . . . the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.")

It cannot be assumed that the jury will understand or appreciate the level of effort and detail that goes in to conceiving the idea for, planning, selecting and preparing guest speakers for, preparing graphics for, editing, and executing television broadcasts like the ones Celona did on at least 30 occasions for The Village. A simple review of Mr. LaChance's qualifications reveals that he has the specialized knowledge and experience that would enable him to opine on these topics, and his testimony would greatly assist the jury in evaluating whether the Government's "sham job" allegations have merit.

**C. Mr. LaChance's Experience Provides a Permissible Basis For His Opinions.**

The Government contends that Mr. LaChance fails to possess the requisite qualifications to render the disclosed opinions. The Government is wrong under the standards incorporated under Rule 702.

Mr. LaChance is well-qualified to offer the disclosed opinions based on his over forty years of actual personal experience in the broadcast media, advertising and marketing industries. Mr. LaChance's qualifications include the following:

- He runs a creative / production boutique that provides clients with marketing consultation, creative strategies and production for use in broadcast, on the web and in corporate and institutional communications;

- He has represented prominent Rhode Island corporations and non-profits, including the following: Tasca Automotive Group, McKay's Furniture, Gilbane, Brown University;

- He has owned his own advertising agency for forty (40) years;

- He has written and produced thousands of radio and television commercials, hundreds of corporate communications videos and many longer form programs;

- He has received numerous creative awards, including, most recently, the 2008 Michelle Norris Memorial Award from Children's Friend for his pro bono creative work for that organization; and

- His company owns audio and video production suites, as well as camera, lighting and grip equipment.

This is just a sampling of Mr. LaChance's qualifications. The Government ignores the majority of these accomplishments, singling out, instead, the fact that Mr. LaChance "began singling jingles at age 7, and is a national voice over talent." See Government's motion, at p. 7. Mr. LaChance's testimony will illustrate that, for forty years, he has been producing the very type of programming that Celona produced for the benefit of The Village at Elmhurst -- the very same programming that the Government claims has no value. Mr. LaChance has reviewed recordings of television broadcasts produced by Celona for the benefit of The Village (discussed above) and various other Roger Williams affiliates. Based on his review of these materials, together with his training and experience in the areas of marketing consultation, creative strategies, television broadcast production, advertising, and corporate and institutional communications, Mr. LaChance is qualified to testify to his expert opinions as to the market value and costs associated with producing television broadcasts similar to the ones featuring Celona and various guests associated with affiliates of RWMC on various topics pertinent to the

continuum of care, as well as to the benefits that accrue to an entire organization of related entities stemming from the promotion of a single affiliate from the family of entities. His testimony satisfies the requisite qualifications of Rule 702.

**D. Mr. LaChance's Testimony Will Not Confuse the Jury.**

The Government's final argument that Mr. LaChance's testimony will confuse the jury also lacks merit. The Government appears to ignore the fact that it is alleging that Celona provided nothing of value to The Village, and that his consulting contract with The Village was nothing more than a façade for an illegal bribery scheme. The jury will certainly hear evidence from the Government on this issue. Testimony from a qualified expert, such as Mr. LaChance, as to the value, benefits and costs associated with the work similar to that which Celona performed for The Village will assist the jury in evaluating whether Celona was fulfilling his obligations to provide promotional services under his contract with The Village and its affiliates. It is difficult to conceive how such testimony would confuse the jury.

## CONCLUSION

In light of the foregoing, Defendant Robert A. Urciuoli respectfully requests that the Court deny the Government's Motion *In Limine* To Exclude Expert Testimony of Robert LaChance, Jr.

Respectfully submitted,

ROBERT A. URCIUOLI

/s/ Kristie M. Passalacqua______________

Kristie M. Passalacqua (R.I. Bar No. 6945)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)

kpassalacqua@haslaw.com

Michael J. Connolly (MA BBO # 638811)
*Pro Hac Vice Counsel*
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020
mconnolly@haslaw.com

Howard M. Cooper (MA BBO # 543842)
*Pro Hac Vice Counsel*
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 624-4713
(617) 227-5777
hcooper@toddweld.com

Dated: August 22, 2008

**CERTIFICATION**

I hereby certify that on August 22, 2008, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kristie M. Passalacqua