IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * | C.R. NO. 06-02T |
| UNITED STATES OF AMERICA * | |
| VS. * | OCTOBER 2, 2006<br>9:30 A.M. |
| ROBERT A. URCIUOLI, et al * | |
| * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE ERNEST C. TORRES,

CHIEF JUDGE

(Jury Trial)

APPEARANCES:

FOR THE GOVERNMENT: LUIS M. MATOS, AUSA
DULCE DONOVAN, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT, URCIUOLI: MICHAEL J. CONNOLLY, ESQ.
Hinckley, Allen & Snyder, LLP
28 State Street
2nd Floor
Boston, MA 02109

RICHARD M. EGBERT, ESQ.
99 Summer Street
Suite 1800
Boston, MA 02110

Karen M. Wischnowsky, RPR-RMR-CRR

2

FOR THE DEFENDANT,
DRISCOLL: KEVIN J. BRISTOW, ESQ.
505 Turks Head Building
Providence, RI 02903

FOR THE DEFENDANT,
SANGERMANO: A. JOHN PAPPALARDO, ESQ.
EVAN GEORGOPOULOS, ESQ.
Greenberg Traurig, LLP
One International Place
Boston, MA 02110

Court Reporter: Karen M. Wischnowsky, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

Proceeding reported and produced by computer-aided stenography



1

3

2 OCTOBER 2006 -- 9:30 A.M.

And, Miss Anderson, if I could have Government Exhibit 86. The next page, please. If you could call out the top.

Jim McGuirk took Frances Driscoll's draft and changed it because his understanding was that John Celona was going to be working for the Village, but he explained in this draft the relationship between the entities, between Roger Williams Medical Center, between the Village, and he also explained the nature of the continuum of care.

Ladies and gentlemen, let me explain something to you about the continuum of care. There's been a lot of testimony in this case about the continuum of care. There is no contest that Roger Williams espoused a theory regarding the continuum of care, ladies and gentlemen, that that was part -- you've seen a video about it, ladies and gentlemen.

But, ladies and gentlemen, this case is not about the continuum of care because the evidence has shown that that wasn't what John Celona was hired for. He was hired for their other interest, for their political interest, because, again, he had no skills that would translate to being a continuum of care advocate.

And if you look at Government Exhibit 86, let me





also explain something else to you. This version of the contract, as you know, did not survive. Frances

Driscoll told Jim McGuirk to take that portion out. She also told him to take out the portion that said continuum of care, and she explained to Jim McGuirk that the reason that was being taken out was because Peter Sangermano and John Celona had not signed on to the continuum of care theory. That's not what they were going to do.

But, ladies and gentlemen, even if this version had survived, if they engaged in the same conduct that the evidence has shown that they engaged, we'd still all be sitting here today, ladies and gentlemen, because that consulting agreement, likewise, did not disclose what John Celona was going to do because Jim McGuirk had no idea what John Celona was going to do.

Jim McGuirk testified about why he didn't ask about legislation, about rescue runs. And he told you something, ladies and gentlemen, that you should consider during this -- during your deliberations. He said, I didn't think about it. It didn't occur to me.

He was his friend. He was his golfing partner. It didn't occur to him to ask the question, ladies and gentlemen, because he hadn't been told anything about that. He had been told he's going to work on senior

Karen M. Wischnowsky, RPR-RMR-CRR

1

20

issues. Why is Jim McGuirk going to guess that Robert Urciuoli and Frances Driscoll are going to task John Celona to do what you've seen he was tasked to do?

So, ladies and gentlemen, that doesn't survive.

You've seen the version of the contract that does survive. And the evidence has also shown, ladies and gentlemen, that Peter Sangermano was involved in drafting the contract.

Miss Anderson, if I could have Government 112, please. If I could have the next page. If you could call out that.

This is the fax that was sent from Frances Driscoll to Jim McGuirk about asking him to eliminate the Village at Waterman Lake in the consulting agreement because, according to Jim McGuirk, Peter Sangermano had reviewed it and had asked that Waterman Lake be taken out because John Celona was not going to have anything to do with Waterman Lake. He wasn't even going to have an office at Waterman Lake. They didn't even want him there, ladies and gentlemen.

And the evidence has shown why Peter Sangermano initially didn't want John Celona and explains to you why John Celona had no -- had no appeal to any of them except for his political appeal because, ladies and gentlemen, you know now from the evidence what kind of





sophisticated marketing outfit Village Retirement Communities were.

The reason Peter Sangermano didn't need John Celona to market for him is because he had people like Jen DeLuca, because he had people like Lisa Hawthorne, educated, poised, competent. They knew what they were

doing in regards to marketing, ladies and gentlemen.

That wasn't John Celona. John Celona was a political opportunist. That's who they hired, and that's what they hired him for, ladies and gentlemen.

Peter Sangermano had a marketing budget of $1.8 million. He wasn't willing to spend $350 a week on John Celona, half of $700 if they split it equally, because John Celona was of no benefit as a consultant for the Village.

You've seen the evidence about how initially -- Miss Anderson, if I could have 109, the next page, and the next page.

The letter that Frances Driscoll drafted to Peter Sangermano about how they had collectively determined to hire John Celona. And that language, Peter Sangermano would not sign on to that. Steve Rosenbaum would not sign on to that. Steve Rosenbaum said, Take that out. And it wasn't until June when, if I could have Government 176, the contract was



1



finalized, if you could call that out, Miss Anderson, where the language was taken out and it says that this will confirm that Roger Williams Realty Corp. requested that you engage John Celona, make it clear it wasn't Peter Sangermano's idea.

Peter Sangermano didn't want any part of it; but as you've learned, as you'll see, he did want part of it when he came to the political benefit that John

Urbani about reimbursement issues, negotiation issues, ladies and gentlemen.

You'll see that during that time in 2000, 2001, 2002, 2003, if you look at the exhibits, John Celona was doing barely nothing for the Village, ladies and gentlemen.

In 2001, he did a couple of TV shows, and he got





invited to a pizza event; 2002, another pizza contest and some TV shows; 2003, a TV show on child abuse. And during that time, you saw the evidence, he only referred 11 people, 2 of which entered the Village. And he referred a lot of people who couldn't afford it, which also explains to you how bad he was at that job because he didn't even know who could afford it and who could not afford it. What does that tell you?

Richard Gamache was on his television show. Richard Gamache was on his television show in 2001. He was in charge of continuum of care issues. He didn't know that John Celona had a consulting agreement that contained Elmhurst Extended Care on it until 2002 when he saw the contract.

Here's the guy who was in charge of continuum of care, and Robert Urciuoli never told him to go to John Celona.

And then the Blue Cross meetings, ladies and gentlemen. You've heard evidence that Robert Urciuoli was having trouble negotiating contracts with Blue