**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' MOTION IN LIMINE TO**
**EXCLUDE INTRODUCTION OF VIDEO TAPES**

United States of America, through undersigned counsel, respectfully moves the Court to exclude introduction of video tapes for the reasons detailed in the accompanying memorandum of law filed simultaneously herewith.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000 - phone
(401) 709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000 - phone
(401) 709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on September 2, 2008, I electronically filed this Motion In Limine To Exclude Introduction of Video Tapes with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Howard M. Cooper, Esq.
Todd & Weld LLP
28 State Street
Boston, MA 02109

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

Larry Tipton, Esq.
One Center Place, Suite 220
Boston, MA 02108

/s/ Luis M. Matos

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION**
**IN LIMINE TO EXCLUDE INTRODUCTION OF VIDEO TAPES**

## I. Introduction

On August 8, 2008, counsel for Robert Urciuoli notified the United States that defendant intends to introduce a number of video recordings at trial. See Exhibit 1. According to the defendant, he plans to introduce in their entirety videos of several cable access shows hosted by John Celona. In addition he plans to play excerpts from the tapes at trial. Defendant has produced copies of the videos and excerpts to the United States. Each show, with one exception, is approximately 30 minutes long. A copy of the disk produced by Urciuoli which contains Urciuoli's proposed excerpts is attached. Exhibit 2. The United States addresses each recording below by summarizing the recording, and the proposed excerpts, and addressing its objection to each.[1]

[1] The United States has also requested that defendant produce transcripts of the shows. If they exist, defendant has yet to make them available.

## II. Video Summaries and Argment

### A. The Cancer Shows

Urciuoli intends to introduce the following videos which purport to promote Roger Williams cancer treatment efforts. They should not be introduced for the reasons stated below.

#### 1. For Your Health: Guests Robert Urciuoli and Dr. Denise Fraser. Listed as "June 2000."

a. Summary

Robert Urciuoli and Dr. Denise Fraser appear on John Celona's cable access program, For Your Health, to discuss breast cancer. The show refers primarily to efforts at Roger Williams Hospital to combat breast cancer. The majority of the show is about cancer and cancer prevention and concludes with Celona commenting about how the people at Roger Williams, led by Urciuoli, do great work.

b. Excerpt

In the excerpt which Urciuoli intends to play at trial, Celona states that we "are fortunate to have a hospital that I feel is one of the leading breast cancer hospitals," and that Urciuoli, is the president leading the way. Celona states that Urciuoli has "done a terrific job" in his "opinion." Urciuoli discusses the continuum of care[2] which he claims is designed to meet the needs of the community. Urciuoli states that he is "happy to report" that the "hospital is in a good position," and that the cancer program is what he is most excited about. Celona praises

[2] At the first trial, Urciuoli's defense was in part predicated upon the notion that Celona was hired to service the Hospital's continuum of care. The continuum of care refers to the concept that each entity under the Roger Williams Medical Center (RWMC) umbrella provides distinct but interrelated services.

Urciuoli for recognizing the needs of the community. Urciuoli returns the compliment by stating to Celona that "we are really fortunate in the community to have you" because Celona is well informed and an asset to the community. Celona is "deeply touched" and replies "coming from someone like you it's a high compliment, I'm speechless." Celona states that he is going to have Urciuoli on this show "continuously" and they do great work at the hospital. Celona further states that the hospital is "led by a great leader and CEO."

c. Objections

Relevance: Urciuoli's defense in this case is, in part, that Celona was given a real job as a consultant to the Village of Elmhurst (the "Village") and Elmhurst Extended Care ("Elmhurst"). A copy of the Consulting Agreement is attached. Exhibit 3. As a consultant, Celona was purportedly tasked with heightening "awareness among seniors" of the "greater Providence community as to the programs and services available at the Village at Elmhurst and at Elmhurst." Id. The contract also outlines Celona's "responsibilities." For instance, Celona was to "become knowledgeable with all aspects of the quality of care" provided at the two facilities, "identify new programs" to strengthen elderly care, increase a presence within communities in which "medical needs of the elderly are not being met" and "survey representative samples of the elderly population" to identify unmet needs. Id. Notably, there is nothing in the agreement about making Celona's cable show available to the Village and Elmhurst. In addition, there was no evidence during the first trial that the television shows were contemplated as a potential public relations vehicle when Urciuoli first pitched Celona's hire to his senior staff and counsel.

This show is about breast cancer. To the extent it has any value, it is as a public information piece about breast cancer. It is not tailored in any way to senior issues. Rather it is

focused on cancer programs at Roger Williams Hospital. To the extent that Urciuoli discusses the "continuum care," he does so in a general way by stating that the continuum is designed to "meet the needs of the community." At no point does Urciuoli tie the statement into an acknowledgment or declaration that Celona is working on those issues for him. In addition, Celona's televised "opinions" about the hospital and Urciuoli are not relevant.

Hearsay: The video contains classic hearsay. Urciuoli's comments about continuum of care and the hospital's condition are hearsay. Defendants may argue that the statements are not being offered for their truth but that is not a plausible position in this case. Part of Urciuoli's defense is that he intended that Celona work on "continuum of care" issues (despite the fact that the term is not contained in the contract). The statement by Urciuoli cannot be viewed as anything other than an out of court statement that is offered for the truth of the matter asserted within it. Fed. R. Evid. 801(c), 802. It cannot be properly addressed by a curative instruction because it would simply be too difficult for the jury to make such a distinction on an issue that is so central to the defense. At minimum it is precluded by Rule 403 because it will confuse the jury.

Character: Celona's effusive comments about Urciuoli in this video, and others, is improper character evidence. Fed. R. Evid 404.

**2. For Your Health: Guests Robert Urciuoli and Dr. Pedvis. Listed as "July – Aug. 2000"**

a. Summary

This video is primarily about cancer and cancer prevention. There are discussions about sunburn. Celona informs the audience that he gets sunburn on his back which looks "horrible."

They discuss tests for skin cancer and discuss the hospital's department of dermatology.

b. Excerpts

Celona opens by noting that it is summer which is the season for sunburn. He then introduces Urciuoli as his "very very good friend" who is the "best person in his field." Celona states that the hospital is "like a hotel" and they discuss valet parking at the hospital. Urciuoli states that they are experiencing significant growth at the hospital. Urciuoli states that the "biggest joy" he gets is "getting out and working with our people." Celona states that Urciuoli's "focus is on people." Urciuoli mentions that RWMC received a $700k grant from the Department of Health and Human Services. Urciuoli notes that he knows that Celona is involved with the project. Celona states that he will have Urciuoli back once the health fair[3] happens. Celona thanks Urciuoli for having the foresight for attracting people like Dr. Pedvis. Celona states that "Roger Williams treats people, they really do."

c. Objections

Relevance: Like the video with Dr. Fraser, this program is also focused on the hospital's cancer prevention efforts. This show is about breast cancer and dermatology. It is not relevant to any prospective defense that Celona was hired for the honest purpose of promoting senior issues at the Village and Elmhurst. Likewise, Celona's televised "opinions" about his "very very good friend" who is the "best person in his field" and that "Roger Williams treats people, they really do" are not relevant.

In addition, evidence about a grant that the hospital received, as will be further outlined

---

[3] Celona's reference to the health fair is a reference to an upcoming health fair that was sponsored by the Teamster Retirees, Boston University and RWMC.

below, known as "HealthLink," is not relevant to this case.

Hearsay: The video also contains hearsay. Urciuoli's comments about his joy of working with people are both hearsay and irrelevant.

Character: Celona's effusive comments about Urciuoli in this video are improper character evidence. Fed. R. Evid 404.

**3. Taking on Cancer: Guests are Robert Urciuoli, Drs. Elfenbeim, Strauss, Lum, Fraser, and Quessenberry[4]**

a. Summary

This is a one hour infomercial about the hospital's cancer program. It contains several segments focused on leading doctors at the hospital and the programs that they are supporting.

b. Excerpts

Celona introduces Urciuoli as a "good friend of mine" who is "doing a great job." He comments about a hospital newsletter that contains a message from Urciuoli entitled "mission possible." Urciuoli states that cancer is a specialty that they are particularly interested in and to which they have a "major commitment." There are video clips of the doctors. Celona states that they are not doing enough with the tobacco money obtained by the State of Rhode Island. Urciuoli states that he is "proud" that they have attracted first class research and that they have obtained $30 million in research grants. He also states that, in his "personal opinion," cancer "cures will proliferate." Celona states that the work Urciuoli has done is "so noteworthy" because he is "giving people hope." He goes on to say, "Bob you know what I think of you and the work you do" and the "facility is second to none."

[4] This show is approximately one hour long.

c. Objections

Relevance: This video is nothing more than a commercial about the hospital's cancer programs. It is not relevant to any prospective defense Urciuoli may offer. It has nothing to do with the Village, Elmhurst or seniors, except that, like anyone else, seniors may also be stricken by cancer. Likewise, Celona's televised "opinions" about his "good friend" who is "doing a great job" are not relevant.

Hearsay: The video also contains hearsay. Urciuoli's comments about the quality of the people they have recruited to the hospital and his "personal opinion" that cancer "cures will proliferate" are both hearsay and irrelevant.

Character: Celona's effusive comments about Urciuoli in this video are improper character evidence. Fed. R. Evid 404.

**B. The HealthLink Shows**

Urciuoli intends to introduce the following videos which relate to a Federal grant obtained by Roger Williams Hospital known as HealthLink. Celona helped organize a health fair resulting from the grant and was paid for his services from grant money rather than as a "consultant" to the Village. The videos relating to HealthLink should not be introduced for the reasons stated below

**1. Celona State House Report: Guests Are Robert Urciuoli, Dr. Joseph Boffa, John Pernorio. Listed as "Sept. 2000- Oct. 2000."** [5]

a. Summary

Guests are Robert Urciuoli, Dr. Joseph Boffa and John Pernorio, President of the New

[5] There are two shows on this Video. As second show with Robert Picard is described below.

England Association of Labor Retirees. They discuss the origins of the HealthLink grant and upcoming health fair sponsored by the New England Association of Labor Retirees, the hospital, and Boston University.

b. <u>Excerpts</u>

John Celona introduces Robert Urciuoli as a "good friend of mine" and the CEO of the "finest hospital in Rhode Island." Mr. Pernorio begins the discussion by noting that Healthlink was the result of the collaboration between "you three," referring to Celona, Urciuoli and Boffa. Urciuoli states that HealthLink is good for seniors in the community. Pernorio states that the idea of a health fair was his, launched in his basement. Addressing Celona, Pernorio states that "I got you involved in the program with your ties to Roger Williams." Boffa talks about the fact that the HealthLink grant would not have happened without the unique partnership between Boston University and the hospital. Celona states that everything meshed well, we had some bumpy roads, but ultimately blended well.

c. <u>Objections</u>

<u>Relevance</u>: Evidence about a grant that the hospital received, known as "HealthLink" is not relevant to this case. Celona did work with Fran Driscoll and others to promote a health fair as a result of the Federal grant. However, HealthLink was a hospital grant and Celona was paid separately, in the total amount of approximately $20,000, for his work and production of videos. Exhibit 4. Indeed, even Urciuoli had trouble, before a State Grand Jury, claiming that HealthLink was related to the Village:

> Q Did you perceive the Health Link Grant and HealthLink Program to be a potential source of patients or customers or whatever you call them at the Village at Elmhurst? What would

> you call them? Patients or residents? Residents at the--
> A I think at--
> Q --Village at Elmhurst?
> A --the Village at Elmhurst residents,--
> Q It would be residents.
> A --and patients at the nursing home.
> Q Yeah. Did you perceive that, that is a, was a potential source of patients and/or residents?
> A I think it could have been.
> Q Yeah?
> A I really didn't, I don't think I gave it that much thought at the time, but it could have been. Yes.
> Q Did you perceive that, under the consulting agreement that Senator Celona signed with you, with you all, or with Peter Sangermano, but, obviously, affecting you, that it covered just about anything that had to do specifically with seniors or retirees or, or elder issues or, or things of that nature?
> A I, I don't, I don't think it was that broad, but, clearly, when I look at this--
> Q Yeah?
> A I mean, I think that you can probably make a case that it was generally covered in the, in the consulting agreement because it was senior related, but, and, we, again, thought it would have indirect benefits because the more people that were affiliated with the Village and, and with the nursing home out there, and people saw our name out there, that, if they needed the service, you know, they, they'd, certainly, look to us.

Exhibit 5, p.76-78.(emphasis added).

Hearsay: The video also contains hearsay. For instance, Urciuoli may claim that John Pernorio's statement that he "got [Celona] involved in the program with [his] ties to Roger Williams," is evidence of disclosure of the relationship. However, the statement is both ambiguous and hearsay.

**2. Celona Report: Health Link and RWM Home: Listed as "Oct. 2000-Nov. 2000"**

a. Summary

This edition has guests Dr. Joseph Boffa and John Pernorio. The show is essentially a report on the health fair put together pursuant to the HealthLink grant and includes clips of Celona at the fair.

b. Excerpts

The video contains excerpts of various scenes from the health fair held at the Rhodes on Pawtuxet, such as shots of oral cancer screening and vascular screening. Celona states that part of the success of the fair was due to having follow-up right in place. He interviews doctors at the fair and thanks people at the hospital, New England retirees and BU. Dr. Boffa discusses the screenings taking place. John Pernorio states that it's a day to be proud and that Roger Williams, the labor retirees, BU, Dr. Boffa, and Celona were a big force behind it. Celona states that it is a day that Rhode Island can be proud of and acknowledges that the fair was the product of a Federal grant. The excerpts also contain brief interviews with Senator Graziano, Dr. Fraser, Paula Gaspar.

c. Objections

Relevance: For the reasons stated above, evidence about the "HealthLink" fair is not relevant to this case.

Hearsay: The video also contains hearsay concerning John Celona's participation in HealthLink and attendant fair.

**C. The Home Health Show**

**1. Celona State House Report: Guests Are Robert Urciuoli and Robert Picard. Listed as "Sept. 2000- Oct. 2000."**

a. Summary

The second edition of a video listed as For Your Health, Sept. 2000- Oct. 2000 has as guests Robert Urciuoli and Robert Picard, the head of the home care division at RWMC.

b. Excerpts

Celona invites Urciuoli to speak about Roger Williams home care program and its 10th anniversary of program. Celona states he has to give leaders at the hospital a lot of credit for addressing a real need in the community. Urciuoli states that "one of the things we really pride ourselves on his having a continuum of care." Celona comments that the home care program is really a throw-back to the old house call system and comments on the "breadth of services" offered by Roger Williams. Celona tells Urciuoli that the hospital's successes are directly attributable to his leadership. Celona states that Urciuoli is a great leader for a great team and says the hospital is a "hospital without walls." Urciuoli states that the vast majority of the work comes from other institutions that think highly of our work. Urciuoli comments that Roger Williams places a significant emphasis on providing quality service in a cost-effective fashion. Celona tells his viewers that if they have been discharged from any hospital in the state they should call the home care phone number and get the best home care anywhere. Celona tells Urciuoli that he knows what Celona thinks of him and his hospital.

c. Objections:

Relevance: There will be no evidence at trial that Celona was hired to promote Roger

Williams home health program. This video is completely irrelevant to the issues at trial as are Celona's comments about what he thinks of Urciuoli. Likewise, Urciuoli's statements about the "continuum care" as something in which he takes pride are not relevant. At no point does Urciuoli tie the statement into an acknowledgment or declaration that Celona is working on those issues for him. Nor is the home health program tied to the Village. In addition, Celona's televised "opinions" about the hospital and Urciuoli are not relevant.

Hearsay: The video contains hearsay. Urciuoli's comments about the continuum of care are hearsay. As discussed above, they cannot plausibly be introduced for any purpose other than for the truth of the matter asserted. Fed. R. Evid. 801(c), 802. As such they must be precluded. Again, the issue cannot be addressed by a curative instruction because it would simply be too difficult for the jury to make such a distinction on an issue that is so central to the defense. Hence, it must be excluded as hearsay and pursuant to Fed. R. Evid. Rule 403 because it will confuse the jury.

Character: Celona's effusive comments about Urciuoli – that he is such "great leader" and that he knows what Celona thinks of him -- in this video are improper character evidence. Fed. R. Evid 404.

**D. The Elmhurst Show**

**1. For Your Health: Guests are Robert Urciuoli and Richard Gamache**

a. Summary

This show is about the Elmhurst Extended Care facility. Urciuoli starts by stating that, as Celona knows from previous conversations they've had, they have a relationship with a nursing home that they own and operate. He states that they are moving along with Phase III of a project

and discusses plans about their two campuses. They discuss Roger Williams's valet service. Gamache discusses how nursing homes are handcuffed by Medicaid reimbursement and discusses the quality of care of staff members. Urciuoli discusses initiatives relating to the quality of life for employees such as providing dry-cleaning and free legal services. He states that hopefully they can solicit the support of the legislature and the governor for more money into the Medicaid program to support staffing needs. Gamache discusses President Clinton's strategy on nursing homes and states that they are looking to the Rhode Island legislature to approve $14 million and $15.9 in million federal matching funds to get $30 million into Medicaid. Gamache also states that he knows Celona has been very supportive and thanks him. Urciuoli states that he really wants to advocate for this and knows they have talked about this before. They discuss their belief that there is a shortage of nurses. Urciuoli states that anything Celona and his colleagues can do to bring the issue into public focus would great, such as creating an endowment to provide free education for nursing students in exchange for work. Urciuoli thanks Celona for what he will be doing in the next legislative session. Celona states that he is "wearing" his government hat and that it is incumbent to do all they can to preserve the health and well being of Rhode Island's citizens. He then asks Gamache about what to look for when choosing a nursing home. Celona encourages Urciuoli to keep up the great work at Roger Williams and all that he does in the State of Rhode Island for health care because Celona "sincerely appreciate[s] it."

The show ends with Urciuoli telling Celona that he appreciates all the work he does and congratulating him on his new leadership position. He claims that he is looking forward to a very collaborative relationship and Celona responds that "You can bet you will have that

cooperation."

b. Excerpts

None Provided

c. Objections

Authentication: The video is broken down into 10 chapters. That is, the DVD contains 10 clips. Chapter 1 is identified as "Jack Kramer" and is not being offered. The remaining chapters, 2-10, purport to be the Elmhurst show. It is unclear, however, why the video is broken into 10 chapters and whether the DVD is complete.

Relevance: The consulting agreement does indicate that Celona is being hired to promote Elmhurst extended care. Exhibit 3. Hence, the fact that Celona filmed this video may be relevant if defendant can prove that making such videos was contemplated as part of the contract. For instance, there is no acknowledgment in the video that Celona is promoting the facility because he is contracted to do so. In addition, Urciuoli and Celona's congratulatory comments to each other are not relevant.

Hearsay: The video contains hearsay. Urciuoli's comments about continuum of care are hearsay. As discussed above, they cannot plausibly be introduced for any purpose other than for the truth of the matter asserted. Fed. R. Evid. 403, 801(c), 802.

**E. The Village Retirement Communities Show**

**1. For Your Health: Village Retirement Communities: Guest Joanne Cardillo, Linda Gershon: Listed as "Sept '00"**

a.. Summary

This show is about the services provided by Village Retirement Communities and not just

the Village at Elmhurst. Celona's guests are two employees of Village Retirement Communities. Joanne Cardillo is Vice President of Operations and a Registered Nurse. Linda Gershon is a retirement counselor who worked at the Village of Elmhurst but at the time of the show is working at the Village at Waterman Lake. They discuss the offerings and amenities at the communities generally.

b. Excerpts

Celona states that he knows the two partners who are the driving force behind the communities and they do a great job. He asks his guests to describe how Peter and Dianne Sangermano came to develop the facilities. Ms. Cardillo describes the history of the Communities. Celona compliments the leadership of the Sangermanos, both of his guests and Jennifer DeLuca. Celona states that the slogan for the Communities' anniversary is a "decade of innovations." Linda Gershon discusses the facilities. Celona states that the residents don't have leases and can leave the facilities if they want. Celona states that they make people feel at home and comfortable. He encourages anyone who has not been there to stop by and identifies the three facilities in Rhode Island. He says that they look like a hotel and states that he was in on a couple of fashion shows "up there against my will" for a "worthy cause." He ends by stating that Peter and Diane Sangermano do fabulous work for the people in this state.

c. Objections

Authentication: The recording has at least one gap in the tape. It is unclear from the video whether a portion of the show was not recorded or whether it is complete.

Relevance: Clearly, evidence of Celona's purported efforts to promote the Village at Elmhurst are relevant to this case. Exhibit 2. This is not such evidence. This video is about the

Village Retirement Communities. The Village at Elmhurst was equally owned by Roger Williams Realty and SANAT Properties, LLP, ("SANAT"). SANAT was a partnership between Village Retirement Communities and NATCO Products, Inc. Indict. ¶ 5. Hence, Village Retirement Communities essentially had a 25% interest in the Village at Elmhurst. Village Retirement Communities also managed the Village at Elmhurst.

Celona was not hired to market all the Village Communities. Indeed, there will be evidence at trial that an early draft of the consulting agreement identified the Village at Waterman Lake as another facility that Celona would promote. The reference to Waterman Lake was specifically removed at the insistence of Peter Sangermano because he did not want to hire Celona. In the end, Sangermano acquiesced to Celona's hiring, but only to the extent that Celona would be providing consulting services to the Village at Elmhurst. Accordingly, evidence that Celona broadly helped promote the Village Retirement Communities is not relevant to this case because Celona was not hired to promote the Village Retirement Communities. The mere fact that the Village at Elmhurst is identified as one of the facilities does not convert the broad topic of the show into a promotional effort to increase "awareness among seniors" of the "greater Providence community as to the programs and services available at the Village at Elmhurst and at Elmhurst," as specified in the consulting agreement. Exhibit 2.

Hearsay: The video also contains hearsay, such as, the fact that residents don't have leases.

## F. The Fogarty Show

### 1. Celona Report: Guests Lt. Governor Charles Fogarty and Robert Urciuoli. Listed as Dec. 99 – Jan. '00.

a. Summary

This show is primarily about tobacco settlement money and smoking cessation efforts.

b. Excerpts

Celona introduces the Lt. Governor as the foremost expert in his field. Celona notes that Roger Williams has been identified as one of the top 100 hospitals thanks to Urciuoli's leadership and his staff. They discuss the State of Rhode Island's tobacco settlement money and Celona states that he sent a letter to the Governor to try to bring people to table. Fogarty states that they need a call to arms, they need a strategy and leadership. Urciuoli claims that Roger Williams is a classic example of very good small hospital but that it is still not producing a positive operating margin. Urciuoli talks about a $700,000 grant that the hospital received from HHS for screenings. Celona states that he goes to senior centers all the time and Fogarty states that Celona is a strong advocate for seniors. Fogarty discusses his tobacco bill which will be "refined" that year. Urciuoli states that they support it entirely. Celona states that he believes the hospital is the finest, "prejudicially speaking."

c. Objections

Relevance: This video is somewhat difficult to characterize. It is not about senior citizens, the Village or Elmhurst and, hence, is not relevant. It is about anti-smoking actions and how to spend tobacco settlement money. As such, it is not a "senior" issue although Celona is lauded for his advocacy on behalf of seniors. Likewise, the promotional statements by Celona

and Urciuoli about the hospital are likewise not relevant. Nor is the evidence about the grant money (HealthLink).

At trial there will evidence that defendants directed Celona to use his position to influence the disposition of the tobacco settlement money. Hence, at most this video shows that Celona was following orders but not disclosing that defendants were directing him on this topic. Although the topic of legislation is discussed, unless defendant can provide more of a foundation, it is not relevant.

Hearsay: The video also contains hearsay such as Urciuoli's statements about how well the hospital is run and the Lt. Governor's statements about Celona's efforts on behalf of seniors.

**F. The Stoukides Show**

**1. Celona Report: Guests Dr. Stoukides. Listed as Feb. '00.**

a. Summary:

This video is primarily about Dr. Stoukides' practice at the hospital

b. Excerpts

Celona introduces Dr. Stoukides and states that he has an office at the Mancini Center in North Providence. Celona states that there are "exciting things" happening at the hospital. They discuss the flu outbreak. Celona again notes that Dr. Stoukides has an office at the Mancini Center which is a part of Roger Williams continuum of care. Celona states that Roger Williams has been named a "top 100" hospital. He states that Roger Williams has "found its niche, I feel" with the continuum of care for seniors. Dr. Stoukides states that the hospital administration at the top has been terrific. Celona states that Urciuoli, "Fran" and Dr. Stoukides are doing a great job. Celona states that he sent a letter to the Governor to bring people to the table. Celona also

claims that Roger Williams is a classic example of very good small hospital.

Relevance: This video is not relevant because it is primarily about Dr. Stoukides's practice at the hospital and the "exciting things" happening at the hospital. Nor is the discussion about the flu outbreak relevant. Likewise, Celona's opinions about the hospital's "niche" and the people at the hospital are not relevant. The fact that the continuum of care is discussed does not automatically make it relevant. Defendant must submit additional foundation evidence that links this video to Celona's efforts to promote the Village and Elmhurst Extended care. Until he does so, the United States objects to its admission.

Hearsay: The video also contains hearsay concerning, among other items, the fact that Roger Williams has been named a top 100 hospital, that Dr. Stoukides has an office at the Mancini Center which is part of Roger Williams' continuum of care, and that Celona sent a letter to the Governor to bring people to the table.

## III. Conclusion

Urciuoli's proposed introduction of the video recordings is nothing more than a transparent attempt to submit irrelevant hearsay evidence before the jury that allows Urciuoli to testify and boast about his efforts on behalf of the hospital without being subject to cross-examination. When viewed as a whole they are nothing more than a video testament to the character and qualities of Urciuoli and his work on behalf of the hospital. The evidence is not relevant, it is not reliable, it contains hearsay, it contains impermissible character evidence and it will confuse the jury and the issues in this case. As such, it should be excluded.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on September 2, 2008, I electronically filed this Memorandum In Support of Motion In Limine To Exclude Introduction of Video Tapes with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Howard M. Cooper, Esq.
Todd & Weld LLP
28 State Street
Boston, MA 02109

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

Larry Tipton
One Center Place, Suite 220
Boston, MA 02108

/s/ Luis M. Matos