IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * | C.R. NO. 06-02ML |
| UNITED STATES OF AMERICA * | |
| VS. * | SEPTEMBER 9, 2009 |
| ROBERT A. URCIUOLI, et al * | |
| * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE MARY M. LISI,

CHIEF JUDGE

(Jury Trial)

E X C E R P T

Karen M. Wischnowsky, RPR-RMR-CRR

1

2



Exhibit 1

A. Yes.
Q. How are you familiar with the Cancer Council?
A. I was aware that several individuals and institutions were talking about coming together to form a council to work more collaboratively to fight cancer in the state.
Q. Were you aware that there was legislation introduced relating to the establishment of a Cancer Council?
A. I was.
Q. Were you part of discussions at the hospital concerning the hospital's position regarding the establishment of a Cancer Council?
A. Yes, I was.
Q. Were you -- did you have any discussions with Frances Driscoll concerning the hospital's position



I



regarding the establishment of a Cancer Council?
A. I did.
Q. And what did Mrs. Driscoll express to you concerning the establishment of the Cancer Council?
MR. CONNOLLY: Objection, your Honor. I think this may be something we need to discuss.
THE COURT: Approach. Step down, please.
(Bench conference held on the record)
THE COURT: Could I have a time frame, please.
MS. DONOVAN: It was 1998 and/or 1999. 1998. Excuse me. She left the hospital in early 1998. I'll

ask her to clarify.

THE COURT: She left in early '98?

MS. DONOVAN: Yes.

MR. CONNOLLY: I believe that the Government is offering this statement under 801(d)(2)(E), and so we would interpose the objections which have been discussed previously with the Court.

THE COURT: What's the basis for this coming in?

MS. DONOVAN: Your Honor, one, I'm offering it to demonstrate Mrs. Driscoll's knowledge regarding the legislation and the hospital's position.

To the extent that Mr. Connolly is objecting to it on the Petrozziello arguments that they've made, we've taken a position that the Court can allow the



I



evidence and defer ruling as to whether those statements can be considered at the conclusion of the case.

THE COURT: I understand that he's making a Petrozziello argument. What I'm going to ask you to do because we're so early in the process is to make a proffer as to what it is you expect to present that will establish the basis upon which the Court can make that determination.

MS. DONOVAN: Just so I understand, make an offer as to how the Court could make the ruling preliminarily at this time?

THE COURT: Yes.

MS. DONOVAN: Based on the evidence that's come in?

THE COURT: Yes.

MS. DONOVAN: I'll move on to another area, and I'll come back to that possibly tomorrow.

THE COURT: Okay.

(End of bench conference)

Q. Ms. McNamara, did you know the name John Celona?

A. Yes.

Q. And did you know who he was in 1997?

A. I did.

Q. How did you know John Celona?



I



A. We lived in North Providence, so he was actually our senator.

Q. Had you -- what personal interaction had you had with him in 19 -- in and around the 1997 time frame?

A. Not in 1997, per se, but through the years he had owned a lawnmower store in North Providence and we had interactions. We had purchased items from him.

Q. Did you ever hear John Celona's name mentioned by either Frances Driscoll or Robert Urciuoli at the hospital?

A. Yes.

Q. With respect to Mr. Urciuoli, did you ever hear Mr. Urciuoli mention John Celona's name?

A. Yes.

MR. CONNOLLY: Objection.

THE COURT: Overruled. It's just a yes.
Q. When did you first hear Mr. Urciuoli mention John Celona's name?
A. Sometime in 1997.
Q. Do you know when it was in relation to the defeat of the Hospital Conversion Act in the legislature?
A. Shortly after that time.
Q. And what did Mr. Urciuoli say concerning John Celona?
MR. CONNOLLY: Objection.

Karen M. Wischnowsky, RPR-RMR-CRR

I

11

THE COURT: Overruled.
A. John Celona was looking to be employed by the hospital.
Q. What else did he say?
A. Not much more than that in my presence.
Q. Did you say -- in what context was Mr. Urciuoli having this discussion? Where were you?
A. In a meeting in his office with several vice presidents.
Q. Did you say anything in response when Mr. Urciuoli discussed the fact that Senator Celona was looking for a job?
A. Not at that point.
Q. Did you ever speak to Mr. Urciuoli again about the hiring of John Celona?
A. I did not.
Q. Did you ever speak with Frances Driscoll about the

hiring of John Celona?

A. I did.

Q. And when did you speak to Mrs. Driscoll about the hiring of John Celona?

A. During that period of time toward the latter part of '97.

Q. And what did Mrs. Driscoll say to you regarding the hiring of John Celona?



I



MR. CONNOLLY: Objection.

THE COURT: Approach.

(Bench conference held on the record)

MR. CONNOLLY: It's hearsay.

THE COURT: Petrozziello?

MR. CONNOLLY: Yes.

THE COURT: Okay.

MS. DONOVAN: Your Honor, I'm also offering it in order to provide some context to the comments that Ms. McNamara made to Mrs. Driscoll concerning her feelings about the hiring of John Celona.

THE COURT: How is that even relevant, what Ms. McNamara's feeling were?

MS. DONOVAN: Certainly to extent that people at the hospital expressed concern over John Celona being hired by the hospital --

THE COURT: Whatever they thought is irrelevant.

MS. DONOVAN: But what she said to her, what she said to Mrs. Driscoll is relevant if Mrs. Driscoll was

continuing to act and carry out Mr. Urciuoli's wishes.

To the extent that someone in Mrs. Driscoll's position ignored the counsel of the COO of the hospital that there was nothing that she -- that he could do for the hospital and that Mrs. Driscoll continued to carry out Mr. Urciuoli's direction and follow through with



I



hiring him we think is relevant to her intent in participating -- in aiding and abetting him in the scheme.

THE COURT: I'm going to sustain the objection.

(End of bench conference)

Q. Ms. McNamara, did you ever learn that John Celona had entered into a financial relationship with Roger Williams Medical Center?

A. I did.

Q. And how did you learn that?

A. I don't remember exactly how I learned it.

Q. Did you ever have any conversations with Frances Driscoll about work that John Celona was doing for the Village at Elmhurst?

A. I did not.

Q. As COO of the hospital, were you familiar with the financial viability of the Village at Elmhurst?

A. To some extent, yes.

Q. To what extent? How were you kept apprised of the financial stability of the Village at Elmhurst?

A. I was present at the finance committee meetings of