12/1/2005

FD-302 (Rev. 10-6-95)



**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription ____________

at

Former Representative JOHN DOUGLAS BARR II, was advised of the identity of those conducting the interview and of its purpose. Barr was advised that he was not currently a target or a subject of the investigation. Barr provided the following information:

John Douglas Barr II
[redacted]

Barr was an elected State Representative for his district from 1990 until 1994 when he lost by election. Barr was re-elected in 1996 and served until losing to re-election again in 2002. Barr stated that he knew John Celona because they served together in the Rhode Island State Legislature and represented adjoining districts. Barr also stated that he and his wife shared a table with John Celona and his wife at the 100th Anniversary of the State House celebration. Outside of the political arena, Barr had no other significant contact with Celona.

Barr described Celona as someone who would take all the credit on a project no matter how much hard work someone else may have done. Barr further described Celona as a self-serving politician who had desires of running for Lieutenant Governor. During his tenure and interaction with Celona at the State House, Barr believed that Celona was a lawnmower repairman. Barr recalled an incident when Celona brought a chain saw into the House chambers that he had repaired for Vincent J. Mesolella, then a Representative. Barr stated that the talk around the chamber was that Celona had independent money because his family owned property on Mineral Spring Avenue in North Providence. Barr stated that he was unaware of Celona having any other employment or that he was working as a consultant for anyone, to include Roger Williams Medical Center, The Village at Elmhurst or CVS Pharmacy, Inc. Barr stated that Celona never disclosed his employment to Barr.

Investigation on 12/1/05 at Providence, RI

File # 194B-BS-94790 Date dictated 12/1/05

by SA W. Dennis Aiken, Det. Shari Russell

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

194B-BS-94790

Continuation of FD-302 of James McGuirk, On 10/12/05, Page 2

Barr was shown House Bill 99H-5917, an act Relating to health and Safety - Bone Marrow Registration. Barr stated that he sponsored this bill 1999. Barr advised that he had a constituent who had a related health problem. Barr stated that he believes he got the language from a bill introduced a year or two prior by Rep. Ginaitt who put in a bill on behalf of former Senator Tom Lynch whose son had leukemia. Rep. Ginaitt's bill required insurance companies to pay for Bone Marrow testing and required that RITE AID pay for the testing of those who qualified for RITE AID. The cost of testing amounted to approximately $60.00. Rep. Ginaitt's legislation left a gap of approximately 20% of the population who either did not have insurance or did not qualify for RITE AID and as a result were required to pay for their own testing. Barr stated that the purpose of this legislation was cause the state to cover the cost of testing that 20% of the population. Barr stated that he worked with Patricia Land of the Rhode Island Blood Center who ran the bone marrow program on this bill.

Regarding 99H-5917, Barr stated that he may have had a conversation with Celona about the bill, but he does not recall the specifics of that conversation. Barr was read excerpts from memorandum from Celona sent to Driscoll on February 24th and 25th of 1999 which referenced conversations Celona had with Barr relative to the bill. Barr stated that Celona's rendition of the conversations made sense.